KEVIN G. CLARKSON
ATTORNEY GENERAL
Cheryl Brooking (Alaska Bar No. 9211069)
Senior Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: 907.269.5100
Facsimile: 907.276.3697
Email: Cheryl.Brooking@alaska.gov
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br>Department of Fish and Game,<br><br>Plaintiff,<br><br>v.<br><br>The FEDERAL SUBSISTENCE BOARD;<br>DAVID SCHMID, in his official capacity as the<br>Regional Supervisor for the United States Forest<br>Service; SONNY PERDUE III, in his official<br>capacity as the United States Secretary of<br>Agriculture; GENE PELTOLA, in his official<br>capacity as Alaska Regional Director, Bureau of<br>Indian Affairs; GREG SIEKANIEC, in his<br>official capacity as Alaska Regional Director,<br>United States Fish and Wildlife Service;<br>CHAD PADGETT, in his official capacity as<br>State Director for Alaska, United States Bureau<br>of Land Management; DON STRIKER, in his<br>official capacity as Alaska Regional Supervisor,<br>National Park Service; DAVID BERNHARDT,<br>in his official capacity as the United States<br>Secretary of the Interior; ANTHONY<br>CHRISTIANSON, in his official capacity as<br>Chair of the Federal Subsistence Board;<br>CHARLIE BROWER, in his official capacity as<br>Member of the Federal Subsistence Board; | CIVIL ACTION NO.:<br><br>3:20-cv-00195-HRH<br><br><br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT<br>AND INJUNCTIVE RELIEF** |

1

RHONDA PITKA, in her official capacity as )
Member of the Federal Subsistence Board )
                                        )
Defendants.                             )

**INTRODUCTION**

1.      Plaintiff State of Alaska ("Alaska" or the "State") brings this action to challenge the decisions by the Federal Subsistence Board to delegate broad regulatory authority to in-season managers to open seasons for hunting and fishing, to authorize opening temporary hunting seasons, to close certain federal lands to non-federally qualified subsistence users, to delegate administrative authority to entities outside a federal agency, and to take action outside of a public meeting.

2.      An actual, justiciable controversy now exists between Alaska and the Defendants, and the requested relief is proper under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201–2202 (declaratory judgment), 5 U.S.C. § 552b (federal Open Meetings Act) and 5 U.S.C. §§ 701–706 (Administrative Procedure Act).

3.      The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

4.      Alaska has exhausted all administrative remedies.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this action is brought against officers of agencies of the United States in their official capacities and against the Federal Subsistence Board. The federal lands and the state's fish and wildlife are located within the District of Alaska. The challenged actions and decisions were made in the District of Alaska.

2

## PARTIES

6. Plaintiff Alaska is a sovereign state, which has a compelling interest in the management, conservation, and regulation of all fish and wildlife and other natural resources within its jurisdiction, for sustained yield and the maximum use and benefit of the Alaskan people. Alaska Const. Art. VIII, §§ 1, 2, and 4; AS 16.05.020. As a steward of its wildlife resources, Alaska directly manages fish, wildlife, and habitat through its Department of Fish and Game ("Department"). AS 16.05.010-950.

7. The Federal Subsistence Board was created to implement Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA") on federal public lands in Alaska. 50 CFR Part 100.[1]

8. ANILCA requires the Federal Subsistence Board to cooperate with the Department, except as otherwise provided by federal law, in managing subsistence activities on public lands and protecting the continued viability of wild renewable resources in Alaska. 16 U.S.C. § 3112.

9. The Federal Subsistence Board's decisions to broadly delegate rulemaking authority to open hunting and fishing opportunities, and to do so without any public process, will have a significant adverse impact on the State's ability to manage fish and game, including on federal lands within its borders. The Federal Subsistence Board's

---

[1] Corresponding regulations for the Department of Agriculture are found at 36 CFR Part 100.

Case 3:20-cv-00195-HRH   Document 1   Filed 08/10/20   Page 3 of 24

decisions may deprive Alaskans, including local subsistence-dependent Alaskans, of subsistence resources in the future.

10.     It is well established that the power to manage and protect wildlife, including on federal lands, lies with the states, except to the extent expressly preempted by Congress when acting under Constitutional grants of authority to the federal agencies.[2]

11.     Alaska has standing to bring this action, and the challenged agency decisions are final and ripe for review by this Court.

12.     Defendant David Bernhardt is the Secretary of the United States Department of the Interior and is being sued in his official capacity. The Secretary is the federal official responsible for the administration, within the scope of federal laws, of the National Wildlife Refuge System, the National Park System, and the Bureau of Land Management. The Secretary of Interior, with the Secretary of Agriculture, established the Federal Subsistence Board to implement Title VIII of ANILCA. 50 CFR § 100.10.

13.     Defendant Sonny Perdue III is the Secretary of the United States Department of Agriculture and is being sued in his official capacity. The Secretary is the federal official responsible for the administration, within the scope of federal laws, of the National Forest System. The Secretary of Agriculture, with the Secretary of Interior, established the Federal Subsistence Board to implement Title VIII of ANILCA. 50 CFR 100.10.

---

[2]     *Hughes v. Oklahoma*, 441 U.S. 322 (1979); *Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976); *Geer v. Connecticut*, 161 U.S. 519, 528 (1896), *overruled on other grounds by Hughes*, 441 U.S. at 322; 43 C.F.R. § 24.3(a).

4

14. Defendant Greg Siekaniec is the Alaska Regional Director of the United States Fish and Wildlife Service and is being sued in his official capacity. Regional Director Siekaniec is responsible for the administration of the National Wildlife Refuge System within the Alaska Region, including serving as a voting member of the Federal Subsistence Board.

15. Defendant Chad Padgett is the Alaska State Director of the United States Bureau of Land Management and is being sued in his official capacity. State Director Padgett is responsible for the administration of the Bureau of Land Management public lands within the Alaska Region, including serving as a voting member of the Federal Subsistence Board.

16. Defendant Don Striker is the Alaska Regional Supervisor of the United States National Park Service and is being sued in his official capacity. Regional Supervisor Striker is responsible for the administration of the National Park and Preserve System within the Alaska Region, including serving as a voting member of the Federal Subsistence Board.

17. Defendant Gene Peltola is the Alaska Regional Director of the Bureau of Indian Affairs and is being sued in his official capacity. Regional Director Peltola serves as a voting member of the Federal Subsistence Board.

18. Defendant David Schmid is the Alaska Regional Supervisor of the United States Department of Agriculture, Forest Service and is being sued in his official capacity. Regional Supervisor Schmid is responsible for the administration of the

National Forest System within the Alaska Region, including serving as a voting member of the Federal Subsistence Board.

19.     Defendant Anthony Christianson is the Chair of the Federal Subsistence Board and is being sued in his official capacity.

20.     Defendant Charlie Brower is a voting Member of the Federal Subsistence Board and is being sued in his official capacity.

21.     Defendant Rhonda Pitka is a voting Member of the Federal Subsistence Board and is being sued in her official capacity.

## LEGAL BACKGROUND

### A.     Alaska National Interest Lands Conservation Act (ANILCA)

22.     ANILCA has a number of provisions that direct generally how federal public lands must be administered. One of Congress's stated policies in enacting ANILCA is that,

> except as otherwise provided by this Act or other federal laws, federal land managing agencies, in managing subsistence activities on the public lands and in protecting the continued viability of all wild renewable resources in Alaska, shall cooperate with . . . appropriate State . . . agencies . . . .

16 U.S.C. § 3112(3).

23.     In Section 1314, Congress directed that nothing in ANILCA is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in title VIII of the Act. 16 U.S.C. § 3202.

6

24.     In Section 802, Congress provided that subsistence uses of fish and wildlife

shall be the priority consumptive uses for rural residents only

> when it is necessary to restrict taking in order to assure continued
> viability of a fish or wildlife population or the continuation of
> subsistence uses of that population for subsistence purposes. 16 U.S.C.
> § 3112.

25.     In Section 815, Congress directed that nothing in Title VIII of ANILCA is

to be construed as

> authorizing a restriction on the taking of fish and wildlife for
> nonsubsistence uses on the public lands…unless necessary for the
> conservation of healthy populations of fish and wildlife, for the
> reasons set forth in section 816 of this title, to continue subsistence
> uses of such populations, or pursuant to other applicable law . . . .
> 16 U.S.C. § 3125.

26.     In Section 816, Congress authorized the Federal Subsistence Board to

"designate areas where, and establish periods when" no subsistence taking of fish and

wildlife would be authorized "for reasons of public safety, administration, or to assure the

continued viability of a particular fish or wildlife population" after consultation with the

Department. In an emergency, the Federal Subsistence Board may close subsistence

harvest in an area or for a period of time without notice, but an emergency closure may

not exceed 60 days and cannot be extended without notice and comment and a

subsequent determination that the closure should be extended. 16 U.S.C. § 3126.

27.     In Section 804, Congress did not include public safety as a reason for

restricting use but directed that:

> Whenever it is necessary to restrict the taking of populations of fish and
> wildlife on such lands for subsistence uses in order to protect the continued
> viability of such populations, or to continue such uses, such priority shall be

7

implemented through appropriate limitations based on the application of the following criteria:

(1) customary and direct dependence upon the populations as the mainstay of livelihood;

(2) local residency; and

(3) the availability of alternative resources. (16 U.S.C. § 3114).

28.  Congress authorized the Federal Subsistence Board to close, but not open, a fish or wildlife harvest season as set forth in sections 815 and 816 of ANILCA. Without statutory authorization, the Federal Subsistence Board adopted a regulation improperly granting itself the authority to *open* public lands to the taking of fish and wildlife. 50 CFR § 100.19. The Federal Subsistence Board may reopen a season after a closure is no longer warranted, but lacks statutory authority to open a season otherwise.

29.  Congress did not authorize the Federal Subsistence Board to delegate administration of a federal subsistence hunt to a tribe or nonprofit organization, to delegate the authority to determine who is authorized to hunt to a tribe or nonprofit organization, or to limit a hunt to a tribe or nonprofit organization. Any delegation outside of the federal agency without express authorization by Congress is improper.[3]

30.  Congress did not authorize the Board to close hunting, or to extend a closure, for the purpose of reducing the administrative burden of processing special action requests.

---

[3]  *U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 565 (D.C. Cir. 2004).

31.     A temporary special action by the Federal Subsistence Board to close public lands for the taking of fish and game must be limited to the minimum time period necessary. 50 CFR § 100.19(b).

**B.     Open Meetings Act**

32.     The Open Meetings Act requires that "every portion of every meeting of an agency shall be open to public observation," subject only to certain matters that may be discussed in a closed meeting following a vote of the members. 5 U.S.C. § 552b.

33.     The Federal Subsistence Board is an agency for purposes of the Open Meetings Act and all actions of the board must be in accordance with the Open Meetings Act.

34.     If a portion of a meeting is to be closed, the members must vote in a public meeting to close such portion of the meeting. 5 U.S.C. § 552b(d)(1).

35.     The time, place, and subject matter of a meeting of the Federal Subsistence Board must be announced prior to the meeting. 5 U.S.C. § 552b.

36.     The Federal Subsistence Board has long acknowledged its obligation to hold public meetings, even when attempting to expand its own authority. 75 Fed. Reg. 63090.

37.     This court has jurisdiction to grant relief for violations of the Open Meetings Act, including injunctive relief and an award of attorney fees. 5 U.S.C. § 552(h).

**C. Administrative Procedure Act ("APA")**

38.     The APA provides for judicial review of final agency action by persons aggrieved by such action. 5 U.S.C. § 702. The actions reviewable under the APA include "preliminary, procedural, or intermediate agency action or ruling…on the review of the final agency action," such as the final decisions at issue here. *Id.* § 704.

39.     Under the APA, a reviewing court shall

> hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . [or] without observance of procedure required by law. 5 U.S.C. § 706(2)(A), (C), (D).

**D. Factual Background**

40.     On April 9, 2020, the Federal Subsistence Board approved a process to delegate broad authority to local federal land managers ("agency field managers") throughout Alaska to adopt emergency, up to 60 days, or temporary regulations to open areas for hunting and fishing.[4]

41.     Actions taken by the Federal Subsistence Board on April 9, 2020 were taken in violation of the federal Open Meetings Act; no announcement of the meeting was made and no members of the public were given an opportunity to be present and observe actions by the members.

---

[4]     Memorandum from Sue Detwiler to David Bernhardt, OSM 2022.SD, at 4.

10

42.    The guidelines to be followed by the agency field managers to adopt temporary regulations are set forth in an undated memorandum from Sue Detwiler to Secretary Bernhardt.[5] Hunting and fishing would only be opened "in response to any demonstrated COVID-19-related emergency situation relating to food security that rises to the level of constituting a threat to public safety."

43.    The guidelines for agency field managers to adopt temporary regulations also include specific key requirements.

A few key points regarding this issue bear emphasis:

- No COVID-19-related action will be taken by the Federal Subsistence Board or their delegated agent if the requested hunting or fishing opportunity threatens the viability of the resource or in the absence of a demonstrable and imminent threat to public safety.

- Any actions so taken will be temporary in nature and will not remain in effect beyond the time that the threat to public safety has passed.

- No action will be taken by the Federal Subsistence Board or their delegated agent to open additional hunting or fishing opportunities prior to consultation with the ADFG and confirmation of need with the State of Alaska Unified Command Mass Care Group.[6]

44.    In a request dated April 13, 2020, renewed in a request dated June 4, 2020, the Organized Village of Kake, a federally recognized tribal government, submitted a request to the Federal Subsistence Board to open a hunt, for tribal members only, allowing harvest of five male deer and two bull moose per month for 60-days. WSA 19-14.

---

[5]    *Id.*

[6]    *Id.* at 4.

45.     The agency field manager for the U.S. Forest Service near Kake sent a letter to the Federal Subsistence Board dated June 12, 2020 stating he contacted Mark Roberts, Alaska SEOC Operations Section Chief for the Unified Command Mass Care Group ("Mass Care"), who confirmed there was no food security or supply chain disruption in Kake associated with COVID-19.

46.     On June 22, 2020, the Federal Subsistence Board held a meeting to address WSA 19-14 and allowed testimony from only one individual: Joel Jackson, President of the Organized Village of Kake.

47.     On June 22, 2020, Joel Jackson testified to the Federal Subsistence Board that there are no supply chain disruptions in getting food to Kake, meat continues to be available for purchase, limits are only on cleaning supplies and paper towels, people were fishing and sharing halibut, and the Alaska ferry system was operating. Although there is a preference for wild moose and deer over store-bought meat, there was no difference in the availability of food in June 2020 as compared to availability of food pre-COVID-19. June 22, 2020 Transcript at 79-81.

48.     The Alaska Marine Highway shows scheduled ferries to and from Kake in 2020 with two in June, four in July, and five in August. Reduced ferry schedules throughout Alaska were implemented in early autumn 2019 through spring 2020 and were unrelated to COVID-19.[7]

---

[7]     https://www.dot.alaska.gov/oars/reservations/CalendarFM.amhsf?selectMonth=August+2020&selectPort=Kake&selectVessel=All+Vessels&action=Get+Schedule

49.     On June 22, 2020, the Federal Subsistence Board voted to authorize the

Forest Service District Ranger to permit an emergency 30-day hunt as requested April 13,

2020, to be evaluated after 30 days to determine if it would be extended for another 30

days. June 22, 2020 Transcript at 87.

50.     Advice from federal staff to the Federal Subsistence Board for its

June 22, 2020 meeting included an opinion[8] that the additional harvest would not be

counted toward an individual's harvest limit, in spite of 50 CFR §100.25(a):

> *Definitions: Harvest limit* means the number of any one species
> permitted to be taken by any one person or designated group, per
> specified time period, in a Unit or portion of a Unit in which the taking
> occurs even if part or all of the harvest is preserved.

51.     On June 24, 2020, Ted Sandhofer, Forest Service District Ranger for the

Petersburg Ranger District, issued Emergency Special Action Permit, "COVID-19 FOOD

SECURITY COMMUNITY HARVEST FOR THE ORGANIZED VILLAGE OF

KAKE" authorizing the tribe "to harvest up to 2 antlered bull moose and 5 male Sitka

black-tailed deer from Thursday, June 24, 2020 to Sunday, August 22, 2020." The permit

provides that participation in the hunt is limited to individuals selected by the tribe.

52.     WSA 19-15 is a special action request dated April 10, 2020 from the

Koyukuk Tribal Village requesting the Federal Subsistence Board to open an emergency

hunt on federal lands in Unit 21D to take up to three moose. The stated justification is a

concern that COVID-19 and travel restrictions in the Governor's Health Mandate 12

---

[8]     Clarification on harvest limits during pandemic-related emergency seasons,
Board Briefing, from Lisa Maas June 17, 2020.

13

could lead to food shortages in local stores in remote areas. The tribe requested a 60-day hunt, but stated that the hunt should occur during April 2020 "due to deteriorating snow and river ice conditions."

53.     In an email dated June 5, 2020, Mass Care concluded there was no food security or food supply disruption in Koyukuk.

54.     An email on July 22, 2020 from Lisa Maas, Acting Policy Coordinator/ Wildlife Biologist for the Office of Subsistence Management ("OSM") within the USFWS, informed Ben Mulligan, Deputy Commissioner for ADF&G, that the Federal Subsistence Board would be taking action on WSA 19-15 by email poll, without holding a public meeting.

55.     On July 16, 2020, the Federal Subsistence Board met to address four proposals, including WSA 20-03, a temporary special action request seeking a one-year closure to moose and caribou hunting on federal lands with Unit 13 as an experiment to reduce hunter competition. The Federal Subsistence Board adopted the proposal with modifications to temporarily close moose and caribou hunting in Subunits 13A and 13B to non-federally qualified users, and made the closure for two years rather than the requested one year.

56.     Although WSA20-03 requested a closure for the regulatory year 2020/2021, and in spite of 50 CFR § 100.19(b)(2) requiring a temporary closure to be for only a minimum period necessary, the Board extended the season to include the full 2020/2022 regulatory cycle "to reduce the administrative burden associated with processing special action requests." July 16, 2020 Transcript at 48.

14

57.     The moose in Unit 13 are within population and harvest objectives established by the state. The Nelchina caribou in Unit 13 are above population and harvest objectives established by the state. July 16, 2020 Transcript at 44-45.

58.     Immediately prior to the scheduled meeting held by the Federal Subsistence Board on July 16, 2020, the Federal Subsistence Board met in an unannounced executive session, delaying the start of the scheduled meeting. July 16, 2020 Transcript at 2.

59.     While discussing WSA 20-03, the Board received information on hunter success,[9] but did not discuss or consider hunter efforts leading to a level of success.

60.     In July 2019, the Board had rejected Temporary Wildlife Special Action WSA 19-03, which requested closure of Federal public lands in Unit 13 to caribou and moose hunting by non-federally qualified users for the 2019/20 season. WSA 19-03 was essentially the same proposal as WSA 20-03, and no new material facts were presented in 2020 to justify the Board's change in position. The OSM summarized the Board's 2019 action in its materials submitted for the 2020 meeting:

> The Board determined the requested closure was not warranted for conservation, continuation of subsistence uses, or safety reasons. The Board concluded that the closure was not necessary for the conservation of healthy caribou or moose populations in Unit 13, as these populations are routinely monitored and annual biological data is used to inform management plans and to establish sustainable harvest guidelines. The closure was also not shown to be necessary to continue subsistence uses of those populations. Federally qualified subsistence users annual harvest rates have remained fairly consistent in comparison to the annual harvest rates by non-Federally qualified users. Nevertheless, local harvesters do experience an influx of non-local hunters and many feel displaced by this activity and alter their

---

[9]     May 20, 2020 Memorandum from Ben Mulligan, Deputy Commissioner.

15

subsistence activities as a result. In addition, the closure would not alleviate public safety concerns as non-Federally qualified users would still be able to cross Federal public lands to access State and private lands.

(July 16, 2020 Transcript at 44.)

61.     Factual information provided for consideration of WSA 20-03 was

summarized by Board Member Chad Padgett:

> The proponent's primary rationale for submitting this request was for experimental reasons to evaluate if harvest success rates of Federally-qualified subsistence users would improve, which is outside of the scope of this Board's regulatory authority. The closure was not shown to be necessary for the continuation of subsistence uses of moose and caribou populations. Annual harvest rates of Federally-qualified subsistence users have remained fairly consistent and the low Federal harvest in 2019 was more a function of lack of availability of caribou during the harvest period, rather than the interference from non-Federally-qualified users, however, many Federally-qualified subsistence users do feel displaced by the influx of non-local hunters into the area.
>
> The closure is also not necessary for reasons of public safety. Such a closure would only serve to shift where non-local hunters would go to harvest animals. The OSM analysis indicates that such a shift may, in fact, serve to further disrupt hunting by Federally-qualified subsistence users and such a closure would not prevent non-Federally-qualified users from accessing BLM lands in order to travel from the road to State-managed lands. It could also concentrate non-local hunters along road accessible, State-managed lands, which may increase safety concerns in those areas. This, coupled with the complex and ill-defined boundaries between State and Federal lands in Unit 13 make navigating such a closure difficult at best.
>
> Additionally, issues related to unsafe shooting practices and other user conflicts are best addressed by law enforcement.
>
> As indicated in the OSM analysis, this closure is also not necessary for the conservation of healthy populations of moose or caribou in Unit 13 as population estimates for both species meet State management objectives. While bull, cow and calf/cow ratios for caribou have fluctuated over time, long-term averages for both

16

indicate that the Nelchina Caribou Herd is healthy and can sustain the current level of harvest. In addition, both caribou and moose populations are routinely monitored and the data gathered is used to inform management plans and establish sustainable harvest guidelines.

Last year this Board opposed a similar special action request, no new data have been brought forth in the OSM analysis to indicate that anything has changed since that time. (July 16, 2020 Transcript at 62).

62. On July 31, 2020, the Federal Subsistence Board issued a News Release to answer "common questions and concerns about the closure" to non-federally qualified users for taking moose and caribou in Units 13A and 13B.

63. The July 31, 2020 News Release does not adequately inform the public that the "closure area" excludes state land and waters within federal boundaries.

64. The July 31, 2020 News Release misrepresents State hunting regulations; specifically the following statement is incorrect: "[B]oth the hunter AND the caribou must be *above* the actual water line but *below* the ordinary high water mark for the harvest to be legal." Alaska hunting regulations applicable to this area prohibit taking swimming moose and caribou, but do not prohibit a hunter standing in the water from taking a moose or caribou standing in the water. Alaska hunting regulations also allow shooting from a boat if the motor is off. 5 AAC 92.080(4); 5 AAC 92.085(7).

## FIRST CLAIM FOR RELIEF
### Violation of Open Meetings Act

65. Alaska incorporates by reference each of the allegations in paragraphs 1 through 64.

66.     The federal Open Meetings Act requires actions of the Federal Subsistence Board, namely voting and other actions taken by the individual named Defendants, to be in a public meeting that is announced at least one week prior to the meeting. 5 U.S.C. § 552b.

67.     Defendants violated the Open Meetings Act by taking action to delegate official rulemaking authority on April 9, 2020 without announcing a public meeting or holding the meeting in a manner where the public could observe the actions being taken.

68.     Defendants violated the Open Meetings Act by holding an unannounced executive session on July 16, 2020.

69.     Defendants violated the Open Meetings Act by taking action by email to vote on WSA 19-15 in July 2020.

## SECOND CLAIM FOR RELIEF
### Violation of ANILCA Title VIII

70.     Alaska incorporates by reference each of the allegations in paragraphs 1 through 69.

71.     ANILCA authorizes the Federal Subsistence Board to close or restrict hunting opportunities on federal public lands for stated purposes and considering specific information. 16 U.S.C. §§ 3112, 3114, 3125, 3126, 3202. Congress did not authorize the Board to open a hunt for those same reasons.

72.     Defendants violated ANILCA by opening a hunt for deer and moose near Kake without the statutory authority to open such a hunt.

18

73.     Defendants violated ANILCA by adopting 50 CFR § 100.19 to the extent the Federal Subsistence attempted to give itself the authority to open temporary and emergency seasons, beyond merely reopening seasons that were closed.

**THIRD CLAIM FOR RELIEF**
**Violation of ANILCA Title VIII**

74.     Alaska incorporates by reference each of the allegations in paragraphs 1 through 73.

75.     In Title VIII of ANILCA, Congress provided for the continuation of hunting and fishing subsistence activities for rural residents on federal public lands, both Alaska Native and non-Native. 16 U.S.C. § 3111.

76.     Defendants violated ANILCA by authorizing a hunt for deer and moose near Kake only for members of the Organized Village of Kake.

**FOURTH CLAIM FOR RELIEF**
**Violation of ANILCA Title VIII**

77.     Alaska incorporates by reference each of the allegations in paragraphs 1 through 76.

78.     ANILCA authorizes the Federal Subsistence Board to close or restrict hunting opportunities on federal public lands for stated purposes and considering specific

information. 16 U.S.C. §§ 3112, 3114, 3125, 3126, 3202. Congress did not authorize restrictions on hunting based on competition or number of hunters in an area.

79.     Defendants violated ANILCA by closing federal lands to harvest of moose and caribou for two years in Game Management Unit 13A and 13B to non-federally qualified subsistence users based on competition between hunters.

80.     Even if the temporary closure had been justified, by modifying the request in WSA 20-03 to double the closure period for the purpose of avoiding the need to address potential future special action requests, Defendants violated 50 CFR § 100.19(b) that confines a temporary closure to the minimum period necessary.

## FIFTH CLAIM FOR RELIEF
### (ANILCA § 1314)

81.     Alaska incorporates by reference each of the allegations in paragraphs 1 through 80.

82.     In ANILCA § 1314, Congress preserved the State's authority as the primary manager of fish and wildlife, including on federal public lands, except as provided in Title VIII of ANILCA. 16 U.S.C. 3202.

83.     Defendants' violated ANILCA by exceeding the authority granted by Congress by opening a moose and deer hunt for Kake tribal members, and closing hunts for moose and caribou in Unit 13A and 13B to non-federally qualified hunters. The State's ability to manage wildlife – under the Alaska Constitution, Alaska Statutes, and ANILCA – is harmed by Defendants' actions.

## SIXTH CLAIM FOR RELIEF
### (Administrative Procedure Act)

84.    Alaska incorporates by reference each of the allegations in paragraphs 1 through 79.

85.    The APA provides that courts shall set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

86.    The Federal Subsistence Board's decision to authorize a 30-day hunt, and the resulting action by the Forest Service District Ranger for the Petersburg Ranger District to issue the Emergency Special Action Permit, "COVID-19 FOOD SECURITY COMMUNITY HARVEST FOR THE ORGANIZED VILLAGE OF KAKE," opening a 60-day hunt for deer and moose to only Kake tribal members is arbitrary, capricious, and not in accordance with law.

87.    Defendants' decision to ignore the determination by the Mass Care Group, that there are no food security problems or food supply disruptions resulting from COVID-19, and, therefore, no imminent threat to public safety, is arbitrary, capricious, and not in accordance with law, and contrary to Defendants' own guidelines.

88.    Defendants' delegation of administrative authority to the Organized Village of Kake to determine who is eligible to participate in the hunt is a delegation outside of federal agencies and is arbitrary, capricious, and not in accordance with law.

89.    Defendants' decision to close moose and caribou hunting to non-federally qualified users on federal public lands in Unit 13A and 13B is arbitrary, capricious, and

21

not in accordance with law.

90.     Defendants' decision  to modify a request for a temporary closure, even if such closure had been authorized under ANILCA, by expanding the requested closure of moose and caribou hunting from one year to two years is arbitrary, capricious, and not in accordance with law. Congress did not authorize a closure to avoid the administrative burden of processing potential future special action requests, and the two-year closure violates 50 CFR § 100.19 that restrain closures to the minimum period necessary.

91.     Defendants' other violations of its statutory obligations outlined in the above claims for relief above are also arbitrary, capricious, and not in accordance with law, and entitle Alaska to the relief requested below.

WHEREFORE, the State of Alaska, Department of Fish and Game respectfully requests that this Court enter judgment providing the following relief:

1.     Declare that Defendants violated ANILCA Sections 3112, 3114, 3125, 3126, and 3202;

2.     Declare that Defendants violated the APA;

3.     Declare that Defendants violated the federal Open Meetings Act;

4.     Declare that Defendants' actions, as set forth above, are arbitrary and capricious, an abuse of discretion, and not in accordance with law;

5.     Enjoin Defendants from interfering with the State's efforts to manage hunting and fishing;

6.     Enjoin Defendants from taking action without complying with the procedures in the federal Open Meetings Act;

22

7.    Enjoin Defendants from authorizing the opening of any hunting or fishing based on COVID-19 alleged food shortages or food supply disruptions; or if the court determines that the Federal Subsistence Board has the authority to open seasons, to enjoin any such opening in the absence of a supporting determination by Mass Care demonstrating an imminent threat to public safety;

8.    Enjoin and set aside the June 24, 2020 Emergency Special Action Permit, "COVID-19 FOOD SECURITY COMMUNITY HARVEST FOR THE ORGANIZED VILLAGE OF KAKE" authorizing tribal members "to harvest up to two antlered bull moose and five male Sitka black-tailed deer from Thursday, June 24, 2020 to Sunday, August 22, 2020;"

9.    Enjoin and set aside the July 16, 2020 action to close federal public lands in Unit 13A and 13B to non-federally qualified moose and caribou hunters;

10.    Enjoin Defendants from misrepresenting State hunting regulations;

11.    Vacate the Defendants' April 9, 2020, June 22, 2020, and July 16, 2020 decisions described above and remand these actions to the Federal Subsistence Board with an order with instructions requiring full compliance with 5 U.S.C. § 552b, with ANILCA Sections 303(1), 802, 815, 816 and 1314, and with the APA;

12.    Award Alaska its attorneys' fees and costs incurred in bringing and maintaining this action pursuant to 28 U.S.C. § 2412, 5 AAC § 552, and other applicable authorities; and

13.    Grant Plaintiff such other and further relief as the Court may deem

necessary and appropriate.


DATED AUGUST 10, 2020.          KEVIN G. CLARKSON
                                ATTORNEY GENERAL

                                By: /s/CHERYL BROOKING
                                Cheryl Brooking
                                Alaska Bar No. 9211069
                                Senior Assistant Attorney General
                                Alaska Department of Law
                                1031 W. 4th Avenue, Suite 200
                                Anchorage, AK 99501
                                Telephone: 907.269.5100
                                Facsimile: 907.276.3697
                                Email:  Cheryl.Brooking@alaska.gov