KEVIN G. CLARKSON
ATTORNEY GENERAL
Cheryl Brooking (Alaska Bar No. 9211069)
Senior Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
Telephone: 907-269-5100
Facsimile: 907-276-3697
Email:  Cheryl.Brooking@alaska.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| STATE OF ALASKA,<br>DEPARTMENT OF FISH AND GAME,<br><br>        Plaintiff,<br><br>v.<br><br>The FEDERAL SUBSISTENCE BOARD, et al.<br><br>        Defendants. | CIVIL ACTION NO.:<br>3:20-cv-00195-HRH<br><br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

The State of Alaska, Department of Fish and Game ("State"), through the Office of the Attorney General, requests an order under FRCP 65 enjoining defendants Federal Subsistence Board and the above-named defendants in their official capacities (collectively, "Federal Subsistence Board") from (1) delegating broad regulatory authority to in-season managers without complying with the federal Open Meetings Act, 5 U.S.C. 552b; (2) opening a hunt for deer and moose near the Organized Village of Kake to only tribal members in violation of Title XIII of ANILCA and the Administrative

Procedure Act, 5 U.S.C. § 706(2); (3) opening any hunt for alleged COVID-19 reasons in violation of Title XIII of ANILCA and the Administrative Procedure Act, 5 U.S.C. § 706(2); (4) refusing to share important harvest information with the State, and (5) delegating administrative authority to entities outside a federal agency, until the Court decides the merits of this lawsuit. This order is requested for the purpose of preserving the State's compelling interest in the management, conservation, and regulation of all fish and wildlife and other natural resources within its jurisdiction, for sustained yield and the maximum use and benefit of the Alaskan people.[1] This order is necessary because the Federal Subsistence Board's decisions to broadly delegate rulemaking authority to open hunting and fishing opportunities without the necessary public process and to open hunts without authority from Congress will have a significant adverse impact on the State's ability to manage fish and game, in accordance with federal law, the Alaska Constitution, and Alaska statutes and regulations, including on federal lands within its borders. Further, the Federal Subsistence Board's decisions may deprive Alaskans, including local subsistence-dependent Alaskans, of subsistence resources in the future. A temporary restraining order and preliminary injunction are necessary because the State is suffering and will continue to suffer immediate and irreparable harm until the Federal Subsistence Board is enjoined from making illegal delegations of authority and opening area to hunting in violation of Title VIII of ANILCA and the Administrative Procedure Act ("APA").

---

[1] Alaska Const. Art. VIII, §§ 1, 2, and 4; AS 16.05.020.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 2 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 2 of 19

## II. LEGAL STANDARDS

The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits.[2] Under the Ninth Circuit standard when reviewing temporary restraining order and preliminary injunction requests, the State must show: (1) it is likely to succeed on the merits; (2) Alaska is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in Alaska's favor, and (4) an injunction is in the public interest.[3] Notably, when the government is the opposing party, factors (3) and (4) merge.[4] The Ninth Circuit evaluates these factors on a sliding scale. Plaintiffs only need to demonstrate "serious questions going to the merits" when the balance of hardships "tips sharply toward the plaintiff . . . assuming the other two elements of the *Winter* test are also met."[5]

## III. FACTUAL BACKGROUND

### A. The State Manages Wildlife in Alaska

Alaska's Constitution protects the sustainable use of natural resources, including

---

[2] *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 704 (9th Cir. 1988.)

[3] *Am. Trucking Assoc., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[4] *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

[5] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). The Ninth Circuit has consistently recited this standard in recent cases. *See, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020); *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (9th Cir. 2019).

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 3 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 3 of 19

wildlife, "for the maximum benefit of its people."[6] It sets the threshold as "a sustained yield principle, subject to preferences among beneficial uses."[7] State law defines "sustained yield" as "the achievement and maintenance in perpetuity of the ability to support a high level of human harvest of game, subject to preferences among beneficial uses, on an annual or periodic basis."[8]

Self-management of natural resources, including Alaska's wildlife resources, was a driving force behind Alaska statehood; fish and wildlife are the property of the State held in trust for the benefit of all residents.[9] Ownership of the resources passed to Alaska upon statehood under the Alaska Statehood Act.[10] General management authority over fish and wildlife within Alaska passed from the federal government to Alaska shortly after Alaska's adoption of a comprehensive fish and game code in 1959.[11]

Alaska's Board of Game ("BOG") is the government entity authorized and obligated to "provide for the conservation and development" of Alaska's wildlife resources.[12] The BOG is authorized to regulate "the conservation, development, or utilization of game in a manner that addresses whether, how, when, and where the public

---

[6]     Alaska Const., art. 8, § 2.

[7]     *Id.* § 4.

[8]     AS 16.05.255(k)(5).

[9]     *See, e.g.*, *Pullen v. Ulmer*, 923 P.2d 54, 57 n.5 (Alaska 1996); *Metlakatla Indian Cmty. v. Egan*, 369 U.S. 45, 47 (1962).

[10]    Pub. L. No. 85-508, 72 Stat. 339 (1958).

[11]    *See* 25 Fed. Reg. 33 (Dec. 29, 1959) (transferring management of fish and wildlife resources to the State); *see also Metlakatla Indian Cmty.*, 369 U.S. at 47 n.2.

[12]    AS 16.05.221(b).

*SOA, ADF&G v. Federal Subsistence Board, et al.*     No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I.     Page 4 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 4 of 19

asset of game is allocated or appropriated."[13] This includes establishing seasons, means and methods, and bag and harvest limits for hunting; implementing "methods, means, and harvest levels necessary to control predation and competition among game in the state"; and "regulating sport hunting and subsistence hunting as needed for the conservation, development, and utilization of game."[14]

The Alaska Department of Fish and Game ("ADF&G"), led by its Commissioner, administers regulations adopted by the BOG in accordance with the statutory duty to "promote fishing, hunting, and trapping and preserve the heritage of fishing, hunting, and trapping in the state."[15] In ANILCA, Congress expressly recognized and maintained the State's management authority except as limited in Title VIII,[16] thus any authority regarding fish and wildlife not specifically granted by Congress in Title VIII remains with the State.

### B. The Federal Subsistence Board's April 9, 2020 Meeting and Delegations of Authority.

On April 9, 2020 the Federal Subsistence Board approved a process to delegate broad authority to local federal land managers ("agency field managers") throughout Alaska to adopt emergency, up to 60 days, or temporary regulations to open areas for

---

[13] 16.05.255.

[14] *Id.*

[15] 16.05.050(a)(19).

[16] 16 U.S.C. § 3202.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 5 of 19
Case 3:20-cv-00195-TMB Document 4-1 Filed 08/10/20 Page 5 of 19

hunting and fishing.[17] No announcement of the meeting was made and no members of the public were given an opportunity to be present and observe actions by the Federal Subsistence Board.

On June 2, 2020 the Federal Subsistence Board issued letters of delegations to agency field managers, authorizing each field manager to "issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource."[18] (Emphasis in original.)

### C. Guidelines for COVID-19 emergency regulations.

The guidelines to be followed by the agency field managers to adopt temporary regulations are set forth in an undated memorandum from Sue Detwiler to Secretary Bernhardt.[19] Hunting and fishing would only be opened "in response to any demonstrated COVID-19-related emergency situation relating to food security that rises to the level of constituting a threat to public safety."[20]

The guidelines for agency field managers to adopt temporary regulations also include the following requirements:

- No COVID-19-related action will be taken by the Federal Subsistence Board or their delegated agent if the requested hunting or fishing

---

[17] Exhibit 1, Memorandum from Sue Detwiler to David Bernhardt, OSM 20022.SD, at 4.

[18] Exhibit 2, June 2, 2020 delegation of authority letters.

[19] Exhibit 1.

[20] *Id.* at 4.

SOA, ADF&G v. Federal Subsistence Board, et al.     No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I.     Page 6 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 6 of 19

- opportunity threatens the viability of the resource or in the absence of a demonstrable and imminent threat to public safety.

- Any actions so taken will be temporary in nature and will not remain in effect beyond the time that the threat to public safety has passed.

- No action will be taken by the Federal Subsistence Board or their delegated agent to open additional hunting or fishing opportunities prior to consultation with the ADFG and confirmation of need with the State of Alaska Unified Command Mass Care Group.[21]

### D. Organized Village of Kake's requested hunt.

In a request dated April 13, 2020, renewed in a request dated June 4, 2020, the Organized Village of Kake, a federally recognized tribal government, submitted a request to the Federal Subsistence Board to open an emergency hunt, for tribal members only, allowing harvest of five male deer and two bull moose per month for 60-days.[22] The agency field manager for the U.S. Forest Service near Kake sent a letter to the Federal Subsistence Board dated June 12, 2020 stating he contacted Mark Roberts, Alaska SEOC Operations Section Chief for the Unified Command Mass Care Group who confirmed there was no food security or supply chain disruption in Kake associated with COVID-19.[23]

On June 22, 2020, the Federal Subsistence Board held a meeting to address WSA 19-14 and allowed testimony from only one individual; Joel Jackson, President of the Organized Village of Kake.[24] On June 22, 2020 Joel Jackson testified to the Federal

---

[21] *Id.*

[22] Exhibit 3, SAR June Letter from Kake.

[23] Exhibit 4, June 12, 2020 letter from Ted Standhofer, Petersburg District Ranger.

[24] Exhibit 5, June 22, 2020 Transcript at 79-81.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 7 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 7 of 19

Subsistence Board that there are no supply chain disruptions in getting food to Kake, meat continues to be available for purchase, limits are only on cleaning supplies and paper towels, people were fishing and sharing halibut, and the Alaska ferry system was operating.[25] Although there is a preference for wild moose and deer over store-bought meat, there was no difference in the availability of food in June 2020 as compared to availability of food pre-COVID-19.[26] The Alaska Marine Highway schedule shows ferries to and from Kake in 2020 with two in June, four in July, and five in August.[27] Reduced ferry schedules throughout Alaska were implemented in early autumn 2019 through spring 2020 and were unrelated to COVID-19.[28]

On June 22, 2020, the Federal Subsistence Board voted seven to one to authorize an emergency 30-day hunt as requested April 13, 2020, to be evaluated after 30 days to determine if it would be extended for another 30 days.[29] Advice from federal staff to the Federal Subsistence Board for its June 22, 2020 meeting included an opinion[30] that the additional harvest would not be counted toward an individual's harvest limit, in spite of 50 CFR §100.25(a):

---

[25] *Id.*

[26] *Id.*

[27] https://www.dot.alaska.gov/oars/reservations/CalendarFM.amhsf?selectMonth=August+2020&selectPort=Kake&selectVessel=All+Vessels&action=Get+Schedule

[28] *Id.*

[29] Exhibit 5, June 22, 2020 Transcript at 87.

[30] Exhibit 6, Clarification on harvest limits during pandemic-related emergency seasons, Board Briefing, from Lisa Maas June 17, 2020.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 8 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 8 of 19

> *Definitions: Harvest limit* means the number of any one species permitted to be taken by any one person or designated group, per specified time period, in a Unit or portion of a Unit in which the taking occurs even if part or all of the harvest is preserved.

Following the Board's authorization, on June 24, 2020, Ted Sandhofer, Forest Service District Ranger for the Petersburg Ranger District, issued an Emergency Special Action Permit to the Organized Village of Kake, authorizing the tribe "to harvest up to 2 antlered bull moose and 5 male Sitka black-tailed deer from Thursday, June 24, 2020 to Sunday, August 22, 2020."[31] The permit provides that participation in the hunt is limited to individuals selected by the tribe.[32]

### E. Koyukuk Tribal Village's requested hunt.

WSA 19-15 is a special action request dated April 10, 2020 from the Koyukuk Tribal Village requesting an emergency hunt be opened on federal lands in Unit 21D to take up to three moose.[33] The stated justification is a concern that COVID-19 and travel restrictions in the Governor's Health Mandate 12 could lead to food shortages in local stores in remote areas.[34] The tribe requested a 60-day hunt, but stated that the hunt should occur during April 2020 "due to deteriorating snow and river ice conditions."[35]

In an email dated June 25, 2020, Rob Rebarchik, the Koyukuk/Nowitna/Innoko National Wildlife Refuge Manager, asked Mass Care "to confirm the need for the

---

[31] Exhibit 7, "COVID-19 FOOD SECURITY COMMUNITY HARVEST FOR THE ORGANIZED VILLAGE OF KAKE"

[32] *Id.*

[33] Exhibit 8, WSA 19-15.

[34] *Id.*

[35] *Id.*

*SOA, ADF&G v. Federal Subsistence Board, et al.*     No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I.     Page 9 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 9 of 19

emergency request by Koyukuk to open a moose hunt related to food security for reasons of public safety," and Mass Care responded that: "Our Mass Care Group is not aware of any substantial food shortage or food supply chain disruption due to COVID-19. Regular shipments of food and commercial supply is available in the State."[36]

An email on July 22, 2020 from Lisa Maas, Acting Policy Coordinator/Wildlife Biologist for the Office of Subsistence Management within the USFWS, informed Ben Mulligan, Deputy Commissioner for ADF&G, and Mark Burch, Wildlife Biologist, that the Federal Subsistence Board would be taking action by email poll, without holding a meeting, on WSA 19-15.[37]

## IV. ARGUMENT

### A. The State is likely to prevail on the merits.

#### 1. The Federal Subsistence Board's April 9, 2020 meeting and portion of its July 16, 2020 meeting were held in violation of the federal Open Meetings Act.

The federal Open Meetings Act, 5 U.S.C. 552b, requires that "every portion of every meeting of an agency shall be open to public observation," subject only to certain matters that may be discussed in a closed meeting following a vote of the members.[38] The Federal Subsistence Board is an agency for purposes of the Open Meetings Act and all actions of the board must be in accordance with the Open Meetings Act. If a portion of a meeting is to be closed, the members must vote in a public meeting to close such portion

---

[36] Exhibit 9, June 25, 2020 email exchange.

[37] Exhibit 10, June 22, 2020 email from Lisa Maas.

[38] 5 U.S.C. § 552b.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 10 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 10 of 19

of the meeting.[39] The time, place, and subject matter of a meeting of the Federal Subsistence Board must be announced prior to the meeting.[40] In fact, the Open Meetings Act requires actions being taken by voting members, including the individually-named Defendants, to be in a public meeting that is announced at least one week prior to the meeting.[41] The Federal Subsistence Board has long acknowledged its obligation to hold public meetings, even when attempting to expand its own authority.[42]

The Federal Subsistence Board violated the Open Meetings Act by taking action to delegate official rulemaking authority on April 9, 2020 without announcing a public meeting or holding the meeting in a manner where the public could observe the actions being taken.

The Federal Subsistence Board further violated the Open Meetings Act by taking action and voting on WSA 19-15 without either announcing or holding a special meeting.[43]

Remedies for violations of the Open Meetings Act include injunctive relief to void any action taken, and an award of attorney fees.[44]

---

[39] 5 U.S.C. § 552b(d)(1).

[40] 5 U.S.C. § 552b.

[41] 5 U.S.C. § 552b.

[42] 75 Fed. Reg. 63090, identifying issues "through public meetings."

[43] Exhibit 10; Exhibit 11, News Release: Changes in Federal Moose and Caribou Hunting Regulations in Unit 13.

[44] 5 U.S.C. § 552h.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 11 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 11 of 19

## 2. The Federal Subsistence Board's decision to open a hunt in Kake violated Title VIII of ANILCA.

ANILCA authorizes the Federal Subsistence Board to close or restrict hunting opportunities on federal public lands for stated purposes and considering specific information.[45] Congress did not authorize opening a hunt for these reasons. Defendants violated ANILCA by opening a hunt for deer and moose near Kake without the statutory authority to open such a hunt.

In Section 802 of ANILCA, Congress provided that subsistence uses of fish and wildlife shall be the priority consumptive uses for rural residents only when it is necessary to restrict taking in order to assure continued viability of a fish or wildlife population or the continuation of subsistence uses of that population for subsistence purposes.[46]

In Section 815, Congress directed that nothing in Title VIII of ANILCA is to be construed as

> authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands…unless necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in section 816 of this title, to continue subsistence uses of such populations, or pursuant to other applicable law….[47]

In Section 816 of ANILCA, Congress authorized the Federal Subsistence Board to "designate areas where, and establish periods when" no subsistence taking of fish and wildlife would be authorized "for reasons of public safety, administration, or to assure the

---

[45] 16 U.S.C. §§ 3112, 3114, 3125, 3126, 3202.

[46] 16 U.S.C. § 3112.

[47] 16 U.S.C. § 3125.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 12 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 12 of 19

continued viability of a particular fish or wildlife population" after consultation with the Department. In an emergency, the Federal Subsistence Board may close subsistence harvest in an area or for a period of time without notice, but an emergency closure may not exceed 60 days and cannot be extended without notice and comment and a subsequent determination that the closure should be extended.[48] It appears the Federal Subsistence Board relied upon the "public safety" language in Section 816 to open a hunt, even though nothing in ANILCA refers to opening a hunt for these reasons.

In Section 804, Congress did not include public safety as a reason for restricting use but directed that:

> Whenever it is necessary to restrict the taking of populations of fish and wildlife on such lands for subsistence uses in order to protect the continued viability of such populations, or to continue such uses, such priority shall be implemented through appropriate limitations based on the application of the following criteria:
> (1) customary and direct dependence upon the populations as the mainstay of livelihood;
> (2) local residency; and
> (3) the availability of alternative resources.[49]

Congress authorized the Federal Subsistence Board to close, but not open, a fish or wildlife harvest season as set forth in sections 815 and 816 of ANILCA. Without

---

[48] 16 U.S.C. § 3126.

[49] 16 U.S.C. § 3114.

SOA, ADF&G v. Federal Subsistence Board, et al.  No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I.  Page 13 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 13 of 19

statutory authorization, the Federal Subsistence Board adopted a regulation improperly granting itself the authority to *open* public lands to the taking of fish and wildlife.[50]

Additionally, in Title VIII of ANILCA, Congress provided for the continuation of hunting and fishing subsistence activities for rural residents on federal public lands, both Alaska Native and non-Native.[51] Even if Congress had authorized the Federal Subsistence Board to open a hunt, Defendants violated ANILCA by authorizing a hunt for deer and moose near Kake only for tribal members of the Organized Village of Kake.

Further, in ANILCA § 1314, Congress preserved the State's authority as the primary manager of fish and wildlife, including on federal public lands, except as provided in Title VIII of ANILCA.[52] Defendants violated ANILCA by exceeding the authority granted by Congress by opening a moose and deer hunt for Kake tribal members, thereby infringing on the State's authority to manage wildlife and hunting. Implementation of the hunt prevents harvest information from being shared with the State.[53]

### 3. The Federal Subsistence Board acted arbitrarily and capriciously.

The Administrative Procedures Act ("APA") provides that courts shall set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of

---

[50] 50 CFR § 100.19. To the extent the Federal Subsistence Board uses its regulatory authority to open a hunt, the State asserts that this authority is limited to opening a hunt that was previously closed.

[51] 16 U.S.C. § 3111.

[52] 16 U.S.C. § 3202.

[53] Declaration of Ryan Scott at ¶ 3.

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 14 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 14 of 19

discretion, or otherwise not in accordance with law.[54]

The Federal Subsistence Board's decision to open a 60-day hunt for deer and moose to Kake tribal residents is arbitrary, capricious, and not in accordance with law.

Further, even if Congress had authorized the Federal Subsistence Board to open hunts, its decision to ignore the determination by the Mass Care Group, that there are no food security problems or food supply disruptions resulting from COVID-19, is arbitrary, capricious, and not in accordance with law, and contrary to Defendants' own guidelines.

Moreover, Defendants' delegation of administrative authority to the Organized Village of Kake to determine who is eligible to participate in the special hunt, such delegation outside of federal agencies, is arbitrary, capricious, and not in accordance with law. Any delegation outside a federal agency, without the express authorization of Congress, is invalid.[55]

### B. Alaska is likely to suffer irreparable harm in the absence of preliminary relief.

The opening of a deer and moose hunt near Kake exclusively for Kake tribal members impairs the State's ability to manage its fish and wildlife. Allowing moose and deer to be taken out of season and in excess of established bag limits directly interferes with the State's ability to manage wildlife and hunting.[56] In Section 802 of ANILCA Congress adopted a policy of wildlife management "in accordance with recognized

---

[54] 5 U.S.C. § 706(2).

[55] *U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 565 (D.C. Cir. 2004).

[56] Declaration of Ryan Scott at ¶ 2.

*SOA, ADF&G v. Federal Subsistence Board, et al.*                                                                                 No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I.                                                     Page 15 of 19
Case 3:20-cv-00195-TMB    Document 4-1    Filed 08/10/20    Page 15 of 19

scientific principles."[57] Wildlife population information is critical to the State's ability to manage under accepted wildlife management principles, as required by ANILCA. The actions taken by the Federal Subsistence Board, in secret meetings and without providing harvest information to the State,[58] cause irreparable harm to the State's ability to accomplish its legal obligations.

Due to the dense canopy in much of the area around Kake, the State relies on information collected from hunters for information on herd composition and hunt management.[59] The federal Office of Subsistence Management refused to share with the State "hunters name, moose jaw, moose antler photos, number of brow tines and antler points for moose, and general wildlife observation."[60] This lack of information directly harms the State.

The State of Alaska is constitutionally obligated to manage its wildlife according to the sustained yield principle, subject to preferences among beneficial uses, and to provide for the maximum use and benefit of its natural resources for the Alaskan people.[61] Congress has recognized the State's interest in managing its wildlife, including resident wildlife on federal lands.[62] By opening an unauthorized hunt to limited

---

[57] 16 U.S.C. § 3112(1).

[58] Declaration of Ryan Scott at ¶ 3.

[59] *Id.*

[60] *Id.*

[61] Constitution of Alaska, Art. VIII, Secs. 1, 2, and 4.

[62] 16 U.S.C. § 3202(a); *see also* 43 CFR 24.3(b), "Congress has, in fact, affirmed the basic responsibility and authority of the States to manage fish and resident wildlife on Federal lands."

*SOA, ADF&G v. Federal Subsistence Board, et al.*     No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I.     Page 16 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 16 of 19

participants, the Federal Subsistence Board has severely impaired and reduced the State's effectiveness in managing these resources and fulfilling its constitutionally mandated duties.

By taking action in unannounced meetings, Alaska and its residents are unaware of Federal Subsistence Board actions until after the fact and have no opportunity to hear deliberations or participate in the process

The harm Alaska is likely to incur is irreparable. There is no way to compensate the State of Alaska or its people for the harm that it will incur if the Court denies injunctive relief.

### C. The balance of equities tips in Alaska's favor.

A preliminary injunction will not cause the Federal Subsistence Board, any agency of the Federal government, the wildlife resources at issue, or Alaskan subsistence users any harm. In comparison, as discussed above, the State will suffer immediate, irreparable harm if the Board's actions are allowed to stand. No food security or transportation disruption issues were confirmed in Alaska.[63] In the event of a food shortage, the Mass Care Group, under the State's Unified Command, would arrange for food deliveries to be targeted as needed.[64] Alaska is in the midst of fishing seasons and hunting seasons are imminent. If circumstances arise to require opening an emergency hunt, such authority

---

[63] Exhibit 12, June 29, 2020 email from Mark Roberts. *See also* Exhibit 13, July 27 statement from Mark Roberts explaining Mass Care procedures.

[64] *Id.*

SOA, ADF&G v. Federal Subsistence Board, et al.　　　　　　　　　　　　　　No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I.　　　　　　　　　　　　　　　　Page 17 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 17 of 19

lies with the Commissioner of the Alaska Department of Fish and Game.[65] An injunction is needed to ensure proper State management of wildlife for sustained yield purposes; a task that will be made extremely difficult if hunts are authorized outside of established seasons and bag limits and with critical information not being provided to the wildlife managers.

Overall, considering the facts and circumstances, the balance of harms tips sharply in the State's favor.

### D. The proposed injunction is in the public interest.

When Congress passed ANILCA to expand federal lands and create new federal lands in Alaska, it provided for subsistence uses to continue on federal public lands.[66] Likewise, Congress mandated that the State of Alaska have continued responsibility and authority for management of fish and wildlife.[67] None of these public interests will be served by allowing the Federal Subsistence Board to hold meetings in violations of the federal Open Meetings Act and take actions in violation of ANILCA and the APA.

## V. CONCLUSION

The State has met its burden of showing "serious questions going to the merits"[68] and is entitled to a preliminary injunction prohibiting the Federal Subsistence Board from

---

[65] AS 16.05.060.

[66] 16 U.S.C. § 3112.

[67] 16 U.S.C § 1314(a).

[68] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011); *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020); *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (9th Cir. 2019).

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 18 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 18 of 19

issuing broad delegations of authority to adopt emergency hunting regulations for COVID-19 reasons, vacating the moose and deer hunt near Kake, prohibiting the Federal Subsistence Board from taking actions in violation of the federal Open Meetings Act, requiring hunt information be shared with the State, and prohibiting delegations of authority outside federal agencies. For all the above reasons, the State of Alaska's motion for a temporary restraining order and preliminary injunction should be granted.

DATED: August 10, 2020.

KEVIN G. CLARKSON
ATTORNEY GENERAL

By: /s/ Cheryl Brooking
Cheryl Brooking
Aalaska Bar No. 9201169
Senior Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: 907-269-5100
Facsimile: 907-276-3697
Email: Cheryl.Brooking@alaska.gov

*SOA, ADF&G v. Federal Subsistence Board, et al.* No. 3:20-cv-00195-HRH
MEMORANDUM IN SUPPORT OF TRO and P.I. Page 19 of 19
Case 3:20-cv-00195-TMB   Document 4-1   Filed 08/10/20   Page 19 of 19