

United States Department of the Interior

Office of Subsistence Management
1011 East Tudor Road MS 121
Anchorage, Alaska 99503-6199

IN REPLY REFER TO:
OSM 20022.SD

Memorandum

To:          David Bernhardt, Secretary

Through:     Stephen Wackowski, Senior Advisor for Alaska Affairs

From:        Susan Detwiler, Assistant Regional Director, Office of Subsistence Management

Subject:     Federal Subsistence Board Delegation of Authority for Pandemic-related Emergency
             Special Actions.

**Summary:**

The Federal Subsistence Board (Board) has received several requests from remote Alaska communities asking the Board for emergency openings of federal subsistence hunting seasons to address food shortages associated with the COVID-19 pandemic.  The requesters indicate that pandemic-related reductions in travel, reductions in transportation of goods to their communities, and disruptions in the national food supply (especially meat) are diminishing, or are expected to imminently diminish, the food supply in their communities.  They request the Board authorize, on an emergency basis, limited hunts near their communities to ensure they have sufficient food.

The Board wants to respond expeditiously to these requests and has taken initial steps to delegate authority to make independent determinations on these requests to the appropriate local federal land managers.  The delegated authority would be within limited parameters and would require the manager to consult with the Emergency Operations Center and the Alaska Department of Fish and Game, among others.  The Board expects to continue to receive requests as the pandemic continues.  The delegations of authority would be similar to delegations of authority already in place for fisheries-related actions, which allow local managers to open or close fishing seasons in response to quickly changing conditions.

**Issue:**

The Federal Subsistence Board has received twelve (11 hunting and 1 fishing) requests to date from communities requesting emergency openings near their communities to mitigate food insecurity and

*DELIBERATIVE*

unmet nutritional needs resulting from the COVID-19 pandemic. The Board expects to receive more requests as the pandemic continues. Requesters indicate pandemic-related reductions in freight service bringing food and other supplies to their communities, restrictions on travel (including mandatory 14-day quarantines for travelers), rural residents' reluctance to travel to hub communities where they would be exposed to COVID-19 and potentially bring it back to their communities (which generally have limited medical facilities, if any), and community closures to reduce exposure to visitors who may bring in COVID-19. Disruptions in the national commercial meat supply are diminishing, or are expected to diminish, the food supply in remote communities. These requests have been augmented by repeated public testimony at the Board's April 20-24, 2020 public meeting, and by written comments, indicating certain food lines have been interrupted to such a degree that a number of remote communities are already facing the prospect of severe shortages of protein staples.[1]

After discussions with FEMA, the Alaska Emergency Operations Center (EOC), Alaska Department of Fish and Game (ADFG), subsistence users, and other stakeholders, the Board is considering using its authorities at 36 CFR 242.19 and 50 CFR 100.19 to open targeted hunts of moose, deer, and caribou to address food shortages or supply chain disruptions in rural Alaska during the COVID-19 emergency. These openings would be accomplished by delegation of Board authority to designated DOI and USDA field managers, who would base opening decisions on direct coordination with the Office of Subsistence Management, EOC, and ADFG. These openings are intended to be temporary in nature to resolve localized risks to public safety and are designed to assist the joint State/FEMA recovery efforts during the Presidential COVID-19 disaster declaration in Alaska.

**Scope and Authorities:**

The remainder of this memorandum further describes the Board's mandate and authorities as well as the parameters under which additional hunting or fishing could be authorized in response to the crisis. As detailed below, such emergency hunting or fishing opportunities, if any, would be made available to specific rural communities only under limited circumstances and in response to specific conditions following additional consultation with the State of Alaska Department of Fish and Game and the Unified Command Mass Care Group.[2] A draft of the Delegation of Authority Letter is attached.

Title VIII of the Alaska National Interest Lands Conversation Act of 1980 (ANILCA), established a priority for the taking of wild renewable resources, including fish and wildlife, on federal public lands in Alaska for non-wasteful subsistence uses by rural Alaska residents.[3] In 1990, the Secretaries of the Interior and Agriculture established the Federal Subsistence Board and delegated to it their respective

---

[1] At a telephonic public meeting of the Federal Subsistence Board on April 20-23, the Board heard from several tribal leaders that their villages had submitted requests for additional hunting opportunities to the State of Alaska, but all of those requests had been rejected. Tribal leaders did not indicate whether the State had provided rationale for the denials.

[2] On April 21, the Regional Solicitor's Office sent an email to the Mass Care Group offering to open lines of communication between that group and the Federal Subsistence Management Program to allow for consultation prior to making any COVID-related decisions. In the initial reply to the Mass Care Group's response that there were no food security issues in Alaska at the time, SOL offered to share newly acquired information to the contrary received during the April Board meeting. SOL also reached out to FEMA which directed the Board to the State EOC and Mass Care Group.

[3] 16 U.S.C. §§ 3113-4.

authority to implement the subsistence priority.[4]  The Board receives input from ten regional advisory councils, which ANILCA required to be established in each subsistence resource region and to be comprised of residents of that region with local knowledge of subsistence uses.[5]

In enacting Title VIII of ANILCA, Congress recognized subsistence uses by rural residents of public lands in Alaska is "essential" to, among other things, the "physical and economic existence" of those rural residents.[6]  Congress further recognized that "the situation in Alaska is unique in that, in most cases, no practical alternative means are available to replace the food supplies and other items gathered from fish and wildlife which supply rural residents dependent on subsistence uses."[7]  The ongoing global pandemic has already precipitated government-mandated travel restrictions, shortages of key items at commercial outlets, and other challenging circumstances making it even more difficult for rural residents to provide food and other necessary items for themselves, their families, and their communities.  The Board recognizes the resulting risks to public safety and would issue any delegations of authority as a proactive means of facilitating timely consideration of all food-security-related emergency special action proposals that may arise in rural Alaska.

**Public Safety Finding:**

Current regulations give the Board the ability, in emergency situations, to immediately open, close, or modify hunting or fishing opportunities without engaging in notice and comment rulemaking.[8]  Such actions may be taken only after consultation with the State of Alaska and the chair of the applicable regional advisory council(s) and may not exceed 60 days in duration.[9]  This authority stems from the Board's regulations, which state in relevant part that:

> In an emergency situation, if necessary to ensure the continued viability of a fish or wildlife population, to continue subsistence uses of fish or wildlife, or for public safety reasons, the Board may immediately open or close public lands for the taking of fish and wildlife for subsistence uses, or modify the requirements for take for subsistence uses.[10]

The Board also has the option to re-delegate this authority to DOI or USDA agency field managers.[11]  The Board exercises this option on a regular basis, typically by issuing a letter of delegation to the manager which allows them, after consultation with the State and relevant advisory council chair, to set, on an emergency or temporary basis, harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife

---

[4] 50 C.F.R. § 100.10(d)(4).  The voting members of the Board include the regional and state directors of five federal land management agencies (FWS, BLM, NPS, BIA, and USDA Forest Service) and three rural residents of Alaska.

[5] 16 U.S.C. § 3115(a)-(c).

[6] *Id.* at § 3111(1).

[7] *Id.* at § 3111(2).

[8] 50 C.F.R. § 100.19(a).

[9] *Id.*

[10] *Id.*

[11] *Id.* at § 100.10(d)(6).  *See also* 200 DM 2.1 (allowing for the redelegation of authority and stating that "[a]uthority should be delegated to the lowest levels in the organization to better address issues and strengthen communications").

harvest seasons within frameworks established by the Board.[12]

**Current Actions:**

On April 9, 2020, the Board, following consultation with the Solicitor's Office, voted to authorize a process for sending letters of delegation to agency field managers to allow them to open, through reliance on local knowledge and on an expedited basis, hunting and fishing opportunities in response to any demonstrated COVID-19-related emergency situation relating to food security that rises to the level of constituting a threat to public safety. Such openings would not exceed 60 days in duration and must not constitute a threat to the viability of the relevant fish or wildlife resource. By the terms of the letter, these delegations of authority will sunset on June 1, 2021. The managers would not be given any authority to close hunting or fishing opportunities under state law.

While the Board has approved the concept of issuing these COVID-19-related delegation letters, it has not issued any such letters to date. If no letters are issued in a timely manner, then it will fall to the Board to make decisions on each of the emergency proposals, which can be accomplished either by e-mail or by teleconference on the record.

A few key points regarding this issue bear emphasis:

- Based on discussions with and public testimony proffered by residents of Alaska, as well as the Alaska Governor's decision to limit travel between communities, it is clear that certain supply lines within the state have disrupted and that the potential exists for this to result in significant threats to food security and public safety.
- No COVID-19-related action will be taken by the Federal Subsistence Board or their delegated agent if the requested hunting or fishing opportunity threatens the viability of the resource or in the absence of a demonstrable and imminent threat to public safety.
- Any actions so taken will be temporary in nature and will not remain in effect beyond the time that the threat to public safety has passed.
- No action will be taken by the Federal Subsistence Board or their delegated agent to open additional hunting or fishing opportunities prior to consultation with the ADFG and confirmation of need with the State of Alaska Unified Command Mass Care Group.

If there are additional questions that are not answered by this memorandum, please contact me, Thomas Doolittle, Deputy Assistant Regional Director for the Office of Subsistence Management, or Kenneth Lord, Assistant Regional Solicitor, Alaska Region.

---

[12] 50 C.F.R. § 100.10(d)(6). Regulations draw a distinction between an "emergency special action," which can be made immediately but is limited in duration to 60 days, and a "temporary special action," which can be longer in duration but requires more procedural steps prior to implementation, including a public hearing.



# Federal Subsistence Board

**1011 East Tudor Road, MS121**
**Anchorage, Alaska 99503-6199**



FISH and WILDLIFE SERVICE
BUREAU of LAND MANAGEMENT
NATIONAL PARK SERVICE
BUREAU of INDIAN AFFAIRS

FOREST SERVICE

OSM 20039.CM                    JUN 02 2020

Refuge Manager
Togiak National Wildlife Refuge
P.O. Box 270 MS 569
Dillingham, Alaska 99576

Dear Refuge Manager:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Togiak National Wildlife Refuge Manager to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within the portion of Unit 18 south of the Eek River drainage and north of the Goodnews River drainage, for the management of moose on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of moose by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation*. Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov.

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal

mandates and policies. Federal managers are expected to work with managers from the State and other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

**1. <u>Delegation:</u>** The Togiak National Wildlife Refuge Manager is hereby delegated authority to issue emergency special actions affecting moose on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length. Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

**2. <u>Authority:</u>** This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

**3. <u>Scope of Delegation:</u>** The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for moose on Federal public lands within Unit 18 south of the Eek River drainage and north of the Goodnews River drainage.

- Establish individual or community harvest limits, including antler and sex restrictions for moose within Unit 18 south of the Eek River drainage and north of the Goodnews River drainage.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for moose within Unit 18 south of the Eek River drainage and north of the Goodnews River drainage.

- Set harvest quotas for moose on Federal public lands within Unit 18 south of the Eek River drainage and north of the Goodnews River drainage.

This delegation does not permit you to close or reopen Federal public lands to nonsubsistence hunting, nor does it permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. Requests from the public to issue special actions for other purposes are to be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within Unit 18 south of the Eek River drainage and north of the Goodnews River drainage.

**4. <u>Effective Period:</u>** This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5. <u>Guidelines for Delegation:</u>** You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal regulations and management plans, and be up-to-date on population and harvest status information. You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users. Requests not within your delegated authority will be forwarded to the Board for consideration. You will maintain a record of all special action requests and rationale for your decision. A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented. You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered. You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s). If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner. Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members. If a decision to take no action is made, you will notify the proponent of the request immediately. A summary of special action requests and your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6. <u>Support Services:</u>** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc:  Federal Subsistence Board
     Assistant Regional Director, Office of Subsistence Management
     Deputy Assistant Regional Director, Office of Subsistence Management
     Subsistence Policy Coordinator, Office of Subsistence Management
     Wildlife Division Supervisor, Office of Subsistence Management
     Bristol Bay Subsistence Council Coordinator, Office of Subsistence Management
     Yukon Kuskokwim Delta Subsistence Council Coordinator,
       Office of Subsistence Management
     Western Interior Alaska Subsistence Council Coordinator,
       Office of Subsistence Management
     Chair, Bristol Bay Subsistence Regional Advisory Council
     Chair, Yukon Kuskokwim Delta Subsistence Regional Advisory Council
     Chair, Western Interior Alaska Subsistence Regional Advisory Council
     Commissioner, Alaska Department of Fish and Game
     Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
     Interagency Staff Committee
     Administrative Record



# Federal Subsistence Board

**1011 East Tudor Road, MS121**
**Anchorage, Alaska 99503-6199**



FISH and WILDLIFE SERVICE
BUREAU of LAND MANAGEMENT
NATIONAL PARK SERVICE
BUREAU of INDIAN AFFAIRS

FOREST SERVICE

OSM 20041.CM          JUN 02 2020

Refuge Manager
Izembek National Wildlife Refuge
P.O. Box 127 MS 515
Cold Bay, Alaska 99571-0127

Dear Refuge Manager:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Izembek National Wildlife Refuge Manager to issue emergency special actions related to *food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within Unit 9D, for the management of caribou on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of caribou by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation.* Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov.

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal mandates and policies. Federal managers are expected to work with managers from the State and

other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

1. **Delegation:** The Izembek National Wildlife Refuge Manager is hereby delegated authority to issue emergency special actions affecting caribou on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length. Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

2. **Authority:** This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

3. **Scope of Delegation:** The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for caribou on Federal public lands within Unit 9D.

- Establish individual or community harvest limits, including antler and sex restrictions for caribou within Unit 9D.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for caribou within Unit 9D.

- Set harvest quotas for caribou on Federal public lands within Unit 9D.


This delegation also permits you to close and reopen Federal public lands to nonsubsistence hunting, but does not permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. Requests from the public to issue special actions for other purposes should be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within Unit 9D.

4. **Effective Period:** This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5. <u>Guidelines for Delegation:</u>**  You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal regulations and management plans, and be up-to-date on population and harvest status information.  You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users.  Requests not within your delegated authority will be forwarded to the Board for consideration.  You will maintain a record of all special action requests and rationale for your decision.  A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented. You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered.  You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s).  If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner.  Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members.  If a decision to take no action is made, you will notify the proponent of the request immediately.  A summary of special action requests and your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6.** **Support Services:** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc: Federal Subsistence Board
Assistant Regional Director, Office of Subsistence Management
Deputy Assistant Regional Director, Office of Subsistence Management
Subsistence Policy Coordinator, Office of Subsistence Management
Wildlife Division Supervisor, Office of Subsistence Management
Kodiak/Aleutians Subsistence Council Coordinator, Office of Subsistence Management
Chair, Kodiak/Aleutians Subsistence Regional Advisory Council
Commissioner, Alaska Department of Fish and Game
Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
Interagency Staff Committee
Administrative Record



# Federal Subsistence Board

### 1011 East Tudor Road, MS121
### Anchorage, Alaska 99503-6199



**FISH and WILDLIFE SERVICE**
**BUREAU of LAND MANAGEMENT**
**NATIONAL PARK SERVICE**
**BUREAU of INDIAN AFFAIRS**

**FOREST SERVICE**

OSM 20043.CM                    JUN 02 2020

Refuge Manager
Yukon Delta National Wildlife Refuge
P.O. Box 346
Bethel, Alaska 99559

Dear Refuge Manager:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Yukon Delta National Wildlife Manager to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within Unit 18 remainder, for the management of moose on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of moose by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation.* Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov .

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal mandates and policies. Federal managers are expected to work with managers from the State and other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native

Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

**1. Delegation:** The Yukon Delta National Wildlife Manager is hereby delegated authority to issue emergency special actions affecting moose on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length. Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

**2. Authority:** This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

**3. Scope of Delegation:** The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for moose on Federal public lands within Unit 18 remainder.

- Establish individual or community harvest limits, including antler and sex restrictions for moose within Unit 18 remainder.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for moose within Unit 18 remainder.

- Set harvest quotas for moose on Federal public lands within Unit 18 remainder.

This delegation also permits you to close and reopen Federal public lands to nonsubsistence hunting, but does not permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. Requests from the public to issue special actions for other purposes should be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within Unit 18 remainder.

**4. Effective Period:** This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5. Guidelines for Delegation:** You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal

regulations and management plans, and be up-to-date on population and harvest status information. You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users. Requests not within your delegated authority will be forwarded to the Board for consideration. You will maintain a record of all special action requests and rationale for your decision. A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented. You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered. You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s). If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner. Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members. If a decision to take no action is made, you will notify the proponent of the request immediately. A summary of special action requests and your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be

exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6. Support Services:** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc: Federal Subsistence Board
    Assistant Regional Director, Office of Subsistence Management
    Deputy Assistant Regional Director, Office of Subsistence Management
    Subsistence Policy Coordinator, Office of Subsistence Management
    Wildlife Division Supervisor, Office of Subsistence Management
    Yukon-Kuskokwim Delta Subsistence Council Coordinator,
      Office of Subsistence Management
    Western Interior Alaska Subsistence Council Coordinator,
      Office of Subsistence Management
    Chair, Yukon-Kuskokwim Delta Subsistence Regional Advisory Council
    Chair, Western Interior Alaska Subsistence Regional Advisory Council
    Commissioner, Alaska Department of Fish and Game
    Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
    Interagency Staff Committee
    Administrative Record



# Federal Subsistence Board

### 1011 East Tudor Road, MS121
### Anchorage, Alaska  99503-6199



**FISH and WILDLIFE SERVICE**
**BUREAU of LAND MANAGEMENT**
**NATIONAL PARK SERVICE**
**BUREAU of INDIAN AFFAIRS**

**FOREST SERVICE**

OSM 20045.CM                    JUN 02 2020


Refuge Manager
Yukon Flats National Wildlife Refuge
101 12th Avenue
Room 264
Fairbanks, Alaska 99701

Dear Refuge Manager:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Yukon Flats National Wildlife Refuge Manager to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource.  This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within Unit 25D, for the management of moose on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of moose by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible.  *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation*.  Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov .

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal mandates and policies. Federal managers are expected to work with managers from the State and other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

**1. <u>Delegation:</u>** The Yukon Flats National Wildlife Refuge Manager is hereby delegated authority to issue emergency special actions affecting moose on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length. Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

**2. <u>Authority:</u>** This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

**3. <u>Scope of Delegation:</u>** The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for moose on Federal public lands within Unit 25D.

- Establish individual or community harvest limits, including antler and sex restrictions for moose within Unit 25D.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for moose in Unit 25D.

- Set harvest quotas for moose on Federal public lands within Unit 25D.

This delegation also permits you to close and reopen Federal public lands to nonsubsistence hunting, but does not permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. Requests from the public to issue special actions for other purposes should be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within Unit 25D.

**4. <u>Effective Period:</u>** This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5. <u>Guidelines for Delegation:</u>**  You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal regulations and management plans, and be up-to-date on population and harvest status information.  You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users.  Requests not within your delegated authority will be forwarded to the Board for consideration.  You will maintain a record of all special action requests and rationale for your decision.  A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented.  You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered.  You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s).  If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner.  Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members.  If a decision to take no action is made, you will notify the proponent of the request immediately.  A summary of special action requests and your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6. Support Services:** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc:   Federal Subsistence Board
      Assistant Regional Director, Office of Subsistence Management
      Deputy Assistant Regional Director, Office of Subsistence Management
      Subsistence Policy Coordinator, Office of Subsistence Management
      Wildlife Division Supervisor, Office of Subsistence Management
      Eastern Interior Alaska Subsistence Council Coordinator,
        Office of Subsistence Management
      Chair, Eastern Interior Alaska Subsistence Regional Advisory Council
      Commissioner, Alaska Department of Fish and Game
      Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
      Interagency Staff Committee
      Administrative Record



# Federal Subsistence Board

**1011 East Tudor Road, MS121**
**Anchorage, Alaska 99503-6199**



FISH and WILDLIFE SERVICE
BUREAU of LAND MANAGEMENT
NATIONAL PARK SERVICE
BUREAU of INDIAN AFFAIRS

FOREST SERVICE

OSM 20047.CM                    JUN 02 2020

Petersburg District Ranger
Tongass National Forest
P.O. Box 1328
Petersburg, Alaska 99833

Dear Petersburg District Ranger:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Petersburg District Ranger to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within Petersburg Ranger District of the Tongass National Forest, for the management of moose and deer on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of moose and deer by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation.* Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov .

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal mandates and policies. Federal managers are expected to work with managers from the State and

other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

**1. Delegation:** The Petersburg Ranger District of the Tongass National Forest is hereby delegated authority to issue emergency special actions affecting moose and deer on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length. Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

**2. Authority:** This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

**3. Scope of Delegation:** The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for moose and deer on Federal public lands within the Petersburg Ranger District of the Tongass National Forest.

- Establish individual or community harvest limits, including antler and sex restrictions for moose and deer within the Petersburg Ranger District of the Tongass National Forest.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for moose and deer within the Petersburg Ranger District of the Tongass National Forest.

- Set harvest quotas for moose and deer on Federal public lands within the Petersburg Ranger District of the Tongass National Forest.

This delegation also permits you to close and reopen Federal public lands to nonsubsistence hunting, but does not permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. Requests from the public to issue special actions for other purposes should be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within the Petersburg Ranger District of the Tongass National Forest.

**4.  Effective Period:**  This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5.  Guidelines for Delegation:**  You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal regulations and management plans, and be up-to-date on population and harvest status information.  You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users.  Requests not within your delegated authority will be forwarded to the Board for consideration.  You will maintain a record of all special action requests and rationale for your decision.  A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented. You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered.  You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s).  If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner.  Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members.  If a decision to take no action is made, you will notify the proponent of the request immediately.  A summary of special action requests and

your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6. Support Services:** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc: Federal Subsistence Board
Assistant Regional Director, Office of Subsistence Management
Deputy Assistant Regional Director, Office of Subsistence Management
Subsistence Policy Coordinator, Office of Subsistence Management
Wildlife Division Supervisor, Office of Subsistence Management
Southeast Alaska Subsistence Council Coordinator, Office of Subsistence Management
Chair, Southeast Alaska Subsistence Regional Advisory Council
Commissioner, Alaska Department of Fish and Game
Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
Interagency Staff Committee
Administrative Record



# Federal Subsistence Board

**1011 East Tudor Road, MS121**
**Anchorage, Alaska 99503-6199**



FISH and WILDLIFE SERVICE
BUREAU of LAND MANAGEMENT
NATIONAL PARK SERVICE
BUREAU of INDIAN AFFAIRS

FOREST SERVICE

OSM 20049.CM                    JUN 02 2020

Refuge Manager
Koyukuk/Nowitna/Innoko
National Wildlife Refuge
101 Front Street 287
Galena, Alaska 99741

Dear Refuge Manager:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Koyukuk/Nowitna/Innoko National Refuge Manager to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within Unit 21D, for the management of moose on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of moose by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation.* Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov .

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal mandates and policies. Federal managers are expected to work with managers from the State and other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

**1. Delegation:** The Koyukuk/Nowitna/Innoko National Refuge Manager is hereby delegated authority to issue emergency special actions affecting moose on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length. Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

**2. Authority:** This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

**3. Scope of Delegation:** The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for moose on Federal public lands within Unit 21D.

- Establish individual or community harvest limits, including antler and sex restrictions for moose within Unit 21D.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for moose within Unit 21D.

- Set harvest quotas for moose on Federal public lands within Unit 21D.

This delegation also permits you to close and reopen Federal public lands to nonsubsistence hunting, but does not permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. Requests from the public to issue special actions for other purposes should be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within Unit 21D.

**4. Effective Period:** This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5. <u>Guidelines for Delegation:</u>**  You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal regulations and management plans, and be up-to-date on population and harvest status information.  You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users.  Requests not within your delegated authority will be forwarded to the Board for consideration.  You will maintain a record of all special action requests and rationale for your decision.  A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented.  You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered.  You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s).  If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner.  Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members.  If a decision to take no action is made, you will notify the proponent of the request immediately.  A summary of special action requests and your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6. Support Services:** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc:    Federal Subsistence Board
       Assistant Regional Director, Office of Subsistence Management
       Deputy Assistant Regional Director, Office of Subsistence Management
       Subsistence Policy Coordinator, Office of Subsistence Management
       Wildlife Division Supervisor, Office of Subsistence Management
       Western Interior Alaska Subsistence Council Coordinator,
         Office of Subsistence Management
       Chair, Western Interior Alaska Subsistence Regional Advisory Council
       Commissioner, Alaska Department of Fish and Game
       Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
       Interagency Staff Committee
       Administrative Record




# Federal Subsistence Board

**1011 East Tudor Road, MS121**
**Anchorage, Alaska 99503-6199**

FISH and WILDLIFE SERVICE
BUREAU of LAND MANAGEMENT
NATIONAL PARK SERVICE
BUREAU of INDIAN AFFAIRS

FOREST SERVICE

OSM 20051.CM                              JUN 02 2020

Craig District Ranger
Tongass National Forest
P.O. Box 500
Craig, Alaska 99921

Dear Craig District Ranger:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Craig District Ranger to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within the Craig Ranger District of the Tongass National Forest, for the management of deer on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of deer by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation.* Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov .

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal mandates and policies. Federal managers are expected to work with managers from the State and other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native

Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

**1. <u>Delegation:</u>** The Craig District Ranger is hereby delegated authority to issue emergency special actions affecting deer on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length. Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

**2. <u>Authority:</u>** This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

**3. <u>Scope of Delegation:</u>** The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for deer on Federal public lands within the Craig Ranger District.

- Establish individual or community harvest limits, including antler and sex restrictions for deer within the Craig District Ranger.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for deer within the Craig District Ranger.

- Set harvest quotas for deer on Federal public lands within the Craig District Ranger.

This delegation also permits you to close and reopen Federal public lands to nonsubsistence hunting, but does not permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. Requests from the public to issue special actions for other purposes should be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within the Craig Ranger District of the Tongass National Forest.

**4. <u>Effective Period:</u>** This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5. <u>Guidelines for Delegation:</u>** You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal regulations and management plans, and be up-to-date on population and harvest status

information. You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users. Requests not within your delegated authority will be forwarded to the Board for consideration. You will maintain a record of all special action requests and rationale for your decision. A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented. You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered. You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s). If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner. Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members. If a decision to take no action is made, you will notify the proponent of the request immediately. A summary of special action requests and your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals

should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6. Support Services:** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc:    Federal Subsistence Board
       Assistant Regional Director, Office of Subsistence Management
       Deputy Assistant Regional Director, Office of Subsistence Management
       Subsistence Policy Coordinator, Office of Subsistence Management
       Wildlife Division Supervisor, Office of Subsistence Management
       Southeast Alaska Subsistence Council Coordinator, Office of Subsistence Management
       Chair, Southeast Alaska Subsistence Regional Advisory Council
       Commissioner, Alaska Department of Fish and Game
       Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
       Interagency Staff Committee
       Administrative Record



# Federal Subsistence Board

**1011 East Tudor Road, MS121**
**Anchorage, Alaska 99503-6199**



FISH and WILDLIFE SERVICE
BUREAU of LAND MANAGEMENT
NATIONAL PARK SERVICE
BUREAU of INDIAN AFFAIRS

FOREST SERVICE

OSM 20053.CM                    JUN 02 2020

Ketchikan District Ranger
Tongass National Forest
3031 Tongass Avenue
Ketchikan, Alaska 99901

Dear Ketchikan District Ranger:

This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Ketchikan District Ranger to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource. This delegation only applies to Federal public lands subject to Alaska National Interest Lands Conservation Act (ANILCA) Title VIII jurisdiction within the Ketchikan Ranger District of the Tongass National Forest, for the management of deer on these lands.

Ongoing public health concerns have already precipitated Federal and State government-mandated restrictions, which may lead to challenging circumstances for rural residents to provide food and other necessary items for themselves, their families, and their communities. The Board recognizes the resulting risks to public safety and issues this delegation of authority as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska.

It is the intent of the Board that actions related to management of deer by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation.* Your point of contact at the State of Alaska Unified Command Mass Care Group will be Bryan J. Fisher, Incident Commander, Alaska State Emergency Operations Center/Unified Command, at: b.fisher@alaska.gov .

The Office of Subsistence Management will be used by managers to facilitate communication of actions and to ensure proposed actions are technically and administratively aligned with legal mandates and policies. Federal managers are expected to work with managers from the State and

other Federal agencies, the Council Chairs or alternates, local Tribes, and Alaska Native Corporations to minimize disruption to subsistence resource users and existing agency programs, consistent with the need for an emergency special action.

## DELEGATION OF AUTHORITY

**1.  Delegation:**  The Ketchikan District Ranger is hereby delegated authority to issue emergency special actions affecting deer on Federal lands as outlined under the **Scope of Delegation**. Emergency special actions may not exceed 60 days in length.  Special actions are governed by Federal regulation at 36 CFR 242.19 and 50 CFR 100.19.

**2.  Authority:**  This delegation of authority is established pursuant to 36 CFR 242.10(d)(6) and 50 CFR 100.10(d)(6), which state: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

**3.  Scope of Delegation:**  The regulatory authority hereby delegated is limited to the following authorities within the limits set by regulation at 36 CFR 242.26 and 50 CFR 100.26:

- Open, close, reopen a season, up to 60 days in duration, for deer on Federal public lands within the Ketchikan Ranger District.

- Establish individual or community harvest limits, including antler and sex restrictions for deer within the Ketchikan District Ranger.

- Specify permitting requirements, determine the number of permits to be issued, and set permit conditions for deer within the Ketchikan District Ranger.

- Set harvest quotas for deer on Federal public lands within the Ketchikan District Ranger.

This delegation also permits you to close and reopen Federal public lands to nonsubsistence hunting, but does not permit you to specify methods and means, permit requirements, or harvest and possession limits for State-managed hunts.

This delegation only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource.  Requests from the public to issue special actions for other purposes should be directed to the Board through OSM.

The Federal public lands subject to this delegated authority are those within the Ketchikan Ranger District of the Tongass National Forest.

**4.  Effective Period:**  This delegation of authority is effective from the date of this letter and continues until June 1, 2021 unless rescinded by the Board at an earlier date.

**5. <u>Guidelines for Delegation:</u>** You will become familiar with the management history of the wildlife species relevant to this delegation in the region, with current State and Federal regulations and management plans, and be up-to-date on population and harvest status information. You will provide subsistence users in the region a local point of contact about Federal subsistence issues and regulations and facilitate a local liaison with State managers and other user groups.

You will review special action requests or situations that may require a special action and all supporting information to determine (1) consistency with 50 CFR 100.19 and 36 CFR 242.19, (2) if the request/situation falls within the scope of authority, (3) if significant conservation problems or subsistence harvest concerns are indicated, and (4) what the consequences of taking an action or no action may be on potentially affected Federally qualified subsistence users and non-Federally qualified users. Requests not within your delegated authority will be forwarded to the Board for consideration. You will maintain a record of all special action requests and rationale for your decision. A copy of this record will be provided to the Administrative Records Specialist in OSM no later than sixty days after development of the document.

For management decisions on special actions, consultation is not always possible, but to the extent practicable, two-way communication will take place before decisions are implemented. You will also establish meaningful and timely opportunities for government-to-government consultation related to pre-season and post-season management actions as established in the Board's Government to Government Tribal Consultation Policy (Federal Subsistence Board Government to Government Tribal Consultation Policy 2012 and Federal Subsistence Board Policy on Consultation with Alaska Native Claim Settlement Act Corporations 2015).

You will immediately notify the Board through the Assistant Regional Director for OSM, and coordinate with the Chair(s) or alternate of the affected Council(s), local ADF&G managers, and other affected Federal conservation unit managers concerning emergency special actions being considered. You will ensure that you have communicated with OSM to ensure the special action is aligned with ANILCA Title VIII, Federal Subsistence regulations and policy, and that the perspectives of the Chair(s) or alternate of the affected Council(s), OSM, and affected State and Federal managers have been fully considered in the review of the proposed special action.

If the timing of a regularly scheduled meeting of the affected Council(s) permits without incurring undue delay, you may seek Council recommendations on the proposed emergency special action(s). If the affected Council(s) provided a recommendation, and your action differs from that recommendation, you will provide an explanation in writing in accordance with 50 CFR 100.10(e)(1) and 36 CFR 242.10(e)(1).

You will issue decisions in a timely manner. Before the effective date of any decision, reasonable efforts will be made to notify the public, OSM, affected State and Federal managers, law enforcement personnel, and Council members. If a decision to take no action is made, you will notify the proponent of the request immediately. A summary of special action requests and your resultant actions must be provided to the coordinator of the appropriate Council(s) at the end of each calendar year for presentation to the Council(s).

You may defer a special action request, otherwise covered by this delegation of authority, to the Board in instances when the proposed management action will have a significant impact on a large number of Federal subsistence users or is particularly controversial. This option should be exercised judiciously and may be initiated only when sufficient time allows for it. Such deferrals should not be considered when immediate management actions are necessary for conservation purposes. The Board may determine that a special action request may best be handled by the Board, subsequently rescinding the delegated regulatory authority for the specific action only. In the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board.

**6. Support Services:** Administrative support for regulatory actions will be provided by the Office of Subsistence Management.

Sincerely,

Anthony Christianson
Chair

cc:    Federal Subsistence Board
        Assistant Regional Director, Office of Subsistence Management
        Deputy Assistant Regional Director, Office of Subsistence Management
        Subsistence Policy Coordinator, Office of Subsistence Management
        Wildlife Division Supervisor, Office of Subsistence Management
        Southeast Alaska Subsistence Council Coordinator, Office of Subsistence Management
        Chair, Southeast Alaska Subsistence Regional Advisory Council
        Commissioner, Alaska Department of Fish and Game
        Federal Subsistence Liaison Team Leader, Alaska Department of Fish and Game
        Interagency Staff Committee
        Administrative Record




## Organized Village of Kake
### P.O. Box 316
### Kake, Alaska 99830-0316
Telephone 907-785-6471
Fax 907-785-4902 / www.Kake-nsn.gov
**(Federally Recognized Tribal Government serving the Kake, Alaska area)**

June 4, 2020

Petersburg District Ranger,
Ted Sandhofer
PO Box 1328
Petersburg, AK 99833

Dear Mr. Sandhofer:

The Organized Village of Kake (hereinafter OVK) is federally recognized Indian Tribe under federal law and is empowered under its Constitution & By-laws to execute agreement and contracts with the United State to benefit its members. Under Article V, SECTION 1(1) To aid needy members and protect the general Welfare and security of the Village. OVK and the community of Kake find itself in a very vulnerable situation with the village on lock down during the COVID-19 Pandemic and the emergency declarations the United States, State of Alaska, and Kake made the end of March 2020.

Since the US declared the emergency, resources coming in on a weekly basis on Alaska Marine Lines are limited in what they can ship to Kake from Seattle. Vendors are having a more difficult time meeting the need of the stores in Kake. With that said, with the abundance of local Traditional foods, OVK is requesting an emergency use permit to hunt for moose and deer when the store doesn't acquire the desired meats they once received pre-COVID=19; this would provide healthier meals for Kake's elders and families. If there is any way you can streamline this process it would be greatly appreciated. OVK would like to provide for our tribal citizens during this Global Pandemic of COVID-19 Crisis. Burt Jackson Natural Resources Coordinator is available any time for Questions 907=957-1114.s

Under the special action request Emergency moose and deer hunt we are submitting this request to the Petersburg ranger district of 2 bull moose and 5 male deer per month on forest service land. This initial numbers will indicate what our tribal citizens will need, and we will adjust accordingly. We would appreciate a quick response.

Gunalcheesh,

Joel Jackson OVK pres.

Joel Jackson
OVK President

Exhibit 3, Page 4

**USDA**

| United States | Forest | Tongass National Forest | Petersburg Ranger District |
| Department of | Service | Alaska Region | P.O. Box 1328 |
| Agriculture | | | Petersburg, AK 99833-1328 |
| | | | 907-772-3871 |

**File Code:** 6220
**Date:** June 12, 2020

Anthony Christiansen
Federal Subsistence Board Chairman
Department of Interior
Office of Subsistence Management
1011 East Tudor Road
MS 121
Anchorage, AK 99503-6199

Dear Chairman Christiansen:

On April 13, 2020, the Federal Subsistence Board (Board) received Special Action request WSA19-14 from the Organized Village of Kake (OVK) to provide Federal harvest opportunities of moose and deer outside the regular seasons for reasons of public safety and food security during the COVID-19 pandemic. In response to OVK's request, the Board issued a letter of delegated authority to me, the USDA Forest Service, Petersburg District Ranger on June 2, 2020, which granted specific authority to respond to requests for the taking of deer and moose for reasons of public safety and food security during the COVID-19 pandemic.

Subsequently, on June 4, 2020, I received a letter from the OVK requesting the harvest of 2 moose and 5 deer per month for a 60-day period. My letter of delegation requires, among other things, consultation with the Alaska Department of Fish and Game (ADF&G) and the State of Alaska Unified Command Mass Care Group (Mass Care Group). Concurrence with the proposed action was requested of ADF&G on June 4, 2020. To date, I have not received an official response.

My letter of delegated authority for this purpose stipulates that consultation with the Mass Care Group must occur prior to implementing any emergency special action. I contacted the Mass Care Group on June 4, 2020 and was informed by Mark W. Roberts, Alaska SEOC Operations Section Chief, that the State was "unaware of any food shortages" in Kake. After further consultation between members of the Mass Care Group and me, they could not confirm any food shortage or supply chain disruption in Kake.

My letter of delegation states that without confirmation of a food shortage by the State of Alaska Unified Command Mass Care Group, I must defer the special action to the Board. Therefore, with this letter I am deferring this special action request to the Board.

Sincerely,

TED SANDHOFER
District Ranger

cc: Earl Stewart, Wayne Owen





**NWX-DOI-FISH & WILDLIFE**

**Moderator: Subsistence Management**
**June 22, 2020**
**3:36 pm CT**

Coordinator:     Welcome and thank you for standing by. All participants will be able to listen only until the question-and-answer session of today's conference. At that time if you would like to ask a question you may do so by pressing star then 1 and recording your first and last name. Today's conference is being recorded. If you have any objections you may disconnect at this time. I would now like to turn the call over to your host for today, Ms. Sue Detwiler, Assistant Regional Director. Ma'am you may begin.

Sue Detwiler     Okay thank you operator. My name is Sue Detwiler, the new Assistant - relatively new Assistant Regional Director for the Office of Subsistence Management with Fish & Wildlife.

I've been in the position for a couple of months now and so this is my first board meeting, and I am replacing Tom Doolittle who has done a great job these last almost two years in the position of Assistant Regional Director.

So Tom is also online during this meeting as is Lisa Maas who is now also replacing (Suzanne Worker) as the Policy Coordinator, so they're both online along with some other folks from Office of Subsistence Management who will be here as support and also providing presentations.

(Bert Jackson):    There's (Joel).

Man:    Mr. (Jackson), are you on Mr. President?

(Bert Jackson):    Yes, I am, Mr. Chair. Okay, yes, we're going through this special request here
and you know we did develop now a semi-quasi policy out there hearing back
that we have to run our stuff through this program to identify whether the food
security issues are not. And, you know, there's some statements made about,
you know, the process that unfolded up to that determination. And so I just, you
know, wanted to get a little feedback or discussion out of Kake. I'll give you
that opportunity to speak today.

(Joel Jackson):    All right, thank you, Mr. (Chair). Like you all know, my name is (Joel Jackson).
I'm the president of the Organized Village of Kake. When I started this process
we did start having some problems securing meat for our village. You know, so
it was a food security back then. We are still getting some meat. But I think like
the Chairman said that, you know, it's hard to buy from the stores because the
prices have went up. They went way up for meat especially. And our stores are
still trying to fill their orders to where that everybody can get what they need.
We're still on limits on like for instance paper towel and tissue paper and that
kind of stuff, cleaning supply. But the meat that we're getting is processed meat.
It's - and I'm not speaking ill of the store. They're doing the best they can. You
know, it's processed meat. Nonetheless, it's not very good.

I mean I bought hamburger, the outside was pink. The inside was brown. And
that was the last time I bought hamburger from the store. I don't even buy any
other meat from the store at all unless it's frozen and, you know, comes direct
from the factory. Then I buy a little bit. But right now, with the number
climbing around us, right now I believe that we need the best quality meat that

we can get for our people, our elders and our tribal citizens. I mean they're used to eating that meat. I mean that's about the healthiest meat that you can get. And right now at this point, it's very critical that we supply this meat to them. So that they are healthy as they can be. Because with the number climbing, it went from 400 to over 700. You know, people in Alaska are affected by this COVID-19 virus. And it's all around us. It's all around all the small villages.

So, you know, right I'm concentrating. I'm trying to get them the best meat possible. We're trying to supply everybody in town with fresh fish. We believe in doing it ever since we started. You know, numerous people in town have pitched in and if they get, you know, al little bit more halibut or whatever, they give it out. You know, so we're trying to supplement the money that the - like my community we got about 85% unemployment. So, you know, it's important right now that we try to help our elders and tribal citizens. There's no disruption in the food chain other than at the vendors down south. We're not able to - the stores here are not able to secure everything that they ordered. Every order is limited.

So and hey, we got a ferry today. Wow, probably over half a year went by before we got a ferry. I mean, you know, I don't know when the next one will be. I know the communities around us, you know, they're hurting. And as well as Kake. Anxiety level and the frustration and, you know, people are scared. And the best way that I see and I've been telling my nephews and my grandsons that if you get too much. You hand it out. Give it to them. They said that will put a smile on their face.

And we need to lift our people up. So that's the whole things about us sharing. The concept of sharing has always been passed on to us. And, you know, that's very important right now. We're trying to hold each other up. And, you know, it's like I told Chad and he mentioned there's no shortage of moose or deer on

the island. The past couple of years have been phenomenal. We hardly have any people go to (unintelligible) where we used to have to go to get deer.

So, you know, we've always been conservationists. We never took too much of anything. We were always mindful in our practice as native people. That we are responsible for our fish and wildlife. Probably more so than anybody else in this world. Because we lived on this land for over 10,000 years. So we know what our people need. And I've been very mindful of including everybody and everything that I did starting from the fish and game to the forest service.

And then to you guys and I understand it went to the Department of the Interior and then went back down to (unintelligible). And then to the mass whatever thing. I never heard of it before. I don't know if anybody in our community heard of that before. So if they send out a questionnaire, the people would probably say what the heck is that? Who are these people?

You know, so it's - and I appreciate your time. And I'll leave it at that. Thank you.

Man:    Thank you, Mr. (Jackson). Any questions from the board for Mr. (Jackson)? All right, hearing none, I thank you again, Mr. (Jackson) just wanted to, you know, just provide that opportunity for you to speak to the board on this specific topic and definitely the best deal in your community in these challenging times. And certainly broad that their cultural value system is such that we can take are of all the people to the best of their ability with, you know, our up and coming young subsistence users learning those traditional ways of sharing with their leaders and whatnot. So definitely appreciate your village and the way it's standing up in these trying times and making a difference for our people. So thank you.

We'll go ahead and continue on with the discussion here, the other board

And so, you know, I feel this is a real good step in the direction of maintaining the level of trust that we have already established. And, hopefully, it can build off of this and continue to provide opportunity for the membership. Thank you, guys, for the support on this. I think it's a very big deal.

Sue Detwiler:     Sorry, I think -

Greg Sickaniec:     Mr. Chair - Mr. Chair, this is Greg.

Tony Christianson:     Greg, go ahead.

Greg Sickaniec:     I was just going to ask - so under the information that was provided, there was a description of the explanation that the emergency action authorized it from a date of June 10 to August 10. Are we going to make adjustments to these dates based on our action today? And I just wanted to make sure that we are maintaining the expectation of this 30-day review by the in-season manager to determine the need for an additional 30 days. I just want to make sure that I'm comfortable with what we were - what we had on the table here.

Tony Christianson:     Okay. Is there anybody on the Board that is not comfortable with the criteria as it is?

Dave Schmid:     No, Mr. Chairman. This is Dave. My understand was that, you know, that date from the - it would be 30 days from the date here that the District Ranger in-season manager issues that to the Organized Village of Kake, and that's up to two moose and five deer for that 30 days and that he will re-evaluate at the end of that based on the conditions at that point, was my understanding.

Greg Sickaniec:     This is Greg. I'm comfortable with that, from the date that the actual issuance of the permit starts that window.

**Clarification on harvest limits during pandemic-related emergency seasons**

Board Briefing

**Background**

The Board has delegated its authority to act on certain emergency special action requests related to food security issues caused by the COVID-19 pandemic. Delegation of authority letters were sent to in-season managers starting in early June 2020.

**Issue**

In-season mangers are now wondering whether or not harvest by individuals or communities during any announced emergency season would count against an individual's harvest limit for the rest of the regulatory year. They have also expressed concerns about whether or not an individual who harvests a moose (for example) during an emergency season would still be able to obtain a State or Federal permits to harvest a moose during regular seasons under State and/or Federal regulations.

Example A: Pursuant to a delegation of authority from the Board, an in-season manager approves an emergency special action request for the harvest of three moose for a community during an emergency season in July. Joe harvests a moose during July to help feed the community. Can Joe still harvest a moose in September during the regular moose season?

Example B: Pursuant to a delegation of authority from the Board, an in-season manager approves an emergency special action request for an emergency moose season in July for all Federally qualified subsistence users. Jane harvests a moose in July during the emergency season. Can Jane still harvest a moose in September during the regular moose season?

**Current Status**

Our initial view is that the approval of these emergency special action requests effectively created additional hunting and fishing seasons (and associated harvest limits) and did not serve to modify the terms (including harvest limits) of the existing hunting and fishing seasons established by the Board's duly promulgated regulations. As such, Joe and Jane can still harvest their limits as specified at 50 CFR 100.25-.27, regardless of whether or how much they harvested during the emergency seasons established through approval of these emergency special actions.

**Board Options**

If the Board is satisfied with the current status described above, no action is required.

If the Board wants wildlife and fish harvested under these emergency special actions to count towards the harvest limits associated with the existing regulatory subsistence hunting and fishing seasons, there are ways to achieve that result via additional administrative process, at

least with respect to future harvest. But SOL would advise against attempting to retroactively apply such limitations to wildlife and fish already harvested under these emergency special actions.

**Regulation for Reference**

§100.25(a) *Definitions: Harvest limit* means the number of any one species permitted to be taken by any one person or designated group, per specified time period, in a Unit or portion of a Unit in which the taking occurs even if part or all of the harvest is preserved. A fish, when landed and killed by means of rod and reel, becomes part of the harvest limit of the person originally hooking it.



# Federal Subsistence Board
1011 East Tudor Road, MS 121
Anchorage, AK 99503-6199



Forest Service

U.S. Fish and Wildlife Service
Bureau of Land Management
National Park Service
Bureau of Indian Affairs

# COVID-19 FOOD SECURITY COMMUNITY HARVEST FOR THE ORGANIZED VILLAGE OF KAKE

## EMERGENCY SPECIAL ACTION
Under Authority of:   36 CFR 242.10 and .19
50 CFR 100.10 and .19

**Emergency Special Action No:** WSA19-14          Issued at: Petersburg Alaska, June 24, 2020

Effective Date:   12:01 a.m. Wednesday, June 24, 2020
Expiration Date   11:59 p.m. Monday, Aug 22, 2020 unless superseded by subsequent special action

**EXPLANATION:** This Emergency Special Action authorizes a Kake community harvest permit allowing the Organized Village of Kake to harvest up to 2 antlered bull moose and 5 male Sitka black-tailed deer per month from Thursday, June 24, 2020 to Sunday, August 22, 2020. Participation in the season is limited to Federally qualified subsistence users selected by the Organized Village of Kake. Harvest levels, up to the maximum harvest set by this special action, will be dictated by the in-season manager on the harvest permit. A 30 day review by the in-season manager will determine the need for an additional 30 day harvest limit for a total community harvest of up to 4 antlered bull moose and 10 male deer.

**REGULATION:** 36 CFR §242.26(n)(3) and 50 CFR §100.26(n)(3) are temporarily modified to read:

### Unit 3 – Moose

| | |
|---|---|
| *1 antlered bull with spike-fork or 50-inch antlers or 3 or more brow tines on either antler, or antlers with 2 brow tines on both sides by State registration permit only* | *Sep. 15-Oct. 15.* |
| *Kupreanof Island, that portion west of the Portage Bay-Duncan Canal Portage – Community harvest limit of up to 4 antlered bull moose for the community of Kake by Federal community harvest permit only* | *June. 24-Aug. 22.* |

### Unit 3 – Deer

| | |
|---|---|
| *Unit 3-Mitkof, Woewodski, and Butterworth Islands – 1 antlered deer* | *Oct. 15-31.* |
| *Unit 3-Kupreanof Island, that portion east of the Portage Bay-Duncan Canal Portage – 1 antlered deer* | *Oct. 15-31.* |

| *Unit 3, remainder – 2 antlered deer* | *Aug.1 - Nov.30.* |
|---|---|
| | *Dec.1 - Dec. 31,* |
| | *Season to be* |
| | *announced.* |

*Unit 3-Kupreanof Island, that portion west of the Portage Bay-Duncan Canal Portage – Community harvest limit of up to 10 bucks for the community of Kake by Federal community harvest permit only*     *June. 24-Aug. 22.*

## JUSTIFICATION:

On June 22, 2020, the Federal Subsistence Board approved WSA19-14, which requested an emergency moose and deer season for the community of Kake in Unit 3. The Board approved an up to 60 day season during summer 2020 for the community of Kake, with a community harvest limit of up to 4 bull moose and up to 10 male Sitka black-tailed deer. The hunt will be administered by the U.S. Forest Service, Petersburg District Ranger. The Board supported this emergency season for reasons of public safety related to food security concerns in Kake due to intermittent and unreliable food deliveries caused by the COVID-19 pandemic and limited ferry service. The Board additionally noted that no conservation concerns exist for resources as a result from this request.

The community harvest presents no known conservation concern for the growing population of moose and stable population of Sitka black-tailed deer in the harvest area. Harvest is restricted to bulls and bucks to reduce the impact to the population. In 2019, the State registration hunt reported 55 bulls harvested from Kupreanof Island, including 26 from the Kake/Rocky Pass area. This special action does not affect the regular State or Federal seasons. Unit 3 moose and deer season will remain closed, with the exception of the Kake community harvest, unless opened by past or future special action.

Federal Subsistence Board by delegation to:

Ted Sandhofer
District Ranger
Petersburg Ranger District
June 24, 2020

## DISTRIBUTION:

## GOVERNMENT ORGANIZATIONS

Anthony Christianson, Chair, Federal Subsistence Board; Southeast Alaska Regional Advisory Council; ADF&G Wildlife Conservation Division-Petersburg; Jordan Rymer, Subsistence L.E.O., USFS – Moose Pass; Joseph Boggs, L.E.O., USFS-Petersburg; Bill Elsner, L.E.O., USFS-Ketchikan; Paul Robbins, Public Affairs, USFS-Ketchikan; Terry Suminski, Tongass Subsistence Program Leader, USFS-Sitka; DeAnna Perry, Council Coordinator, USFS – Juneau; Melinda Hernandez-Burke, Tribal Relations Program Manager, USFS – Juneau; Sue Detwiler, Lisa Maas, Caron McKee, and George Pappas, Office of Subsistence Management; Alaska Public Safety Department-Fish & Wildlife Protection Division, Ben Mulligan, Deputy Commissioner, Alaska Department of Fish and Game; Mark Burch, Special Projects Coordinator, Alaska Department of Fish and Game – Wrangell; David Jack, Mayor of Wrangell; Mark Jensen, Mayor of Petersburg; Richard Oliver, Wrangell Cooperative Association; Tracy Welch, Petersburg Indian Association.

# Koyukuk – Special Action Request



## Location

Koyukuk is located on the Yukon River near the mouth of the Koyukuk River, 30 miles west of Galena and 290 air miles west of Fairbanks. It lies adjacent to the Koyukuk National Wildlife Refuge and the Innoko National Wildlife Refuge (TCC, 2020).

## Culture

Residents are primarily Koyukon Athabascans with a subsistence lifestyle (TCC, 2020).

## Population

Current Population: 96

## Transportation

The state-owned lighted, gravel runway provides year-round transportation. The river is heavily traveled when ice-free, from mid-May through mid-October. Cargo is delivered by barge about four times each summer. Numerous local trails and winter trails to Chance and Nulato are used by residents. Snow machines, ATVs, and riverboats are used for local transportation (State of Alaska, 2020).

## Current Status of Deliveries of Food Supplies

Our food supplies have been gravely impacted by the COVID-19 pandemic and travel restrictions. We rely heavily on our subsistence way of life to provide nourishment for our community.

## Current Health of the Village

The current population is mostly middle age residents with children, adolescents, and 15 or so elders as well. We have single mothers in the community who need meat for their family. Our hunters are ready to help provide the single mothers, handicap individuals, and elders with moose sustenance. We are worried about the spread of COVID-19 to our community, and we are trying to prepare and provide for our community currently.

# Emergency Special Action

4-10-2020

Koyukuk Village
P.O. Box 109
Koyukuk, AK 99754
Leo Lolnitz
(907) 927-2253
Cell: 888-7805

## Species: Moose (GMU 21D)

## Action Requested:

Koyukuk Tribal village is requesting an Emergency Special Action to hunt Out of Season Moose in the Game Management Unit 21D and Federal Public lands near or in the Innoko National Wildlife Refuge, BLM Administered Land, Special Management Area, and Koyukuk National Wildlife Refuge.

## Current Regulation Affected:

- Federal Subsistence Management Regulations Booklet
    - Year: 2018-2020
    - Hunting / Unit 21 Middle Yukon
    - Page Number: 99, 100, 101, 102, 103, 104

## Koyukuk Tribal Concerns and Immediate Action Needed

Koyukuk Tribe is asking the Federal Subsistence Board to open an Emergency Moose Season for 60 days or less in the Koyukuk surrounding areas. Koyukuk Tribe is concerned about transportation and food supplies not being delivered to our community. Health Mandate 12 restricting Intrastate Travel has caused some communities to take action and look for ways to ensure Food Security and Community Health. Koyukuk Tribe feels that this hunt is needed immediately and a 3 to 4 week window would be enough time to pursue at least 3 moose due to deteriorating snow and river ice conditions.

While federal subsistence regulations are silent on the emergency taking of game, Alaska Board of Game regulations specify the following: 5 AAC 92.400. Emergency taking of game states, "Nothing in 5 AAC prohibits a person from taking game for food during a closed season in case of dire emergency, as defined in 5 AAC 92.990. If it is reasonably possible to do so, the person taking game under this section shall salvage all edible portions of the meat, and shall deliver to the department all portions surplus to the alleviation of the dire emergency. (Eff. 7/5/85, Register 95)." In addition, dire emergency, "means a situation in which a person: (A) is in a remote area; (B) is involuntarily experiencing an absence of food required to sustain life; (C)

will be unable to perform the functions necessary for survival, leading to a high risk of death or serious and permanent health problems, if wild game food is not immediately taken and consumed; and (D) cannot expect to obtain other food sources in time to avoid the consequences described in (C) of this paragraph."

Koyukuk Tribe is requesting the Emergency Special Action because we feel our Tribal subregion is experiencing a "dire emergency" situation as the COVID-19 pandemic is still taking a hold on Alaska.  Koyukuk Tribe is concerned that local stores and food supplies from Fairbanks, and or Anchorage have been restricted causing remote and rural villages to experience a Food Security shortage and detrimental effects on village community members' health.  There is a consensus among our fellow TCC member Tribes on offering each village the opportunity to harvest up to 3 moose during a 60-day Emergency Opening to help curtail the food shortage caused by COVID-19, Health Mandate 12, and decreasing food supplies making their way to rural interior villages.

In closing, Koyukuk is available for further deliberations, and further follow-up, questions, and working out solutions.

## Additional Information to Support Koyukuk's Emergency Special Action

Koyukuk Tribe continues to practice a subsistence way of life and we do not waste any game that we obtain.  We are trying our best currently to provide much needed food for our community.  We are trying to follow guidelines, regulations, and special actions to obtain food for our people in an uncertain time.  Our Ancestors have lived off the land for thousands of generations.  Our grandfathers passed on this knowledge and taught us how to live off the land and respect the resource that we receive from the land.  We do not take more than what we need to survive.  Thank you for your time taken to review our Special Action Request and we hope to hear from you soon.

# References

State of Alaska.  (2020).  Alaska Community Database Online: Koyukuk, Alaska.  Retrieved from https://dcced.maps.arcgis.com/apps/MapJournal/index.html?appid=5232a55e0a0645acac33a0cd9cf9bab2

Tanana Chiefs Conference.  (2020).  Koyukuk: Quick Facts.  Retrieved from https://www.tananachiefs.org/about/communities/koyukuk/

U.S. Department of the Interior.  (2020).  Wildlife Management Units: Middle Yukon Unit 21.  Retrieved from https://www.doi.gov/sites/doi.gov/files/migrated/subsistence/library/maps/upload/unit21.pdf

U.S. Department of the Interior.  (2020).  Wildlife Regulations.  Retrieved from https://www.doi.gov/sites/doi.gov/files/uploads/2018-20_wildlife_regs_book_final_web_3.pdf

| | |
|---|---|
| **From:** | Roberts, Mark W (MVA) |
| **To:** | bob_rebarchik@fws.gov |
| **Subject:** | RE: Consultation Request for Koyukuk Emergency Action Request |
| **Date:** | Thursday, June 25, 2020 10:14:00 AM |

Bob,

I can be your point of contact for this.

Our Mass Care Group is not aware of any substantial food shortage or food supply chain disruption due to COVID-19. Regular shipments of food and commercial supply is available in the State.

You can follow-up with me as needed. I am going to check with our Mass Care Group today specifically about Koyukuk and will advise if there is any additional information.

Thank you,


Mark W Roberts
Alaska SEOC Operations Section Chief
2020 COVID-19 Response
2020_COVID-19@ak-prepared.com
SEOC: 907-428-7100

Alaska State Emergency Operations Center Manager
Alaska Division of Homeland Security and Emergency Management
Direct (907) 428-7016  Email: mark.roberts@alaska.gov  Web: **http://www.ready.alaska.gov**
SEOC (907) 428-7100   seoc@ak-prepared.com
Toll Free: (800) 478-2337
P.O. Box 5750
JBER, AK 99505-5750




**From:** "Rebarchik, Bob" <bob_rebarchik@fws.gov>
**Date:** June 25, 2020 at 6:59:07 AM AKDT
**To:** "Fisher, Bryan J (MVA)" <b.fisher@alaska.gov>
**Subject: Consultation Request for Koyukuk Emergency Action Request**


Brian,

On April 13, 2020, the Federal Subsistence Board (Board) received Emergency Special Action Request WSA 19-015 from the Koyukuk Tribal village (Koyukuk) to provide Federal harvest opportunity of moose outside the regular seasons for reasons of public safety and food security during the COVID-19 pandemic, Health Mandate 12, and decreasing food supplies making their way

to rural interior villages. In response to Koyukuk's request, the Board issued a letter of delegation to me, the Koyukuk/Nowitna/Innoko National Wildlife Refuge Manager on June 2, 2020, which granted specific authority to respond to requests related to food security and exercised for reasons of public safety.

Subsequently on June 3, 2020, I received a letter from Koyukuk requesting to open an emergency moose season for 60 days or less to harvest 3 moose. Attached is a copy of that letter. My letter of delegation requires me to consult with the State of Alaska Unified Command Mass Care Group (Mass Care Group) prior to implementing any emergency special action. I am asking the Mass Care Group to confirm the need for the emergency request by Koyukuk to open a moose hunt related to food security for reasons of public safety.

Please provide a contact that I can consult with on this request. I am available by phone at (907)-656-9601, by cell at 907-656-7446, or by email at bob_rebarchik@fws.gov.

I appreciate your time and look forward to hearing from you. Thank you.




Bob Rebarchik
Refuge Manager



Attachment:
Encl_1_WSA19-15 request

**From:** Maas, Lisa <Lisa_Maas@fws.gov>
**Sent:** Wednesday, July 22, 2020 12:02 PM
**To:** Mulligan, Benjamin J (DFG) <ben.mulligan@alaska.gov>; Burch, Mark E (DFG) <mark.burch@alaska.gov>
**Cc:** Pappas, George E <george_pappas@fws.gov>
**Subject:** Board action on WSA19-15

Hi Ben and Mark,

FYI - the Board is voting on WSA19-15 (koyukuk special action) by e-mail poll. Votes are due by COB July 27. Given the short/emergency nature of the request, a teleconference was not able to be convened.

thanks,

Lisa

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Lisa Maas
Acting Policy Coordinator/Wildlife Biologist
Office of Subsistence Management
U.S. Fish and Wildlife Service
Anchorage, AK
907-786-3357



# Federal Subsistence Board
# News Release



U.S. Fish and Wildlife Service
Bureau of Land Management
National Park Service
Bureau of Indian Affairs

Forest Service

**For Immediate Release:**
July 31, 2020

**Contact:** Lisa Maas
(907) 786-3357 or (800) 478-1456
lisa_maas@fws.gov

## Changes in Federal Moose and Caribou Hunting Regulations in Unit 13
Frequently asked questions on closure of Federal public lands to
non-Federally qualified users.

On July 16, 2020, the Federal Subsistence Board (Board) adopted Temporary Wildlife Special Action WSA20-03 with modification to close the Federal public lands that are open to Federal subsistence hunting in Units 13A and 13B to moose and caribou hunting by non-Federally qualified users for the 2020-2021 and 2021-2022 seasons. This factsheet answers common questions and concerns about the closure.

   1.  **Exactly where does the Federal closure apply?**
The closure only applies to the Federal public lands in Units 13A and 13B that are open to Federal subsistence hunting. This includes the Federal subsistence hunt areas along the Richardson highway near Paxson and the Delta and Gulkana river corridors that are managed by the Bureau of Land Management (BLM). The yellow/shaded areas in the map at the end of this factsheet depict the BLM lands in Units 13A and 13B open to Federal subsistence hunting, which now comprise the "closure area." A more detailed map of the closed areas can be found at this link:

https://www.blm.gov/documents/alaska/public-room/map/state-moose-and-caribou-hunt-restricted-areas-gmu13-and-b-2020-2022

   2.  **What activities are prohibited within the closure area?**
Non-Federally qualified users (State hunters) may not hunt or harvest moose or caribou within the closure area. However, non-Federally qualified users, hunting under State regulations, may still travel through, camp, and hunt/trap for other species on Federal public lands within the closure area. The closure area also remains open to all other activities such as hiking, boating, wildlife viewing, etc.

   3.  **Who is eligible to hunt moose and caribou on Federal public lands in Unit 13?**
As of July 16, 2020, ONLY "Federally qualified subsistence users" are eligible to hunt moose and caribou on Federal public lands in the closure area. "Federally qualified subsistence users" are rural residents who have been determined by the Federal Subsistence Board to have customary and traditional use of moose and caribou in Unit 13. For customary and traditional use determinations see 50 CFR 100.24 or the Federal subsistence regulations book at:
https://www.doi.gov/sites/doi.gov/files/uploads/2018-20_wildlife_regs_book_final_web_3.pdf

   4.  **How long will this closure be in effect?**
The closure is effective for the 2020-2021 and 2021-2022 seasons, which extend from July 1, 2020 through June 30, 2022.

1011 East Tudor Road MS-121 • Anchorage, Alaska 99503-6199 • subsistence@fws.gov • (800) 478-1456 / (907) 786-3888
This document has been cleared for public release #29407312020.

Case 3:20-cv-00195-SLG   Document 4-3   Filed 08/18/20   Page 1 of 3
Exhibit 4   Page 55 of 62

5. **Can a non-Federally qualified user take moose and caribou on gravel bars along navigable waters below the "ordinary high water mark" when the adjacent uplands are Federal public lands?**

When the adjacent uplands are Federal public lands, the strip of land—often a gravel or mud bar—between the edge of a river and the "ordinary high water mark" is open in some areas to moose and caribou hunting by non-Federally qualified users. For the Unit 13 closure area, non-Federally qualified users are allowed to take moose and caribou between the edge of the river and the ordinary high water mark along navigable waters on BLM lands, including the Delta and Gulkana Rivers.

PLEASE NOTE: While non-Federally qualified users are allowed to take moose and caribou between the edge of a river and the ordinary high water mark, both the hunter AND the caribou must be *above* the actual water line but *below* the ordinary high water mark for the harvest to be legal. **Hunters are strongly urged to use caution and extremely good judgment if hunting in this narrow strip of land to avoid the risk of violating the law.**

6. **How is "ordinary high water mark" defined?**

The ordinary high water mark means "that line on the shore established by the fluctuations of water and indicated by physical characteristics such as a clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding areas" (33 CFR 328.3).

7. **Can a Federally qualified subsistence user hunt in the closure area with only a State registration permit?**

No, Federal registration permits are required to hunt moose (FM1301) and caribou (FC1302) under Federal subsistence regulations in Unit 13. The closure area is closed to all moose and caribou hunting under State regulations.

8. **Why did the Board enact this closure?**

Similar to Emergency Orders issued by the Alaska Department of Fish and Game, the Federal Subsistence Management Program can make in-season, out-of-cycle, temporary regulation changes through the Special Action process. An individual submitted special action request asking the Board to close Federal public lands in Unit 13 to the hunting of moose and caribou by non-Federally qualified users for the 2020/21 season. The Board acted on the request at a public meeting held by teleconference July 16, 2020. The Board approved a closure in Units 13A and 13B only, for the 2020-2022 seasons due to necessity for reasons of public safety and continuation of subsistence uses. The Board limited the closure Units 13A and 13B because this is the area where most overcrowding, disruption of hunts, and serious safety concerns have occurred.

9. **Who should I contact if I have further questions about this closure?**

Please contact the Office of Subsistence Management at (907) 786-3888, (800) 478-1456 or Subsistence@fws.gov. You can also contact the BLM Glennallen Field Office at (907) 822-3217.

Additional information on the Federal Subsistence Management Program may be found on the web at www.doi.gov/subsistence or by visiting www.facebook.com/subsistencealaska.

**Missing out on the latest Federal subsistence issues?** If you'd like to receive emails and notifications on the Federal Subsistence Management Program you may subscribe for regular updates by emailing fws-fsb-subsistence-request@lists.fws.gov.



# Federal Subsistence Board
# **News Release**

U.S. Fish and Wildlife Service
Bureau of Land Management
National Park Service
Bureau of Indian Affairs



Forest Service



-###-

1011 East Tudor Road MS-121 • Anchorage, Alaska 99503-6199 • subsistence@fws.gov • (800) 478-1456 / (907) 786-3888
This document has been cleared for public release #29407312020.
Case 3:20-cv-00195-SLG   Document 4-3   Filed 08/18/20   Page 57 Page 3 of 3

| From: | Roberts, Mark W (MVA) |
| --- | --- |
| To: | michael.s.walker@usda.gov |
| Subject: | COVID Subsistence Hunts due to food shortage |
| Date: | Monday, June 29, 2020 11:46:00 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Shane:

I can be your point of contact for this inquiry. We have received inquiries from multiple ranger districts in the state (more than 6) asking the same thing.
At this time, we are not aware of any substantial food shortage or food supply chain disruption in the State of Alaska due to COVID-19.

You can contact me with any questions,

Thank you,


Mark W Roberts
Alaska SEOC Operations Section Chief
2020 COVID-19 Response
2020_COVID-19@ak-prepared.com
SEOC: 907-428-7100

Alaska State Emergency Operations Center Manager
Alaska Division of Homeland Security and Emergency Management
Direct (907) 428-7016  Email: mark.roberts@alaska.gov  Web: **http://www.ready.alaska.gov**
SEOC (907) 428-7100    seoc@ak-prepared.com
Toll Free: (800) 478-2337
P.O. Box 5750
JBER, AK 99505-5750
===========================================================================

**From:** Walker, Michael S -FS <michael.s.walker@usda.gov>
**Sent:** Monday, June 29, 2020 11:33 AM
**To:** Fisher, Bryan J (MVA) <b.fisher@alaska.gov>
**Cc:** Shuler, Scot W -FS <scot.shuler@usda.gov>; Brigham, Delilah A -FS <delilah.brigham@usda.gov>
**Subject:** Federal Subsistence Board Special Action Request Update

Hello Mr. Fisher,

This is Shane Walker, the new U.S. Forest Service District Ranger in Ketchikan. Scot Shuler, the District Ranger on the Prince of Wales Island, and myself are delegated authority from the U.S. Federal Subsistence Board to respond to issue emergency special actions related to food security on National Forest System lands on the Prince of Wales and Ketchikan Misty Fjords

ranger districts.

The original emergency request was made in April by the Organized Village of Saxman. We have been working with President Lee Wallace to obtain answers to the Feeding Assessment Questions. As of this morning, President Wallace is preparing to send responses to the questions to you and cc Scot, Delilah Brigham, and myself. We are available to speak with you to coordinate further action. Thank-you.

Best,
Shane



**Shane Walker**
**District Ranger**

**Forest Service**
**Tongass National Forest**
**Ketchikan Misty Fjords Ranger District**

**p: 907-228-4100**
**c: 907-220-4634**
**f: 907-225-8738**
**michael.s.walker@usda.gov**

3031 Tongass Avenue
Ketchikan, AK 99901
www.fs.fed.us

**Caring for the land and serving people**

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

General Background:

In the State of Alaska's Unified Command for response to COVID-19, the Mass Care Group operates under the direction of the Emergency Services Branch Director, who serves under the Unified Command's Operations Section Chief. The Mass Care Group, in support of local communities, is responsible for statewide coordination of a variety of operations that support the public during disasters including sheltering, evacuation, pets, and feeding support. The Mass Care Group is comprised of numerous governmental, non-profit, and faith-based organizations who work collaboratively in focused taskforces. One of those taskforces is the Feeding Support Taskforce.

The Mass Care Group, and the Feeding Task Force specifically, is assigned by the Unified Command to coordinate state level response to food shortages due to the COVID-19 disaster. They were not directly addressing food supply challenges, such a ferry service disruption, that may have existed prior to the COVID-19 disaster.

1) What has been the Mass Care Group's process for determining if there are any food shortage issues that need to be addressed:

    a. The Mass Care Group has been in regular contact with local community emergency managers with a regular, weekly conference call, that began at the start of the disaster and has continued. On that weekly call, emergency managers from around the state are briefed on state operations and are provided an opportunity to raise concerns for their community that require statewide engagement and coordination. One of the issues covered on these weekly calls is feeding needs and food support.

    b. Throughout the disaster, the Mass Care Group has sent by email and/or phone call, and subsequently followed up by email, a local community assessment survey that inquired about multiple Mass Care issues and the community's needs. (Assessment attached) In addition, in order to assess current feeding needs, in July, the Mass Care Group sent out a specific feeding needs survey to communities. These surveys are follow-up with telephone communication, and based on this information, Mass Care operations are targeted where there is need. Local level feeding support is one of the actions taken by the Mass Care Group's Feeding taskforce based upon information gained through these surveys.

    c. The Alaska State Emergency Operations Center (SEOC) has broad experience supporting local communities in disasters and is able to receive telephone and email communications from communities every day. Early in the COVDI-19 disaster communities were made aware that SEOC was their contact for response during the disaster. When communities contact the SEOC with feeding support needs, SEOC engages the Mass Care Group to respond.

2) How the Mass Care Group has addressed any food shortage issues:

    a. First, commercial vendors, shipping, and transportation companies are contacted to verify if the shortage is through private-sector disruption and if so, how long the disruption is anticipated.

    b. Second, the Mass Care Group engages multiple non-profit, faith based, and volunteer agencies to address any shortages discovered. There have been multiple feeding support and local community food bank reinforcement missions conducted by the Alaska Food Bank,

Salvation Army, and other Mass Care Group partners during this disaster to multiple rural and urban communities.   (Response Examples attached).

3) Specific examples of the contact you've had with the federal agents on these special actions to date.
   a. Shane Walker – USFS District Ranger, Ketchikan June 29, 2020
   b. Bob Rebarchik – Refuge Manager, Koyukuk/Nowitna/Innoko National Wildlife Refuge Manager, June 25, 2020
   c. Petersburg District Ranger and in-season manager, Ted Sandhofer, under delegation of authority from the Federal Subsistence Board, is responding to a request from the Organized Village of Kake to provide Federal harvest opportunities of moose and deer for reasons of public safety and food security during the COVID-19 pandemic. ted.sandhofer@usda.gov
   d. Federal Subsistence special action related to food security in Cordova and Prince William Sound Steve Namitz District Ranger Forest Service Chugach National Forest; Cordova Ranger District 907-424-4747 steven.namitz@usda.gov
   e. BLM  about Office of Subsistence Management to validate requirements for food shortage / supply chain interruption for rural residents and Title VIII of ANILCA. Steve Wackowski Senior Adviser for Alaskan Affairs Department of the Interior 4230 University Drive, Suite 300 Anchorage, AK 99508 907-271-5485 – office 907-330-9304 – cell and Kenneth M. Lord Assistant Regional Solicitor DOI Office of the Regional Solicitor Anchorage, Alaska 907-271-4184 (direct) 907-271-4131 (main)
   f. In addition, citizen email on Copper River/ Prince William Sound: (below) related to a discussion of opening subsistence fishing or change places that could be fished.

"Mr. Fisher, I represent the Copper River/Prince William Sound Advisory Committee, and an emailing you as the state Mass Care Group representative. There is a federal action created by the Federal Subsistence Board and approved by the Secretary of Interior to create an emergency federal subsistence fishery this summer through emergency action from Covid 19. Authority through delegation has been given to the USFS District Ranger to create this fishery to last 60 days this summer. I have been informed that consultation with the State emergency management team which you are the leader must happen prior to this fishery being created. This advisory committee is asking that the State and your office to oppose this action. This emergency has disallowed public input from day one and a large portion of the community of Cordova has been against a creation of this subsistence fishery for many years. If you or your staff would like further clarification of our position or any details associated with this emergency action feel free to call or email me. I know you have much more worthy problems that consume your day but this is important to this community and would hope the State oppose this. "

Statement July 27, 2020

*Mark W Roberts*

Mark W Roberts
State of Alaska COVID-19 Response, Unified Command
Operations Section Chief
2020_COVID-19@ak-prepared.com
SEOC: 907-428-7100

Alaska State Emergency Operations Center Manager

Alaska Division of Homeland Security and Emergency Management
Direct (907) 428-7016  Email: mark.roberts@alaska.gov  Web: **http://www.ready.alaska.gov**
SEOC (907) 428-7100    seoc@ak-prepared.com
Toll Free: (800) 478-2337
P.O. Box 5750
JBER, AK 99505-5750