JEAN E. WILLIAMS
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-353-1389 || 202-305-0506 (fax)
paul.turcke@usdoj.gov

*Attorneys for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br>Department of Fish and Game,<br><br>     Plaintiff,<br><br> v.<br><br>The FEDERAL SUBSISTENCE BOARD,<br>*et al.*,<br><br>     Federal Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:20-cv-00195-SLG<br>) |

## FEDERAL DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## <u>INTRODUCTION</u>

Plaintiff State of Alaska, through its Department of Fish and Game, filed this

action on August 10, 2020, and at that time moved for a preliminary injunction. Plaintiff

alleges that the Federal Subsistence Board has violated the Open Meetings Act, 5 U.S.C.

§ 552b, the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3101-3233

*State of Alaska v. Federal Subsistence Board*         Case No. 20-cv-00195-SLG
DEFS.' OPPOSITION - MOTION FOR PRELIMINARY INJUNCTION       1

Case 3:20-cv-00195-SLG   Document 15   Filed 08/24/20   Page 1 of 22

("ANILCA"), and the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA").

The motion first contends the Board violated the Open Meetings Act in issuing a "delegation memo" addressing emergency special actions to address food security for reasons of public safety, and receiving a pending request for such action from Koyukuk Village, but the Board did not violate the Act and those claims present no justiciable controversy.

The motion principally targets one emergency special action hunt requested by the Organized Village of Kake. The Board acted within its authority, conducted reasonable inquiry, and approved the Kake hunt based upon substantial evidence. The hunt has concluded, resulting in the harvest of 2 bull moose and 5 antlered Sitka black-tailed deer, the meat of which was distributed amongst 135 households. Plaintiff has not demonstrated that it is likely to succeed on any of its legal challenges to this hunt. Nor does Plaintiff identify harm to its wildlife management interests, from this single hunt, constituting imminent, irreparable injury. Finally, the public interest and balance of equities favor of the Board's exercise of discretion, which in this single instance responded to a global pandemic to aid the subsistence needs of one rural community. Plaintiff has not met its heavy burden in seeking preliminary injunctive relief, therefore the Court should deny Plaintiff's motion.

## BACKGROUND

### I.     ANILCA's Subsistence Use Priority.

The Federal Subsistence Program in Alaska is authorized by Title VIII of ANILCA, which Congress enacted in 1980. Section 804 of ANILCA established a

priority for the taking of fish and wildlife for nonwasteful subsistence purposes by rural Alaskans on public lands in Alaska over the taking of those resources for other purposes. 16 U.S.C. § 3114. Congress's stated intent in establishing this rural priority was to preserve a way of life "essential to Native physical, economic, traditional and cultural existence and to non-Native physical, economic, traditional and social existence[.]" *Id.* § 3111(1). Although rural residents are afforded a priority for consumptive uses, Title VIII is also clear that Congress intended for the conservation of healthy populations of fish and wildlife to be the prime consideration in all decision making. *See, e.g.*, *id.* § 3125(1).

Title VIII of ANILCA gave the State of Alaska the opportunity to implement the rural subsistence priority by enacting laws of general applicability consistent with ANILCA. 16 U.S.C. § 3115(d). The State did so until 1989, when the Alaska Supreme Court struck down the rural preference of the State's subsistence law as contrary to several provisions in the Alaska State constitution, including one stating that "[w]herever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use." *McDowell v. State*, 785 P.2d 1, 5 (Alaska 1989). With that ruling and without subsequent change to Alaska law, State implementation consistent with ANILCA was no longer an option under State law at that time. The Secretary of the Interior, with the concurrence of the Secretary of Agriculture, established the Federal Subsistence Board in 1992 and delegated to it their statutory authority under Title VIII to administer the rural subsistence use priority. 50 C.F.R. § 100.10(a).

The Board is comprised of a Chair and two public members, all three of whom are

*State of Alaska v. Federal Subsistence Board*
Defs.' Opposition - Motion for Preliminary injunction

Case No. 20-cv-00195-SLG
3

rural residents of Alaska, and the State or Regional Directors of the Fish and Wildlife

Service, National Park Service, Bureau of Indian Affairs, and Bureau of Land

Management, as well as the USDA Alaska Regional Forester.  *Id.* § 100.10(b).  All three

non-federal members serve as special government employees. The Board's powers and

duties include authority to: issue regulations for the management of subsistence taking

and uses on public lands; ensure that the taking on public lands of fish and wildlife for

nonwasteful subsistence uses is accorded a priority over such taking for other purposes;

restrict the taking of fish and wildlife for nonsubsistence uses when necessary for

conservation of healthy populations, continuation of subsistence uses, or other specified

reasons; and, restrict or eliminate taking of fish and wildlife on public lands.  *Id.* §

100.10(d)(4)(i), (v)-(vi), (ix).  This framework is designed to facilitate efficient and

timely operations as the Board's duties necessitate, such as by re-delegating certain

authorities, where appropriate, to agency field officials on individual units or relating to

specific hunts or fisheries.  *Id.* § 100.10(d)(6).

## II.   Temporary Delegation to Provide COVID-Related Subsistence Opportunities.

On April 9, 2020, in response to concerns raised by remote Alaska communities

over food security and unmet nutritional needs during the COVID-19 crisis, the Board

voted to authorize a process for sending letters of delegation to certain agency field

managers.  Pl.'s Mem. in Supp. of Mot. for TRO & Prelim. Inj. ("Pl.'s Mem.") Ex. 1 at 3,

ECF No. 4-3.[1]  This followed "discussions with FEMA, the Alaska Emergency

Operations Center (EOC), Alaska Department of Fish and Game (ADFG), subsistence

users, and other stakeholders[.]"  *Id.* at 2.  Letters were sent outlining a process by which

local land managers might open, through reliance on local knowledge and on an

expedited basis, subsistence hunting and fishing opportunities on public lands in response

to any confirmed COVID-related emergency situation relating to food security that rises

to such a level that it constitutes a threat to public safety.  Pl.'s Mem. Ex. 2 at 5-36; Decl.

of Lisa Maas ¶ 4 ("Maas Decl.") (Exhibit 1 hereto).

The Board took this action after receiving public testimony, written comments,

and multiple proposals for relief indicating that certain food supply lines have been

interrupted to such a degree that a number of remote communities were facing the

prospect of severe shortages of protein staples such as meat and eggs.  Pl.'s Mem. Ex. 1,

at 1-2.  These interruptions developed due to discontinued cargo flights, the shutdown of

the Alaska Ferry System, and the need of many communities without health care facilities

to quarantine themselves to prevent the introduction of the virus into their populations.

*Id.*

The letters of delegation include specific guidelines and limitations that emphasize

---

[1]     Plaintiff's Exhibits submitted sequentially at ECF No. 4-3 are cited by the ECF
page number in this brief.  Defendants do not concede that all of the exhibits would
properly be included in the administrative record, but recognize the Court may exercise
discretion to consider certain materials given the "more relaxed rules of evidence for
preliminary injunction proceedings[.]"  *Shell Offshore, Inc. v. Greenpeace, Inc*., No.
3:15-cv-054 SLG 2015 WL 3508068, at *2 (D. Alaska Jun. 4, 2015).

the need for judicious decision making before any action is taken.  *See, e.g.*, Pl.'s Mem. Ex. 2, at 21-24.  No action is to be taken if ADFG determines that the requested hunting or fishing opportunity threatens the viability of the fish or wildlife population or in the absence of confirmation by the State of Alaska Unified Command Mass Care Group (Mass Care Group) that a food shortage or supply disruption poses a demonstrable and imminent threat to public safety.  *Id*. at 22.  Any emergency openings for hunting and fishing may not remain in effect beyond the time that the threat to public safety has passed and, in any event, cannot exceed 60 days in duration.  *Id*.  Before implementing a hunting or fishing opportunity, the land manager is required to obtain findings and confirmation from ADFG and the Mass Care Group.  *Id*. at 23.  Should the land manager fail to obtain the requisite findings and confirmation the requested action must be referred to the Board for consideration.  *Id*. at 24.

### III.  Approval of an Emergency Hunt by the Organized Village of Kake.

The Petersburg District Ranger received a letter dated June 4, 2020, from the President of the Organized Village of Kake.  Pl.'s Mem. Ex. 3, at 37.  The letter requested an "[e]mergency moose and deer hunt" to "aid needy members and protect the general Welfare and security of the Village."  *Id*.  District Ranger Ted Sandhofer proceeded in accordance with his delegation letter, seeking concurrence from ADFG on June 4, 2020.  Pl.'s Mem. Ex. 4, at 38.   On the same date he communicated with the Mass Care Group, which "could not confirm any food shortage or supply chain disruption in Kake" prompting Ranger Sandhofer, by letter dated June 12, 2020, to "defer the

special action request to the Board." *Id*.; Maas Decl. ¶¶ 7-8.

On June 24, 2020, the Board approved Wildlife Special Action 19-14, which authorized the community of Kake short-term emergency moose and deer season on Kupreanof Island in Southeast Alaska. Maas Decl. ¶¶ 9-12; Pl.'s Mem. Ex. 7, at 46-47. The Board found the action appropriate "for reasons of public safety related to food security concerns in [the remote village] due to intermittent and unreliable food deliveries caused by the COVID-19 pandemic and [very] limited ferry service" based, in part, on testimony provided by the requester. Pl.'s Mem. Ex. 5, at 40-43; Pl.'s Mem. Ex. 7, at 47.

Before finalizing this action, the Board took into consideration that no conservation concern existed for the growing moose and deer populations in the area and that its action would not affect the regular State or Federal hunts. *Id*. ADFG was advised of the request, but apparently did not provide input. Pl.'s Mem. Ex. 4, at 38. The Board considered email communication between the District Ranger and the Mass Care Group, indicating that the Group "could not confirm any food shortage or supply chain disruption in Kake." Maas Decl. ¶ 7-8. The Board heard public testimony from the Kake tribal president that the village had only one ferry delivery in the previous six months, that the food available in the local store was extremely expensive and of questionable quality, and that there was an immediate need for a supply of healthy food to help elders and others fight the virus if it should make its way into the remote village, which has no medical facilities. Pl.'s Mem. Ex. 5, at 40-41. The Board deliberated, and some members reached a different assessment than the Mass Care Group "and hoped that in the

*State of Alaska v. Federal Subsistence Board*                                  Case No. 20-cv-00195-SLG
DEFS.' OPPOSITION - MOTION FOR PRELIMINARY INJUNCTION                                      7

Case 3:20-cv-00195-SLG   Document 15   Filed 08/24/20   Page 7 of 22

future, better understanding of the Mass Care Group's information-gathering process could be obtained. They also reiterated their obligations under Title VIII to provide for a rural subsistence priority and to take action to address food shortages and improve food security in the community." Maas Decl. ¶ 11.

The Board approved a season of up to 60 days in duration to be administered by the USDA Forest Service's Petersburg District Ranger. In response, the District Ranger issued a permit authorizing a 30-day-long community harvest of up to 2 antlered bull moose and 5 male Sitka black-tailed deer. *Id*. ¶ 12. The District Ranger also confirmed that the harvest would be shared with all village residents in need, regardless of tribal status or race. Ted Sandhofer e-mail (Exhibit 4 hereto). The hunt ended on July 24, with the meat having been distributed to "135 households in the village." Decl. of Theodore Matuskowitz ¶ 12 ("Matuskowitz Decl.") (Exhibit 2 hereto). The Regional Forester stated to the Board in an e-mail on August 12, 2020, that the Petersburg District Ranger does not intend to issue any additional harvest permits under his delegated authority to Kake. Maas Decl. ¶ 13.

This action was filed on August 10, 2020. On August 17, 2020, the Board was directed to "temporarily pause its operations in light of the State's complaint." Decl. of Stephen Wackowski ¶ 2 (Exhibit 3 hereto). Such direction "will effectively prevent the Board from making any additional decisions on any currently pending or future requests by rural Alaskans for COVID-related emergency subsistence hunting or fishing authorizations . . . at least until resolution of the State's Motion for a Preliminary

Injunction." *Id.*

## LEGAL STANDARDS

### I.      A Preliminary Injunction is an Extraordinary Remedy.

A plaintiff seeking a preliminary injunction must show: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the preliminary injunction is not granted; (3) the balance of equities tips in its favor; and (4) an injunction is in the public's interest." *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  Alternatively, the Ninth Circuit has found "'serious questions going to the merits' [rather than a likelihood of success on the merits] and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Under either test, the plaintiff must "establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction[,]" *id.* at 1131, and a deficiency in any one of the required elements precludes extraordinary relief.  *Winter*, 555 U.S. at 24. Because a "preliminary injunction is an extraordinary and drastic remedy," *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997), the party seeking such an injunction must make "a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22.

### II.      Administrative Procedure Act Review of Agency Action.

The Court's assessment of the merits of Plaintiff's claims is governed by the APA, 5 U.S.C. § 706(2). *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205-06 (9th Cir. 2004).

Under the APA, judicial review of federal agency actions is highly deferential. *Lands Council v. McNair*, 537 F.3d 981, 992-94 (9th Cir. 2008), *overruled in part on other grounds*, *Winter*, 555 U.S. at 22. Agency decisions may be overturned only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002) (citation omitted). An agency action will be upheld if the agency has considered the relevant factors and articulated a rational connection between the facts found and choice made. *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 105 (1983). The court may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 29-30 (1983).

## ARGUMENT

### I.   Plaintiff is Not Likely to Succeed on the Merits.

The claims advanced by the motion are significantly flawed, even raising jurisdictional concerns. Plaintiff fails to demonstrate the requisite likelihood of success on the merits to justify preliminary injunctive relief.

### A.   Defendants did Not Violate the Open Meetings Act.

Plaintiff cannot succeed on the merits under the Open Meetings Act, 5 U.S.C. § 552b. Plaintiff claims the Board violated that law, also known as the Government in the Sunshine Act, by effectuating the "delegation memo" on April 9, 2020, and by acting on WSA 19-15 (Koyukuk Village request), and that the Court, upon finding violations of the Act, can impose remedies to "include injunctive relief to void any action taken, and an award of attorney's fees." Pl.'s Mem. 11, ECF No. 4-1.

*State of Alaska v. Federal Subsistence Board*
Defs.' Opposition - Motion for Preliminary injunction

Case No. 20-cv-00195-SLG
10

The duties of the Board are prescribed by validly adopted regulations, set forth in 50 C.F.R. § 100.l0(d)(4). The regulations do not mandate that a public meeting as defined by the Sunshine Act precede every action within the broad range of the Board's duties. The Board is, in fact, given authority to establish rules and procedures for its own operations. *Id.* § 100.10(d)(4)(xiv). Moreover, the Sunshine Act claim presents no live controversy, as the Board has not approved the Koyukuk Village request and the Kake hunt was not approved pursuant to the allegedly illegal delegation to the Petersburg District Ranger, but through the Board's own action during its meeting on June 22, 2020. Pl.'s Mem. Ex. 7, at 46-47; Maas Decl. ¶¶ 9-12.

Finally, contrary to Plaintiff's contention, the Sunshine Act, 5 U.S.C. § 552b, does not independently authorize an injunction voiding actions taken at an allegedly unlawful meeting. Jurisdiction under the Act is limited:

> Nothing in this section authorizes any Federal Court having jurisdiction solely on the basis of paragraph (1) to set aside, enjoin, or invalidate any agency action (other than an action to close a meeting or to withhold information under this section) taken or discussed at any agency meeting out of which the violation of this section arose.

5 U.S.C. § 552b(h)(2).[2] As such, Plaintiff cannot obtain injunctive relief solely for a violation of the Sunshine Act, nor does the Act in any way bypass the other requirements for preliminary injunctive relief. Plaintiff has not presented any plausible argument by which it might succeed on its claims under the Sunshine Act.

---

[2]     Plaintiff incorrectly cites to "5 U.S.C. § 552(h)." Pl.'s Mem. 11 n.44. Plaintiff apparently intended to cite to 5 U.S.C. § 552b(h)(1) which does provide for injunctive relief, subject to the limitation of (h)(2).

B.       The Kake Hunt is Over, Precluding Redressability for Alleged Harms.

The challenged hunt on Kupreanof Island for 2 moose and 5 deer has ended.  Yet Plaintiff asks the Court for an order "prohibiting the defendants from . . . opening a hunt for deer and moose near the Organized Village of Kake to only tribal members" (Pl.'s Mem. 1)  and "vacating the moose and deer hunt near Kake" (Pl.'s Mem. 19).  The Court cannot, as a practical matter, issue an injunction that would redress any injury Plaintiff allegedly suffered from the Kake hunt.

The indisputable fact that the Kake hunt has concluded implicates jurisdictional doctrines including redressability, mootness and standing. Any action in federal court must at all times satisfy Article III jurisdictional requirements.  *Perry v. Schwarzenegger*, 628 F.3d 1191, 1195 (9th Cir. 2011).  To maintain standing, a litigant must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citation omitted).  Mootness addresses whether a sufficient live case or controversy still exists, and is sometimes described as "the doctrine of standing set in a time frame[.]"  *Id*. at 189-90.  These related concerns further intersect here in the question of redressability.  A litigant must show that it is "likely, as opposed to merely speculative" that she has suffered an injury that can be "redressed by a favorable decision."  *Id.* at 180-81.

This case is similar to *Fund for Animals v. Mainella*, 335 F. Supp. 2d 19 (D.D.C. 2004), which was declared moot and dismissed following completion of the challenged hunt for New Jersey black bear. The "Court agree[d] with both parties that it cannot grant the plaintiffs relief with respect to the 2003 hunting season, as it has already expired." *Id*. at 23. The court rejected plaintiffs' invitation to grant relief regarding some hypothetical future season, ruling "any relief that the plaintiff is seeking for future bear hunting seasons, should the State authorize one, would not escape review." *Id*. at 24; *see also Ctr. for Food Safety v. Vilsack*, No. C10-4038 JSW, 2011 WL 13152739, at *2-3 (N.D. Cal. Apr. 14, 2011) (declining to apply "capable of repetition, yet evading review" exception).

Mootness "often involve[s] 'highly individualistic . . . appraisal of the facts of each case' to determine if the doctrine applies." *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 856 (9th Cir. 1999) (citation omitted). The key principle in cases where the repetition/evasion exception applies is that a court can fashion prospective relief to address continuing effects of the completed action. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1032 (9th Cir. 2020) (requested relief "could remedy the past allegedly arbitrary and capricious authorizations by halting grazing"); *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002). The Kake hunt stands in stark contrast, as a discrete response on a particularized record to address one remote community's needs during a global pandemic. Defendants have not authorized similar hunts, and there is no basis in the present record for finding the Kake hunt creates

*State of Alaska v. Federal Subsistence Board*
Defs.' Opposition - Motion for Preliminary injunction

Case No. 20-cv-00195-SLG
13

Case 3:20-cv-00195-SLG   Document 15   Filed 08/24/20   Page 13 of 22

a template or is in any way predictive of the Board's response to a different request.

The immediate task is to evaluate the motion for preliminary injunction, and Defendants are not moving at this time to dismiss the entire case. Whether it becomes necessary to subsequently evaluate more broadly framed theories or requests for relief, Plaintiff's entire merits argument on the ANILCA and APA claims focuses on the Kake hunt. Pl.'s Mem. 12-14 (entitled "decision to open a hunt in Kake violated Title VIII of ANILCA"), 15 (the "Board's decision to open a 60-day hunt for deer and moose to Kake tribal residents is arbitrary, capricious, and not in accordance with law"). As a result, the motion for preliminary injunction lacks a basis in any concrete, actual controversy allegedly suffered by Plaintiff. The absence of such a live controversy forecloses the requisite finding on likelihood of success to support a preliminary injunction.

C.    The Kake Hunt Did Not Violate ANILCA.

The motion presents a three-pronged argument challenging the Kake hunt under ANILCA, arguing the Board lacks authority to open any hunt, that it was illegal to allow hunting solely by tribal members, and that the hunt illegally infringed upon Plaintiff's authority to manage wildlife and hunting. Pl.'s Mem.12-14. The hunt is over and Plaintiff therefore improperly seeks an advisory opinion, but even if the Court were to consider them, Plaintiff does not raise serious questions in these arguments, let alone demonstrate that any of them are likely to succeed.

Through ANILCA Congress exercised "constitutional authority under the property clause and the commerce clause to protect and provide the opportunity for

continued subsistence uses on the public lands[.]" 16 U.S.C. § 3111(4). "ANILCA, read as a whole, clearly expresses Congress's intent to create <u>a federal regulatory scheme</u> 'to protect the resources related to subsistence needs' and 'to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so.'" *John v. United States*, 247 F.3d 1032, 1036 (9th Cir. 2001) (en banc) (Tallman, J., concurring) (quoting 16 U.S.C. § 3101(b)-(c)) (emphasis added). More than a factor to be merely considered in a complex balancing of multiple uses, Title VIII of ANILCA mandates "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes." 16 U.S.C. § 3114. The duty to administer these directives resides with the Secretary of the Interior, and the Board's interpretation of ANILCA is entitled to deference. *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191-92 (9th Cir. 2000); *United States v. Alexander*, 938 F.2d 942, 946 n.6 (9th Cir. 1991) (within realm of ANILCA, a reviewing court "owe[s] the state regulatory agency's interpretation no deference").

These principles cannot be reconciled with Plaintiff's contention that ANILCA only "authorizes the Federal Subsistence Board to close or restrict hunting opportunities on federal public lands for stated purposes and considering specific information" but does "not authorize opening a hunt[.]" Pl.'s Mem. 12. It is hard to ascribe meaning to the statutory command to prioritize subsistence use without recognizing the ability to provide for such use. Plaintiff's attempt to restrict the Board's authority ignores this affirmative command, relying instead on Section 815 (16 U.S.C. § 3125) entitled "Limitations and

savings clauses" and Section 816 (16 U.S.C. § 3126) entitled "Closure to subsistence uses[.]"  This approach contorts statutory intent – it is little wonder that power to authorize hunting is not explicated in that part of Title VIII addressing the circumstances in which hunting can be restricted.  The case law reflects the practical reality that the Board regularly creates, modifies, or imposes conditions on subsistence hunting opportunity.  *Ninilchik*, 227 F.3d at 1195 (Unit 15 moose hunting, including season reserved solely for subsistence hunting); *Ninilchik Traditional Council v. Towarak*, No. 3:15-cv-205 JWS, 2016 WL 1559122, at *1 (D. Alaska Apr. 17, 2016) (request to place gillnets on Kenai and Kasilof Rivers).  In fact, the Board contends with the prospect of challenges by subsistence users for not opening enough hunting or otherwise failing to sufficiently effectuate the statutory priority.  *Ninilchik*, 227 F.3d at 1195 (upholding validity of ten day "advance season" but finding that two days failed to "qualify as a priority" for subsistence hunting); *Native Vill. of Quinhagak v. United States*, 35 F.3d 388, 389 (9th Cir. 1994) (challenging Board's refusal to provide for subsistence harvest of rainbow trout in contravention of State instituted closure on harvest).

The statutory language, common sense, and past practice help clarify the Board's broad authority in administering ANILCA's subsistence use priority, but the implementing regulations eliminate any doubt over the Board's power to authorize the Kake hunt:

> (a)  Emergency special actions.  In an emergency situation, if necessary to ensure the continued viability of a fish or wildlife population, to continue subsistence uses of fish or wildlife, or for public safety reasons, the Board <u>may immediately open or close public lands for the taking of fish and wildlife</u> for

subsistence uses, or modify the requirements for take for subsistence uses, or close public lands to take for nonsubsistence uses of fish and wildlife, or restrict the requirements for take for nonsubsistence uses.

50 C.F.R. § 100.19(a) (emphasis added).  An emergency action may not exceed 60 days.

*Id*. § (a)(2).  Plaintiff is presumably aware of this regulation, as it is the cited basis for the

Board's approval of the hunt.  Pl.'s Mem. Ex. 7, at 46-47; *see also* Compl. ¶ 73, ECF No.

1.  Should Plaintiff improperly attempt to argue for the first time in its reply that the

regulation exceeds statutory authority, any such challenge is time barred.  *See Wind River*

*Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991); 75 Fed. Reg. 63,088,

63,089 (Oct. 14, 2010) (Final Rule adopting regulation).   Plaintiff was certainly aware of

the relevant change to the regulation in 2010, but did not object to the above-underlined

provision.  Alaska Comments (dated Jan. 12, 2010) (Exhibit 5 hereto).  Plaintiff has been

aware of the exercise of this authority by the Board since at least 2012.  Kuskokwim

Emergency Special Action (dated Aug. 27, 2012) (Exhibit 6 hereto).

Plaintiff fails to explain why it was illegal to authorize community harvest "only

for tribal members of the Organized Village of Kake."  Pl.'s Mem. 14.  While the action

at issue delegated the authority to the Village for administering the community harvest,

the Board has previously engaged in the practice of accepting proposals for management

of harvest opportunities, including by tribal organizations.  *See Towarak*, 2016 WL

1559122, at *2 (involving proposal whereby the Traditional Council would operate "two

community subsistence gillnets").  Plaintiff itself recognizes the practice it now

challenges, allowing designated hunters "who may possess particular expertise in hunting

to harvest wildlife resources on behalf of the members of the community or group." *See*

http://www.adfg.alaska.gov/static/license/huntlicense/pdfs/csh_caribou_2020_2021.pdf

at 4 (last visited Aug. 24, 2020).

Plaintiff's final ANILCA argument must also fail, that the Kake hunt illegally

infringed upon Plaintiff's "authority as the primary manager of fish and wildlife,

including on federal public lands, except as provided in Title VIII of ANILCA." Pl.'s

Mem. 14. As demonstrated above, the Board acted well within its authority under Title

VIII and the regulations in approving the Kake hunt. Plaintiff's generalized assertion

falls far short of demonstrating how the harvest of 2 moose and 5 deer have had any

effect on management of those species on Kupreanof Island or surrounding habitats.

More fundamentally, the Board's approval of a limited hunt for subsistence use has

neither a legal nor practical effect on Plaintiff's management of wildlife for non-

subsistence use. "ANILCA's limitation provision does not prevent the [Board] from

regulating subsistence use simply because a collateral effect of the regulation might cause

a separate regulatory body to place restrictions on nonsubsistence use. It only prohibits

the agency itself from limiting nonsubsistence use." *Alaska v. Fed. Subsistence Bd.*, 544

F.3d 1089, 1100 (9th Cir. 2008). Plaintiff has not demonstrated its ANILCA challenges

to the Kake hunt are likely to succeed, or even raise serious questions on the merits.

      D.      <u>Plaintiff Cannot Bring a Standalone APA Claim</u>.

Plaintiff suggests the Court could find independently under the APA that the

Kake hunt was, in certain respects, "arbitrary, capricious, an abuse of discretion, [and]

not in accordance with law." Pl.'s Mem. 14-15. However, the APA does not provide an independent basis for jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). Arbitrary or capricious review may not be conducted under the APA independent of another statute that provides substantive law for a court to apply. *See Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996). For this reason, any attempt by Plaintiff to bring a standalone APA claim must fail.

## II. Plaintiff has Failed to Demonstrate Imminent, Irreparable Harm.

To obtain a preliminary injunction, Plaintiff must show a "likelihood of irreparable injury." *Winter*, 555 U.S. at 21. Plaintiff bears the burden of "*demonstrat[ing]* immediate threatened injury[,]" and mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted). Plaintiff has not met this burden.

Plaintiff asserts harms associated with the Kake hunt, claiming that the Federal Office of Subsistence Management "refused to share" requested harvest data and that the harvest of 2 moose and 5 deer have irreparably harmed its ability to discharge its wildlife management responsibilities. Pl.'s Mem.15-16. These claims are legally deficient, and mischaracterize the exchange. Plaintiff did request certain harvest information, some of which was unprecedented and could not be provided. Matuskowitz Decl. ¶¶ 3-9. Plaintiff was provided with customary harvest data including "information on the species and numbers of animals harvested, the location of the harvest, the mode of transportation,

the number of days hunted, and the antler width for moose." *Id.* ¶ 10.

Plaintiff's concerns do not implicate imminent injury, but one past hunt. Their allegations are not plausibly connected to the particularized conduct at issue, but generalized wildlife management concerns. However important those concerns may be, they do not constitute irreparable harm that could support issuance of a preliminary injunction.

### III. The Public Interest and Balance of Equities Weigh in Defendants' Favor.

Even if the allegations were sufficient to satisfy the irreparable harm requirement, Plaintiff must also prove that a preliminary injunction would serve the public interest. *eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006). When the government is a party, the analyses of the public interest and balance of equities merge, *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted), and here the strong public interests motivating the Board's actions distinctly outweigh Plaintiff's allegations of irreparable harm.

Plaintiff restates generalized concerns about its wildlife management duties, posits incorrect fears of an inability to obtain harvest data, asks the Court to elevate the Mass Care Group's view above the Board's as to how best serve subsistence use communities, and seeks to impose novel requirements on the Board under the Open Meetings Act. Pl.'s Mem.17-18. Plaintiff focuses on the Kake hunt, where the Board considered available information from individuals, agencies including the Mass Care Group, and other sources. The Board conducted meaningful review and deliberation, and

reached a conclusion supported by substantial evidence. More fundamentally, Plaintiff's assertions focus on a single past event, not legitimate interests that can be rationally connected to an ongoing or imminent, concrete controversy.

The Board's decision to approve the Kake hunt was a reasoned, if not compassionate, response to a unique request from one isolated community for emergency assistance during a global pandemic. Under the unique facts of this case, Plaintiff has the balancing precisely backwards. Given the "clear congressional directive to protect the cultural aspects of subsistence living" and information before the Board "[a]ll of the equities support the Village[']s position." *Quinhagak*, 35 F.3d at 394-95. Plaintiff has not shown how the Board's approval of the Kake hunt remotely interferes with the ability of any Alaskan (or visitor) who plans to be, or already is, afield in pursuit of moose or deer this season, on Kupreanof Island or elsewhere. Plaintiff fails to clear the high bar necessary to obtain a preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion for preliminary injunction.

DATED: August 24, 2020.

JEAN E. WILLIAMS
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Div.

*/s/ Paul A. Turcke*
PAUL A. TURCKE

Case 3:20-cv-00195-SLG   Document 15   Filed 08/24/20   Page 21 of 22

Idaho Bar No. 4759
Trial Attorney
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-353-1389 || 202-305-0506 (fax)
paul.turcke@usdoj.gov

*Counsel for Federal Defendants*


## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this memorandum complies with the type-volume limitation of Local Civil Rule 7.4(a)(2) because this memorandum contains 5,446 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4). This memorandum has been prepared in a proportionately spaced typeface, Times New Roman 13-point font, and I obtained the word count using Microsoft Word 2016 (16.0.5044.1000) MSO (16.0.5032.1000) 32-bit.

   /s/ *Paul A. Turcke*
   PAUL A. TURCKE


## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

   /s/ *Paul A. Turcke*
   PAUL A. TURCKE