JEAN E. WILLIAMS
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-353-1389 || 202-305-0506 (fax)
paul.turcke@usdoj.gov

*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, Department of Fish and Game,       Plaintiff,   v. The FEDERAL SUBSISTENCE BOARD, *et al.*,       Federal Defendants. | Case No. 3:20-cv-00195-SLG |

## FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (UNIT 13)

## <u>INTRODUCTION</u>

Plaintiff State of Alaska, through its Department of Fish and Game, filed this

action on August 10, 2020, and at that time filed two motions for preliminary injunction.

Plaintiff alleges that the Federal Subsistence Board has violated various laws including

the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3101-3233

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 1 of 23

("ANILCA"), and the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"). This opposition addresses the first of those motions, seeking to prohibit implementation of the Board's temporary restriction on moose and caribou hunting by non-Federally qualified users on certain Federal land. *See* ECF No. 3.

Plaintiff emphasizes the lack of a conservation basis for the action and the Board's rejection in 2019 of a proposal to adopt restrictions throughout Unit 13. However, the Board made clear that its rationale was not related to conservation concerns, but the maintenance of subsistence use opportunity and public safety concerns as a result of overcrowding and user conflict along the Richardson Highway, which facilitates access for non-local hunters. In consideration of these and other factors, the Office of Subsistence Management recommended approval of a modified proposal, which would cover only subunits 13A and 13B rather than all of Unit 13. These areas were selected because they contain a very small percentage of Federal lands which would be affected by the closure, while including many of the areas along the Highway experiencing the greatest incidence of overcrowding, hunter competition, and conflict. Six members voted in favor and one member voted in opposition, thus the Board approved the modified proposal. The Board considered a meaningful record, its deliberations reflect a cogent awareness of relevant factors, and the Board made a reasoned decision to take a measured step toward addressing a long-running concern while providing for continuing Federally-qualified subsistence use.

Plaintiff has not demonstrated a sufficient likelihood of success on the merits of its

challenges to the action. Nor does Plaintiff articulate a sufficient nexus between the limited closure of subunits 13A and 13B and alleged harms to its broad wildlife management interests to constitute imminent, irreparable injury. Finally, the public interest and balance of equities favor the Board's exercise of discretion, which is a measured step to address user conflict and safety concerns through a much narrower closure than requested by the proponent. Plaintiff has not met its heavy burden in seeking preliminary injunctive relief, therefore the Court should deny Plaintiff's motion.

## BACKGROUND

### I.  ANILCA's Statutory Scheme.

The Federal Subsistence Program in Alaska is authorized by Title VIII of ANILCA, which Congress enacted in 1980. Section 804 of ANILCA established a priority for the taking of fish and wildlife for nonwasteful subsistence purposes by rural Alaskans on <u>public lands</u> in Alaska over the taking of those resources for other purposes. 16 U.S.C. § 3114 (emphasis added). The phrase "public lands" is defined in Title I of ANILCA to mean "land situated in Alaska which, after [the date of enactment of this Act], are Federal lands," except:

> (A)      land selections of the State of Alaska which have been tentatively approved or validly selected under the Alaska Statehood Act and lands which have been confirmed to, validly selected by, or granted to the Territory of Alaska or the State under any other provision of Federal law;

> (B)      land selections of a Native Corporation made under the Alaska Native Claims Settlement Act which have not been conveyed to a Native Corporation, unless any such selection is determined to be invalid or is relinquished; and

> (C)      lands referred to in section 19(b) of the Alaska Native Claims

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
3

Settlement Act [involving land selections by Village Corporations]. *Id*. § 3102(3). The term "Federal land," in turn, is defined to mean "lands [to which the title] is in the United States after [the date of enactment of the Act.]" *Id*. § 3102(2).

Congress's stated intent in establishing this rural priority was to preserve a way of life "essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence[.]" *Id*. § 3111(1). Although rural residents are afforded a priority for consumptive uses, Title VIII is also clear that Congress intended for the conservation of healthy populations of fish and wildlife to be the prime consideration in all decision making. *See, e.g.*, *id*. § 3125(1).

Title VIII of ANILCA gave the State of Alaska the opportunity to implement the rural subsistence priority by enacting laws of general applicability consistent with ANILCA. *Id*. § 3115(d). The State did so until 1989, when the Alaska Supreme Court struck down the rural preference of the State's subsistence law as contrary to several provisions in the Alaska State constitution. *See McDowell v. State*, 785 P.2d 1, 11 (Alaska 1989). With that ruling and without subsequent change to Alaska law, State implementation consistent with ANILCA was no longer an option under State law at that time. The Secretary of the Interior, with the concurrence of the Secretary of Agriculture, established the Federal Subsistence Board in 1992 and delegated to it their statutory authority under Title VIII to administer the rural subsistence use priority. 50 C.F.R. § 100.10(a).

The statute creates a balance between the rural subsistence priority and

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
4

management of nonsubsistence uses of fish and wildlife, and the Board's authority under

ANILCA Section 815 provides:

> nothing in [Title VIII] shall be construed as . . . (3) authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands (other than national parks and park monuments) unless necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in section 3126 of this title, to continue subsistence uses of such populations, or pursuant to other applicable law[.]

16 U.S.C. § 3125(3). Section 816 provides, in part, that "nothing in this subchapter is

intended to enlarge or diminish the authority of the Secretary to designate areas where,

and establish periods when, no taking of fish and wildlife shall be permitted on the public

lands for reasons of public safety, administration, or to assure the continued viability of a

particular fish or wildlife population." *Id*. § 3126(b).

Through statutory authority and subsequent rule-making, the Board's powers

and duties include authority to: issue regulations for the management of subsistence

taking and uses on public lands; ensure that the taking on public lands of fish and wildlife

for nonwasteful subsistence uses is accorded a priority over such taking for other

purposes; restrict the taking of fish and wildlife for nonsubsistence uses when necessary

for conservation of healthy populations, continuation of subsistence uses, or other

specified reasons; and, restrict or eliminate taking of fish and wildlife on public lands.

50 U.S.C. § 100.10(d)(4)(i), (v)-(vi), (ix).

Particularly relevant here is the Board's authority to take "special actions" as

prescribed by 50 C.F.R. §100.19. This includes the authority to consider and adopt

temporary actions:

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
5

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 5 of 23

(b) Temporary special actions. After adequate notice and public hearing, the Board may temporarily close or open public lands for the taking of fish and wildlife for subsistence uses, or modify the requirements for subsistence take, or close public lands for the taking of fish and wildlife for nonsubsistence uses, or restrict take for nonsubsistence uses.

*Id*. § (b). The regulation further clarifies:

The Board may make such temporary changes only after it determines that the proposed temporary change will not interfere with the conservation of healthy fish and wildlife populations, will not be detrimental to the long-term subsistence use of fish or wildlife resources, and is not an unnecessary restriction on nonsubsistence users. The Board may also reopen public lands to nonsubsistence uses if new information or changed conditions indicate that the closure is no longer warranted.

*Id*. § (b)(1). Any such action "will be confined to the minimum time period or harvest limit determined by the Board to be necessary under the circumstances. In any event, a temporary opening or closure will not extend longer than the end of the current regulatory cycle." *Id*. § (b)(2).

## II.     Board Temporary Action to Close Parts of Subunits 13A and 13B.

The motion focuses on the Board's action in Temporary Wildlife Special Action 20-03 ("WSA 20-03"), which involved a proposal to close the entirety of Game Management Unit 13 to moose and caribou hunting by non-Federally qualified users for the 2020-2021 season. Proper framing of the action is essential to its analysis. The Board adopted restrictions greatly reduced in scope from the request, resulting in a closure that "only applies to the Federal public lands in Units 13A and 13B that are open to Federal subsistence hunting." News Release (dated July 31, 2020) at 1 (Exhibit B

hereto).[1]  The physical area affected by the closure is depicted on the associated map, and consists of the orange shaded areas in subunits 13A and 13B, in the upper center portion of the map.  *Id*. at 3.

The Board formally considered the proposal during its July 16, 2020, proceedings, which occurred telephonically and were transcribed by a court reporting firm.  *See* Teleconference Tr. Excerpts ("Tr.") (Exhibit A hereto).[2]  Unit 13 is located in central Alaska and is popular with hunters from non-rural areas in Alaska because it is relatively accessible by road, and is managed for nonsubsistence hunting as well as the State-managed Tier 1 Nelchina Caribou subsistence hunt, through which permits were issued to nearly 7,000 heads of households for the 2020-21 season.  *See* http://www.adfg.alaska.gov/static/applications/web/nocache/license/huntlicense/pdfs/2020-2021_subsistence_supplement.pdf8CA7F952835E42D735B4E72EE58CD67B/2020-2021_subsistence_supplement.pdf (last visited Aug. 26, 2020).

---

[1]    In citing to this document, Plaintiff refers to "Exhibit 2."  Pl.'s Mem. in Supp. of Mot. for TRO & Prelim. Inj. ("Pl.'s Mem.") 8 n.27, ECF No. 3-1.  However, the referenced document is a July 2017, update to caribou hunting changes in Unit 23.  Pl.'s Mem., Ex. 2 at 12-16, ECF No. 3-3.  It appears that Plaintiff submitted the Unit 13 news release as an exhibit to the other pending motion.  *See* Pl.'s Mem. in Supp. of Mot. for TRO & Prelim. Inj., Ex. 11 at 55-57, ECF No. 4-3.  In any event, Defendants re-publish the latter document as Exhibit B hereto in order to consolidate the relevant materials on the Unit 13 motion.

[2]    Plaintiff submits portions of the same transcript as an Exhibit to its motion.  Pl.'s Mem. Ex. 1 at 1-11.  These portions include transcript pages 1-2, 43-50, and 62.  In order to present the Board's entire consideration of this matter, Defendants' Exhibit A submitted herewith contains transcript pages 1-3 and 43-66.

*State of Alaska v. Federal Subsistence Board*                           Case No. 20-cv-00195-SLG
DEFS.' OPP'N – MOTION FOR PRELIMINARY INJUNCTION (UNIT 13)                          7

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 7 of 23

The proponent, a resident of Glennallen, stated that the requested closure was necessary due to extreme hunting competition from high numbers of non-Federally qualified users, which resulted in low harvest success by Federally-qualified subsistence users and precluded fulfillment of the rural subsistence priority. Tr. 43:23-46. Consequently, the proponent argued that action was necessary to ensure the continuation of Federal subsistence uses of moose and caribou in Unit 13. *Id.* The proponent also contended that a closure was needed for reasons of public safety because there are "too many non-Federally-qualified users to safely hunt and pass on customary and traditional harvest practices." *Id.* at 43:37-39. Finally, the proponent opined that the request "could serve as an experiment" in using "a Federal lands closure as a long-term solution to increasing harvest success rates and providing for the subsistence uses of Federally-qualified subsistence users." *Id.* at 43:41-46.

Lisa Maas, who is the Acting Policy Coordinator and a Wildlife Biologist for the Office of Subsistence Management (OSM), presented the proposal to the Board. *Id.* at 43:18-21. Ms. Maas noted the history of similar proposals or measures within Unit 13, including the Board's decision to deny a similar proposal in 2019. *Id.* at 43:48-44:31. She summarized the written comments and public testimony on the pending proposal. *Id.* at 44:33-45:30. The proponent emphasized the interaction between caribou and moose hunting in the unit, explaining that "the influx of caribou hunters during moose season takes away moose hunting opportunity from Federally-qualified subsistence users." *Id.* at 45:20-23. Ms. Maas then reviewed biological and harvest data for both species. *Id.* at

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
8

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 8 of 23

45:36-47:6.

Ms. Maas next summarized the matter before the Board. She stated that "[i]f this request is approved, Federal public lands in Unit 13 will be closed to moose and caribou hunting by non-Federally-qualified users for the 2020/21 regulatory year." Tr. 47:8-11. She noted that while Federal public lands comprise 12.4 percent of the entirety of Unit 13, such lands "in Units 13A and 13B, which only comprise 2.7 percent of the unit are the focus of the immense hunting competition, overcrowding, user conflict and safety concerns." *Id*. at 47:11-16. Ms. Maas presented recommendations to the Board, stating that "[c]losures for conservation is not warranted as moose and caribou populations are within or above management objectives." *Id*. at 47:25-27. She indicated "[c]losure for continuation of subsistence uses of moose may be warranted." *Id*. at 47:39-40. She then addressed public safety:

> Closure for reasons of public safety may be warranted. Safety concerns resulting from intense hunting pressure, overcrowding, disruption of hunts, and unsafe shooting practices have been repeatedly stated by all user groups. While these concerns may be better addressed through increased law enforcement or restrictions along road sides, these options have not been implemented and are outside of the Board's authority. These safety concerns have been an issue for decades and have resulted in displacement of Federally-qualified subsistence users who do not feel safe hunting in the area.

*Id*. at 47:47-48:9. Ms. Maas concluded with the OSM recommendation that the Board approve the proposed temporary special action "with modification to close Federal public lands to moose and caribou hunting by non-Federally-qualified users in Units 13A and 13B only for the 2020/22 regulatory cycle." *Id*. at 48:11-15. She explained the extension to include an additional year would coincide with the regulatory cycle, which would

justifiably reduce administrative burdens since "this [situation] has been an issue for decades, [and] no change in the situation [is] expected between this year and next year." *Id.* at 48:20-21.

The transcript next reflects the Board's discussion on the matter. One member specifically raised the 2019 denial of a similar proposal, and Ms. Maas explained "in 2019 the OSM recommendation was to close the entire unit, whereas this year we really honed into the problem area" and that this change was responsive to Board member questions during the 2019 proposal "about the possibility of a targeted closure[.]" Tr. 52:30-33, 52:37-39. Another member questioned how the effectiveness of any action might be measured, to which Ms. Maas referred to receiving feedback from local users, as occurred following similar closures instituted for Unit 23. *Id.* at 53:7-34. A further point addressed the timing of caribou migration and the fact caribou have previously migrated through and were often unavailable in the small areas of Federal public lands affected. *Id.* at 54:3-28. There was further discussion about the percentages of Federal public lands affected, and clarification that the OSM recommendation would not institute any restrictions in subunits 13C, 13D, or 13E. *Id.* at 55:13-26.

At this point Ms. Maas presented the Interagency Staff Committee position, which was to concur "with the OSM staff analysis that the request is not valid for experimental purposes but is justifiable to improve safety and reduce use conflicts while continuing and potentially increasing the opportunity for subsistence uses of moose and caribou in Units 13A and 13B." *Id.* at 56:33-39. The Board then considered testimony

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
10

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 10 of 23

from members of the public connected via the teleconference bridge. *Id*. at 58:45-60:38.

The Alaska Department of Fish and Game was then provided "an opportunity" and

offered comment, the entirety of which stated:

> In reviewing WSA20-03 . . . the actions that you take may not . . . solve the
> issue that the proposer has brought out. In looking at the data, historically we
> do see trends when there is an increase even in the number of State hunters,
> we see an increase in the success rate of Federally-qualified hunters also.

> And then the safety issue . . . it may clear out the non-Federally-qualified users
> from those lands but as was previously stated, people will still be able to
> transition through there, camp there, they just can't hunt there. They may still
> see a good level of traffic through those Federal lands also.

*Id*. at 60:47-61:11.

Next followed the only portion of the testimony or discussion addressed in

Plaintiff's motion, which consisted of a motion by Member Padgett to accept the proposal

as submitted, along with an indication that, if seconded, he "would explain [his]

reasoning for voting against [his] motion." Tr. 61:38-39. Member Padgett continued his

explanation, culminating in the opinion that since the 2019 request "no new data has been

brought forth in the OSM analysis to indicate anything has changed since that time." *Id*.

at 62:49-63:3. Following a roll call vote, the Board proceeded "to approve WSA20-03 as

modified[.]" *Id*. at 63:49-64:5. Member Siekaniec voted in favor. *Id*. at 64:15-17. So

did Member Schmid, explaining "we're talking about a postage stamp of land area and I

think it's time that we try to take some action here[.]" *Id*. at 64:37-45. Member Peltola

also voted to approve, in order to provide for continued subsistence use and observing

"the reduction in density of hunters which would be majority on Federal lands could lead

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
11

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 11 of 23

towards addressing the safety concerns as well." *Id.* at 65:5-14. Member Striker

similarly approved, finding the proposal "targeted to problem areas" and noting "it's

pretty clear that there's a compelling basis with respect to safety." *Id.* at 65:25, 65:34-35.

Eventually, "the motion passe[d] six yes, one no, and so Special Action Request WSA20-

03 as modified by OSM" was approved. *Id.* at 66:35-37.

<u>**LEGAL STANDARDS**</u>

**I.      A Preliminary Injunction is an Extraordinary Remedy.**

A plaintiff seeking a preliminary injunction must show: "(1) it is likely to succeed

on the merits; (2) it is likely to suffer irreparable harm if the preliminary injunction is not

granted; (3) the balance of equities tips in its favor; and (4) an injunction is in the public's

interest." *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013)

(citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). Alternatively, the Ninth

Circuit has found "'serious questions going to the merits' [rather than a likelihood of

success on the merits] and a hardship balance that tips sharply toward the plaintiff can

support issuance of an injunction, assuming the other two elements of the *Winter* test are

also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

Under either test, the plaintiff must "establish that irreparable harm is *likely*, not just

possible, in order to obtain a preliminary injunction[,]" *id.* at 1131, and a deficiency in

any one of the required elements precludes extraordinary relief. *Winter*, 555 U.S. at 24.

Because a "preliminary injunction is an extraordinary and drastic remedy," *Mazurek v.*

*Armstrong,* 520 U.S. 968, 972 (1997), the party seeking such an injunction must make "a

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
12

clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22.

## II.     Administrative Procedure Act Review of Agency Action.

The Court's assessment of the merits of Plaintiff's claims is governed by the APA, 5 U.S.C. § 706(2). *City of Sausalito v. O'Neill,* 386 F.3d 1186, 1205-06 (9th Cir. 2004). Under the APA, judicial review of federal agency actions is highly deferential. *Lands Council v. McNair,* 537 F.3d 981, 992-94 (9th Cir. 2008), *overruled in part on other grounds, Winter,* 555 U.S. at 22. Agency decisions may be overturned only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Native Ecosystems Council v. Dombeck,* 304 F.3d 886, 891 (9th Cir. 2002) (citation omitted). Agency factual determinations will only be set aside if "unsupported by substantial evidence" which "is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cal. Pac. Bank v. Fed. Deposit Ins. Corp.,* 885 F.3d 560, 570 (9th Cir. 2018); *Univ. of Wash. Med. Ctr. v. Sebelius,* 674 F. Supp. 2d 1206, 1210 (W.D. Wash. 2009). An agency action will be upheld if the agency has considered the relevant factors and articulated a rational connection between the facts found and choice made. *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council,* 462 U.S. 87, 105 (1983). The court may not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 29-30 (1983).

## <u>ARGUMENT</u>

## I.     Plaintiff is Not Likely to Succeed on the Merits.

Plaintiff fails to demonstrate the requisite likelihood of success on the merits to

justify preliminary injunctive relief.

A.     <u>Plaintiff Cannot Bring a Standalone APA Claim</u>.

As it does in the other pending motion addressing the Organized Village of Kake emergency special action, Plaintiff suggests the Court could find independently under the APA that approval of WSA 20-03 was, in multiple respects, "arbitrary, capricious, and not in accordance with law."  Pl.'s Mem. 12-17.  However, the APA does not provide an independent basis for jurisdiction.  *Califano v. Sanders*, 430 U.S. 99, 107 (1977). Arbitrary or capricious review may not be conducted under the APA independent of another statute that provides substantive law for a court to apply.  *See Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996).  The arguments that Plaintiff attempts in this section must be framed as violations of ANILCA, with the APA providing the applicable standard of review.  For this reason, any attempt by Plaintiff to bring a standalone APA claim must fail.

B.     <u>ANILCA Provides for the Board's Action</u>.

The Board has legal authority to impose the modest restrictions of WSA 20-03.  In the section of its brief targeting ANILCA, Plaintiff argues that the Board illegally "relied upon the 'public safety' wording in Section 816 to enact a closure under Section 815." Pl.'s Mem. 11.  This argument is incorrect.

Careful reading of ANILCA clarifies the nature of the Board's authority, including authority to restrict nonsubsistence uses.  Section 815 provides:

> nothing in [Title VIII] shall be construed as . . . (3) authorizing a restriction on
> the taking of fish and wildlife for nonsubsistence uses on the public lands

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
14

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 14 of 23

(other than national parks and park monuments) unless necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in section 3126 of this title, to continue subsistence uses of such populations, or pursuant to other applicable law[.]

16 U.S.C. § 3125(3). In other words, Section 815 recognizes four bases by which the Secretary can restrict nonsubsistence uses, including "the reasons set forth in section 3126" as well as "other applicable law."

Again, ANILCA creates a federal regulatory scheme in which the Board's interpretation of ANILCA is entitled to deference. *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191-92 (9th Cir. 2000); *United States v. Alexander*, 938 F.2d 942, 946 n.6 (9th Cir. 1991) (within realm of ANILCA, a reviewing court "owe[s] the state regulatory agency's interpretation no deference"). Applicable law includes the Board's authority to act upon a proposal like WSA 20-03:

> (b) Temporary special actions. After adequate notice and public hearing, the Board may temporarily close or open public lands for the taking of fish and wildlife for subsistence uses, or modify the requirements for subsistence take, or close public lands for the taking of fish and wildlife for nonsubsistence uses, or restrict take for nonsubsistence uses.

50 C.F.R. § 100.19(b). As for the Kake motion, Plaintiff does not address the broad scope of authority under the regulation, and could not reasonably do so because the statute of limitations has run on Plaintiff's ability to raise either a procedural or substantive challenge to the regulation, which became effective in 2010. *See Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991); 75 Fed. Reg. 63,088, 63,089 (Oct. 14, 2010) (Final Rule adopting regulation); *see also* Fed. Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. Exs. 5-6, ECF Nos. 15-6, 15-7.

Plaintiff's argument suggests that the limited closures in subunits 13A and 13B reflect an unusual or unprecedented expansion of the Board's authority. But that is not the case; the Board routinely takes such action. *See Ninilchik*, 227 F.3d at 1195 (involving similar management tools such as preferred seasons and antler restrictions for Unit 15 moose hunting); Pl.'s Mem. Ex. 2 at 12-16 (Unit 23 caribou hunting restrictions); Ex. A, Tr. 53:14-34 (Maas comparison of same to WSA 20-03). The Board acted within the letter of applicable law and in accordance within established practice.

C.     The Board's Action Reflects Reasoned Discretion.

Plaintiff's other ANILCA arguments similarly fall far short of establishing a sufficient basis for entry of a preliminary injunction. These arguments are largely presented in the "arbitrary and capricious" section of Plaintiff's brief. *See* Pl.'s Mem. 12-17. However, these arguments fail to address the information in the record supporting the Board's choice, and fail to credit the Board's action as a measured response that would only close a very small portion of Federal lands to non-Federally-qualified users. Plaintiff's arguments amount to little more than second-guessing the Board's exercise of discretion.

Plaintiff first contends the "facts and testimony presented to the Federal Subsistence Board simply did not justify closure for safety reasons, conservation, or continuation of subsistence uses as required by ANILCA." Pl.'s Mem. 12. The Board's action was not based upon conservation of the species, thus Plaintiff's considerable argument to that effect is unpersuasive. The OSM recommendation acknowledges that

closure for conservation was "not warranted" and that was not the basis for decision. Ex. A, Tr. 44:17-19. Rather, the proffered basis for approval was continuation of subsistence hunting opportunity for moose, and "for reasons of public safety." *Id*. at 47:47-48. Numerous Board members stated this rationale for their decision. *Id*. at 64:3-65:49. (including Member Striker's observation that areas outside Federal boundaries can be "a dangerous wild sort of west scenario" and "that we've had serious safety concerns that have remained unaddressed for decades"). In multiple instances, the recommendation and subsequent Board approval is tied to public safety and user conflict concerns. *Id*. at 46:1-2, 4-8 (household survey results), 20-24 (prior testimony "describing this area as a combat hunting zone"); 48:6-9; 60:9-10 ("I have had numerous very dangerous situations with road hunting in the area"). "User conflict" as evidenced through individual comment is a well-established basis for agency restrictions. *Hells Canyon All. v. U.S. Forest Serv*., 227 F.3d 1170, 1184-85 (9th Cir. 2000); *Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1464 (9th Cir. 1996); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*., 18 F.3d 1468, 1475 (9th Cir. 1994). The Board members reflect regional-level leadership of agencies like the National Park Service, Forest Service, and Bureau of Land Management. They have extensive training, experience, and knowledge in addressing public lands management, including user conflict, and their reasoned views are entitled to deference. They considered a substantial record and reasonably articulated one basis for their decision to approve WSA 20-03 because, "it's pretty clear that there's a compelling basis with respect to safety." Ex. A, Tr. 65:34-35.

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 17 of 23

Plaintiff stresses that the closure "is not necessary for the conservation of healthy populations of moose and caribou." Pl.'s Mem. 13. Again, this argument misses the mark – conservation of these species was not the basis for Board's action. Plaintiff puts similar emphasis on the Board's 2019 decision to deny a proposal addressing Unit 13. *Id.* at 14-16. However, Ms. Maas made clear that OSM's prior recommendation was to approve the 2019 proposal which would apply to all of Unit 13, which OSM factored into its proposed modification of the 2020 proposal. Ex. A, Tr. 52:30-43. The selective emphasis of Member Padgett's views, which admittedly track Plaintiff's, should be no more effective than citing the dissent in an 8-1 Supreme Court decision. In fact, Plaintiff overstates ADFG's position (Pl.'s Mem. 14), since the agency did not formally oppose WSA 20-03 at the hearing, but at most expressed uncertainty whether the action would "solve the concerns that the proposer has brought out." Ex. A, Tr. 60:47-61:4.

Plaintiff's final arguments are similarly unpersuasive. Based on the proponent's self-characterization, Plaintiff contends that as an "experiment" WSA 20-03 exceeds the Board's authority. Pl.'s Mem. 10, 16. However, the record makes clear that OSM and the Interagency Staff Committee discounted this characterization, and it formed no part of the rationale for the action. Ex. A, Tr. 56:33-35 ("the request is not valid for experimental purposes"). Nor does Plaintiff explain why aligning the action with the regulatory cycle to extend through the 2021-22 season renders it arbitrary and capricious. Yet again, the record reveals the basis for the decision (Ex. A, Tr. 56:47-57:5), which is in conformance with the regulation. 50 C.F.R. § 100.19(b)(2).

Plaintiff disagrees with the Board's approach and final decision, but through this strategy Plaintiff cannot surmount its burden.  Plaintiff suggests a preponderance of evidence would favor a different outcome, but the Board's findings need only be supported by "more than a mere scintilla" to constitute substantial evidence.  Plaintiff fails to identify that any of its concerns rise to the level of demonstrating that the Board entirely overlooked an important aspect of the problem or failed to articulate a rational connection between the facts found and the choice made through the Board's measured action in WSA 20-03.

## II.   Plaintiff has Failed to Demonstrate Imminent, Irreparable Harm.

To obtain a preliminary injunction, Plaintiff must show a "likelihood of irreparable injury." *Winter*, 555 U.S. at 21. Plaintiff bears the burden of "*demonstrat[ing]* immediate threatened injury[,]" and mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted). Plaintiff has not met this burden.

Plaintiff again asserts the subunit 13A and Unit 13B closures will irreparably harm its wildlife management responsibilities.  Pl.'s Mem.17-18.  More particularly, Plaintiff contends "the State will be unable to adequately spread hunters out in Unit 13[.]"  *Id*. at 17.  However, there is no stated, let alone compelling, connection between these alleged harms and the "postage stamp of land area" affected by the closure.  Ex. A, Tr. 64:42-47; *see also id*. at 55:13-26  (percentages of Federal land affected); Ex. B at 3

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
19

(map depicting same in orange shaded areas). Furthermore, the "closed" areas are not "no go" areas but only "no hunt" areas, as is well known from similar closures in other areas. Ex. A, Tr. 55:34-56:10 (confirming that affected users can camp or "transition through" Federal lands, similar to "Haul Road on the Slope"). Plaintiff's declaration provides no basis for finding irreparable injury, theorizing that "[u]ncertainty may impact enforcement, reduce hunter effectiveness, and reduce overall harvest." Decl. of Gino Del Frate ¶ 9, ECF 3-2. Irreparable harm requires far more than uncertainty. Aside from its ambiguity, this uncertainty is not tied to the limited closure area, particularly given the fact that "[m]oose and caribou are available throughout these units." *Id.* ¶ 3.

The flaws in Plaintiff's argument are perhaps most clearly exposed in its misunderstanding of the Board's narrow action. Plaintiff characterizes that action as "closing GMUs 13A and 13B to non-federally qualified moose and caribou hunters until July 2022, including on state lands[.]" Pl.'s Mem. 18. However, this grossly overstates the scope of the closure, which:

> only applies to the Federal public lands in Units 13A and 13B that are open to Federal subsistence hunting. This includes the Federal subsistence hunt areas along the Richardson highway near Paxson and the Delta and Gulkana river corridors that are managed by the Bureau of Land Management (BLM). The yellow/shaded areas in the map at the end of this factsheet depict the BLM lands in Units 13A and 13B open to Federal subsistence hunting, which now comprise the "closure area."

Ex. B at 1.

Plaintiff's broadscale wildlife management and hunter dispersal concerns are neither sufficiently articulated nor connected to the Board's limited action in closing 2.4

*State of Alaska v. Federal Subsistence Board*
Defs.' Opp'n – Motion for Preliminary injunction (Unit 13)

Case No. 20-cv-00195-SLG
20

Case 3:20-cv-00195-SLG   Document 18   Filed 08/26/20   Page 20 of 23

percent of Unit 13's abundant lands to non-Federally-qualified users. Plaintiff has not made the clear showing of imminent, irreparable injury that could support issuance of a preliminary injunction.

## III. The Public Interest and Balance of Equities Weigh in Defendants' Favor.

Even if the allegations were sufficient to satisfy the irreparable harm requirement, Plaintiff must also prove that a preliminary injunction would serve the public interest. *eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006). When the government is a party, the analyses of the public interest and balance of equities merge, *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted), and here the strong public interests, as set forth by Congress, that motivated the Board's actions distinctly outweigh Plaintiff's allegations of irreparable harm.

Plaintiff restates generalized concerns about its wildlife management duties and impacts to hunters including lost opportunity, hunter displacement and disruption of hunting plans. Again, these concerns are diminished, if not neutralized, by the lack of connection to, indeed even proper identification of, the actual closure area. The public safety concerns reasonably articulated by the Board represent a compelling interest which outweighs Plaintiff's generalized observations. Plaintiff may be correct in noting that populations and harvest of caribou and moose are within agency targeted ranges, but the Board did not base its decision upon those factors. Rather, the Board identified and chose to act upon a need to reduce the growing risks of crowding and competition between hunters, and the chilling effect of such circumstances on Federally-qualified

subsistence users' continued hunting on public land.

Plaintiff closes by expressing concerns about disrupting ANILCA's delicate balancing of subsistence use priority and continuation of other uses under State management. Again, these concerns are not connected to the Board's narrowly tailored action here. The closure of 2.4 percent of Federal lands in Unit 13 is in accord with established practice and was amply supported by the record.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for preliminary injunction.

DATED: August 26, 2020.

JEAN E. WILLIAMS
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Div.

/s/ Paul A. Turcke
PAUL A. TURCKE
Idaho Bar No. 4759
Trial Attorney
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-353-1389 || 202-305-0506 (fax)
paul.turcke@usdoj.gov

*Counsel for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this memorandum complies with the type-volume limitation of Local Civil Rule 7.4(a)(2) because this memorandum contains 5,668 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4). This memorandum has been prepared in a proportionately spaced typeface, Times New Roman 13-point font, and I obtained the word count using Microsoft Word 2016 (16.0.5044.1000) MSO (16.0.5032.1000) 32-bit.

_/s/ Paul A. Turcke_____
PAUL A. TURCKE

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2020, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

_/s/ Paul A. Turcke_____
PAUL A. TURCKE