Matthew N. Newman (ABA No. 1305023)
Erin C. Dougherty Lynch (ABA No. 0811067)
Heather R. Kendall Miller (ABA No. 9211084)
NATIVE AMERICAN RIGHTS FUND
745 W. 4th Avenue, Suite 502
Anchorage, Alaska 99501
Telephone: (907) 276-0680
Facsimile: (907) 276-2466
mnewman@narf.org
dougherty@narf.org
kendall@narf.org

*Attorneys for [Applicant] Intervenor-Defendant Organized Village of Kake*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| STATE OF ALASKA, DEPARTMENT OF FISH AND GAME,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL SUBSISTENCE BOARD, *et al.*,<br><br>Defendants,<br><br>and<br><br>ORGANIZED VILLAGE OF KAKE,<br><br>[Applicant] Intervenor-Defendant. | Case No. 3:20-cv-00195-SLG<br><br><br><br>**MEMORANDUM IN SUPPORT OF [APPLICANT] INTERVENOR DEFENDANT'S MOTION TO INTERVENE** |

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene     Page **1** of **17**
*State of Alaska v. Federal Subsistence Board*     Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG    Document 20-1    Filed 08/27/20    Page 1 of 17

## I. INTEREST OF INTERVENOR-DEFENDANT

1. The Organized Village of Kake ("the Tribe") is a federally recognized Tribe located in Southeast Alaska.[1] Kake is a rural community under ANILCA eligible for the federal subsistence priority.[2] The Tlingit name for the Kake community is Kéex̱' Ḵwáan.[3] The Kéex̱' Ḵwáan Tlingit have lived at Kake for thousands of years, and have engaged in hunting, fishing and gathering traditional foods continuously during that time. Ḵéex̱' is derived from ḵée "dawn, daylight" and x̱'é "mouth," i.e. "mouth of dawn" or "opening of daylight."[4] Kake is located on the northwest coast of Kupreanof Island along Keku Strait, 95 air miles southeast of Juneau.[5] This is approximately the same distance between Ketchikan and Kake, making Kake the most remote community in Southeast Alaska for purposes of travel between the region's two largest hub communities.[6]

The Organized Village of Kake is governed by a Constitution, setting forth the powers, privileges, and immunities of the Tribe.[7] As the governing body of the Organized Village of Kake, the Tribal Council exercises the Tribe's powers of self-governance.[8] Under the Tribe's Constitution, powers vested in the Tribal Council include the powers to: (1) negotiate with the Federal and Territorial Governments on behalf of the Village and to advise and consult with representatives of the Interior Department on all activities of the Department that may affect the Village of Kake; (2) "protect and preserve the timber, fisheries and other property and natural

---

[1] Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462, 5467 (Jan. 30, 2020).
[2] Subsistence Management Regulations for Public Lands in Alaska; Rural Determinations, Nonrural List, 80 Fed. Reg. 68245, 68248 (Nov. 4, 2015) (stating that all communities in Alaska are considered rural except for specific listed communities); *see also* Federal Subsistence Board, Federal Subsistence Management Program Map, https://www.doi.gov/sites/doi.gov/files/uploads/non_rural_areas_statewide.pdf.
[3] Declaration of President Joel Jackson at ¶ 4.
[4] *Id.*
[5] *Id.* at ¶ 5.
[6] *Id.*
[7] *Id.* at ¶ 13.
[8] *Id.*

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene   Page **2** of **17**
*State of Alaska v. Federal Subsistence Board*   Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 2 of 17

resources of the Village"; (3) "aid needy members and protect the general welfare and security of the Village."[9]

There are only two places to purchase commercial foods in Kake—a small grocery store and a mini-mart, both privately owned.[10] The food sold in the store and mini-mart arrives in Kake by Alaska Marine Lines barge from the Lower 48 states and is generally processed and is rarely fresh.[11] In March and April 2020, as the COVID-19 pandemic spread, Kake began experiencing shortages of food and cleaning supplies.[12] The commercial food vendors in Kake had a hard time meeting the needs of the village small store and mini-mart and had a difficult time procuring various foods, fresh and frozen alike.[13] Meat and canned goods were especially difficult to obtain.[14] In response to this unprecedented crisis, the Tribe contacted the U.S. Forest Service and the Alaska Department of Fish & Game to express concerns about the food insecurity created by the COVID-19 pandemic and the lack of availability and low nutritional quality of the food supplies reaching Kake via barge from the Lower 48 states.[15] Faced with the disruption in the community's access to food, Organized Village of Kake leadership mobilized to try and figure out the best way to secure local foods for Elders and tribal citizens, recognizing that, even when available, barged foods are not as healthy as wild and traditional foods.[16]

Having no success in its discussions with the U.S Forest Service and the Alaska Department of Fish & Game, on April 13, 2020 and again on June 4, 2020, the Tribe submitted a Special Action Request WSA 19-14 to the Federal Subsistence Board requesting to harvest two

---

[9] *Id*. *See also* Intervenor Defendant's Ex. B.
[10] Declaration of President Joel Jackson at ¶ 17.
[11] *Id*.
[12] *Id*. at ¶ 18.
[13] *Id*.
[14] *Id*.
[15] *Id*. at ¶ 19.
[16] *Id*. at ¶ 20.

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene    Page **3** of **17**
*State of Alaska v. Federal Subsistence Board*                                      Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 3 of 17

bull moose and five male deer per month on forest service land for a period of 60 days.[17]  On June 18, 2020, the Tribal Council introduced a Food Security Emergency Declaration Code.[18]  This included a Food Security Emergency Declaration in which the Tribal Council official declared a "Food Security Emergency upon a finding that there is a severe lack of direct and immediate access to the food necessary to sustain community health and welfare and/or support strengthening tribal citizen immune systems during public health crises."[19]  The Declaration also noted that "the western food supply chain has been delayed, interrupted, or offers a diminished variety of foods and there is a reasonable expectation that it will continue, and that lack of access to food is adversely impacting the health and welfare of the tribal community."[20]

At the July 22, 2020 meeting, the Federal Subsistence Board considered the Tribe's special action request and heard testimony from Organized Village of Kake President Joel Jackson on the proposal.[21]  After President Jackson's testimony, the FSB voted to authorize the Forest Service Ranger District in Petersburg to permit an emergency 30-day hunt, to be evaluated after 30 days to determine if the permit would be extended for another 30 days.[22]  On June 23, the Tribal Council passed the Food Security Emergency Declaration Code that it had drafted and proposed in June.[23]  On June 24, 2020, Ted Sandhofer, Forest Service District Ranger for the Petersburg Ranger District, issued Emergency Special Action Permit "COVID-19 Food Security Community Harvest for the Organized Village of Kake" to harvest up to two antlered bull moose and five male Sitka black-tailed deer beginning June 24, 2020.[24]

---

[17] *Id*. at ¶ 21.
[18] *Id*. at ¶ 22; *see also* Intervenor Defendant's Ex. C.
[19] *Id*.
[20] *Id*.
[21] *Id*. at ¶ 23.
[22] *Id*. at ¶ 24.
[23] *Id*. at ¶ 25.
[24] *Id*. at ¶ 26.

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene        Page **4** of **17**
*State of Alaska v. Federal Subsistence Board*                                                          Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 4 of 17

The hunts took place from June 24 to July 24.[25]  Hunters successfully harvested two moose and five deer, and the meat was then processed and distributed to over 100 households in the community.[26]  That Special Action Request, and the resulting Emergency Special Action Permit, are the subject of the present matter in which the Tribe seeks to intervene as a defendant.

## II. THE TRIBE IS ENTITLED TO INTERVENTION AS A MATTER OF RIGHT UNDER RULE 24(a).

The Organized Village of Kake is entitled to intervene as a matter of right in this litigation.  Federal Rule of Civil Procedure 24(a) provides in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[27]

Under the Rule, an applicant must establish:  (1) that its motion is timely; (2) that it has a cognizable interest in the litigation; (3) that without intervention an adverse ruling may impair or impede the ability to protect that interest; and (4) that its interest is not being adequately represented by the existing parties.[28]

"Rule 24(a) traditionally receives liberal construction in favor of applicants for intervention."[29]  Moreover, in evaluating whether Rule 24(a)'s requirements are met courts "are guided primarily by practical and equitable considerations."[30]  In this respect the Ninth Circuit notes:

---

[25] *Id.* at ¶ 27.
[26] *Id.* at ¶¶ 28-30.
[27] FED. R. CIV. PRO. 24(a).
[28] *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983).
[29] *Arakaki v. Cayetana*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).
[30] *Donnelly*, 159 F.3d at 409.

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene        Page **5** of **17**
*State of Alaska v. Federal Subsistence Board*        Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 5 of 17

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.[31]

The Tribe meets the requirements for intervention as of right. Its motion is timely—the State of Alaska's complaint was filed August 10, 2020, and the parties have not yet completed motion practice on the State's request for preliminary injunctive relief. The Tribe has a legally protected interest that relates to the subject of this action—the Tribe's special action request and the FSB's subsequent action on it are one of the bases of the State's suit against the FSB. The Tribe's interest may, as a practical matter, be impaired by the outcome of the litigation—the State's requested relief seeks to strip the FSB of the authority to work with rural communities and federally recognized tribes such as the Organized Village of Kake, and to authorize emergency federal hunts in times of dire emergency due to unforeseen events like the current COVID-19 epidemic. The loss of such authority will directly impact the Tribe's federal subsistence rights under ANILCA. Finally, the named defendant may not adequately represent the Tribe's interests—the FSB is a regulatory body that administers the federal subsistence program in Alaska. Although FSB works with tribal entities like the Organized Village of Kake, it is not a representative or advocate for any particular rural subsistence community. The Tribe, as the party which submitted one of the special action requests at issue here, is an advocate for the subsistence rights and interests of its own tribal citizens, an advocacy mission distinct from the interests of the FSB.

### A. This Motion is Timely and Will Serve the Interest of the Orderly Administration of Justice.

---

[31] *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397 (9th Cir. 2003) (emphasis in original) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n. 8 (9th Cir. 1995)).

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene    Page **6** of **17**
*State of Alaska v. Federal Subsistence Board*    Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 6 of 17

Whether a motion to intervene is timely is within the sound discretion of the court, and is to be determined from all the circumstances.[32] "Timeliness is measured by reference to '(1) the stage of the proceedings at which applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay.'"[33] The Complaint and Motion for Temporary Restraining Order and Preliminary Injunction were filed August 10, 2020.[34] This case is but two weeks old, and the Tribe moves to intervene before the existing parties have completed any dispositive proceedings or briefing. Intervention is therefore timely.[35] For the same reason, intervention will not prejudice the existing parties. While no prejudice to the existing parties will result, the Tribe, in contrast, will be *significantly* prejudiced if intervention is denied. Indeed, its ability to protect its tribal citizens' rights under the federal subsistence program will be severely compromised absent intervention. The Organized Village of Kake has therefore made a "timely motion" under Rule 24(a).

### B. The Tribe has a Substantial Interest in the Transaction that is the Subject of this Action.

Under Rule 24(a)(2), applicants must show that they have an interest "relating to the property or the transaction which is the subject of the action" that is "significantly protectable."[36] "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established."[37] Instead, the

---

[32] *NAACP v. New York*, 413 U.S. 345 (1973).
[33] *United States v. Carpenter (Carpenter I)*, 298 F.3d 1122, 1125 (9th Cir. 2002) (quoting *County of Orange v. Air Calif.*, 799 F.2d 535, 537 (9th Cir. 1986).
[34] ECF Nos. 1, 3.
[35] *See* 7C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1916 (1986).
[36] *Donaldson v. United States*, 400 U.S. 517, 531 (1971).
[37] *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (citing *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989)).

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene  Page **7** of **17**
*State of Alaska v. Federal Subsistence Board*  Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 7 of 17

interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[38]

In order to establish an interest sufficient to intervene as of right, an applicant-intervenor must establish: (1) "that the interest [asserted] is protectable under some law and (2) that there is some relationship between the legally protected interest and the claims at issue."[39] The relationship requirement is met "if the resolution of the plaintiffs' claims actually will affect the applicant."[40]

### 1. The Tribe has a legally protected interest in the Federal Subsistence Board's ability to properly implement Title VIII of ANILCA on federal public lands in Alaska.

The Organized Village of Kake's citizens depend on the subsistence resources of Southeastern Alaska for their very existence.[41] Subsistence resources are not only a food source to Kake residents, but are also a foundational piece of the cultural fabric of Kake and the broader region.[42] The Federal Subsistence Board was created to implement Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA") and manage subsistence hunting and fishing on federal public lands in Alaska.[43] The Federal Subsistence Program—as established by

---

[38] *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)).
[39] *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)).
[40] *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).
[41] Declaration of President Joel Jackson at ¶¶ 15-17.
[42] *Id.* at ¶¶ 6, 15-16. *See also Native Village of Quinhagak v. United States*, 35 F.3d 388, 394 (9th Cir. 1994) ("[T]he continuation of the opportunity for subsistence uses by rural residents of Alaska . . . is *essential* to Native physical, economic, traditional, and *cultural* existence . . . ." (emphasis in original, quoting ANILCA, 16 U.S.C. § 3111(1)); *United States v. Alexander*, 938 F.2d 942, 945 (9th Cir. 1991) ("Many Alaska natives who are not fully part of the modern economy rely on fishing for their subsistence. If their right to fish is destroyed, so too is their traditional way of life.").
[43] 50 CFR Part 100. The Federal Subsistence Management Program regulations are published twice in the CFR: 50 CFR Part 100 and 36 CFR Part 242. The regulations have four subparts. Subparts A and B are within the sole purview of the Secretaries of the Department of the Interior and the Department of Agriculture. Responsibility and decisions relating to the provisions of Subparts C and D are delegated by the Secretaries to the Federal Subsistence Board. Subpart C concerns Board Determinations, including rural and customary and traditional use determinations, while subpart D consists of the regulations for taking fish, wildlife, and shellfish.

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene    Page **8** of **17**
*State of Alaska v. Federal Subsistence Board*    Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 8 of 17

ANILCA and implemented by the Secretaries of the Interior and Agriculture—is a multi-agency program consisting of five agencies: Bureau of Indian Affairs, Bureau of Land Management, U.S. Forest Service, National Park Service, and U.S. Fish and Wildlife Service. These bureaus, together with rural subsistence users, maintain the opportunity for a subsistence way of life by rural Alaskans on Federal public lands while managing for healthy populations of fish and wildlife.

The State of Alaska's lawsuit seeks to upend three-decades of Federal management authority and, in doing so, to significantly curtail access to subsistence resources. The threat posed by this lawsuit to Alaska's rural residents and their communities and cultures is immediate and direct. Alaska Native subsistence culture is protected by numerous federal statutes and cases,[44] and the federal government has the affirmative duty to "protect the subsistence resources of Indian communities"[45] by virtue of its unique trust responsibilities to Indian tribes. The Tribe's interest in protecting subsistence resources and access to those subsistence resources for its citizens meets the requirements of Rule 24(a)(2).

The Organized Village of Kake also holds a broader interest in the continued vitality of the federal trust responsibility. The FSB, like all other federal bodies, owes a trust responsibility to the Tribe and all other federally recognized Tribes.[46] In Alaska, this duty is particularly important given the unique history and laws surrounding Alaska Native Tribes and the State's hostile history toward Native subsistence.[47] Alaska Native subsistence rights are a federal trust

---

[44] DAVID S. CASE & DAVID A. VOLUCK, ALASKA NATIVES AND AMERICAN LAWS 290 (3d. ed. 2012).
[45] *People of Togiak v. United States*, 470 F. Supp. 423, 428 (D.D.C. 1979) (citation omitted).
[46] Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. at 5466-67 (listing all federally recognized Tribes in Alaska). *See also Nance v. EPA*, 645 F.2d 701, 711 (9th Cir. 1981).
[47] CASE & VOLUCK, at 42 (discussing the atypical history of the United States' Alaska Native policy and the importance of federal statutes in developing a trust responsibility in the absence of formal treaties) and at 301-10 (summarizing the decades-long legal battles between the state and Alaska Natives over subsistence rights and access).

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene     Page **9** of **17**
*State of Alaska v. Federal Subsistence Board*                                       Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 9 of 17

responsibility—and both ANILCA and the FSB are a result of that mandate.[48] The FSB has historically recognized the importance of the trust responsibility and has developed government-to-government consultation procedures with Tribes.[49] In accordance with its trust responsibilities, FSB acknowledged its unique legal and political relationship with tribal governments and set out the FSB's "responsibility to engage in regular and meaningful consultation and collaboration with Federally recognized Indian tribes in Alaska on matters that may have substantial effects on them and their members."[50] The FSB likewise recognized that in order to "effectively manage the Federal Subsistence Program, the [FSB] will collaborate and partner with Federally recognized Tribes in Alaska to protect and provide opportunities for continued subsistence uses on public lands."[51] The Organized Village of Kake's interest in FSB's fulfillment of its trust responsibilities is a legally protected interest sufficient to satisfy the requirements of Rule 24(a)(2).

### 2. There is a strong relationship between the Tribe's legally protected interest and the claims at issue here.

The State of Alaska's requested relief, if granted, will have a direct, immediate, and harmful effect upon the Organized Village of Kake's legally protected interests. The State seeks a declaration that the FSB's decision to issue an Emergency Special Action Permit to the Tribe on June 24, 2020 violated Title VIII of ANILCA and the Administrative Procedures Act.[52] The State asks the Court to enjoin, vacate, and remand the Emergency Special Action Permit granted to the Tribe, and further asks this Court to enjoin the FSB from "authorizing the opening of any

---

[48] The Conference Committee report expresses the expectation that the Secretary of the Interior and the State of Alaska would take the action necessary to protect the subsistence needs of Alaska Natives. H.R. Conf. Rep. No. 92-746, 92nd Cong., 1st Sess., December 14, 2917, at 37, reprinted in U.S.C.C.A.N. 2247, 2250.
[49] Federal Subsistence Board, *Government-to-Government Tribal Consultation Policy* (May 9, 2012), https://www.doi.gov/sites/doi.gov/files/migrated/subsistence/upload/FSB-Tribal-consultation-policy-5-1-12.pdf.
[50] *Id.* at 1.
[51] *Id.*
[52] ECF 1, Compl. at 18-21.

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene     Page **10** of **17**
*State of Alaska v. Federal Subsistence Board*     Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG    Document 20-1    Filed 08/27/20    Page 10 of 17

hunting or fishing based on COVID-19 alleged food shortages or food supply disruptions; or if the court determines that the Federal Subsistence Board has the authority to open seasons, to enjoin any such opening in the absence of a supporting determination by [Plaintiff's Unified Command Mass Care Group] demonstrating an imminent threat to public safety."[53] If the State's requested relief is granted, the FSB's longstanding subsistence management regime will be upended to the detriment of the tribal citizens of Kake and all qualified federal subsistence users. Additionally, FSB's ability to meet its trust responsibilities to the Tribe will be severely impaired. The Tribe and its citizens' interests will be directly and adversely impacted by the resolution of the State's claims.[54] This establishes the requisite relationship between the Tribe's interest and the subject of the action, and satisfies the requirements of Rule 24(a)(2).

### C. This Action May as a Practical Matter Impair or Impede the Tribe's Ability to Protect its Interests in the Federal Subsistence Management Program.

The disposition of Plaintiffs' claims against the FSB "may as a practical matter impair or impede" the Organized Village of Kake's ability to protect its interests within the meaning of Rule 24(a)(2). Here, the Tribe need not establish that its ability to protect its interests will be impaired or impeded as a *legal* matter. Instead, Rule 24(a) expressly states that the applicants for intervention need only show that their interests "may" be impaired or impeded "as a *practical*

---

[53] *Id.*
[54] *See, e.g.*, *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 396-97 (9th Cir. 2002) (Police League had a protectable interest in the merits of the litigation where a negotiated consent decree between the parties would alter terms of Memorandum of Understanding between the Police League and the City); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (farm group had sufficient interest in suit which sought to protect government agency from expending funds to, or fulfilling contracts with, farmers); *Conservation Law Found of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (consent decree requiring promulgation of new fishing plan would directly affect intervening fishing groups because it would require not only a new plan but specifically a plan to reduce overfishing).

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene    Page **11** of **17**
*State of Alaska v. Federal Subsistence Board*    Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 11 of 17

matter."[55] "The practical impairment [test] is flexible, and its application depends on a pragmatic analysis of the circumstances of the case."[56]

The Organized Village of Kake's ability to protect its interests will be directly affected by the State's efforts to have the FSB's process in granting the Tribe's Emergency Special Action Permit declared unlawful. If the State prevails on the merits of its claims and obtains the requested relief, the FSB will be prevented from fulfilling its Congressional mandate and taking the very action that the Tribe requested. Food security and access to cultural subsistence foods is not an issue that will fade away after the current COVID-19 pandemic is over. The State's requested relief will foreclose to present and future residents of Kake the ability to propose actions on public lands in their region, and likewise foreclose the FSB's ability to properly manage such actions under ANILCA. Without such agency action being available to them in the future, Kake will lose substantial protection for the subsistence hunting and fishing opportunities they seek to protect—activities upon which the Tribe's citizens rely for their very existence.[57] Because this case challenges the authority by which the Tribe has sought a special hunt, it directly threatens the Organized Village of Kake's ability to protect its interests.

In *Washington State Building & Construction Trades v. Spellman*,[58] the court held that a public interest group was entitled as a matter of right to intervene in an action challenging the legality of a measure because it had been a sponsor of the measure,[59] noting that "Rule 24

---

[55] FED. R. CIV. PRO. 24(a).
[56] 6 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 24.03(3)(a) at 24-38 (3d. ed. 2000).
[57] *See Native Village of Quinhagak v. United States*, 35 F.3d 388, 394 (9th Cir. 1994) ("[T]he continuation of the opportunity for subsistence uses by rural residents of Alaska . . . is *essential* to Native physical, economic, traditional, and *cultural* existence . . . ." (emphasis in original, quoting ANILCA, 16 U.S.C. § 3111(1)); *United States v. Alexander*, 938 F.2d 942, 945 (9th Cir. 1991) ("Many Alaska natives who are not fully part of the modern economy rely on fishing for their subsistence. If their right to fish is destroyed, so too is their traditional way of life.").
[58] 684 F.2d 627 (9th Cir. 1982).
[59] *Id.* at 630.

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene    Page **12** of **17**
*State of Alaska v. Federal Subsistence Board*    Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 12 of 17

traditionally has received a liberal construction in favor of applications for intervention."[60] Similarly, the Tribe and its citizens are direct stakeholders in FSB's management of subsistence resources on federal lands. The State's Complaint attacks the FSB's regulatory authority to evaluate and issue special action requests from Kake and other communities.[61] Since this case challenges the law and process by which the Organized Village of Kake sought to protect its interests, its ability to protect those interests will be impaired should the State's claims succeed.

### D. The FSB Will Not Adequately Protect the Tribe's Interests.

Courts consider three factors when determining whether an existing party will adequately represent a proposed intervenor's interest: (1) whether the interest of a present party is such that it will undoubtedly make all of [the] proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether [the] proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.[62]

Intervention on the side of the federal government is permitted when representation is potentially inadequate.[63] "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."[64] Courts "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors even when the government purports to take the same position as intervenor."[65] This is because the United States represents the broader interest of the American people, which may or may not be identical to the interests of specific

---

[60] *Id. See also, State of Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980) (National Organization for Women had the right to intervene in a suit challenging procedures for ratification of the Proposed Equal Rights Amendment).
[61] ECF 1, Compl. at 76, 85.
[62] *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).
[63] *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 (1972); *United States v. Oregon*, 839 F.2d 635, 637 (9th Cir. 1988).
[64] *Id*. at 538 n.10.
[65] *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 736 (D.C. Cir. 2003).

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene    Page **13** of **17**
*State of Alaska v. Federal Subsistence Board*    Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG    Document 20-1    Filed 08/27/20    Page 13 of 17

intervenors.[66]  While the Organized Village of Kake and Defendants share the same objective of maintaining the FSB's management authority over subsistence resources on federal lands, the Tribe's interests are distinct from Defendants'.  The Organized Village of Kake's interest in defending the legality of the FSB's actions arises from its interest in protecting the subsistence way of life.  This is a deeply held, longstanding, and culturally-critical interest that is not shared by FSB; in contrast, the FSB is but a federal agency comprised of political appointees whose views may change with changing political currents and administrations.  History does not give the Tribe confidence in the federal government's constant amity or benevolent intent.[67]  Given the Tribe's distinct perspective and interest, it is unlikely that FSB will adequately represent the Tribe's interest.  The Organized Village of Kake accordingly meets the requirements for intervention as of right under Rule 24(a).

### III.  IN THE ALTERNATIVE, THE TRIBE SHOULD BE PERMITTED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)

Alternatively, the Court should allow the Organized Village of Kake permissive intervention in this matter.  Rule 24(b) provides in relevant part:  "On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact."[68]  "In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[69]

---

[66] *Id*.

[67] The U.S. Army's "sloop of war, the USS Saginaw," bombarded and destroyed Kake in the "Kake War of 1869." *See* Zachary R. Jones, *"Search For and Destroy": US Army Relations with Alaska's Tlingit Indians and the Kake War of 1869,* ETHNOHISTORY 60:1 (Winter 2013), *available at* https://www.academia.edu/5175559; *see also* Jacob Resneck, *Kake tribe urges renaming Saginaw Bay over 'Kake War' connection*, ALASKA PUB. MEDIA (May 27, 2019), available at https://www.alaskapublic.org/2019/05/27/kake-tribe-urges-renaming-saginaw-bay-over-kake-war-connection/.

[68] FED. R .CIV. PRO. 24(b).

[69] FED. R. CIV. PRO. 24(b)(3).  *See also Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F2d 470, 472 (9th Cir. 1972); 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1916 at 379 (1986).

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene   Page **14** of **17**
*State of Alaska v. Federal Subsistence Board*   Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 14 of 17

The first requirement for permissive intervention looks to issues of timeliness and potential prejudice to the parties. As previously demonstrated, the Tribe moves to intervene only two weeks after the Complaint was filed. The State's request for a preliminary injunction is not fully briefed, and the importance of the Tribe's intervention is necessary for the Court to have a full understanding of the issues involved in this matter. The Tribe's motion is timely, and its intervention will not prejudice existing parties.

The second requirement for permissive intervention is that there be a common question of law or fact. The Tribe seeks to defend the FSB's management authority and the processes it uses to evaluate requests from qualified subsistence users. The issues to be addressed are those raised by the State's Complaint. Moreover, the Tribe brings a perspective to the case distinct from that of the other parties on the common questions of law and fact. Under these circumstances, the common question requirement is met.[70]

The third requirement, an independent basis for subject-matter jurisdiction in this Court, is also met. This Court has jurisdiction over the Tribe's claims pursuant to 28 U.S.C. § 1331. The Tribe's motion to intervene therefore satisfies the requirements for permissive intervention under Rule 24(b).

## V. CONCLUSION

For the reasons stated above, the Organized Village of Kake respectfully requests that its motion to intervene be granted.

Respectfully submitted this 27th day of August, 2020.

---

[70] *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002) (Permissive intervention should be denied if the aspiring intervenor raised no questions in common with those in the main action, but "if there is a common question of law and fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention").

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene — Page **15** of **17**
*State of Alaska v. Federal Subsistence Board* — Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 15 of 17

/s/ Matthew N. Newman
Matthew N. Newman (ABA No. 1305023)
Erin C. Dougherty Lynch (ABA No. 0811067)
Heather R. Kendall Miller (ABA No. 9211084)
NATIVE AMERICAN RIGHTS FUND
745 W. 4th Avenue, Suite 502
Anchorage, Alaska 99501
Telephone: (907) 276-0680
Facsimile: (907) 276-2466
mnewman@narf.org
dougherty@narf.org
kendall@narf.org


Richard D. Monkman (ABA No. 8011101)
Lloyd B. Miller (ABA No. 7906040)
SONOSKY, CHAMBERS, SACHSE, MILLER &
  MONKMAN, LLP
725 East Fireweed Lane, Suite 420
Anchorage, AK 99503
Telephone: (907) 258-7388
Facsimile: (907) 272-8332
lloyd@sonosky.net
rdm@sonosky.net

*Attorneys for [Applicant] Intervenor-Defendant Organized Village of Kake*

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene    Page **16** of **17**
*State of Alaska v. Federal Subsistence Board*    Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG   Document 20-1   Filed 08/27/20   Page 16 of 17

Certificate of Service

I hereby certify that on August 27, 2020, a true and correct copy of the foregoing document was served electronically pursuant to the Court's electronic filing procedures upon the following:

Kevin G. Clarkson
Attorney General
Cheryl Brooking (ABA No. 9201169)
Senior Assistant Attorney General
ALASKA DEPARTMENT OF LAW
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: 907-269-5100
Facsimile: 907-276-3697
cheryl.brooking@alaska.gov

*Attorneys for Plaintiff State of Alaska*


Paul A. Turcke (Idaho Bar No. 4759)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-353-1389
Facsimile: 202-305-0506
paul.turcke@usdoj.gov

*Attorney for Defendants Federal Subsistence Board, et al.*


    /s/Matthew N. Newman
    Matthew N. Newman (ABA No. 1305023)

Memorandum in Support of [Applicant] Intervenor-Defendant's Motion to Intervene     Page **17** of **17**
*State of Alaska v. Federal Subsistence Board*     Case No. 3:20-cv-00195-SLG
Case 3:20-cv-00195-SLG    Document 20-1    Filed 08/27/20    Page 17 of 17