Jon Tillinghast
Alaska Bar No. 7410109
Simpson, Tillinghast, Sheehan & Araujo, PC
One Sealaska Plaza, Suite 300
Juneau, AK 99801
Telephone:    (907) 321-3405
Email:        jon@stsl.com


*Attorneys for Sealaska Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br>Department of Fish and Game,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>The FEDERAL SUBSISTENCE BOARD,<br>*et al.*,<br><br>　　　　Federal Defendants. | Case No. 3:20-cv-00195-SLG |

## AMICUS CURIAE MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

While Sealaska Corporation supports the federal government's opposition to the

State's preliminary injunction motion in its entirety, this memorandum is confined to only

one of the claims raised in the State of Alaska's opening memorandum—its assertion that

"Defendants violated ANILCA by authorizing a hunt for deer and moose near Kake only

Sealaska Corporation Amicus Curiae Memorandum　　　　　　　Page 1 of 7
*State of Alaska, ADF&G v. Federal Subsistence Board, et al.*
3:20-cv-00195-SLG

for tribal members of the Organized Village of Kake." [1]   The memorandum will demonstrate that: (i) The federal authorization here was facially neutral; (ii) Community hunts, under which a community organization, including Indian tribes, chooses the community's hunters is a recognized tool for helping rural residents meet their subsistence needs under both federal and State of Alaska law; and (iii) The State's argument thus essentially devolves into a discriminatory claim that Indian tribes are ineligible to participate in a generally-applicable community hunt program.

### 1.  The Federal Emergency Program at Issue Here is Facially Neutral

On June 4, 2020, the Federal Subsistence Board (the "Board") sent identical letters to Alaska's federal land managers delegating the authority to authorize limited hunts to counteract threatened food supply disruptions occasioned by the COVID-19 pandemic. *See Pl. Memo,* Ex. 2 at 29-32; ECF No. 4-3 at 33-36.   The delegation authorized the managers to "open" limited hunts and to set "community harvest limits." *Id.* at 30; ECF 4-3 at 34.  Nowhere in the delegation is the authorization limited to tribal-only hunts.

On June 4, 2020, the Petersburg Ranger District received a request from the Organized Village of Kake that the District authorize a limited community hunt.  *Id.,* Ex. 3; ECF No. 4-3 at 37. The Organized Village of Kake is a federally-recognized tribe, with whom the federal government has a government-to-government relationship. *Id.*; *see* 25 U.S.C. §3601(1).

---

[1] / *Memorandum in Support of Motion for TRO and Preliminary Injunction,* August 10, 2020 at ("Pl. Memo") at 14. ECF No. 4-1 at 14.

Sealaska Corporation Amicus Curiae Memorandum                                    Page 2 of 7
*State of Alaska, ADF&G v. Federal Subsistence Board, et al.*
3:20-cv-00195-SLG

In turn, on June 24, 2020 the Board authorized a limited Kake community hunt. *Id.*, Ex. 7; ECF No. 4-3 at 46. While the Board authorized the Organized Village of Kake to choose the actual hunters, it did not limit those choices to tribal members. To the contrary, participation was "limited to Federally qualified subsistence users" (*id.*), a term that included any person, Native or non-Native, who met the requisite rural residency requirements. 50 C.F.R. §100.5(a).

Nor was the game harvested in the community hunt limited to tribal members. Indeed, the federal manager sought and obtained the tribe's assurance that "the entire community will benefit from the special subsistence action subsistence harvest regardless of race or tribal status." [2]/

In a nutshell, neither this particular community hunt program; the federally-mandated choice of hunters; nor the sharing of the resultant meat, were Native-only.

2. **Community Hunts and Fisheries are a Recognized Tool for helping Rural Residents Meet their Subsistence Needs under both Federal and State of Alaska Law**

To begin with, federal subsistence hunting regulations frequently establish harvest limits by village rather than by individual hunter. [3]/ Under those rules, "An animal taken

---

[2] / *Federal Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction*, Aug. 24, 2020 at Ex. 4 ("*Def. Memo."*); ECF No. 15-5.

[3] / As just a handful of examples, *see*: 50 C.F.R. §26(n)(24)(iv)(Unit 24A) ("[Anaktuvuk Pass residents only]—that portion within the Gates of the Arctic National Park—community harvest quota of 60 sheep"); *id.* at §(26)(iv) ("community harvest quota of 60 sheep"); *id.* at §(19)(iii)(Unit 19) ("residents domiciled in Lime Village only—no individual harvest limit but a village harvest quota of 200 caribou").

Case 3:20-cv-00195-SLG   Document 21-2   Filed 08/28/20   Page 3 of 7

under Federal or State regulations by any member of a community with an established community harvest limit for that species counts toward the community harvest limit for that species." 50 C.F.R. §100.26(e)(2). To ensure that the community harvest limit is not exceeded, some "community reporting system" administered by a local coordinator is needed to coordinate the hunt. §26(n)(19)(iii)(Unit 19C, sheep) ("Reporting will be by a community reporting system.") The regulations neither require nor preclude the village tribe from serving as that community coordinator, nor do they generally limit which community organization may designate the actual hunters. The rules do, however, require tribal adminstration where the game is being taken for potlatch or other ceremonial purposes. *Id.* at §§26(m); 26(n)(6)(ii)(G) (Up to five permits will be issued by the Cordova District Ranger to the Native Village of Chenega annually to harvest up to five deer total from Federal public lands.)

On the fisheries side, tribally-conducted federal fisheries include community fish wheel operations in the Upper Copper River basin [4]/ and a gillnet and fish wheel owned by the Ninilchik Traditional Council. 50 C.F.R. §100.27(e)(10)(ii)(B)-(C). But the most substantial example of federal reliance on local tribal governments to implement Title VIII of ANILCA lies along the Kuskokwim River. Beginning in 2015, the Board began a

---

[4] / 50 C.F.R. §100.27(e)(11)(xiv) ("A subsistence fishing permit may be issued to a village council, or other similarly qualified organization whose members operate fish wheels for subsistence purposes in the Upper Copper River District, to operate fish wheels on behalf of members of its village or organization").

Sealaska Corporation Amicus Curiae Memorandum                Page 4 of 7
*State of Alaska, ADF&G v. Federal Subsistence Board, et al.*
3:20-cv-00195-SLG

longstanding community fishing program on that river that relied on local tribes to administer. [5]/  In 2015, for example:

> The [community harvest] permit was issued to a community representative, identified by the tribe, who was responsible for overseeing the community fishery. A limited number of fishermen were designated to catch a community's allocation of Chinook Salmon. Only those who were identified as designated fishers in possession of a designated fishing permit could harvest Chinook Salmon under the program.

*Id.*  That action grew into a memorandum of understanding between the U.S. Fish and Wildlife Service and the Kuskokwim River Inter-Tribal Fish Commission that continued this regulatory paradigm to the present day. [6]/

For its part, the Alaska Department of Fish and Game manages a community harvest program that mirrors its federal counterpart.  Under ADF&G rules, any "person representing a group of 25 or more residents or members may apply…for a community harvest permit."  5 AAC 92.072(c)(1).  A "community" is broadly defined to mean:

> …a mutual support network of people who routinely (at least several times each year) provide each other with physical, emotional, and nutritional assistance in a multi-generational and inter/intra familial manner to assure the long- term welfare of individuals, the group, and natural resources they depend on or purposes of this regulation, a "community" or "group" shares a common interest in, and participation in uses of, an identified area and the wildlife populations in that area, that is consistent with the customary and traditional use pattern of that wildlife population and area as defined by the board.

---

[5] / Federal Subsistence Board, *Staff Analysis: Temporary Special Action FSA 16-01, Appendix A* (undated) at 2 (Exhibit 1).
[6] / *Memorandum of Understanding Between United States Department of the Interior, U.S. Fish and Wildife Service Alaska Region and Kuskokwim River Inter-Tribal Fish Commission*, April 6,2016 (Exhibit 2).

Sealaska Corporation Amicus Curiae Memorandum                          Page 5 of 7
*State of Alaska, ADF&G v. Federal Subsistence Board, et al.*
3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 21-2   Filed 08/28/20   Page 5 of 7

Id. at 072(i)(2).  Indian tribes plainly fall within that definition.  Certainly nothing excludes them.

ADF&G anticipates that the community will assign actual hunting responsibilities to specific, experienced hunters.  For example, ADF&G's authorization for the FY 2020-21 Copper River Basin community hunt provides that: "[G[roups may select from their group members, individual hunters who may possess particular expertise in hunting to harvest wildlife resources on behalf of the community or group." 7/   As is customary with community hunts, and regardless of whoever does the actual hunting, the harvested meat must be shared with the community and at least one communal sharing event is required. Id. at 5.

### 3. The State's Argument thus Essentially Devolves into a Discriminatory Claim that Indian Tribes are Ineligible to Participate in a Generally-Applicable Community Hunt Program

The Kake community hunt at issue here fits neatly within the Board's and the State of Alaska's community harvest programs.   That an Indian tribe was designated to administer this one particular hunt was the product of three rather substantial considerations: (i) the Tribe was the only party that applied to administer the hunt; (ii) a community-based hunt was critical here to assure that the food harvested was shared by the entire community and not just individual hunters; and (iii) the Tribe was the most

---

[7] / ADF&G, *Copper Basin Caribou Community Subsistence Harvest Permit Program, 2020-2021*. Sept., 2019 at 1 (Exhibit 3); *see also* ADF&G, *Copper Basin Moose Community Subsistence Harvest Permit Program, 2020-2021*. Sept., 2019 at 1 (Exhibit 4).

Sealaska Corporation Amicus Curiae Memorandum                                    Page 6 of 7
*State of Alaska, ADF&G v. Federal Subsistence Board, et al.*
3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 21-2   Filed 08/28/20   Page 6 of 7

suitable local governmental entity to oversee the hunt. That last point warrants emphasis: in most Alaska villages, the local tribe is the steward of the community's hunting traditions and knowhow, and it is most attuned to the community's existing network for sharing subsistence resources. [8]/ Indeed, in many villages, the tribe will be the only local government entity.

The State's goal here is to deprive Kake, and by extension every other Alaska tribe, from participating in an otherwise generally-available subsistence management program. To Sealaska, that means that there is indeed discriminatory mischief at work here. But it is not coming from the Federal Subsistence Board.

Respectfully submitted this 28th day of August, 2020.

> By: _/s/ Jon Tillinghast_____
> Jon Tillinghast
> Simpson, Tillinghast, Sheehan & Araujo PC
> One Sealaska Plaza, Suite 300
> Juneau, Alaska 99801
> Telephone: (907) 321-3405
> Email: jon@stsl.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

> _/s/ Jon Tillinghast_____
> Jon Tillinghast

---

[8] /*See* Langdon, *Subsistence and Tlingit Culture* (Exhibit 5).

Sealaska Corporation Amicus Curiae Memorandum                    Page 7 of 7
*State of Alaska, ADF&G v. Federal Subsistence Board, et al.*
3:20-cv-00195-SLG