# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

STATE OF ALASKA, DEPARTMENT OF
FISH AND GAME

         Plaintiff,

    v.

FEDERAL SUBSISTENCE BOARD, *et
al.,*

         Defendants,

    v.

ORGANIZED VILLAGE OF KAKE*,*

         Defendant-intervenor.

Case No. 3:20-cv-00195-SLG

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION REGARDING GAME MANAGEMENT UNITS 13A AND 13B

Before the Court at Docket 3 is the State of Alaska, Department of Fish and Game ("the State")'s Motion for Preliminary Injunction. Defendants responded in opposition at Docket 18. The State replied at Docket 24. The Court heard argument on the motion on September 8, 2020.

The State commenced this action on August 10, 2020, against the Federal Subsistence Board ("FSB"), and several other federal officials (collectively,

"Defendants").[1]   The State alleges that the FSB violated Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA"), ANILCA § 1314, the Administrative Procedure Act ("APA"), and the Open Meetings Act by adopting a temporary special action to close moose and caribou hunting on federal public lands in Game Management Units 13A and 13B to non-federally qualified users.[2] The State moved for a temporary restraining order and preliminary injunction prohibiting Defendants from closing those units.[3]

## BACKGROUND

On July 16, 2020, the FSB held a Work Session Meeting by teleconference; the session was open to the public.[4]   Immediately prior to the meeting, the FSB

---

[1] The other defendants are David Schmid, in his official capacity as the Regional Supervisor of the U.S. Forest Service; Sonny Perdue, III, in his official capacity as the U.S. Secretary of Agriculture; Gene Peltola, in his official capacity as Alaska Regional Director for the Bureau of Indian Affairs; Greg Siekaniec, in his official capacity as Alaska Regional Director for the U.S. Fish and Wildlife Service; Chad Padgett, in his official capacity as State Director for Alaska U.S. Bureau of Land Management; Don Striker, in his official capacity as Alaska Regional Supervisor for the National Park Service; David Bernhardt, in his official capacity as the U.S. Secretary for the Interior; Anthony Christianson, in his official capacity as Chair of the FSB; Charlie Brower, in his official capacity as a member of the FSB; and Rhonda Pitka, in her official capacity as a member of the FSB.  *See* Docket 1.

[2] Docket 1 at 18, ¶ 68 (Claim I); Docket 1 at 19–20, ¶¶ 77–80 (Claim IV); Docket 1 at 20, ¶¶ 82–83 (Claim V); and Docket 1 at 21–22, ¶¶ 89–90 (Claim VI).  For purposes of this proposal, the FSB defines federally qualified subsistence users as "rural residents who have been determined by the Federal Subsistence Board to have customary and traditional use of moose and caribou in Unit 13" pursuant to 50 C.F.R. 100.24  Docket 24-2 at 1.  The parties use the terms "non-federally qualified users" and "state hunters" interchangeably.  *See, e.g.*, Docket 24-2 at 1; Docket 18-1 at 22.

[3] Docket 3.  The Court denied the motion for a temporary restraining order on August 14, 2020. Docket 10.

[4] Docket 18-1 at 1; Docket 18-2 at 2.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 2 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 2 of 33

held a closed executive session to review "legal issues" and the agenda for the meeting, as well as to update new Board members.[5]  At the public meeting, the FSB considered five special action proposals, including Wildlife Special Action 20-03 ("WSA 20-03") pertaining to Game Management Unit 13.[6]

Alaska is divided into 26 Game Management Units ("Units").[7]  Unit 13 is a popular area for moose and caribou hunting due to its road accessibility.[8]  Federal public lands make up 12.4% of Unit 13, of which approximately half is part of Denali National Park.[9]  The Unit is divided into five subunits, A through E, of which Units 13A and 13B are the most readily accessible by road.[10]  The Richardson Highway cuts through Unit 13B,[11] and caribou migration across the highway leads to traffic jams caused by hunters crossing the highway or parking in narrow and dangerous sections of the highway in pursuit of caribou.[12]

---

[5] Docket 18-1 at 2.

[6] Docket 18-1 at 2–3.

[7] 50 C.F.R. 100.4; see also *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1189 (9th Cir. 2000).

[8] Docket 18-1 at 7.

[9] Docket 18-1 at 8, 16.

[10] Tr. Sept. 8, 2020 Oral Argument at 28:5–12 (transcript to be docketed on Monday, Sept. 21, 2020).

[11] Docket 18-2 at 3.

[12] Docket 3-3 at 28 ("[Q]uestionable hunting practices do create a public safety concern when caribou are migrating across the Richardson Highway in late fall or early winter.  This public safety concern is most often a result of traffic jams caused by hunters walking on and/or parking on the pavement of the Richardson Highway in narrow and dangerous sections of the road in an attempt to harvest caribou that have just been witnessed crossing the road.").

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 3 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 3 of 33

The proposal for WSA 20-03 was submitted by a resident of Glennallen, Alaska, who requested that the FSB "close Federal public lands in Unit 13 to the hunting of moose and caribou by non-Federally qualified users for the 2020/21 season."[13] The FSB had considered and rejected an identical proposal for the 2019/2020 season, WSA 19-03 (the "2019 Proposal"),[14] reasoning then that the closure was not warranted for conservation, continuation of subsistence use, or safety reasons, as required by ANILCA.[15]

At the July 16, 2020 meeting, Lisa Maas, the Acting Policy Coordinator/Wildlife Biologist for the Office of Subsistence Management ("OSM") presented a summary of the analysis for WSA 20-03 to the FSB. First, Ms. Maas explained that WSA 20-03's proponent requested the closure for several reasons: the "extreme hunting competition" faced by federally qualified users in Unit 13 resulting from the number of non-federally qualified users in the Unit, the negative effects of that competition on the harvest by federally qualified rural subsistence users, and concerns for public safety.[16] The proponent suggested that the requested closure could serve as "an experiment" to determine whether federal

---

[13] Docket 18-1 at 4.

[14] Docket 18-1 at 5.

[15] The FSB determined in 2019 that annual harvest by federally qualified subsistence users had remained consistent in comparison to the harvest rates of non-federally qualified users and that the safety concerns would not be alleviated since non-federally qualified users would still be able to cross federal public lands to access state and private lands. Docket 18-1 at 5.

[16] Docket 18-1 at 4.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 4 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 4 of 33

land closure would lead to increased harvest success rates for federally qualified subsistence users.[17]

Next, Ms. Maas summarized written comments submitted by Alaska residents as well as by the State itself.[18] Some residents opposed WSA 20-03 on the basis that the caribou herd was above population objectives and that public lands should remain open to all of the public.[19] The State commented that "no conservation concerns exist for either moose or caribou in Unit 13," that "hunting pressure has not been shown to displace moose or caribou," and that "closure would not likely affect hunting success . . . of Federally-qualified users or address public safety concerns."[20] Ms. Maas also summarized testimony from a public hearing where seven members of the public testified in support of the proposal and five testified in opposition.[21] Supporters cited to ANILCA's rural subsistence priority and noted that federal public lands make up only a small portion of Unit

---

[17] Docket 18-1 at 4.

[18] Docket 18-1 at 5.

[19] Docket 18-1 at 5.

[20] Docket 18-1 at 5. The written memorandum from Ben Mulligan of the Alaska Dept. of Fish and Game to the FSB was filed with the Court at Docket 3-3. Therein, the State concludes that "[t]here is no evidence that hunting pressure has displaced moose or caribou from traditional migration corridors. The data indicates that restricting federal lands to federally qualified hunters is not likely to impact hunt success for federally qualified hunters. The action proposed in WSA20-03 . . . will not address the perceived public safety concern on federal lands during the caribou hunting season particularly along the Richardson Hwy." Docket 3-3 at 29.

[21] Docket 18-1 at 6.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 5 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 5 of 33

13,[22] whereas opponents emphasized a lack of conservation need and a belief that public lands should remain open to all.[23] Along with the proponent of the proposal, several members of the public testified about safety and overcrowding concerns.[24]

Ms. Maas shared information about herd population and harvest success rates and trends for federally qualified subsistence users.[25] She concluded that "[c]losures for conservation is not warranted as moose and caribou populations are within or above management objectives," and that the "effectiveness of the closure for the continuation of subsistence uses of caribou is uncertain as caribou harvest is primarily related to availability and caribou have not been available on Federal public lands in recent years."[26] However, she also concluded that "[c]losure for continuation of subsistence uses of moose may be warranted," reasoning that harvest success rates are lower under federal than state regulations, and that "[c]losure for reasons of public safety may be warranted" as well.[27] Ms. Maas reported that:

> Safety concerns resulting from intense hunting pressure, overcrowding, disruption of hunts, and unsafe shooting practices have

---

[22] Docket 18-1 at 6.

[23] Docket 18-1 at 6.

[24] Docket 18-1 at 6.

[25] Docket 18-1 at 7.

[26] Docket 18-1 at 8. Ms. Maas added that "a closure may reduce competition and limit disruption to caribou movements," thereby increasing harvest success for federally qualified subsistence users. Docket 18-1 at 8.

[27] Docket 18-1 at 8.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 6 of 33

been repeatedly stated by all user groups.  While these concerns may be better addressed through increased law enforcement or restrictions along road sides, these options have not been implemented and are outside the Board's authority.[28]

Ms. Maas explained that the OSM supported the proposal, but with modifications. The OSM proposed that only federal public lands in Units 13A and 13B would be closed, and they would be closed through the 2022 regulatory cycle so as to "reduce the administrative burden associated with processing special action requests."[29]  Ms. Maas reasoned that "this has been an issue for decades, [so] no change[s] in the situation are expected between this year and next year."[30]  She explained that if all the federal public lands in Unit 13 were closed, it would entail closing 6.4% of Unit 13, whereas closing the federal public lands in Units 13A and 13B would only entail closing 2.7% of Unit 13.[31]

Board members were given an opportunity to ask questions, and the members inquired whether issuing fewer permits or closing federal public lands in Unit 13 to non-federally qualified users for a 10-day period would alleviate some of the concerns.[32]  Ms. Maas replied that federal permits had only increased slightly

---

[28] Docket 18-1 at 8–9.

[29] Docket 18-1 at 9.

[30] Docket 18-1 at 9.

[31] Docket 18-1 at 16.  Although federal public lands make up 12.4% of Unit 13, approximately half of those lands are part of Denali National Park and are effectively closed to non-federally qualified users already.  Docket 18-1 at 16.

[32] Docket 18-1 at 9–10, 12–13.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 7 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 7 of 33

over the years and that a short-term closure would not address the safety concerns.[33]

Ms. Maas reported that the InterAgency Staff Committee ("ISC") had also recommended adopting WSA 20-03, with the OSM's proposed modifications, on the basis that it is "justifiable to improve safety and reduce user conflicts while continuing and potentially increasing the opportunity for subsistence uses of moose and caribou in Units 13A and 13B."[34] However, the ISC cautioned that the closure may not be effective, given that it would not prevent anyone from crossing the closed lands to access State-managed lands in order to hunt moose and caribou on those state lands.[35] Comments were solicited from other Regional Advisory Council Chairs, but there were none; nor were there any comments from the Native Liaison for OSM.[36] Lastly, the public was again allowed to weigh in.[37] Karen Linnell with the Ahtna Intertribal Resource Commission testified in support of the proposal, as did Jim Simon, a former federally qualified subsistence user who owns property on Unit 13.[38] Mr. Simon testified that he regularly travels along the Richardson Highway through Units 13A and 13B, and has "had numerous very

---

[33] Docket 18-1 at 10–12.

[34] Docket 18-1 at 17.

[35] Docket 18-1 at 18.

[36] Docket 18-1 at 19.

[37] Docket 18-1 at 20.

[38] Docket 18-1 at 20.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 8 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 8 of 33

dangerous situations with road hunting in the area," adding that "just the amount of traffic . . . on the highway does present a significant public hazard."[39]

Lastly, Ben Mulligan weighed in on behalf of the State, explaining that the data submitted to the FSB shows that an increase in state hunters correlates with an increase in harvest success of federally qualified subsistence users.[40] Mr. Mulligan added that, even if the proposal were adopted, there may still be "a good level of traffic" through Units 13A and 13B since people will be able to transition through or camp in those subunits.[41]

After the testimony concluded, the FSB deliberated and the members voted.[42] Chad Padgett with the Bureau of Land Management ("BLM") voted against the proposal, reasoning that the closure was not necessary for continuation of subsistence uses, for reasons of public safety, or for conservation of healthy populations.[43] He emphasized the difficulties of navigating the closure due to "complex and ill-defined boundaries between State and Federal lands in Unit 13."[44] However, the remaining members of the FSB all voted in favor of adopting the proposal as modified, including Greg Siekaniec for the U.S. Fish & Wildlife Service,

---

[39] Docket 18-1 at 21.

[40] Docket 18-1 at 21–22.

[41] Docket 18-1 at 22.

[42] Docket 18-1 at 22–27.

[43] Docket 18-1 at 22–23.

[44] Docket 18-1 at 23.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 9 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 9 of 33

Dave Schmid for the U.S. Forest Service, Gene Peltola for the Bureau of Indian Affairs, Don Striker for the National Park Service, Rhonda Pitka, and Anthony Christianson.[45] Among the reasons given by those members were that the proposal "is necessary to provide for the continued subsistence use" of moose and caribou and that it could "lead towards addressing the safety concerns."[46]

On July 31, 2020, the FSB issued a press release answering "common questions and concerns about the closure."[47] It included a map indicating the closure area[48] and explained that it was closed only to state hunters for caribou and moose but remained open for camping, hunting other species, and other outdoor activities.[49] The press release also explained that the closure was adopted "for reasons of public safety and continuation of subsistence uses" and that Units 13A and 13B were targeted because "this is the area where most overcrowding, disruption of hunts, and serious safety concerns have occurred."[50] Finally, it noted that in the closure area, non-federally qualified users "are allowed to take moose and caribou between the edge of the river and the ordinary high water mark along

_____

[45] Docket 18-1 at 25–27.

[46] Docket 18-1 at 26 (statement of Mr. Peltola). Mr. Striker noted that "it's troubling . . . that the Federally-qualified subsistence user success rate is significantly lower than non-Federally-qualified users." Docket 18-1 at 26.

[47] Docket 18-2 at 1.

[48] Docket 18-2 at 3.

[49] Docket 18-2 at 1.

[50] Docket 18-2 at 2.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 10 of 33

Case 3:20-cv-00195-SLG  Document 28  Filed 09/18/20  Page 10 of 33

navigable waters," but instructed that both the hunter and the caribou "must be *above* the actual water line but *below* the ordinary high water mark for the harvest to be legal."[51]  On September 2, 2020, the FSB issued a modified press release, clarifying that non-federally qualified users may take moose and caribou on gravel bars along navigable waters below the high water mark on federal public lands, so long as the moose and caribou are not swimming.[52]

On August 10, 2020, the State commenced this action and moved for injunctive relief.[53]  The state hunting season for caribou in Unit 13 opened on August 10, 2020, and the state hunting season for moose in Unit 13 opened on August 20, 2020.[54]

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as jurisdictional predicate."[55]

---

[51] Docket 18-2 at 2 (emphases in original).

[52] Docket 24-2 at 2; *see also* Docket 3-2 at 3, ¶ 9 (citing state regulations 5 AAC 92.080(4) and 5 AAC 92.085(7) prohibiting shooting from a boat unless the motor is off and prohibiting taking a swimming moose or caribou).

[53] Docket 1; Docket 3.

[54] Docket 3-1 at 2.

[55] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 11 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 11 of 33

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[56] *Winter* was focused on the second element, and clarified that irreparable harm must be likely, not just possible, for an injunction to issue.[57]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element *Winter* test."[58] Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor."[59] Injunctive relief is an equitable remedy, and "'[t]he

---

[56] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

[57] *Winter*, 555 U.S. at 22; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

[58] *All. for the Wild Rockies*, 632 F.3d at 1131–35.

[59] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 12 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 12 of 33

essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case.'"[60]

## DISCUSSION

### A. Alaska National Interest Lands Conservation Act ("ANILCA")

In enacting ANILCA, Congress sought to preserve Alaska's natural resources, historic sites, and ecosystems, while also providing the continued opportunity for rural residents to engage in a subsistence way of life.[61] Title VIII of ANILCA expresses Congress's policy that "the utilization of lands in Alaska is to cause the least adverse impact possible on rural residents who depend on subsistence uses of the resources of such lands."[62] Thus, with Title VIII of ANILCA, "Congress . . . created a subsistence management and use program."[63] The program grants priority to subsistence use of resources:

> [N]onwasteful subsistence uses of fish and wildlife and other renewable resources shall be the priority consumptive uses of all such

---

[60] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

[61] *See Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1091 (9th Cir. 2008) ("Congress enacted ANILCA to further two ends. The first is: 'to preserve unrivaled scenic and geological values associated with natural landscapes; to provide for the maintenance of sound populations of, and habitat for, wildlife species of inestimable value to the citizens of Alaska and the Nation . . . ; to preserve in their natural state extensive unaltered arctic tundra, boreal forest, and coastal rainforest ecosystems; to protect the resources related to subsistence needs; to protect and preserve historic and archeological sites, rivers, and lands, and to preserve wilderness resource values and related recreational opportunities . . . ; and to maintain opportunities for scientific research and undisturbed ecosystems.' 16 U.S.C. § 3101(b). The second, in order though not in priority, is 'to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so.' Id. § 3101(c).") (ellipses in original).

[62] 16 U.S.C. § 3112(1) (Section 802).

[63] *Fed. Subsistence Bd.*, 544 F.3d at 1091.

---

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 13 of 33

resources on the public lands of Alaska when it is necessary to restrict taking in order to assure the continued viability of a fish or wildlife population or the continuation of subsistence uses of such population, the taking of such population for nonwasteful subsistence uses shall be given preference on the public lands over other consumptive uses.[64]

Section 815 of Title VIII limits the powers granted to prioritize subsistence uses:

Nothing in this title shall be construed as . . . authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands (other than national parks and park monuments) unless necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in section 816 [16 U.S.C. § 3126], to continue subsistence uses of such populations, or pursuant to other applicable law . . .[65]

In turn, Section 816 provides that "[n]othing in this title is intended to enlarge or diminish the authority of the Secretary to designate areas where, and establish periods when, no taking of fish and wildlife shall be permitted on the public lands for reasons of public safety, administration, or to assure the continued vitality of a particular fish or wildlife population."[66]

Congress authorized the Secretary of the Interior and the Secretary of Agriculture to promulgate regulations in furtherance of its directives: "The

---

[64] 16 U.S.C. § 3112(2).

[65] 16 U.S.C. § 3125(3).

[66] 16 U.S.C. § 3126(b) (Section 816). It further provides that "[i]f the Secretary determines that an emergency situation exists and that extraordinary measures must be taken for public safety or to assure the continued viability of a particular fish or wildlife population, the Secretary may immediately close public lands . . . to the subsistence uses of such population . . . ." *Id.* However, these emergency closures may not extend longer than sixty days without notice and a public hearing. *Id.*

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 14 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 14 of 33

Secretary shall prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this title."[67]  The Secretaries created the Federal Subsistence Board[68] and charged it with "administering the subsistence taking and uses of fish and wildlife on public lands."[69]

Among the FSB's powers is the authority to adopt special actions prescribed by 50 C.F.R. 100.19, which provides in part:

> (b)  Temporary special actions. After adequate notice and public hearing, the Board may temporarily close or open public lands for the taking of fish and wildlife for subsistence uses, or modify the requirements for subsistence take, or close public lands for the taking of fish and wildlife for nonsubsistence uses, or restrict take for nonsubsistence uses.
>
> > (1) The Board may make such temporary changes only after it determines that the proposed temporary change will not interfere with the conservation of healthy fish and wildlife populations, will not be detrimental to the long-term subsistence

---

[67] 16 U.S.C. § 3124.  *See Fed. Subsistence Bd.*, 544 F.3d at 1092 n.1 (explaining that Congress authorized the Secretary of the Interior and the Secretary of Agriculture to promulgate regulations, and they issued identical regulations codified at 50 C.F.R. 100 and 36 C.F.R. 242).

[68] The FSB is made up of:

A Chair to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; two public members who possess personal knowledge of and direct experience with subsistence uses in rural Alaska to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; the Alaska Regional Director, U.S. Fish and Wildlife Service; Alaska Regional Director, National Park Service; Alaska Regional Forester, U.S. Forest Service; the Alaska State Director, Bureau of Land Management; and the Alaska Regional Director, Bureau of Indian Affairs.

50 C.F.R. 100.10(b)(1).

[69] *Fed. Subsistence Bd.*, 544 F.3d at 1092 (citing 50 C.F.R. 100.10(a)).  Previously, the State of Alaska implemented ANILCA through state law; in 1989, the Alaska Supreme Court held that providing a subsistence priority for rural Alaskans, to the exclusion of other Alaskans, violated the Alaska Constitution, at which point the Secretaries assumed responsibility for implementing ANILCA.  *Id.* at 1092, n.3.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 15 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 15 of 33

use of fish or wildlife resources, and is not an unnecessary restriction on nonsubsistence users. The Board may also reopen public lands to nonsubsistence uses if new information or changed conditions indicate that the closure is no longer warranted.

> (i) Prior to implementing a temporary special action, the Board will consult with the State of Alaska and the Chairs of the Regional Councils of the affected regions.

> (ii) If the timing of a regularly scheduled meeting of the affected Regional Council so permits without incurring undue delay, the Board will seek Council recommendations on the proposed temporary special action. Such Council recommendations, if any, will be subject to the requirements of § 100.18(a)(4).

> (2) The length of any temporary action will be confined to the minimum time period or harvest limit determined by the Board to be necessary under the circumstances. In any event, a temporary opening or closure will not extend longer than the end of the current regulatory cycle.

The FSB invoked this special action process in issuing the closure of Units 13A and 13B.[70]

## B. The State's Motion for a Preliminary Injunction

The State contends that the FSB's adoption of WSA 20-03 violates (1) Title VIII of ANILCA and its implementing regulations, (2) the Administrative Procedure Act ("APA"), and (3) the Open Meetings Act (also known as the Sunshine Act). The Court begins its analysis by evaluating the State's likelihood of success on the merits of each claim.

---

[70] Docket 18-2 at 2 ("[T]he Federal Subsistence Management Program can make in-season, out-of-cycle, temporary regulation changes through the Special Action process.").

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 16 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 16 of 33

### i. Title VIII of ANILCA

The State contends that Defendants violated Title VIII of ANILCA by authorizing restrictions on hunting "based on competition or numbers of hunters in an area," and as an "experiment[]."[71]  The State reasons that Title VIII of ANILCA limits the instances where restriction on taking of fish and wildlife is allowed, and excessive competition is not among them.[72]  The State adds that to the extent the FSB relied on the "public safety" wording in Section 816 of ANILCA to enact a closure, Section 804 of ANILCA—titled "Preference for subsistence uses"—does "not include public safety as a reason for restricting use."[73]  Lastly, the State contends that the FSB violated its own regulation, 50 C.F.R. 100.19(b)(2), by doubling the closure period of the proposal.[74]

Defendants respond that Section 815 of ANILCA confers on the FSB the authority to restrict nonsubsistence uses so long as it is "necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in section 3126 of this title [section 816], to continue subsistence uses of such

---

[71] Docket 3-1 at 10.  Because the record shows that none of the members of the FSB adopted the reasoning that WSA 20-03 could be useful as an experiment to determine whether federal land closure would lead to increased harvest success rates for federally qualified subsistence users, the Court need not address the State's arguments to that effect.  *See, e.g.*, Docket 18-1 at 17 (ISC concurring with OSM that proposal is not valid as an experiment); Docket 18-1 at 23 (Board member explaining that the experimental reasons proposed are "outside of the scope of this Board's regulatory authority").

[72] Docket 3-1 at 10–11.

[73] Docket 3-1 at 11.

[74] Docket 3-1 at 12.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 17 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 17 of 33

populations, or pursuant to other applicable law."[75]  Defendants contend that the FSB adopted the special action based on two allowable grounds: to ensure continued subsistence use opportunities and to address public safety concerns resulting from overcrowding and user conflict along the Richardson Highway.[76] Defendants add that 50 C.F.R. 100.19 is also an "applicable law" that permits the FSB to "temporarily close . . . public lands for the taking of fish and wildlife for subsistence uses, or . . . for nonsubsistence uses."[77]  They conclude by stating that the FSB regularly takes such actions, and thus the closure was in accordance with established practice as well as the letter of the law.[78]

The Court agrees with Defendants that the record shows that the FSB adopted WSA 20-03 by a six-to-one vote to address public safety concerns and to provide for continued subsistence uses.  For example, FSB member Gene Peltola of the Bureau of Indian Affairs explained that he voted to adopt the proposal as modified because "it is necessary to provide for the continued subsistence use" of moose and caribou and because it "could lead towards addressing the safety

---

[75] Docket 18 at 14–15 (quoting 16 U.S.C. § 3125(3)).

[76] Docket 18 at 2.

[77] Docket 18 at 15 (quoting 50 C.F.R. 100.19(b)). Defendants maintain that the "statute of limitations has run on Plaintiff's ability to raise either a procedural or substantive challenge to the regulation, which became effective in 2010."  Docket 18 at 15 (citing *Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)).

[78] Docket 18 at 16 (citing *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1195 (9th Cir. 2000)).

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 18 of 33
Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 18 of 33

concerns."[79] Similarly, FSB member Don Striker of the National Park Service explained that he voted to adopt the proposal as modified because "it is merited for the continuation of subsistence uses" and because "it's pretty clear that there's a compelling basis with respect to safety."[80] Board member Rhonda Pikta also voted yes, citing "public safety concern[s]."[81]

Title VIII of ANILCA expressly provides that the FSB has the authority to restrict the taking of wildlife on federal public lands,[82] and indeed, the State does not dispute that the FSB wields this authority.[83] Accordingly, the State's ANILCA challenge is limited to whether the FSB adopted the closure on allowable grounds. The Court finds that by its plain language Section 815 of ANILCA gives the FSB the authority to adopt restrictions on nonsubsistence uses on either continued subsistence use grounds or public safety grounds, as they did in adopting WSA 20-03. The former is one of the enumerated grounds in Section 815, and the latter is incorporated by reference to Section 816.[84] Specifically, Section 815 provides

---

[79] Docket 18-1 at 26.

[80] Docket 18-1 at 26.

[81] Docket 18-1 at 27.

[82] *See, e.g.*, 16 U.S.C. §§ 3114, 3125, 3126.

[83] Tr. Sept. 8, 2020 Oral Argument at 5:11–13 ("The Court: They have closure authority clearly as I read it. Would you agree there? Counsel for the State: Absolutely, yes.").

[84] The State agrees that Section 815 incorporates Section 816 and that together those sections clarify the FSB's authority for closure. *See* Tr. Sept. 8, 2020 Oral Argument at 25:6–13 ("The Court: All right. So do you agree that Section 815 incorporates the 816 language about public safety? Counsel for the State: Yes. The Court: All right. Very good. Counsel for the State: So reading those two sections together is helpful in understanding what authority Congress

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 19 of 33

that "nothing in [Title VIII] shall be construed as . . . authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands . . . *unless necessary . . . for the reasons set forth in [Section 816] of this title, [or] to continue subsistence uses of such populations.*"[85]   Section 816 provides that "nothing in [Title VIII] is intended to enlarge or diminish the authority . . . [to] establish periods when, no taking of fish and wildlife shall be permitted on the public lands *for reasons of public safety.*"[86]

Although the State contends that Section 804 does not provide for restricting hunting based on public safety, Section 804 governs the restriction of *subsistence* uses and does not touch on the FSB's authority to restrict nonsubsistence uses.[87] Moreover, although the State correctly notes that "competition" is not one of the enumerated reasons for restriction of nonsubsistence uses under Section 815, if the levels of competition interfere with the continuation of subsistence uses, or give rise to public safety concerns, restrictions may become necessary for those enumerated reasons.   Accordingly, the Court concludes that the State has not demonstrated either a likelihood of success or serious questions going to the

_____

conveyed for closures.").

[85] 16 U.S.C. § 3125(3) (emphasis added).

[86] 16 U.S.C. § 3126(b) (emphasis added).

[87] *See* 16 U.S.C. § 3114.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 20 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 20 of 33

merits of its claim that the FSB violated Title VIII of ANILCA by adopting WSA 20-03.

The Court next considers whether the FSB violated 50 C.F.R. 100.19(b) by modifying WSA 20-03 to extend the closure period.[88]  Although the proposal was originally for a closure during the 2020/2021 season,[89] the OSM proposed to modify it to extend through the 2021/2022 season.[90]  The OSM explained that 2020/2022 was a regulatory cycle and that extending the request would "reduce the administrative burden associated with processing special action requests," adding that "this has been an issue for decades, no changes in the situation are expected between this year and next year."[91]  The FSB adopted the proposal as modified to extend through 2022.

The FSB's regulation for special temporary actions provides that "[t]he length of any temporary action will be confined to the minimum time period or harvest limit determined by the Board to be necessary under the circumstances. In any event, a temporary opening or closure will not extend longer than the end of the current regulatory cycle."[92]  Because the closure term is consistent with the

---

[88] *See* Docket 3-1 at 12 (State's argument).

[89] Docket 18-1 at 4.

[90] Docket 18-1 at 9.

[91] Docket 18-1 at 9.

[92] 50 C.F.R. 100.19(b)(2).

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 21 of 33

outer limits of 50 C.F.R. 100.19(b)(2)—the end of the current regulatory cycle—and the record provides support for the conclusion that two years might be the "minimum time period . . . necessary under the circumstances" due to the ongoing nature of the issues in Unit 13, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of its claim that Defendants violated the implementing regulations of ANILCA in adopting WSA 20-03.

### ii. Administrative Procedure Act ("APA")

The Court turns to the State's claims that the FSB's implementation of WSA 20-03, as modified, is arbitrary, capricious, and not in accordance with law because the "facts and testimony presented to the Federal Subsistence Board simply did not justify closure for safety reasons, conservation, or continuation of subsistence uses as required by ANILCA."[93]

Section 706 of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[94] The Court's review of agency action under § 706(2) is narrow: "[A] court

---

[93] Docket 3-1 at 12. Because the record shows that the FSB did not adopt WSA 20-03 based on conservation concerns, and Defendants do not purport otherwise, the Court need not consider the State's contention that the record shows that the closure is not necessary for the conservation of healthy populations of moose and caribou.

[94] 5 U.S.C. § 706(2)(A).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 22 of 33

is not to substitute its own judgment for that of the agency."[95]  Such deference is especially appropriate where "the challenged decision implicates substantial agency expertise."[96]  "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[97]  As the Ninth Circuit explained:

> ['An] agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'[98]

The Court first considers the State's contention that the closure provided for by WSA 20-03 was not "necessary" for public safety or continued subsistence uses as required by 16 U.S.C. § 3125, and was therefore arbitrary, capricious, and not in accordance with law.[99]

The record shows that in deciding to adopt the closure, the FSB invoked public safety concerns.[100]  This determination was based on testimony by the

---

[95] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[96] *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000).

[97] *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

[98] *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) (alteration in original) (quoting *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011)).

[99] Docket 3-1 at 12; Docket 24 at 2, n.2.

[100] As described *supra* at pages 18–19, several members of the FSB specifically invoked safety

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 23 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 23 of 33

proponent;[101] testimony by members of the public;[102] the recommendation of the OSM that "[s]afety concerns resulting from intense hunting pressure, overcrowding, disruption of hunts, and unsafe shooting practices have been repeatedly stated by all user groups;"[103] and the recommendation of the InterAgency Staff Committee.[104]  The record also reflects that the FSB adopted the closure as "necessary . . . to continue subsistence uses."[105]  Again, the record contains evidence in support of the closure on this basis including testimony by the proponent;[106] testimony by members of the public;[107] household surveys from 2009

---

concerns in voting to adopt the proposal.

[101] Docket 18-1 at 6 ("The proponent of this request testified that . . . the area is too crowded to safely hunt as people aim guns at one another and shoot over people's heads.").

[102] Docket 18-1 at 6 ("Several other testifiers echoed these safety and overcrowding concerns."); Docket 18-1 at 21 ("My concern is dealing simply with the public safety issues because I do travel the Richardson Highway through these two subunits regularly because of my family connections and my work in the area.  I have had numerous very dangerous situations with road hunting in the area and just the amount of traffic on the highway does present a significant public hazard to me, personally.  And I think this would be a good step in the right direction.  I recognize that some of that traffic may still continue by non-Federally-qualified residents, you know, accessing other non-Federal lands.").

[103] Docket 18-1 at 8–9 ("Closure for reasons of public safety may be warranted.").

[104] Docket 18-1 at 17 ("The InterAgency Staff Committee concurs with the OSM Staff analysis that the request . . . is justifiable to improve safety and reduce user conflicts.").

[105] 16 U.S.C. § 3125(3); *see also supra* pages 18–19 (summarizing reasoning from board members).

[106] Docket 18-1 at 4 ("The proponent states that this closure[] is necessary due to extreme hunting competition . . . which precludes a rural subsistence priority and results in low harvest success by Federally-qualified subsistence users."); Docket 18-1 at 6 ("The proponent . . . testified that the influx of caribou hunters during moose season takes away moose hunting opportunity from Federally-qualified subsistence users.").

[107] Docket 18-1 at 6 ("Several supporters of the request referenced Title VIII of ANILCA calling for a rural subsistence priority" and pointing out that the State "has extended the State's fall

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 24 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 24 of 33

to 2013 reflecting that "almost every Unit 13 community noted concern over non-local hunters stating that non-local hunters who have lots of expensive equipment were out competing local hunters and driving game away";[108] the recommendation of the OSM that "[c]losure for continuation of subsistence uses of moose may be warranted" as "[h]arvest success rates are lower under Federal regulations than under State regulations [and a] closure may reduce competition . . . increasing hunting opportunity and harvest success of Federally-qualified subsistence users";[109] and the recommendation of the InterAgency Staff Committee.[110]

The record demonstrates that the FSB members raised and considered alternatives to closure, including limiting permit issuance[111] and issuing a temporary closure from September 21 to September 30 to non-federally qualified users.[112] Ms. Maas responded that permits for federally qualified subsistence users had only gone up slightly from 2001 to 2018,[113] and that while a temporary closure might promote continued subsistence uses, it would not address the safety

---

caribou season in recent years precluding a rural priority from a longer fall season.").

[108] Docket 18-1 at 7.

[109] Docket 18-1 at 8.

[110] Docket 18-1 at 17 ("The InterAgency Staff Committee concurs with the OSM Staff analysis that the request . . . is justifiable to . . . continu[e] and potentially increas[e] the opportunity for subsistence uses of moose and caribou in Units 13A and 13B.").

[111] Docket 18-1 at 10–11.

[112] Docket 18-1 at 12.

[113] Docket 18-1 at 11.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 25 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 25 of 33

concerns during the rest of the season.[114] Based on the foregoing, the Court finds that the record contained ample evidence that supports the FSB's decision to adopt WSA 20-03; the FSB considered the relevant factors and articulated a satisfactory explanation for its decision.

The State contends that the closure is not the best way to address the public safety concerns and predicts that it will not have the desired effect;[115] it maintains that the safety concerns would be better addressed by other means, such as law enforcement or public education.[116] That the State, or even the Court, might prefer a different approach is not enough to render the FSB's decision arbitrary and capricious. The State also contends that its data indicates that placing this restriction on state hunters is not likely to impact the success of the federally qualified subsistence users.[117] But since the closure had not yet occurred, the data from prior years does not address the effect that a total ban on non-federally qualified hunters on federal lands in Units 13A and 13B.[118] Stated differently, the

---

[114] Docket 18-1 at 12.

[115] Docket 24 at 5. At oral argument, counsel for the State explained that "this doesn't rise to the level of a public safety issue that would require a closure under Sections 815 and 816 of ANILCA." Tr. Sept. 8, 2020 Oral Argument at 25:2–5.

[116] Docket 24 at 5.

[117] Docket 24 at 3–4.

[118] Docket 18-1 at 16–17. The data cited by the State shows, for instance, that an increase from an average of 4,602 state moose hunters in Unit 13 from 2010 to 2013 to an average of 5,190 state moose hunters in Unit 13 from 2014 to 2017 occurred at the same time as an increase from an average federal hunt success of 10% to an average of 13%. Docket 3-3 at 33.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 26 of 33

Case 3:20-cv-00195-SLG    Document 28    Filed 09/18/20    Page 26 of 33

State's data does not render implausible the FSB's conclusion that the elimination of non-federally qualified hunters on federal lands in Units 13A and 13B could increase the harvest success of federally qualified subsistence users in those subunits. Additionally, the record shows that the FSB considered the State's data during deliberations before adopting WSA 20-03.[119]

Based on this record of decision making, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of its claim that the FSB's decision to adopt WSA 20-03 for public safety and continued subsistence use reasons was arbitrary, capricious, or contrary to law.

The Court next considers the State's claim that "expanding the requested closure of moose and caribou hunting from one to two years is likewise arbitrary, capricious, and not in accordance with law."[120]  As discussed above, the Court has determined that the State is unlikely to succeed on its claim that the two-year closure violated 50 C.F.R. 100.19 and the State did not present any other basis for determining that the extension was arbitrary and capricious.  Moreover, the record contains evidence that the safety and subsistence concerns date back several years, and the FSB reasonably adopted the OSM's recommendation that two

---

[119] Docket 18-1 at 10–11 (Mr. Peltola of the BIA referencing the State's memorandum and data presented).

[120] Docket 3-1 at 17.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 27 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 27 of 33

years was the minimum time necessary to address the issue. Accordingly, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of this claim.

Next, the Court considers the State's claim that the FSB's adoption of WSA 20-03 is arbitrary and capricious in light of the FSB's rejection of the 2019 Proposal; the State contends that the FSB failed to provide a reasoned explanation for its change in policy.[121] The record demonstrates that, during the 2020 deliberations, a board member raised the concern that WSA 20-03 was not materially different from the 2019 Proposal.[122] In response, Ms. Maas explained that the 2019 Proposal "was to close the entire unit," whereas the WSA 20-03 modified proposal closed "only the BLM lands in Units 13A and 13B where most of the conflicts occur."[123] The 2019 Proposal would have resulted in closing 6.4% of Unit 13, whereas the WSA 20-03 modified proposal that was adopted only closes 2.7% of Unit 13.[124] The record does not contain any indication that the FSB considered this narrowed closure before rejecting the 2019 Proposal. Moreover, the record shows that the FSB considered some new information in adopting WSA 20-03.[125]

---

[121] Docket 3-1 at 14–15.

[122] Docket 18-1 at 13 (Mr. Siekaniec expressed that "I'm not hearing anything being recommended different than what we had dealt with in '19, other than maybe we reduce size of the units to just A and B.").

[123] Docket 18-1 at 13.

[124] Docket 18-1 at 16.

[125] *See, e.g.*, Docket 18-1 at 26 ("I think there's a little bit of new information in the success rates

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 28 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 28 of 33

Based on the differences between the 2019 Proposal and WSA 20-03 as enacted, the FSB's decision to adopt WSA 20-03 after rejecting the 2019 Proposal was not arbitrary and capricious.[126] The Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of this claim.

Lastly, the State contends that the language in the FSB's revised press release "attempts to close areas owned by the state" and is thus arbitrary, capricious, and contrary to ANILCA.[127] The State contends that although the press release provides that non-federally qualified users can take caribou and moose on gravel bars along navigable waters, it fails to clearly state that "[a]nything below the ordinary high watermark belongs to the state"[128] and that a non-federally qualified user can take a moose or caribou standing in the water, not just on a gravel bar.[129]

---

that we have most recently and it's troubling to us that the Federally-qualified subsistence user success rate is significantly lower than non-Federally-qualified users. That doesn't seem to be in the direction we're supposed to be headed in.").

[126] Although the Court is not persuaded that the FSB's adoption of WSA 20-03 after rejecting Proposal 2019 constitutes a policy change, due to the differences between the two, "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). The agency "need not always provide a more detailed justification than what would suffice for a new policy created on blank slate," but must "display awareness that it is changing its position" and "show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Here, the record shows the FSB addressed the differences between the current and former proposal, and articulated good reasons for adopting the more targeted closure.

[127] Docket 3-1 at 12; Tr. Sept. 8, 2020 Oral Argument at 26:15–27:20.

[128] Tr. Sept. 8, 2020 Oral Argument at 26:18–22.

[129] Tr. Sept. 8, 2020 Oral Argument at 27:3–7.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 29 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 29 of 33

The Court finds that by its plain terms, the press release does not prohibit a non-federally qualified hunter from taking a moose or caribou that is standing in water.[130]  Because there does not appear to be a dispute that the closure only applies to federal public lands, and not state lands, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of this claim.

### iii. Open Meetings Act

The State contends that the FSB "met in an unannounced executive session" prior to the meeting on July 16, 2020, and posits that there may have been a discussion of the proposal during that closed portion of the meeting.[131]  The Chair of the FSB began the July 16, 2020 meeting by explaining on the record that the FSB "prior to the meeting had [an] executive session and just were looking at, you know, just getting a brief overview of some legal issues . . . and give us a short update because some of us are new Board members and just to make sure that we're all on the same page as we look at our agenda before us and start to make actions."[132]  The State contends that the FSB held this "secret meeting in violation

---

[130] *See* Docket 24-2 at 2 ("Can a non-Federally qualified user take moose and caribou on gravel bars along navigable waters below the 'ordinary high water mark' when the adjacent uplands are Federal public lands? Yes. Please note, however, that the taking of swimming moose and caribou is prohibited under Federal and State law in all portions of Unit 13. See 50 CFR 100.26(b)(13), 5 AAC 92.085(7)").

[131] Docket 3-1 at 6–7.

[132] Docket 18-1 at 2.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 30 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 30 of 33

of the federal Open Meetings Act."[133]  For their part, Defendants do not concede that the Open Meetings Act applies to the FSB.[134]

The Open Meetings Act—sometimes referred to as the Sunshine Act—5 U.S.C. § 552b, provides in part that:

> (b) Members shall not jointly conduct or dispose of agency business other than in accordance with this section. Except as provided in subsection (c), every portion of every meeting of an agency shall be open to public observation.

The Court finds that the State's claim suffers several shortcomings.[135]  In the first instance, the Court is not persuaded that the FSB's closed executive session constitutes a "meeting" within the meaning of the statute.  A meeting is defined as "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business."[136]  Although the State posits that there may have been a discussion of the Unit 13 proposal prior to the meeting, the record does not demonstrate that the FSB undertook the disposition of any "official agency business" during its executive session.[137]

---

[133] Docket 24 at 3.

[134] Tr. Sept. 8, 2020 Oral Argument at 21:24–22:7.

[135] The Court assumes, without deciding, that the FSB is an "agency" within the meaning of the Open Meetings Act.  *See* 5 U.S.C. § 552b(a)(1).

[136] 5 U.S.C. § 552b(a)(2).

[137] The statute also exempts from mandatory public observation "any portion of an agency meeting" that the agency properly determines relates, for example, "solely to the internal personnel rules and practices of an agency," or concerns "the agency's participation in a civil action or proceeding."  5 U.S.C § 552b(c)(2), (10).  Either of these carveout provisions may have

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 31 of 33

Accordingly, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of this claim. Moreover, "the remedy for . . . violations [of the Act] is increased transparency, not invalidation of agency action."[138] Thus, even if the State were to succeed on its claim that the FSB violated the Open Meetings Act, "release of transcripts, not invalidation of the agency's substantive action, is the remedy generally appropriate for disregard of the Sunshine Act."[139] Thus, the preliminary injunctive relief sought by the State is unwarranted.

In evaluating a motion for preliminary injunctive relief, the first *Winter* factor—the likelihood of success on the merits—is the most important.[140] Indeed, the Ninth Circuit has held that "[b]ecause it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]."[141] Because the State has not demonstrated either a likelihood of success or serious questions on the merits of

---

applied to the executive session since the FSB was discussing legal issues and the agenda, as well as updating new personnel. Docket 18-1 at 2. In such an instance, the agency can publicly certify that the meeting may be closed to the public based on the "relevant exemptive provision." 5 U.S.C. § 552b(f)(1).

[138] *McChesney v. Petersen*, 275 F. Supp. 3d 1123, 1138–39 (D. Neb. 2016).

[139] *Braniff Master Exec. Council of Air Line Pilots Ass'n Int'l v. Civil Aeronautics Bd.*, 693 F.2d 220, 226 (D.C. Cir. 1982).

[140] *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014)).

[141] *Id.* (internal quotations omitted; alternation in original).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 32 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 32 of 33

its claims, the Court need not consider the remaining elements of the preliminary injunction analysis.

## CONCLUSION

In light of the foregoing, the State's motion for a preliminary injunction regarding Game Management Units 13A and 13B at Docket 3 is DENIED.

DATED this 18th day of September, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Units 13A and 13B
Page 33 of 33

Case 3:20-cv-00195-SLG   Document 28   Filed 09/18/20   Page 33 of 33