# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

STATE OF ALASKA, DEPARTMENT OF
FISH AND GAME,

          Plaintiff,

    v.

FEDERAL SUBSISTENCE BOARD, *et
al.,*

          Defendants,

    v.

ORGANIZED VILLAGE OF KAKE,

          Defendant-intervenor.

Case No. 3:20-cv-00195-SLG

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION REGARDING DELEGATION OF AUTHORITY TO OPEN EMERGENCY HUNTS

Before the Court at Docket 4 is the State of Alaska, Department of Fish and Game ("the State")'s Motion for Preliminary Injunction. Defendants responded in opposition at Docket 15.[1] The State replied at Docket 22. The Court heard argument on the motion on September 8, 2020.

The State commenced this action on August 10, 2020 against the Federal Subsistence Board ("FSB"), and several other federal officials (collectively,

---

[1] *Amicus curiae* Sealaska Corporation also responded in opposition at Docket 21-2.

"Defendants").[2]  The State alleges that the FSB violated the Open Meetings Act, Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA"), Section 1314 of ANILCA, and the Administrative Procedure Act ("APA") by delegating authority to local land managers to open emergency hunts in response to COVID-19-related food security concerns, by authorizing a hunt near the Organized Village of Kake, and by voting on a request for an emergency hunt from the Koyukuk Tribal Village.[3]  The State moved for a temporary restraining order and preliminary injunction prohibiting Defendants from (1) delegating authority to local land managers without complying with the Open Meetings Act, (2) opening a hunt near the Organized Village of Kake, (3) opening any hunt for COVID-19 reasons, (4) refusing to share harvest information with the State, and (5) delegating administrative authority to entities outside of a federal agency.[4]

---

[2] The other defendants are David Schmid, in his official capacity as the Regional Supervisor of the U.S. Forest Service; Sonny Perdue, III, in his official capacity as the U.S. Secretary of Agriculture; Gene Peltola, in his official capacity as Alaska Regional Director for the Bureau of Indian Affairs; Greg Siekaniec, in his official capacity as Alaska Regional Director for the U.S. Fish and Wildlife Service; Chad Padgett, in his official capacity as State Director for Alaska U.S. Bureau of Land Management; Don Striker, in his official capacity as Alaska Regional Supervisor for the National Park Service; David Bernhardt, in his official capacity as the U.S. Secretary of the Interior; Anthony Christianson, in his official capacity as Chair of the FSB; Charlie Brower, in his official capacity as a member of the FSB; and Rhonda Pitka, in her official capacity as a member of the FSB.  *See* Docket 1.

[3] Docket 1 at 18, ¶¶ 67–69 (Claim I); Docket 1 at 18–19, ¶¶ 71–73 (Claim II); Docket 1 at 19, ¶ 75–76 (Claim III); Docket 1 at 20, ¶¶ 82–83 (Claim V); and Docket 1 at 21–22, ¶¶ 85–88 (Claim VI).

[4] *See* Docket 4-4.  The Court denied the motion for a temporary restraining order on August 14, 2020.  *See* Docket 10.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 2 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 2 of 46

## BACKGROUND

With the advent of the COVID-19 pandemic, the FSB received numerous requests from remote Alaskan communities for emergency hunting authorizations to address existing or potential food shortages.[5] Among these were requests from the Organized Village of Kake ("OVK"), the Koyukuk Tribal Village, and the Organized Village of Saxman.[6] The requesters explained that travel restrictions, reduced transportation of goods, and disruptions in national food supply had diminished or were expected to diminish their communities' food supply.[7]

In April, 2020, the FSB "voted to authorize a process for sending letters of delegation to agency field managers to allow them to open . . . hunting and fishing opportunities in response to any demonstrated emergency situation relating to food security that rises to the level of constituting a threat to public safety."[8] The FSB rationalized that delegating the authority to the local land managers would help expedite a response to the incoming emergency requests.[9] In a memorandum for the Secretary for the Department of the Interior, the Office of Subsistence

---

[5] Docket 4-3 at 1.

[6] Docket 4-3 at 37; Docket 4-3 at 49; Docket 4-3 at 59.

[7] Docket 4-3 at 1.

[8] Docket 15-2 at 1–2, ¶ 3 (Decl. Lisa Maas); Docket 4-3 at 4. It is not clear to the Court whether the meeting took place on April 9, 2020, as stated in the Memorandum from the Office of Subsistence Management, or on April 14, 2020, as indicated in the declaration of Lisa Maas. However, according to the State, the delegation occurred on April 9, 2020 followed by a vote on April 14, 2020. *See* Docket 22 at 3.

[9] Docket 4-3 at 1.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 3 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 3 of 46

Management described the proposed parameters of the delegation ("OSM Memorandum").[10]  It provides:

> A few key points regarding this issue bear emphasis . . . [I]t is clear that certain supply lines within the state have [been] disrupted and that the potential exists for this to result in significant threats to food security and public safety.
>
> No COVID-19-related action will be taken by the Federal Subsistence Board or their delegated agent if the requested hunting or fishing opportunity threatens the viability of the resource or in the absence of a demonstrable and imminent threat to public safety.
>
> Any actions so taken will be temporary in nature and will not remain in effect beyond the time that the threat to public safety has passed.
>
> No action will be taken by the Federal Subsistence Board or their delegated agent to open additional hunting or fishing opportunities prior to consultation with the ADFG and confirmation of need with the State of Alaska Unified Command Mass Care Group.[11]

Thereafter, on June 2, 2020, the FSB issued letters of delegation to refuge managers and district rangers ("Delegation Letters").[12]  They provided, in part:

> This letter delegates specific regulatory authority from the Federal Subsistence Board (Board) to the Petersburg District Ranger to issue emergency special actions *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource.

* * *

---

[10] Docket 4-3 at 1; Docket 4-3 at 4.

[11] Docket 4-3 at 4. The Mass Care Group "is comprised of numerous governmental, non-profit, and faith based organizations who work collaboratively in focused taskforces."  Docket 4-3 at 60. It has a Feeding Task Force, which is charged with "coordinat[ing] state level response to food shortages due to COVID-19 disaster."  *Id.*

[12] *See* Docket 4-3 at 5–36.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 4 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 4 of 46

It is the intent of the Board that actions related to management of [wildlife] by Federal officials be coordinated, prior to implementation, with the Alaska Department of Fish and Game (ADF&G), representatives of the Office of Subsistence Management (OSM), and the Chair of the affected Council(s) to the extent possible. *In addition, you will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action under this delegation.*[13]

The FSB specified that the delegation of authority was established pursuant to 36 C.F.R. § 242.10(d)(6) and 50 C.F.R. § 100.10(d)(6) and was effective until June 1, 2021, unless rescinded by the FSB.[14] It stressed that the delegated authority was limited to being able to "[o]pen, close, reopen a season, up to 60 days in duration . . . [e]stablish individual or community harvest limits . . . [s]pecify permitting requirements . . . [and] [s]et harvest quotas . . . ."[15] The Delegation Letters concluded by stating that "[i]n the event that the Alaska Unified Command Mass Care Group does not confirm the need for this special action, you will defer this special action to the Board."[16]

### The Kake Hunt

On June 4, 2020, Joel Jackson, the President of the OVK, wrote to the Petersburg District Ranger, Ted Sandhofer, to renew the OVK's request for an

---

[13] *See, e.g.,* Docket 4-3 at 21 ("Petersburg Letter") (emphasis in original).

[14] *See, e.g.,* Docket 4-3 at 22–23.

[15] *See, e.g.,* Docket 4-3 at 22.

[16] *See, e.g.,* Docket 4-3 at 24.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 5 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 5 of 46

emergency hunt.[17]  Mr. Jackson explained that the "OVK and the community of Kake [were] in a very vulnerable situation" as limited resources were coming in and "[v]endors [were] having a more difficult time meeting the need of the stores in Kake."[18]  Upon receipt of this request, Mr. Sandhofer contacted the Mass Care Group, who informed him that they could not confirm any food shortage or supply chain disruption in Kake.[19]  He attempted to contact the ADF&G but failed to get any response.[20]  On June 12, 2020, Mr. Sandhofer deferred the OVK's request to the FSB.[21]

The FSB considered the request at a meeting on June 22, 2020, at which Mr. Jackson testified about the OVK's food security concerns.[22]  He stated that while the OVK was getting some meat, "it's not very good," and the "stores here are not able to secure everything that they ordered."[23]  Mr. Jackson testified that the OVK was "trying to supply everybody in town with fresh fish" but that he was concerned about obtaining healthy meat for "our people, our elders and our tribal

---

[17] Docket 4-3 at 37.  The OVK is a federally recognized tribe under federal law.  *See* Docket 4-3 at 37.

[18] Docket 4-3 at 37.

[19] Docket 4-3 at 38; Docket 4-3 at 52 ("Our Mass Care Group is not aware of any substantial food shortage or food supply chain disruption due to COVID-19").

[20] Docket 4-3 at 38.

[21] Docket 4-3 at 38.

[22] Docket 4-3 at 40.

[23] Docket 4-3 at 40–41.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 6 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 6 of 46

citizens."[24]  He added that they had just received a ferry shipment, but that it was the first one in half a year, and he "[did not] know when the next one would arrive."[25]

The FSB voted to approve a limited season of up to 60 days to be administered by the local federal land manager, Mr. Sandhofer.[26]  According to a declaration from Lisa Maas, the Acting Policy Coordinator and Wildlife Biologist for the OSM, the FSB considered Mr. Jackson's testimony, as well as evidence of the lack of conservation concerns for moose and deer in the area before voting.[27]  Additionally, several Board members stated that based on information concerning food supply line disruptions received directly from the President of the OVK, they "disagreed with the Mass Care Group's conclusion and hoped that in the future, better understanding of the Mass Care Group's information gathering process could be obtained."[28]  The FSB members "reiterated their obligations under Title VIII [of ANILCA] to provide for a rural subsistence priority and to take action to address food shortages and improve food security in the community."[29]

---

[24] Docket 4-3 at 40–41.

[25] Docket 4-3 at 41.

[26] Docket 15-2 at 3, ¶ 12.  Although the State mentioned that the vote to authorize the hunt was seven to one, the excerpts of the transcript of the meeting that the State provided the Court do not capture the actual vote.  *See* Docket 4-1 at 8 and Docket 4-3 at 39–43.

[27] Docket 15-2 at 2–3, ¶ 10 (Decl. Lisa Maas).

[28] Docket 15-2 at 3, ¶ 11.

[29] Docket 15-2 at 3, ¶ 11.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 7 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 7 of 46

Pursuant to the FSB's authorization, Mr. Sandhofer issued a permit for "a Kake community harvest . . . allowing the Organized Village of Kake to harvest up to 2 antlered bull moose and 5 male Sitka black-tailed deer . . . ."[30] The permit specified that "[p]articipation in the season is limited to Federally qualified subsistence users selected by the Organized Village of Kake."[31] Mr. Jackson confirmed that the harvest from the emergency hunt would be shared with the entire community.[32] The hunt concluded on July 24, 2020 and the harvest was distributed to 135 households in the village.[33]

### The Koyukuk Hunt

On June 3, 2020, the Koyukuk Tribal Village also renewed its request for an emergency hunt for 3 moose.[34] After receiving the renewed request, the refuge manager for the region reached out to the Mass Care Group, which responded that it was "not aware of any substantial food shortage or food supply chain disruption due to COVID-19."[35] On July 22, 2020, the State was informed that the

---

[30] Docket 4-3 at 46. The permit allowed for harvest of 2 antlered bull moose and 5 male Sitka black-tailed deer per month from June 24, 2020 to August 22, 2020 with a 30-day review by the in-season manager to determine whether the additional 30-day harvest was necessary. *See* Docket 4-3 at 46.

[31] Docket 4-3 at 46.

[32] Docket 15-5 at 1.

[33] Docket 15-3 at 3, ¶ 12 (Decl. Theodore Matuskowitz).

[34] Docket 4-3 at 53.

[35] Docket 4-3 at 52.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 8 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 8 of 46

FSB was voting on the request by e-mail with a July 27, 2020 deadline.[36]  Ms. Maas informed the State that "[g]iven the short/emergency nature of the request, a teleconference was not able to be convened."[37]

On August 10, 2020, the State commenced this action and moved for injunctive relief.[38]  On August 17, 2020, the Secretary of the Interior directed the FSB to temporarily pause its operations and suspend any decisions regarding requests for COVID-19-related emergency hunting or fishing authorizations until disposition of the preliminary injunction motion.[39]

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate."[40]

---

[36] Docket 4-3 at 54.  *But see* Docket 29 at 17:8–13.  At oral argument, counsel for Defendants stated that the Koyukuk request was essentially moot because the requestor had sought an emergency hunt in April 2020.

[37] Docket 4-3 at 54.

[38] Docket 1; Docket 4.

[39] Docket 15-4 at 1, ¶ 2 (Decl. Stephen Wackowski).  At oral argument, counsel for the State indicated that "operations are not paused," and that the State had been "advised that it will be given five days' notice before the [FSB] intends to take any notice on any further wildlife special action requests . . . ."  Docket 29 at 20:25–21:4.

[40] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 9 of 46
Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 9 of 46

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[41] *Winter* was focused on the second element, and clarified that irreparable harm must be likely, not just possible, for an injunction to issue.[42]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as part of the four-element *Winter* test."[43]   Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor . . . .'"[44]   Injunctive relief is an equitable remedy, and "'[t]he

---

[41] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

[42] *Winter*, 555 U.S. at 22; *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

[43] *All. for the Wild Rockies*, 632 F.3d at 1131–35.

[44] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 10 of 46

essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case.'"[45]

## DISCUSSION

### A. Alaska National Interest Lands Conservation Act ("ANILCA")

The Court summarized the legal framework of ANILCA in its order addressing the State's preliminary injunction motion at Docket 3.[46] In brief, Congress enacted ANILCA to help preserve Alaska's natural resources while simultaneously providing continued opportunity for rural residents to engage in a subsistence way of life.[47] With Title VIII of ANILCA, "Congress . . . created a subsistence management and use program,"[48] which prioritizes subsistence use of resources: "Except as otherwise provided in this Act and other Federal laws, the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes."[49]

---

[45] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

[46] *See* Docket 28 at 13–16.

[47] *See Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1091 (9th Cir. 2008); *see also* 16 U.S.C. § 1301.

[48] *Fed. Subsistence Bd.*, 544 F.3d at 1091.

[49] 16 U.S.C. § 3114.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 11 of 46

Congress authorized the Secretary of the Interior and the Secretary of Agriculture to promulgate regulations in furtherance of its directives;[50] they created the FSB and charged it with "administering the subsistence taking and uses of fish and wildlife on public lands."[51]   Among the FSB's regulatory powers are its emergency special actions:

> In an emergency situation, if necessary to ensure the continued viability of a fish or wildlife population, to continue subsistence uses of fish or wildlife, or for public safety reasons, the Board may immediately open or close public lands for the taking of fish and wildlife for subsistence uses, or modify the requirements for take for subsistence uses, or close public lands to take for nonsubsistence uses of fish and wildlife, or restrict the requirements for take for nonsubsistence uses.
>
> * * *
>
> The emergency action will be effective when directed by the Board, may not exceed 60 days, and may not be extended unless the procedures for adoption of a temporary special action, as set forth in paragraph (b) of this section, have been followed.[52]

## B.    The State's Motion for a Preliminary Injunction

In its motion for a preliminary injunction, the State contends that the FSB violated the Open Meetings Act by delegating authority to local land managers and

---

[50] 16 U.S.C. § 3124 ("The Secretary shall prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this title.").  *See Fed. Subsistence Bd.*, 544 F.3d at 1092 n.1 (explaining that Congress authorized the Secretary of the Interior and the Secretary of Agriculture to promulgate regulations, and they issued identical regulations codified at 50 C.F.R. § 100 and 36 C.F.R. § 242).

[51] *Fed. Subsistence Bd.*, 544 F.3d at 1092 (citing 50 C.F.R. § 100.10(a)).  Previously, the State of Alaska implemented ANILCA through state law; in 1989, the Alaska Supreme Court held that providing a subsistence priority for rural Alaskans, to the exclusion of other Alaskans, violated the Alaska Constitution, at which point the Secretaries assumed responsibility for implementing ANILCA.  *Id.* at 1092, n.3 (citing *McDowell v. State*, 785 P. 2d 1, 9 (Alaska 1989)).

[52] 50 C.F.R. § 100.19.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 12 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 12 of 46

by voting on the Koyukuk request without holding a public meeting.[53]  The State also contends that the FSB violated ANILCA by adopting a regulation granting itself the authority to open public lands to hunting and fishing,[54] and violated Title VIII of ANILCA and the APA by authorizing the Kake hunt.[55]  The State maintains that its ability to fulfill its constitutionally-mandated wildlife management responsibilities will be irreparably harmed absent preliminary injunctive relief and that the equities and the public interest are best served by an injunction.[56]

### i.  Mootness

Before turning to the merits, the Court must consider Defendants' mootness challenge.[57]  Defendants contend that the Kake hunt is over and thus, that the Court cannot "as a practical matter, issue an injunction that would redress any injury" the State allegedly suffered.[58]  Defendants contend that for purposes of this motion, there is no concrete, actual controversy and the issue is moot.[59]  They recognize that there exists an exception to the mootness doctrine when the

---

[53] Docket 4-1 at 11.

[54] Docket 4-1 at 13–14.

[55] Docket 4-1 at 12, 14–15.

[56] Docket 4-1 at 15–17.

[57] As a prerequisite to a court's exercise of jurisdiction, it must be satisfied that the case is not moot.  *See Vegas Diamond Props., LLC v. FDIC*, 669 F.3d 933, 936 (9th Cir. 2012).

[58] Docket 15 at 12.

[59] Docket 15 at 14.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 13 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 13 of 46

challenged conduct is capable of repetition but evades review,[60] but maintain that it does not apply here because the Kake hunt is "a discrete response on a particularized record to address one remote community's needs during a global pandemic."[61]  Defendants stress that the FSB has not authorized any similar hunts and contend that "there is no basis in the present record for finding the Kake hunt creates a template or is in any way predictive of the Board's response to a different request."[62]  Defendants analogize to *Fund for Animals v. Mainella*, where the District Court for the District of Columbia dismissed as moot a challenge to a completed hunt.[63]

The State responds that the issue is not moot,[64] and that its claims "fall squarely within the exception to the mootness doctrine for matters that are 'capable of repetition, yet evading review.'"[65]  Specifically, the State notes that the FSB's delegation of authority would not expire until June 2021, and thus, that the "[a]uthorizations for emergency hunts are capable of repetition" for so long as the

---

[60] Docket 15 at 13 (citing *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 856 (9th Cir 1999)).

[61] Docket 15 at 13.

[62] Docket 15 at 13–14.

[63] Docket 15 at 13 (citing 335 F. Supp. 2d 19 (D.D.C. 2004)).

[64] In addition to its other arguments, the State contends that the issue is not moot because the "permit was in effect when the State filed this case" to seek injunctive relief.   Docket 22 at 6. However, "[t]o sustain [the Court's] jurisdiction . . . it is not enough that a dispute was very much alive when the suit was filed . . . ." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990).

[65] Docket 22 at 6 (quoting Docket 15 at 13 and citing *Kingdomware Techs. Inc. v. United States*, 136 S.Ct. 1969, 1976 (2016)).

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 14 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 14 of 46

delegation remains in effect.[66] The State contends that the FSB has shown that it will not follow its own guidelines, and maintains that the 60-day emergency hunts would "consistently evade judicial review" due to their brevity.[67]

"The mootness doctrine 'requires that an actual, ongoing controversy exist at all stages of federal court proceedings.' '[I]f events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot[.]'"[68] The State's motion seeks to enjoin more than the Kake hunt: it asks the Court to enjoin Defendants from delegating regulatory authority to in-season managers, from opening any future hunt for COVID-19-related reasons, from refusing to share harvest information, and from delegating administrative authority outside of federal agencies.[69] Thus, to the extent the State's motion applies to future hunts, which could well occur during the pendency of this litigation, the completion of the Kake hunt does not render the State's request for preliminary injunction moot.[70]

---

[66] Docket 22 at 6–7.

[67] Docket 22 at 7.

[68] *Leigh v. Salazar*, 677 F.3d 892, 896 (9th Cir. 2012) (alterations in *Leigh*) (internal citation omitted) (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011)).

[69] Docket 4 at 1.

[70] *See Leigh*, 677 F.3d at 897 (holding that completion of a 2010 horse roundup did not render plaintiff's preliminary injunction challenge moot because it could apply to future roundups). In some instances, "[o]nce the opportunity for a preliminary injunction has passed, . . . the preliminary injunction issue may be moot even though the case remains alive on the merits"; but here, the State's challenge to Defendants' action is broader than just the Kake hunt and thus the preliminary injunction issue remains live. *See Fleming v. Gutierrez*, 785 F.3d 442, 446 (10th Cir. 2015) (quoting 13C Charles Alan Wright *et al.*, Federal Practice and Procedure § 3553.3.1 (3d ed. 2008)).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 15 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 15 of 46

As to the State's challenges to the emergency Kake hunt itself, the Court obviously cannot grant the State the relief that it seeks.[71]  However, as the parties noted, there exists an exception to the mootness doctrine for a controversy that is "capable of repetition, yet evading review."[72]  It "applies 'only in exceptional situations,' where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'"[73]  The "rationale behind this exception is straightforward: some activities or situations are inherently fleeting in nature, such that orderly and effective judicial review would be precluded if we hewed strictly to the requirement that only a presently live controversy presents a justiciable question." [74]  In such cases, "if a particular plaintiff is likely to suffer the same or very similar harm at the hands of the same defendant, the alleged wrongdoer should not be permitted to escape responsibility simply because the transaction is completed before . . . [a] court has a chance to review the case."[75]

---

[71] *See Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978) (holding that "[w]here the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot").

[72] *Kingdomware Techs., Inc.*, 136 S. Ct. at 1976 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

[73] *Id.* (alterations in *Kingdomware*) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

[74] *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 786 (9th Cir. 2012).

[75] *Id.*

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 16 of 46

The Court concludes that the exception to the mootness doctrine applies to the emergency Kake hunt. These emergency hunts are necessarily limited to 60 days or less, which is too short a period of time to complete judicial review.[76] Moreover, it is reasonably likely that Defendants may authorize other emergency hunts and that those hunts may be delegated to members of the community to oversee. The FSB's delegation of authority to local land managers does not expire until June 2021, and the COVID-19 pandemic is ongoing.

Although Defendants rely on *Mainella,* it does not compel a different conclusion. There, the plaintiffs challenged the State of New Jersey's regulation authorizing a five-day black bear hunt. After the hunt ended, the defendants moved to dismiss the case as moot.[77] The district court dismissed the case, concluding that it was "not the type of case that is capable of repetition, yet evading review."[78] It reasoned that to authorize another hunt, the State of New Jersey would have to promulgate a regulation through a notice and comment period and the plaintiffs "would have notice of the rule making, would be able to participate in it, and would have sufficient time to challenge any federal agency action . . . ."[79] *Mainella* is readily distinguishable from the instant matter insofar as the court there

---

[76] *See id*. at 786 (recognizing that evading review means that the underlying action will run its course before the Ninth Circuit or the Supreme Court can give the case full consideration).

[77] *Mainella*, 335 F. Supp. 2d at 21–22.

[78] *Id*. at 24. .

[79] *Id*.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 17 of 46

expected a full notice and comment period prior to any future hunts. In contrast, the FSB's continued delegation of authority to local land managers allows them to open emergency 60-day hunts, practically guaranteeing the State would have insufficient time to challenge the agency action.

Thus, the Court concludes that the State's challenge to the Kake hunt is not moot "because the same legal issue in this case is likely to recur in future controversies between the same parties in circumstances where the period of [the hunt] is too short to allow full judicial review before performance is complete."[80] Accordingly, the Court turns to the merits of the State's motion for preliminary injunction.

### ii.    Likelihood of Success on the Merits

The Court begins its analysis by evaluating the State's likelihood of success on the merits of each claim. The Court reviews agency action according to § 706 of the Administrative Procedure Act ("APA"), which provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . [or] in excess of statutory jurisdiction, authority, or limitations . . . ."[81] The Court's review of agency action under § 706(2) is narrow:

---

[80] *Kingdomware Techs., Inc.*, 136 S. Ct. at 1976.

[81] 5 U.S.C. § 706(2).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 18 of 46

Case 3:20-cv-00195-SLG    Document 37    Filed 11/18/20    Page 18 of 46

"a court is not to substitute its judgment for that of the agency,"[82] and such deference is especially appropriate where "the challenged decision implicates substantial agency expertise."[83]

### a. Open Meetings Act

The State contends that the FSB's April 9, 2020 meeting violated the Open Meetings Act, which requires that "every portion of every meeting of an agency shall be open to public observation."[84] The State maintains that because the FSB is an agency for purposes of the Act, actions taken by voting members must occur at a public meeting and those meetings must be announced at least a week in advance.[85] Although the State acknowledges that the Kake hunt itself was approved at an open meeting, it maintains that the delegation of authority was not, thereby violating the Act.[86] It adds that the FSB further violated the Open Meetings Act "by taking action and voting on [the Koyukuk request] without either announcing or holding a special meeting."[87] The State maintains that remedies for violations of the Act "include injunctive relief to void any action taken."[88]

---

[82] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[83] *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194–96 (9th Cir. 2000).

[84] Docket 4-1 at 10 (quoting 5 U.S.C. § 552b).

[85] Docket 4-1 at 11.

[86] Docket 22 at 3.

[87] Docket 4-1 at 11; Docket 22 at 3.

[88] Docket 4-1 at 11.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 19 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 19 of 46

Defendants do not concede that the Open Meetings Act applies to the FSB.[89] They contend that the duties of the FSB are set forth in 50 C.F.R. § 100.10(d)(4) and do not include a mandate that a public meeting precede all of its actions.[90] Defendants add that, in any event, the FSB approved the Kake hunt at the meeting in June 22, 2020—and not through the delegation process authorized in April 2020—and the FSB has not yet decided the Koyukuk Tribal Village request.[91] Defendants maintain that the Act does not authorize the Court to void a decision made at an allegedly unlawful meeting because the Act limits the Court's jurisdiction: "Nothing in this section authorizes any Federal Court having jurisdiction solely on the basis of paragraph (1) to set aside, enjoin, or invalidate any agency action . . . taken or discussed at any agency meeting out of which the violation of this section arose."[92]

The State disputes that the FSB's adopted regulations can "override clear statutory mandates," and adds that the limited jurisdiction provision of the Act does not apply where, as here, violations of the Open Meetings Act are not the sole basis for injunctive relief.[93]

---

[89] Docket 29 at 22:14–22.

[90] Docket 15 at 11.

[91] Docket 15 at 11.

[92] Docket 15 at 11 (quoting 5 U.S.C. § 552b(h)(2)).

[93] Docket 22 at 2–3.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 20 of 46

The Open Meetings Act, 5 U.S.C. § 552b, provides that members of an agency "shall not jointly conduct or dispose of agency business other than in accordance with this section" and that except for some enumerated exceptions, "every portion of every meeting of an agency shall be open to public observation."[94]

As a threshold matter, the Court finds that the State has not established that its Open Meetings Act challenge to the FSB's delegation of authority on April 9, 2020 is timely. The Act provides that actions:

> may be brought by any person against an agency prior to, or within sixty days after, the meeting out of which the violation of this section arises, except that if public announcement of such meeting is not initially provided by the agency in accordance with the requirements of this section, such action may be instituted pursuant to this section at any time prior to sixty days after any public announcement of such meeting.[95]

The State commenced this action on August 10, 2020, but indicated to the Court that it was made aware of the delegation of authority on April 16, 2020, at an FSB meeting.[96] Thus, the State brought this action more than sixty days after a public announcement of the alleged violation of the Act. Although counsel for the State subsequently stated that the State was not aware of the meeting until June 17, 2020, that timeline contradicts the State's earlier statements and is inconsistent

---

[94] 5 U.S.C. § 552b(b).

[95] 5 U.S.C. § 552b(h).

[96] Docket 29 at 8:11–9:3.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 21 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 21 of 46

with the State's receipt of the June 2, 2020 delegation letters.[97]  Because the State has not established that its claim relating to the April 9, 2020 meeting is timely, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of this claim.

The State also alleges that Defendants violated the Open Meetings Act by voting on the Koyukuk Tribal Village's request by-email.  Defendants maintain that the FSB has not approved this request.[98]  But the OSM informed the State that a vote was going to take place on the Koyukuk request by e-mail poll on July 27, 2020 and that a teleconference would not be convened, which certainly suggests that the FSB has taken—or at least intended to take—a vote without holding a public meeting.[99]

The Court is not persuaded by Defendants' assertion that it is not governed by the Open Meetings Act and is only governed by its own regulations.  The Open Meetings Act defines an "agency" as "any agency . . . headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President . . . and any subdivision thereof authorized to act

---

[97] *See, e.g.,* Docket 4-3 at 24.  Although the letter does not expressly state that the delegation took place on April 9, 2020, it is sufficient to put the State on notice that an action was taken outside of the public forum.

[98] Docket 15 at 11.

[99] Docket 4-3 at 54.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 22 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 22 of 46

on behalf of the agency."[100]  Absent any explanation from Defendants as to why the FSB is not an agency subject to the Open Meetings Act, the Court assumes that it is, for purposes of this motion.[101]  It cannot be disputed that the Departments of the Interior and of Agriculture, whose Secretaries formed the FSB through a delegation of their authority under ANILCA, are agencies; thus, at the very least, the FSB is a "subdivision thereof authorized to act on behalf of the agency," if not an agency in its own right.[102]

Accordingly, "every portion of every meeting of [the FSB] shall be open to public observation."[103]  The Open Meetings Act defines a meeting as "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business . . . ."[104]  The Court finds that a vote on the Koyukuk request would constitute a "meeting" within this definition as it would result in the disposition of official agency business.

---

[100] 5 U.S.C. § 552b(a)(1).

[101] The FSB is comprised of a "Chair to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; two public members who possess personal knowledge of and direct experience with subsistence uses in rural Alaska to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; the Alaska Regional Director, U.S. Fish and Wildlife Service; Alaska Regional Director, National Park Service; Alaska Regional Forester, U.S. Forest Service; the Alaska State Director, Bureau of Land Management; and the Alaska Regional Director, Bureau of Indian Affairs." 50 C.F.R. § 100.10(b)(1).

[102] 5 U.S.C. § 552b(a)(1).

[103] 5 U.S.C. § 552b(b).

[104] 5 U.S.C. § 552b(a)(2).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 23 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 23 of 46

In light of the foregoing, the Court finds that the State has established a likelihood of success on the merits of its claim that holding an e-mail vote on the Koyukuk emergency hunt request without holding a public meeting would violate the Open Meetings Act. However, "the remedy for . . . violations [of the Act] is increased transparency, not invalidation of agency action."[105] Thus, even if the State is likely to succeed on its claim that the FSB violated the Open Meetings Act in voting by email, "release of transcripts, not invalidation of the agency's substantive action, is the remedy generally appropriate for disregard of the Act."[106] Thus, the State's Open Meetings Act claim regarding Koyukuk does not warrant the preliminary injunctive relief that the State seeks.[107]

### b. Title VIII of ANILCA

The State contends that Defendants violated ANILCA on three grounds: First, by adopting a regulation that authorizes the FSB to open hunts; second, by authorizing a hunt exclusively for tribal members; and third, by infringing on the State's constitutionally-mandated responsibility to manage wildlife. The Court will address each ground in turn.

---

[105] *McChesney v. Petersen*, 275 F. Supp. 3d 1123, 1138–39 (D. Nebraska 2016).

[106] *Braniff Master Exec. Council of Air Line Pilots Ass'n Int'l v. Civil Aeronautics Bd.*, 693 F.2d 220, 226 (D.C. Cir .1982).

[107] Notably, the State only asks for an order prohibiting Defendants from "delegating broad authority to in-season managers without complying with the federal Open Meetings Act." Docket 4 at 1. However, as discussed, the Court finds that the State's challenge to the April 9, 2020 delegation of authority to the local managers is untimely.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 24 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 24 of 46

**First**, the State points to Sections 815 and 816 of ANILCA, and maintains that those sections only authorize the FSB to close or restrict hunting and that ANILCA "d[oes] not authorize opening a hunt . . . ."[108]  The State contends that in promulgating its emergency special action regulation, 50 C.F.R. § 100.19, the FSB "adopted a regulation improperly granting itself the authority to *open* public lands" and maintains that the FSB's regulatory power in this regard is limited to opening a hunt that was previously closed.[109]

Defendants respond that ANILCA created a federal statutory scheme that mandates that "'the taking on public lands of fish and wildlife for nonwasteful subsistence uses *shall* be accorded priority.'"[110]  They contend that the "duty to administer these directives resides with the Secretary of the Interior," and,

---

[108] Docket 4-1 at 12.   Section 815 of ANILCA provides, in relevant part, that:

> Nothing in this title shall be construed as . . . authorizing a restriction on the taking of fish and wildlife for nonsubsistence uses on the public lands (other than national parks and park monuments) unless necessary for the conservation of healthy populations of fish and wildlife, for the reasons set forth in section 816 [16 U.S.C. § 3126], to continue subsistence uses of such populations, or pursuant to other applicable law . . . .  16 U.S.C. § 3125.

Section 816, in turn, provides that "[n]othing in this title is intended to enlarge or diminish the authority of the Secretary to designate areas where, and establish periods when, no taking of fish and wildlife shall be permitted on the public lands for reasons of public safety, administration, or to assure the continued viability of a particular fish or wildlife population."  16 U.S.C. § 3126. It further provides that "[i]f the Secretary determines that an emergency situation exists and that extraordinary measures must be taken for public safety or to assure the continued viability of a particular fish or wildlife population, the Secretary may immediately close public lands . . . to the subsistence uses of such population . . ."  16 U.S.C. § 3126(b).  However, an emergency closure may not extend longer than sixty days without notice and a public hearing.  *Id.*

[109] Docket 4-1 at 14 & n.50 (emphasis in original).

[110] Docket 15 at 15 (emphasis added) (citing *John v. United States*, 247 F.3d 1032, 1036 (9th Cir. 2001), then quoting 16 U.S.C. § 3114).

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 25 of 46

moreover, that the FSB's interpretation of ANILCA is entitled to deference.[111]

Defendants maintain that ANILCA's "affirmative command" to accord priority to subsistence uses simply "cannot be reconciled" with the State's position that ANILCA does not authorize the FSB to open a hunt, adding that the State's reliance on Section 815 of ANILCA is erroneous because it is a "Limitation and savings clause."[112] Defendants contend that the case law "reflects the practical reality that the Board regularly creates, modifies, or imposes conditions on subsistence hunting opportunity," and that the FSB has faced past legal challenges when it failed to open hunts.[113] Defendants add that the FSB's regulations "eliminate any doubt" as to whether the FSB has the power to authorize the Kake hunt, citing the provision in 50 C.F.R. § 100.19 that the FSB "may immediately open or close public lands for the taking of fish and wildlife" in an emergency

---

[111] Docket 15 at 15 (citing *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191–92 (9th Cir. 2000) and *United States v. Alexander*, 938 F.2d 942, 946 n.6 (9th Cir. 1991)).

[112] Docket 15 at 15–16.

[113] Docket 15 at 16 (citing *Ninilchik*, 227 F.3d at 1195 and *Native Vill. of Quinhagak v. United States*, 35 F.3d 388, 389 (9th Cir. 1994)). Neither of these cases directly implicates the FSB's statutory authority to open a hunt. In *Quinhagak*, the plaintiffs challenged the FSB's failure to "assert jurisdiction to allow subsistence . . . fishing in the *navigable* portions of" rivers and thus the case implicated questions of reserved water rights. 35 F.3d at 391. In *Ninilchik*, the "crux of [the plaintiff's] appeal [was] whether the Federal Subsistence Board's decision to impose . . . [an] antler restriction on subsistence hunters" contravened the priority requirements of ANILCA. 227 F.3d at 1193. The plaintiff also challenged as insufficient the FSB's reservation of certain days of a hunt to subsistence users only. *Id.* at 1195–96. Notably, although it was not at issue in the case, the court mentioned in passing that "the Board . . . authorized a harvest season running from August 10, 1995 through September 20, 1995, with the first ten days being reserved for subsistence hunts." *Id.* at 1190.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 26 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 26 of 46

situation.[114]  Defendants also contend that the State is time-barred from challenging this regulation.[115]

The State disputes Defendants' contention that it is time-barred from challenging 50 C.F.R. § 100.19, maintaining that "a challenge to the application of a regulation is measured from the time the regulation is applied."[116]  And the State "strongly objects to the application of 50 C.F.R. § 100.19 to open an emergency COVID hunting or fishing opportunity."[117]

In ANILCA, Congress expressly authorized the Secretary to "prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this title."[118]  The Secretaries of the Interior and of Agriculture established the FSB and delegated to it their statutory authority to issue regulations for the management of subsistence taking and uses of fish and wildlife on public lands.[119]  Among the regulations issued by the FSB is 50 C.F.R. § 100.19, which expressly authorizes

---

[114] Docket 15 at 16–17 (citing 50 C.F.R. § 100.19(a)).

[115] Docket 15 at 17 ("Plaintiff was certainly aware of the relevant change to the regulation in 2010, but did not object to [it] . . . Plaintiff has been aware of the exercise of this authority by the Board since at least 2012.").

[116] Docket 22 at 10 (citing *Wind River Mining Corp. v. United States*, 946 F.2d 710, 716 (9th Cir. 1991)).

[117] Docket 22 at 10–11.

[118] 16 U.S.C. § 3124.

[119] *See Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1092 & n.1 (9th Cir. 2008); *see also* 50 C.F.R. § 100.1 and 50 C.F.R. § 100.10(a) ("The Secretary of the Interior and Secretary of Agriculture hereby establish a Federal Subsistence Board, and assign it responsibility for administering the subsistence taking and uses of fish and wildlife on public lands, and the related promulgation and signature authority . . . .").

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 27 of 46

the FSB to "open . . . public lands for the taking of fish and wildlife" for "public safety reasons."[120]  The question for the Court is whether this regulation—to the extent it is relied upon to open public lands for emergency COVID-19-related hunts— exceeds the FSB's statutory authority and violates ANILCA.

As an initial matter, the Court agrees with the State that its as-applied challenge to the regulation is not time-barred.[121]  In the Ninth Circuit, "[i]f . . . a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of an adverse application of the decision to the particular challenger."[122]  Here, the State challenges the FSB's recent use of the regulation to open emergency COVID-19-related hunts as exceeding its statutory authority, and thus, the claims were brought well within the six-year limit.[123]

The Court turns next to the regulation itself, and whether it exceeds the FSB's authority under ANILCA; in doing so, the Court accords "deference to an

---

[120] 50 C.F.R. § 100.19(a).

[121] Although Defendants do not specify the applicable statute of limitations, civil actions against the United States must be commenced within six years of when the right of action first accrues. *See* 28 U.S.C. § 2401.

[122] *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991); *see also Lord v. Babbitt*, 991 F. Supp. 1150, 1159 (D. Alaska 1997) ("The Ninth Circuit Court of Appeals addressed the issue of when this statute of limitations commences to run with respect to federal regulations in *Wind River* . . . .").

[123] The State has not taken issue with the regulation when it was relied upon to authorize the FSB to reopen hunts that it had previously closed.   Docket 4-1 at 14 n.50.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 28 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 28 of 46

agency's interpretation of a statute it administers."[124]  "Congress delegated to the Secretary of the Interior the broad authority to 'prescribe such regulations as are necessary and appropriate to carry out his responsibilities under [ANILCA]'" and the Court is "thus prohibited from substituting [its] 'own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'"[125]  Indeed, the Ninth Circuit has deferred to an agency's interpretation of ANILCA on several occasions.[126]  Because ANILCA does not explicitly state that the FSB has the authority to open a hunt, the Court will defer to the FSB's interpretation "as long as it reflects 'a permissible construction of the statute.'"[127]  The Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the

---

[124] *Ninilchik*, 227 F.3d at 1191 (giving judicial deference to the FSB's interpretation of 16 U.S.C. § 3114).

[125] *Id.* (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 844 (1984)).

[126] *See id.* ("We have, in fact, on at least two prior occasions deferred to the Secretary of the Interior's interpretation of ANILCA.") (citing *Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995) and *Native Village of Quinhagak v. United States*, 35 F.3d 388 (9th Cir. 1994)).  In *Ninilchik*, the Ninth Circuit reasoned that "[d]eference to a federal agency's interpretation of a statute is based in part on the expertise it possesses in implementing federal policy in the general subject area.  While Alaska has a long history of managing large wilderness areas, it lacks the expertise in implementing federal laws and policies and the nationwide perspective characteristic of a federal agency."  227 F.3d 1186, 1192 (9th Cir. 2000) (quoting *Kenaitze Indian Tribe v. Alaska*, 860 F.2d 312, 316 (9th Cir. 1988)).

[127] *John v. United States*, 720 F.3d 1214, 1228 (9th Cir. 2013) ("We generally agree with the district court that *Chevron* deference applies to questions of ANILCA's interpretation in this case, where ANILCA is ambiguous as to the answer.").

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 29 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 29 of 46

court would have reached if the question initially had arisen in a judicial proceeding."[128]

The FSB contends that Section 804 of ANILCA is an affirmative command to accord priority to subsistence uses and gives the FSB broad authority to implement that command, including the authority to adopt 50 C.F.R. § 100.19. To evaluate the FSB's interpretation of Section 804, the Court "begin[s] with the language of the provision and read[s] it in reference to the other parts of ANILCA."[129] Section 804 expressly provides that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes."[130] This reflects one of ANILCA's key priorities, as stated elsewhere in Title VIII: "the purpose of this title is to provide the opportunity for rural residents engaged in a subsistence way of life to do so."[131] This priority for subsistence uses reflects Congress's view that "the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives, on the public lands . . . is essential to Native physical, economic, traditional, and cultural existence and to non-Native

---

[128] *Chevron*, 467 U.S. at 843 n.11.

[129] *Ninilchik*, 227 F.3d at 1192 ("As a matter of related principle, we decline to read the priority Congress granted to subsistence uses in § 3114 in a manner inconsistent with the policies of other provisions of ANILCA.").

[130] 16 U.S.C. § 3114.

[131] 16 U.S.C. § 3112(1).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 30 of 46

Case 3:20-cv-00195-SLG    Document 37    Filed 11/18/20    Page 30 of 46

physical, economic, traditional, and social existence."[132] These provisions must be read with reference, as well, to Congress's express authorization to "prescribe such regulations as are necessary and appropriate to carry out [the Secretary's] responsibilities under this title."[133]

Based on the language of Section 804 as well as Congress's stated goals, the Court concludes that ANILCA's priority for subsistence uses aims, among other things, to ensure the physical well-being of rural residents of Alaska. Given Congress's express authorization to promulgate regulations to further ANILCA's goals, the Court concludes that the FSB's interpretation of Section 804 as authorizing a regulation to open emergency hunts due to public safety concerns is reasonable. Moreover, there are no provisions in ANILCA prohibiting the FSB from opening a hunt or otherwise indicating that it does not have the authority to do so; indeed, the State does not contend as much. Instead, the State maintains that the FSB erred in relying on Sections 815 and 816 of ANILCA to open a hunt. Defendants deny relying on either provision.[134] Section 815 addresses limitations on the FSB's ability to restrict nonsubsistence uses, among other things, and Section 816 addresses its authority to enact closures. Neither of these provisions

---

[132] 16 U.S.C. § 3111.

[133] 16 U.S.C. § 3124.

[134] Docket 15 at 15–16.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 31 of 46

is relevant to the issue of whether the FSB has the authority to open a hunt, and, importantly, neither renders the FSB's interpretation of Section 804 unreasonable.

In light of the deference due the agency's interpretation, the Court finds that the State has not shown either that it is likely to succeed on the merits, or raised serious question as to the merits of its claim that the FSB exceeded its authority and violated ANILCA by promulgating a regulation that allows it to open emergency hunts for public safety reasons.

**Second**, the State contends that even if the FSB had the authority to open a hunt, it violated ANILCA—which provides for continued subsistence hunting for both Alaska Natives and non-Natives—by authorizing a hunt near Kake "only for tribal members" of the OVK.[135]  Defendants respond that the State has not established why the FSB could not authorize community harvest only for tribal members of the OVK, noting that the FSB has previously accepted proposals from tribal organizations for management of harvest opportunities, and that the State itself recognizes community harvests where designated hunters harvest the resource on behalf of a group.[136]  The State replies that the FSB cannot justify its

---

[135] Docket 4-1 at 14; Docket 22 at 9 ("Nothing in ANILCA authorizes a hunt only for native or non-native, residents.").

[136] Docket 15 at 17–18 (citing *Ninilchik Traditional Council v. Towarak*, Case No. 3:15-cv-0205 JWS, 2016 WL 1559122, at *2 (D. Alaska 2016), and ADF&G's Copper Basin Caribou Community Subsistence Harvest Permit at http://www.adfg.alaska.gov/static/license/huntlicense/pdfs/csh_caribou_2020_2021.pdf at 4.  In *Towarak*, the Ninilchik Tribal Council submitted two proposed regulations that would authorize the residents of Ninilchik to operate two community subsistence nets.  2016 WL 1559122, at *2.  The Copper Basin permit specifies that the program "allows a community or group to designate members (from within the group) who may possess particular expertise in hunting to harvest wildlife resources on behalf of the

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 32 of 46

discrimination between Native and non-Native rural residents by contending that it does so regularly.[137]  It adds that the delegation of authority in the Copper Valley permit is "not at all the same," noting that any group of a certain size was eligible to participate in the hunt, and that eligibility was not limited to tribal members.[138]  The State contends that here, there is "no evidence as to whether the hunters or recipients were native or non-native," emphasizing that the FSB had relinquished its oversight of the hunt.[139]  The State discounts the "post-hoc email exchange" with Mr. Jackson confirming the harvest was shared with the whole community, stressing that the "permit, on its face, limited participation solely to tribal members" in violation of ANILCA.[140]

The Court is not persuaded that the permit authorizing the Kake hunt "on its face" limits participation solely to tribal members.  The permit "authorizes a Kake community harvest" and specifies that "[p]articipation in the season is limited to Federally qualified subsistence users selected by the Organized Village of Kake."[141]  The FSB defines "federally qualified subsistence users" as "rural residents who have been determined to have customary and traditional use" of

---

members of the community or group.").

[137] Docket 22 at 9 (citing Docket 15 at 17).

[138] Docket 22 at 8.

[139] Docket 22 at 9–10.

[140] Docket 22 at 10.

[141] Docket 4-3 at 46.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 33 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 33 of 46

wildlife within a specified area as determined by 50 C.F.R. § 100.24.[142]  It is not evident on the existing record that the permit was limited to tribal members only; thus, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of its claim that Defendants violated ANILCA in issuing a permit for a hunt exclusively for tribal members.

*Third*, the State contends that the FSB violated ANILCA by infringing on the State's authority to manage wildlife and hunting, which it maintains was preserved for the State by the following provision of ANILCA: "Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in title VIII of this Act, or to amend the Alaska constitution."[143]  Defendants respond that the State has failed to establish that the Kake hunt infringed on the State's authority or had any effect on the State's management of wildlife in the region. Defendants add that, in any event, ANILCA is not concerned with the "collateral effect" that a regulation "might cause a separate regulatory body."[144]

The State correctly notes that ANILCA preserves the State's authority to manage fish and wildlife other than as provided by Title VIII of ANILCA.  However,

---

[142] Docket 24-2 at 1.  *See also* Docket 21-2  at 3 (Sealaska *Amicus Curiae* Motion) ("[P]articipation was 'limited to Federally qualified subsistence users' . . . a term that included any person, Native or non-Native, who met the requisite rural residency requirements.").

[143] Docket 4-1 at 14; 16 U.S.C. § 3202(a).

[144] Docket 15 at 18 (citing *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1100 (9th Cir. 2008)).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 34 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 34 of 46

as discussed above, the Court finds reasonable the FSB's interpretation of Title VIII as authorizing it to open emergency hunts. As such, the FSB did not unlawfully infringe on the State's authority to manage fish and wildlife on public lands, but acted as authorized by Title VIII. The Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of its claim that Defendants violated ANILCA by infringing on the State's authority to manage wildlife and hunting.

### b. Arbitrary and Capricious

The State contends that the FSB's "decision to open a 60-day hunt for deer and moose to Kake tribal residents is arbitrary, capricious, and not in accordance with law."[145] First, the State contends that even if the FSB were authorized to open hunts, its decision to authorize the Kake hunt was contrary to the FSB's own guidelines.[146] Specifically, it contends that there is "no evidence that anyone at [ADF&G] was contacted," as required by the guidelines, and there was no confirmation by the Mass Care Group of a food security issue.[147] Second, the State contends that the evidence considered by the FSB at the June 22, 2020 meeting did not support its decision: there was no evidence of food shipment issues or COVID-19-related ferry delay and there was evidence that meat and

---

[145] Docket 4-1 at 15.

[146] Docket 4-1 at 15.

[147] Docket 22 at 5.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 35 of 46

supplies were available in Kake and that the community was benefiting from fishing season.[148]  The State adds that even if there had been a food security issue in April—when the OVK first requested an emergency hunt—there certainly was not one in June, when the FSB authorized the hunt.[149]  Separately, the State contends that the FSB's delegation of the authority to the OVK to select the hunters is invalid because ANILCA does not authorize the FSB to delegate outside a federal agency.[150]

Defendants respond that the State cannot bring a standalone APA claim, and that an arbitrary and capricious review "may not be conducted under the APA independent of another statute."[151]  They do not otherwise respond to the State's APA arguments.  However, because the State challenges the FSB's decision with reference to ANILCA, the Court concludes that it did not bring "standalone" APA claims.  Thus, the Court turns to the State's contention that the FSB's decisions were arbitrary, capricious, or otherwise not in accordance with law.

The Ninth Circuit has explained:

'[An] agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered

---

[148] Docket 22 at 5.

[149] Docket 22 at 4.

[150] Docket 4-1 at 15 (citing *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004)); Docket 22 at 7.

[151] Docket 15 at 18–19 (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977) and *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996)).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 36 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 36 of 46

an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'[152]

The State contends that the FSB's decision to authorize the Kake hunt was contrary to its own guidelines. There are two sources of "guidelines" in the record: the OSM Memorandum and the Delegation Letters. The OSM Memorandum predates the Delegation Letters.[153] It provides "key points . . . [that] bear emphasis" including that no action will be taken by the FSB or the delegates (1) if the requested hunting or fishing opportunity "threatens the viability of the resource," (2) if there is an "absence of a demonstrable and imminent threat to public safety," (3) prior to consultation with the ADF&G, or (4) prior to confirmation of need by the Mass Care Group.[154] The Delegation Letters reiterate these considerations, stating that the delegation authority "only applies to requests *related to food security* and may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource."[155] The letter specifies that the delegate "*will consult with the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action*," and that if

---

[152] *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) (alteration in original) (quoting *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011)).

[153] Docket 4-3 at 4 ("While the Board has approved the concept of issuing these COVID-19-related delegation letters, it has not issued any such letters to date.").

[154] Docket 4-3 at 4.

[155] *See, e.g.,* Docket 4-3 at 22 (emphasis in original).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 37 of 46

the Mass Care Group "does not confirm the need for this special action" the delegate is to defer the action to the FSB.[156]

Because the Mass Care Group was unable to confirm the need for the Kake action, the district ranger deferred the Kake action to the FSB.[157] The FSB considered and voted to adopt the special action request at its June 22, 2020 meeting.[158] The record shows that the FSB adopted the emergency season "for reasons of public safety related to food security concerns in Kake."[159] In adopting the request, the FSB considered that there were no conservation concerns, that the action would not affect regular State or Federal hunts, and considered evidence presented by the President of the OVK that "ferry service had been disrupted, that store bought meat was extremely expensive and of questionable quality, and that there was a need for supply of healthy food to help" the community.[160] The FSB considered the Mass Care Group's representation that there were no food supply issues, and several members of the FSB expressly stated that "they disagreed with the Mass Care Group's conclusion" in light of the evidence from the OVK's President.[161]

---

[156] *See, e.g.* Docket 4-3 at 24 (emphasis in original).

[157] Docket 4-3 at 38.

[158] Docket 4-3 at 39.

[159] Docket 4-3 at 47.

[160] Docket 15-2 at 2–3, ¶ 10.

[161] Docket 15-2 at 3, ¶ 11.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 38 of 46

Based on the foregoing, the Court finds that the record contained ample evidence that supported and was rationally connected to the FSB's decision to approve the emergency special action in Kake for reasons of public safety related to food security concerns;[162] the FSB considered relevant factors—conservation and public safety concerns—and articulated a satisfactory explanation for its decision.[163]  Although the State contends that the FSB violated its own guidelines by failing to coordinate with ADF&G, the record shows that the district ranger attempted to communicate with the State about the FSB's intended special action, but the State did not respond.[164]  The State also contends that the FSB violated those same guidelines by overriding the Mass Care Group's position that it could not confirm a food shortage or supply chain issue; however, the record clearly demonstrates that the FSB considered the Mass Care Group's position but found it inconsistent with other evidence presented at the meeting.[165]

---

[162] Docket 4-3 at 47 ("The Board supported this emergency season for reasons of public safety related to food security concerns in Kake due to intermittent and unreliable food deliveries caused by the COVID-19 pandemic and limited ferry service.").

[163] These are the relevant factors under the FSB's emergency special actions regulations as well as under applicable provisions of ANILCA. *See* 50 C.F.R. § 100.19 ("In an emergency situation . . . for public safety reasons, the Board may immediately open or close public lands for the taking of fish and wildlife for subsistence uses"); 16 U.S.C. § 3114 (priority given to subsistence use, with restrictions where necessary for conservation).

[164] *See, e.g.,* Docket 4-3 at 3, ¶ 6 ("ADF&G received only informal inquiries from the Petersburg District Ranger"); Docket 4-3 at 38 ("Concurrence with the proposed action was requested of ADF&G on June 4, 2020" with "no[] official response" as of June 12, 2020).

[165] Although an agency's internal guidelines do not carry the same weight as published rules or regulations, the Supreme Court has held that an agency's failure to comply with its internal rules is arbitrary and capricious "[w]here the rights of individuals are affected" because "it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 39 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 39 of 46

Based on this record of decision making, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of its claim that the FSB's decision to approve the Kake hunt for public safety reasons was arbitrary, capricious, or contrary to law.

The Court next considers the State's contention that the FSB's decision to delegate to the OVK the selection of participants in the Kake community hunt was arbitrary, capricious, and contrary to law. The State relies on *United States Telecom Association v. FCC*, which held unlawful the FCC's subdelegation of its authority to state commissions on the basis that the "case law strongly suggests that subdelegations to outside parties are assumed to be improper absent an affirmative showing of congressional authorization."[166] The District of Columbia Circuit reasoned that "when an agency delegates power to outside parties, lines of

---

possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). *See also Aracely R. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) ("[A]gency actions may be arbitrary and capricious where they do not comply with binding internal policies governing the rights of individuals." ). *But see Am. Farm. Lines v. Black all Freight Serv.*, 397 U.S. 532, 538–39 (1970) (holding that the agency "is entitled to a measure of discretion in administering its own procedural rules" relying on the "general principle that 'it is always within the discretion of . . . an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it'").

In the instant case, the Court does not find that the FSB failed to comply with its own guidelines, which only required it to wait to act until it had "confirmation of need with the . . . Mass Care group." Docket 4-3 at 4. The FSB did not act prior to receiving and considering the Mass Care Group's position; it simply did not agree with its conclusion. The Letters of Delegation, which also reflect internal guidelines, clearly contemplate overriding the Mass Care Group's findings because the letters instruct the delegates to defer the case for the FSB's consideration in the absence of confirmation of need. Moreover, the Court finds that it would not be rational for the FSB to ignore evidence of food security issues where they exist and decline to act based solely on the Mass Care Group's position.

[166] 359 F.3d 554, 565 (D.C. Cir. 2012).

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 40 of 46

accountability may blur" and there is an increased "risk that these parties will not share the agency's 'national vision and perspective' and thus may pursue goals inconsistent with those of the agency and the underlying statutory scheme."[167]

However, the Ninth Circuit has specified that "[s]ubdelegation of administrative authority to a sovereign entity is not *per se* improper," adding that such subdelegation need not "rest on express statutory authority."[168]  The Ninth Circuit reasoned that "tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory" and "possessing 'the power of regulating their internal and social relations . . . .'"[169]

The Court finds that the FSB's subdelegation to the OVK of the authority to select the participants of the hunt does not implicate the concerns at issue in *United States Telecom Association*; there is no reason to expect that the OVK will select participants in a manner that is inconsistent with the goals of the FSB or ANILCA's mandate.  The OVK is a federally recognized Indian Tribe with powers of self-governance and jurisdiction over its tribal citizens and subsistence resources are a "foundational piece of the cultural fabric of Kake."[170]  It brought this emergency

---

[167] *Id.* at 566 (citation omitted).

[168] *S. Pac. Transp. Co. v. Watt*, 700 F.2d 550, 556 (9th Cir. 1983); *see also Assiniboine & Sioux Tribes of Ft. Peck Indian Reservation v. Bd. of Oil & Gas Conservation,* 792 F.2d 782, 795 (9th Cir. 1986) (collecting cases indicating federal government could subdelegate to tribe).

[169] *Southern Pacific Transp. Co. v. Watt*, 700 F.2d 550, 556 (9th Cir. 1983) (quoting *United States v. Mazurie*, 419 U.S. 544, 557 (1975)).

[170] Docket 20-2 at 1, ¶ 3; Docket 20-2 at 2, ¶ 12; Docket 20-1 at 8.

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 41 of 46

request to the FSB "[t]o aid needy members and protect the general Welfare and security of the Village."[171]  Moreover, the delegation of authority at issue here is minor, implicating only who participates in the hunt.  To the extent that the State is concerned with the distribution of the harvest among members of the community, that would be a concern even if the local land manager had selected the hunt participants and is not inherent to this particular delegation of authority.[172]

Based on the foregoing, the Court finds that the State has not demonstrated either a likelihood of success or serious questions going to the merits of its claim that the FSB's delegation of authority to select the members of the community harvest to the OVK was arbitrary, capricious, or contrary to law.

### iii. The Likelihood of Irreparable Harm

The first factor in the preliminary injunction analysis—the likelihood of success on the merits—is the most important.[173]  The Ninth Circuit has held that "[b]ecause it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, we "need not consider the remaining three [*Winter* elements].""[174]  Nonetheless, the Court will briefly address irreparable harm.  The

---

[171] Docket 4-3 at 37.

[172] Moreover, the OVK has indicated that it distributed the harvest among the community, to both tribal and nontribal residents.  Docket 20-2 at 6, ¶ 30.

[173] *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014)).

[174] *Id.*

Case No. 3:20-cv-00195,  *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 42 of 46

State "must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."[175]

The State contends that the FSB's authorization of a hunt near Kake "impairs the State's ability to manage its fish and wildlife" by allowing "moose and deer to be taken out of season and in excess of established bag limits."[176] It maintains that wildlife population information is critical to its ability to fulfill its constitutional obligation to manage wildlife according to the sustained yield principle, and that the FSB's actions "in secret meetings and without providing harvest information to the State, cause irreparable harm" to those obligations.[177] Specifically, the State contends that it relies on information from hunters to determine herd composition, and that the OSM had refused to share with the State information, including "hunter[] name, moose jaw, moose antler photos, number of brow tines, and antler points for moose."[178] It adds that when the FSB conducts unannounced meetings, the State and its residents are unable to participate in the deliberations, and concludes that the harm from the actions taken at those meetings is irreparable and warrants injunctive relief.[179]

---

[175] *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

[176] Docket 4-1 at 15.

[177] Docket 4-1 at 16.

[178] Docket 4-1 at 16 (quoting Decl. Ryan Scott at ¶ 3).

[179] Docket 4-1 at 17.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 43 of 46

Case 3:20-cv-00195-SLG    Document 37    Filed 11/18/20    Page 43 of 46

Defendants respond that the State was provided with customary harvest data, but that some of its requests were "unprecedented" and that Defendants were, at least initially, unable to fulfill them.[180] Defendants add that these concerns "do not implicate imminent injury, but one past hunt" and are not "connected to the particularized conduct at issue . . . ."[181]

In its reply brief, the State acknowledges that Defendants ultimately provided all the requested information but disputes that its requests were unusual.[182] The State expresses concern that the FSB may withhold information in the event of future authorized hunts.[183]

The Court concludes that the State has not shown a likelihood of irreparable harm. First, to conclude that any change to the number of moose or deer harvested in a given season irreparably harms the State's ability to manage hunting and wildlife would produce an irrational result. If that were true, any action taken by the FSB to fulfill its role in administering the subsistence taking and uses of fish and wildlife on public lands would irreparably harm the State.[184] Second,

---

[180] Docket 15 at 19 (citing Dec. Theodore Matuskowitz at ¶¶ 3–9).

[181] Docket 15 at 20.

[182] Docket 22 at 11–12 (The State contends the information is "routinely requested for all antler-restricted State moose hunts in Southeast Alaska.").

[183] Docket 22 at 12.

[184] See 50 C.F.R. §100.10(a); see also Defenders of Wildlife v. Salazar, 812 F. Supp. 2d 1205, 1209 (D. Mont. 2009) (finding no likelihood of irreparable harm due to scheduled wolf hunts because if taking of listed species were irreparable harm "operative provisions of other environmental laws" would be rendered "useless").

Case No. 3:20-cv-00195, State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 44 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 44 of 46

the State has not presented evidence that it will suffer harm to its duties to manage wildlife in the absence of a preliminary injunction; "[a]llegations of irreparable harm must be supported with actual evidence, and not merely conclusory statements or unsupported allegations."[185] Although the State contends that it relies on information from hunters for wildlife management in the dense canopy around Kake, it did not explain how a lack of "hunters name, moose jaw, moose antler photos, number of brow tines and antler points for moose" would harm its ability to do so or why the information initially provided was insufficient.[186]

Finally, the State predicts that, absent a preliminary injunction, "other COVID hunts may be authorized" in "closed meetings with no public awareness or involvement." Yet the Court is only aware of a single emergency hunt authorized by the FSB—the Kake hunt—and that was authorized at a public meeting.

In sum, the State has not demonstrated that it will likely be irreparably harmed in the absence of a preliminary injunction.

//

//

//

//

---

[185] *Nevada v. United States*, 364 F. Supp. 3d 1146, 1151 (D. Nev. 2019) (citing *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674–75 (9th Cir. 1988)). In light of the foregoing, the Court does not address the final two factors for preliminary injunctive relief. *See id.*

[186] Docket 4-1 at 16.

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 45 of 46

**CONCLUSION**

In light of the foregoing, the State's motion for a preliminary injunction regarding COVID-19 emergency hunts at Docket 4 is DENIED.

DATED this 18th day of November, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00195, *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Order re Plaintiff's Motion for Preliminary Injunction—Emergency Hunts
Page 46 of 46

Case 3:20-cv-00195-SLG   Document 37   Filed 11/18/20   Page 46 of 46