

DATE DOWNLOADED: Mon Jul 12 16:18:32 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Legislative History of the Alaska National Interest Lands Conservation Act : P.L.
96-487 : 94 Stat. 2371 : December 2, 1980. (1980).

ALWD 6th ed.
. Legislative History of the Alaska National Interest L&s Conservation Act : P.L.
96-487 : 94 Stat. 2371 : December 2, 1980. (1980).

APA 7th ed.
(1980). Legislative History of the Alaska National Interest Lands Conservation Act
P.L. 96-487 94 Stat. 2371 December 2, 1980.. Washington, Covington & Burling.

Chicago 17th ed.
Legislative History of the Alaska National Interest Lands Conservation Act : P.L.
96-487 : 94 Stat. 2371 : December 2, 1980.. Washington, Covington & Burling.

McGill Guide 9th ed.
Legislative History of the Alaska National Interest L&s Conservation Act : P.L.
96-487 : 94 Stat. 2371 : December 2, 1980. (Washington: Covington & Burling., 1980)

AGLC 4th ed.
Legislative History of the Alaska National Interest Lands Conservation Act : P.L.
96-487 : 94 Stat. 2371 : December 2, 1980. (Covington & Burling., 1980)

MLA 8th ed.
Legislative History of the Alaska National Interest Lands Conservation Act : P.L.
96-487 : 94 Stat. 2371 : December 2, 1980.. Washington, Covington & Burling.
HeinOnline.

OSCOLA 4th ed.
Legislative History of the Alaska National Interest Lands Conservation Act : P.L.
96-487 : 94 Stat. 2371 : December 2, 1980.. Washington, Covington & Burling.

Provided by:
Available Through: Alaska State Court Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

# [COMMITTEE PRINT]

OCTOBER 28, 1977

## ALASKA NATIONAL INTEREST LANDS PRINT NO. 2

[Prepared for the use of the Subcommittee on General Oversight and Alaska Lands, Committee on Interior and Insular Affairs, House of Representatives, Ninety-fifth Congress, first session, and based upon provisions of H.R. 39.]

## RECOMMENDATIONS FOR SUBSTITUTE TEXT FOR H.R. 39

95TH CONGRESS
1ST SESSION

# H. R. 39

---

## IN THE HOUSE OF REPRESENTATIVES

---

# A BILL

1       SHORT TITLE AND TABLE OF CONTENTS

2      SECTION 1. This Act, together with the following table

3 of contents, shall be cited as the "Alaska National Interest

4 Lands Conservation Act".

### TABLE OF CONTENTS

| | Page |
|---|---|
| Sec. 1. Short title and table of contents | 1 |

#### TITLE I—FINDINGS, POLICY, AND DEFINITIONS

| | |
|---|---|
| Sec. 101. Findings | 4 |
| Sec. 102. Policy | 6 |
| Sec. 103. Definitions | 8 |

J. 98-082——1

TABLE OF CONTENTS—Continued

## TITLE II—NATIONAL PARK SYSTEM

| | | Page |
|---|---|---|
| Sec. 201. | Establishment of new areas | 12 |
| Sec. 202. | Additions to existing areas | 22 |
| Sec. 203. | Administrative provisions | 24 |

## TITLE III—NATIONAL WILDLIFE REFUGE SYSTEM

| Sec. 301. | Establishment of new areas | 25 |
|---|---|---|
| Sec. 302. | Additions to existing areas | 33 |
| Sec. 303. | Alaska peninsula and Iliamna areas | 36 |
| Sec. 304. | Administrative provisions | 39 |

## TITLE IV—NATIONAL FOREST SYSTEM

| Sec. 401. | Additions to national forests | 40 |
|---|---|---|
| Sec. 402. | Mansfield Peninsula National Recreation Area | 41 |

## TITLE V—NATIONAL WILD AND SCENIC RIVERS SYSTEM

| Sec. 501. | Additions to the National Wild and Scenic Rivers System | 44 |
|---|---|---|
| Sec. 502. | Potential additions | 50 |
| Sec. 503. | Administrative provisions | 51 |

## TITLE VI—DESIGNATION OF WILDERNESS AREAS AND WILDERNESS STUDY AREAS WITHIN UNITS OR ADDITIONS TO UNITS OF THE NATIONAL PARK, NATIONAL WILDLIFE REFUGE, AND NATIONAL FOREST SYSTEMS

| Sec. 601. | Findings and purposes | 54 |
|---|---|---|
| Sec. 602. | Designation of wilderness areas within the National Park System | 56 |
| Sec. 603. | Designation of wilderness areas within the National Wildlife Refuge System | 60 |
| Sec. 604. | Wilderness reviews within units of the National Wildlife Refuge System | 64 |
| Sec. 605. | Designation of wilderness areas within the National Forest System | 65 |
| Sec. 606. | Designation of wilderness study areas within the National Forest System | 75 |
| Sec. 607. | Special provisions | 79 |
| Sec. 608. | Administration | 83 |
| Sec. 609. | Acquisition authority | 83 |

## TITLE VII—SUBSISTENCE

| Sec. 701. | Findings | 84 |
|---|---|---|
| Sec. 702. | Policy | 85 |
| Sec. 703. | Definitions | 86 |
| Sec. 704. | Regional subsistence zones | 87 |
| Sec. 705. | Local subsistence zones | 88 |
| Sec. 706. | State regulation | 89 |

3

## TABLE OF CONTENTS—Continued

### TITLE VII—SUBSISTENCE—Continued

Page

Sec. 707. Subsistence boards and council _____ 90
Sec. 708. Duties of regional boards _____ 93
Sec. 709. Priorities for use of resources _____ 93
Sec. 710. Duties of local boards _____ 94
Sec. 711. Local review of resources _____ 96
Sec. 712. Duties of subsistence council _____ 96
Sec. 713. Enforcement duties of Secretary _____ 97
Sec. 714. Subsistence and land-use decisions _____ 99
Sec. 715. Access _____ 100
Sec. 716. Annual report _____ 100
Sec. 717. Cooperative agreements _____ 101
Sec. 718. Snowmobiles and motorboats _____ 102
Sec. 719. Research _____ 102
Sec. 720. Other laws _____ 103

### TITLE VIII—IMPLEMENTATION OF ALASKA NATIVE CLAIMS SETTLEMENT ACT AND ALASKA STATEHOOD ACT

Sec. 801. Conveyances of Village Townships _____ 104
Sec. 802. Conveyances to Native Corporations _____ 105
Sec. 803. Administrative provisions _____ 106
Sec. 804. Tax moratorium extension _____ 107
Sec. 805. Conveyances to the State _____ 108
Sec. 806. Alaska Native lands trust _____ 109
Sec. 807. Action to enforce; jurisdiction _____ 112

### TITLE IX—ACCESS TO CONSERVATION SYSTEM UNITS FOR STRATEGIC AND CRITICAL MINERALS

Sec. 901. Purposes _____ 112
Sec. 902. Definitions _____ 112
Sec. 903. Continuation of mineral assessment programs in Alaska __ 114
Sec. 904. Existing mining claims and mineral leasing rights in conservation system units _____ 115
Sec. 905. Areas subject to process _____ 117
Sec. 906. Executive recommendations _____ 118
Sec. 907. Congressional review _____ 124
Sec. 908. Exploration for an extraction or development of minerals _____ 128
Sec. 909. Transfer of Federal lands _____ 131

### TITLE X—TRANSPORTATION SYSTEM AND UTILITY TRANSMISSION SYSTEM RIGHTS-OF-WAY ACROSS CONSERVATION SYSTEM UNITS

Sec. 1001. Purposes _____ 132
Sec. 1002. Application for use permits _____ 132
Sec. 1003. Congressional review _____ 135
Sec. 1004. Issuance of permits _____ 136
Sec. 1005. Transfer of Federal lands _____ 136

4

## TITLE XI—COORDINATION

Page

Sec. 1101. Alaska Advisory Coordinating Council_____ 137

### TITLE XII—ADMINISTRATIVE PROVISIONS

Sec. 1201. Land acquisitions and exchanges_____ 142
Sec. 1202. Access _____ 145
Sec. 1203. Archeological and paleontological sites_____ 147
Sec. 1204. Cooperative information centers_____ 148
Sec. 1205. Administrative sites and visitor facilities_____ 150
Sec. 1206. Revenue-producing visitor services_____ 151
Sec. 1207. Local hire_____ 152
Sec. 1208. Management plans_____ 153
Sec. 1209. Taking of fish and wildlife_____ 158
Sec. 1210. Maps _____ 159
Sec. 1211. Major Federal actions_____ 160

### TITLE XIII—MISCELLANEOUS

Sec. 1301. Iditarod National Historic Trail_____ 161
Sec. 1302. Klondike Gold Rush National Historical Park_____ 163
Sec. 1303. Navigation aids and other facilities_____ 163
Sec. 1304. National petroleum reserve in Alaska_____ 164
Sec. 1305. Withdrawals _____ 165
Sec. 1306. Scenic highway study_____ 166
Sec. 1307. Authorization for appropriation_____ 168

# TITLE I—FINDINGS, POLICY, AND DEFINITIONS

## FINDINGS

SEC. 101. Congress finds and declares that—

(1) through passage of the Alaska Statehood Act and the Alaska Native Claims Settlement Act, the Congress has established policies for the disposition of the public lands in Alaska which provide for future economic, social, and cultural development in Alaska and for the fair and just settlement of claims of Natives and Native groups based on aboriginal land claims, while reserving decision as to which of the public lands in Alaska should be reserved in the national interest;

1      (2) a prompt and thorough resolution of the status

2   of the public lands in the State of Alaska is in the best

3   interests of all the people of the United States including

4   residents of Alaska;

5      (3) certain public lands in the State of Alaska con-

6   tain nationally and internationally significant scenic,

7   historic, archeological, scientific, cultural, recreational,

8   wildlife, and wilderness resources, and these public lands

9   represent a remarkable diversity of undisturbed ecosys-

10  tems, including some not found elsewhere;

11     (4) wilderness on a large scale is the singular dis-

12  tinguishing characteristic of public lands in Alaska,

13  which presents unrivaled opportunity for experiencing

14  vast areas of land unaltered by man's activities, an

15  opportunity which merits preservation for the benefit

16  of future generations; but such wilderness is increasingly

17  being reduced by activities and intrusions associated

18  with national and international demands for energy,

19  mineral, and timber resources;

20     (5) several wildlife species, including species which

21  are rare, endangered, or depleted in other parts of the

22  nation and the world, are dependent for their survival

23  on the maintenance of an undisturbed wilderness con-

24  dition on the public lands in the State of Alaska;

25     (6) selective representation of the diverse natural

1       communities, including pristine, free-flowing rivers, on

2       public land in the State of Alaska should be preserved

3       as units of Federal land management conservation sys-

4       tems, for the benefit of present and future generations;

5       and

6            (7) at the accelerated pace of population growth,

7       settlement and related consumption of raw materials, the

8       world is losing natural habitats and associated multiple

9       values at an alarming rate, and the wilderness and the

10      wilderness habitats of certain public lands in Alaska

11      assume global importance since they are among the few

12      remaining areas of such vast extent whose permanent

13      protection is a reasonable and attainable national

14      objective.

15                     POLICY

16     SEC. 102. In order to secure for the American people

17 of this and future generations an enduring heritage of un-

18 trammeled environments in the State of Alaska, it is hereby

19 declared to be the policy of the Congress that—

20           (1) It is necessary to immediately designate public

21      lands in Alaska for inclusion in the National Park, Na-

22      tional Wildlife Refuge, Wild and Scenic Rivers, Na-

23      tional Forest, National Trails, and National Wilderness

24      Preservation Systems which shall in combination—

1      (A) preserve unrivaled scenic, geologic, and
2  wildlife values associated with natural landscapes;

3      (B) manage in their natural state extensive
4  unaltered arctic tundra, boreal forest, and coastal
5  rainforest ecosystems;

6      (C) protect and preserve cultural values of
7  Native and non-Native peoples and renewable re-
8  sources related to their subsistence needs;

9      (D) provide for the maintenance of sound
10  populations of, and habitat for, certain wildlife
11  species, including those species dependent on vast
12  undeveloped areas, of inestimable value to the
13  citizens of Alaska and the Nation;

14      (E) protect and interpret historic and archeo-
15  logical sites, maintain wilderness resource values
16  and multiple watershed, flora, fauna, and subsistence
17  resource values, and preserve free flowing rivers
18  and associated lands; and

19      (F) maintain opportunities for scientific re-
20  search in undisturbed ecosystems.

21  (2) In the planning, management, and administra-
22  tion of these conservation system units—

23      (A) intangible values shall be considered on
24  an equal basis with quantifiable values;

(B) sound ecological principles shall be adhered to; and

(C) full public participation shall be encouraged.

(3) The public shall have access to the public lands in Alaska, including access to those public lands which constitute conservation system units, consistent with the purposes for which those units are established.

(4) Those persons now dependent upon subsistence uses of the public lands in Alaska shall be enabled to continue in that lifestyle, to the extent they may choose to do so and to the extent that the renewable resources of those public lands permit such uses to be continued and, within conservation system units, in a matter consistent with the purposes for which the units are established or expanded.

DEFINITIONS

SEC. 103. As used in this Act—

(1) the term "land" means lands, waters, and interests therein;

(2) the term "Federal land" means land the title to which is in the United States after the date of enactment of this Act;

(3) the term "public lands" means lands situated

1      in Alaska which, after the date of enactment of this Act,

2      are Federal lands, except—

3          (A) the smallest practicable tract, as deter-

4          mined by the Secretary, enclosing improved land

5          actually used in connection with the administration

6          of any Federal installation;

7          (B) land selections of the State of Alaska

8          which have been tentatively approved under section

9          6 (g) of the Alaska Statehood Act (72 Stat. 341)

10         and lands which have been validly selected by the

11         State as part of its entitlement under the Mental

12         Health Act ( Stat. ), the University Lands Act

13         ( Stat. ), and the School Lands Act ( Stat.

14         );

15         (C) land selections of a Native Corporation

16         made under the Alaska Native Claims Settlement

17         Act which have not been conveyed to a Native

18         Corporation, unless any such selection is determined

19         to be invalid; and

20         (D) lands referred to in section 19 (b) of the

21         Alaska Native Claims Settlement Act;

22         (4) the term "administer" or "administration",

23      as used with respect to any land within a conservation

24      system unit, means the operation of such unit in a

1    manner which is appropriate to achieve the purposes

2    for which such unit was established or expanded;

3        (5) the term "fish and wildlife" means any wild

4    mammal (other than humans), fish, wild bird, amphib-

5    ian, reptile, mollusk, or crustacean, or any part, product,

6    egg, or offspring thereof;

7        (6) the term "take" or "taking", as used with

8    respect to fish or wildlife, means to pursue, hunt, shoot,

9    trap, net, capture, collect, kill, or attempt to pursue,

10   hunt, shoot, trap, net, capture, collect or kill;

11       (7) the term "conservation system unit" means any

12   unit in Alaska of the National Park System, National

13   Wildlife Refuge System, National Wild and Scenic Riv-

14   ers System, National Wilderness Preservation System, or

15   National Forest System, including existing units, units

16   established, designated, or expanded by or under the

17   provisions of this Act, additions to such units, and any

18   such unit established, designated, or expanded hereafter;

19       (8) the term "manage" or "management", as used

20   with respect to any land within a conservation system

21   unit, means the restoration, protection, use, and preserva-

22   tion of lands within such unit, based on applied research

23   and sound ecological principles, in accordance with

24   the purposes for which such unit was established or

25   expanded;

(9) the term "multiple values", as used with respect to the management of a conservation system unit, means the operation and coordinated management of the varied resources and values of such unit without impairment to, and in harmony with, the purpose for which such unit was established or expanded;

(10) the term "Native Corporation" means any Regional Corporation and any Village Corporation;

(11) the term "Regional Corporation" has the same meaning as such term has under section 3 (g) of the Alaska Native Claims Settlement Act;

(12) the term "Village Corporation" has the same meaning as such term has under section 3 (j) of the Alaska Native Claims Settlement Act;

(13) the term "Native land" means land owned by a Native Corporation or any Native group (as defined in section 3 (d) of the Alaska Native Claims Settlement Act) and includes land which, as of the date of enactment of this Act, had been selected under the Alaska Native Claims Settlement Act by a Native Corporation or Native group and had not been conveyed by the Secretary (except to the extent such selection is determined to be invalid) and land referred to in section 19 (b) of the Alaska Native Claims Settlement Act;

1    (14) the term "Secretary" means the Secretary of
2 the Interior, except that when such term is used with
3 respect to any unit of the National Forest System, such
4 term means the Secretary of Agriculture;

5    (15) the term "national preserve" means a unit of
6 the National Park System in Alaska administered and
7 managed in the same manner as a national park, except
8 as otherwise provided in this Act and except that the
9 taking of wildlife shall be allowed under appropriate
10 regulation;

11    (16) except as expressly modified by this Act, the
12 terms "wilderness" and "National Wilderness Preserva-
13 tion System" have the same meaning as when used in
14 the Wilderness Act;

15    (17) the term "State" means the State of Alaska:
16 and

17    (18) the term "Alaskan Native" or "Native" has
18 the same meaning as the term "Native" has in section
19 3(b) of the Alaska Native Claims Settlement Act.

20    TITLE II—NATIONAL PARK SYSTEM

21    ESTABLISHMENT OF NEW AREAS

22    SEC. 201. The following areas are hereby established
23 as units of the National Park System and, subject to valid
24 existing rights, shall be administered by the Secretary un-
25 der the laws governing the administration of such units and

1 under the provisions of this Act (including the provisions

2 of section 1202 (c) respecting travel) :

3     (1) Aniakchak National Monument, containing ap-

4     proximately four hundred and ninety thousand acres of

5     public lands, and Aniakchak National Preserve, con-

6     taining approximately eighty thousand acres of public

7     lands, as generally depicted on a map entitled "Aniak-

8     chak National Monument and Preserve", dated Septem-

9     ber 1977. The monument and preserve shall be man-

10     aged to maintain the multiple values of the areas and

11     for the following purposes, among others: To preserve

12     the wilderness character and to maintain the Aniakchak

13     Caldera and its associated volcanic features and land-

14     scape, including the Aniakchak River and other lakes

15     and streams in their natural state; to maintain water

16     quality and quantity; to study, interpret, and assure

17     continuation of the natural processes of biological

18     succession; to protect habitat for and populations of fish

19     and wildlife, including but not limited to grizzly bear,

20     moose, caribou, sea lions, seals, and other marine mam-

21     mals, geese, swans, and other waterfowl; and, in a

22     manner consistent with the foregoing, to interpret

23     geological and biological processes for visitors and pro-

24     vide opportunities for compatible outdoor recreation and

25     environmental education activities.

1      (2) Bering Land Bridge National Preserve, con-

2    taining approximately three million one hundred thou-

3    sand acres of public lands, as generally depicted on a map

4    entitled "Bering Land Bridge National Preserve", dated

5    September 1977, which shall be managed to maintain the

6    multiple values of the area and for the following purposes,

7    among others: To preserve the wilderness character and

8    to protect and interpret examples of arctic plant commu-

9    nities, volcanic lava flows, ash explosions, and other geo-

10   logic processes; to provide for archeological and paleon-

11   tological study, in cooperation with Native Alaskans, of

12   the process of plant and animal migration, including man,

13   to North America from the Asian continent; to maintain

14   water quality and quantity; to protect habitat for, and

15   populations of, fish and wildlife, including but not limited

16   to marine mammals, grizzly bear, moose, wolf, and inter-

17   nationally significant populations of migratory birds; to

18   continue reindeer grazing use including facilities and

19   equipment necessary to conduct this operation; to assure

20   continued viability of subsistence resources for contin-

21   ued subsistence uses; and in a manner consistent with the

22   foregoing, to provide for compatible outdoor recreation

23   and environmental education activities.

24      (3) Cape Krusenstern National Monument, contain-

25   ing approximately three hundred and ninety thousand

1   acres of public lands, and Cape Krusenstern National
2   Preserve, containing approximately one hundred and
3   fifty thousand acres of public lands, as generally depicted
4   on a map entitled "Cape Krusenstern National Monu-
5   ment and Preserve", dated September 1977, which shall
6   be managed to maintain the multiple values of the area
7   and for the following purposes, among others: To protect
8   and interpret a series of archeological sites depicting
9   every known cultural period in Arctic Alaska; to pro-
10  vide for scientific study of the process of human popula-
11  tion of the area from the Asian continent; in cooperation
12  with Native Alaskans, to preserve and interpret evidence
13  of prehistoric and historic Native cultures; to preserve
14  the wilderness character of the area; to protect habitat
15  for and populations of marine mammals, birds, and other
16  fish and wildlife resources; to maintain water quality and
17  quantity; to assure continued viability of subsistence re-
18  sources for continued subsistence uses; and, in a manner
19  consistent with the foregoing, to provide opportunities for
20  compatible outdoor recreation and environmental educa-
21  tion activities.

22      (4) Gates of the Arctic National Park, containing
23  approximately eight million one hundred and ninety
24  thousand acres of public lands, and Gates of the Arctic
25  National Preserve, containing approximately one mil-

1      lion one hundred thousand acres of public lands, as gen-

2      erally depicted on a map entitled "Gates of the Arctic

3      National Park and Preserve", dated September

4      1977, which shall be managed to maintain the multi-

5      ple values of the area and for the following

6      purposes, among others: To preserve the wil-

7      derness and undeveloped character of the park, in-

8      cluding opportunities for visitors to experience solitude,

9      and the environmental integrity and scenic beauty of

10      the mountains, foothills, forelands, rivers, lakes, and

11      other natural features; to maintain water quantity and

12      quality; to protect habitat for and populations of fish

13      and wildlife, including but not limited to, caribou, grizzly

14      bear, Dall sheep, moose, wolves, and raptorial birds; to

15      assure continued viability of subsistence resources for

16      continued subsistence uses; and, in a manner consistent

17      with the foregoing, to provide opportunities for com-

18      patible wilderness oriented outdoor recreation and en-

19      vironmental education activities.

20      (5) Kenai Fjords National Park, containing ap-

21      proximately four hundred and twenty thousand acres of

22      public lands, as generally depicted on a map entitled

23      "Kenai Fjords National Park", dated September 1977,

24      which shall be managed to maintain the multiple values

25      of the area and for the following purposes, among others:

1     To preserve the wilderness character and maintain unim-

2     paired the scenic and environmental integrity of the

3     Harding icefield, its outflowing glaciers, and coastal

4     fjords and islands in their natural state; to maintain water

5     quality and quantity; to protect habitat for and popula-

6     tions of fish and wildlife, including, but not limited to,

7     seals, sea lions, other marine mammals, and marine and

8     other birds and maintain their hauling and breeding areas

9     in their natural state; to provide opportunities for con-

10     tinued subsistence uses; and, in a manner consistent

11     with the foregoing, to provide opportunities for sight-

12     seeing, nature study, touring, hiking, and similar out-

13     door recreation and environmental education activities.

14     (6) Kobuk Valley National Park, containing ap-

15     proximately one million six hundred and seventy thou-

16     sand acres of public lands, as generally depicted on a map

17     entitled "Kobuk Valley National Park", dated Septem-

18     ber 1977, which shall be managed to maintain the

19     multiple values of the area and, for the following pur-

20     poses, among others: To preserve the wilderness char-

21     acter and the environmental integrity of the natural features

22     of the Kobuk River Valley, including the Kobuk, Sal-

23     mon, and other rivers, the boreal forest, and the Great

24     Kobuk Sand Dunes, in their undeveloped state; to main-

25     tain water quality and quantity within the area; to pro-

1    tect and interpret, in cooperation with Native Alaskans,

2    Onion Portage and other archeological sites associated

3    with Native cultures; to protect habitat for and popula-

4    tions of, fish and wildlife including but not limited to cari-

5    bou, moose, black and grizzly bear, wolves, and water-

6    fowl; to protect subsistence resources to assure continued

7    viability of resources for continued subsistence uses; and,

8    in a manner consistent with the foregoing, to provide

9    opportunities for compatible outdoor recreation activities.

10    (7) Lake Clark National Park, containing approx-

11    imately two million four hundred and thirty thousand

12    acres of public lands, and Lake Clark National Preserve,

13    containing approximately seven hundred ten thousand

14    acres of public lands, as generally depicted on a map

15    entitled "Lake Clark National Park and Preserve",

16    dated September 1977. The Park and Preserve shall be

17    managed to maintain the multiple values of the areas and

18    for the following purposes, among others: To protect the

19    watersheds necessary for perpetuation of the salmon

20    fishery in Bristol Bay; to preserve the wilderness char-

21    acter and maintain unimpaired the scenic beauty and

22    quality of portions of the Alaska Range and the Aleu-

23    tian Range, including active volcanoes, glaciers, free

24    flowing rivers, lakes, waterfalls, and alpine meadows in

25    their natural state; to maintain water quality and quan-

1    tity; to protect habitat for and populations of all fish and

2    wildlife, including but not limited to, the Mulchatna cari-

3    bou herd, Dall sheep, grizzly bear, bald eagle, and

4    peregrine falcon; to assure continued viability of sub-

5    sistence resources for continued subsistence uses; and, to

6    provide opportunities for wilderness-oriented public uses

7    and other compatible outdoor recreation and environ-

8    mental education activities.

9        (8) Noatak National Preserve, containing approxi-

10    mately seven million four hundred and thirty thousand

11    acres of public lands, as generally depicted on a map

12    entitled "Noatak National Preserve", dated Septem-

13    ber 1977, which shall be managed to maintain the

14    multiple values of the area and for the following

15    purposes, among others: To preserve the wilderness

16    character and the environmental integrity of the Noatak

17    River and adjacent uplands within the preserve in such

18    a manner as to assure the continuation of geological and

19    biological processes unimpaired by adverse human ac-

20    tivities and development; to maintain water quality

21    and quantity; to protect habitat for and populations of

22    fish and wildlife, including but not limited to the Arctic

23    caribou herd, grizzly bear, Dall sheep, moose, wolves,

24    waterfowl, raptors, and other species of birds; to assure

25    continued viability of subsistence resources for continued

1    subsistence uses; and, in a manner consistent with the

2    foregoing, to provide opportunities for scientific research,

3    and compatible outdoor recreation and environmental

4    education activities. The Secretary shall establish a board

5    consisting of scientists and other experts in the field of

6    arctic research in order to assist him in the encourage-

7    ment and administration of research efforts within the

8    preserve.

9        (9) Wrangell-Saint Elias National Park, containing

10   approximately nine million seven hundred and ten thou-

11   sand acres of public lands, and Wrangell-Saint Elias

12   National Preserve, containing approximately two million

13   three hundred and forty thousand acres of public lands,

14   as generally depicted on a map entitled "Wrangell-Saint

15   Elias National Park and Preserve", dated September

16   1977. The park and preserve shall be managed to main-

17   tain the multiple values of the areas and for the following

18   purposes, among others: To preserve the wilderness

19   character and to maintain unimpaired the scenic beauty

20   and quality of glacial systems, high mountain peaks,

21   foothills, lakes and streams, and valleys in their natural

22   state; to maintain water quality and quantity; to protect

23   habitat for and populations of fish and wildlife, including

24   but not limited to marine mammals, caribou, grizzly

25   bear, Dall sheep, moose, wolves, trumpeter swans and

1    other waterfowl; to assure continued viability of sub-
2    sistence resources for continued subsistence uses; and,
3    in a manner consistent with the foregoing, to provide
4    opportunities for compatible outdoor recreation and
5    environmental education activities.

6    (10) Yukon-Charley National Preserve, containing
7    approximately one million six hundred and thirty
8    thousand acres of public lands, as generally depicted on
9    a map entitled "Yukon-Charley National Preserve"
10   dated September 1977, which shall be managed to main-
11   tain the multiple values of the area for the following
12   purposes, among others: To preserve the wilderness
13   character and the environmental integrity of the Charley
14   River basin, including streams, lakes and other natural
15   features, in its undeveloped natural condition for public
16   benefit and use, including scientific study; to maintain
17   water quality and quantity; to protect habitat for and
18   populations of fish and wildlife, including but not limited
19   to the peregrine falcon and other raptorial birds, caribou,
20   moose, grizzly bear, and wolves; to assure continued via-
21   bility of subsistence resources for continued subsistence
22   uses; and, in a manner consistent with the foregoing, to
23   interpret historical sites and events associated with the
24   gold rush on the Yukon River and the geological and
25   paleontological history and cultural prehistory of the

1     area, and to provide opportunities for compatible outdoor

2     recreation and environmental education.

3              ADDITIONS TO EXISTING AREAS

4     SEC. 202. The following units of the National Park

5 System are hereby expanded:

6         (1) Mount McKinley National Park by the addi-

7     tion of an area containing approximately three million

8     eight hundred and ninety thousand acres of public lands,

9     as generally depicted on a map entitled "Denali National

10     Park", dated September 1977, for the purposes of pre-

11     serving the wilderness character and the entire mountain

12     massif and additional scenic mountain peaks, glaciers,

13     foothills, valleys, and formations; to protect habitat for

14     and populations of fish and wildlife, including but not

15     limited to moose, caribou, and wolves; to maintain water

16     quality and quantity; to assure continued viability of sub-

17     sistence resources; and to provide opportunities in the

18     north addition for continuation of previously established

19     subsistence uses. Furthermore, (i) the park is hereby

20     redesignated as "Denali National Park", and (ii) that

21     portion of the Alaska Railroad right-of-way within the

22     park shall be subject to such laws and regulations appli-

23     cable to the protection of fish and wildlife and other park

24     values as the Secretary, with the concurrence of the Sec-

25     retary of Transportation, may determine.

1        (2) Glacier Bay National Monument by the addi-

2        tion of an area containing approximately five hundred

3        and ninety thousand acres of public lands, as generally

4        depicted on a map entitled "Glacier Bay National

5        Park", dated September 1977, for the purposes of pre-

6        serving the wilderness character and protecting the

7        northwest slope of Mount Fairweather, portions of the

8        Alsek River, fish and wildlife habitat, migration routes,

9        and populations; to maintain water quality and quan-

10       tity; to protect mature biological communities unaffected

11       by recent glaciation; to assure continued viability of sub-

12       sistence resources; and to provide opportunities in the

13       addition for continuation of previously established sub-

14       sistence uses. Furthermore, the Monument is hereby re-

15       designated as "Glacier Bay National Park".

16       (3) Katmai National Monument by the addition of

17       an area containing approximately one million three hun-

18       dred and sixty thousand acres of public lands, as gen-

19       erally depicted on a map entitled "Katmai National

20       Park", dated September 1977, for the purposes of pre-

21       serving the wilderness character and protecting high

22       concentrations of Alaskan brown bear and denning areas,

23       and habitat for other fish and wildlife; to maintain the

24       environmental integrity of the area, including its rivers,

25       lakes and watersheds; to maintain unimpaired the water

1       quality and quantity for significant salmon populations;

2       to assure continued viability of subsistence resources; and

3       to provide opportunities in the additions for continuation

4       of previously established subsistence uses. Furthermore,

5       the monument is hereby redesignated as "Katmai Na-

6       tional Park".

7                ADMINISTRATIVE PROVISIONS

8       SEC. 203. (a) The Secretary shall administer the lands,

9 waters, and interests therein added to existing units, or estab-

10 lished by the foregoing sections of this title as new units, of

11 the National Park System in accordance with the provisions

12 of law applicable to the National Park System (including the

13 provisions of section 1202 (c) respecting travel), except that

14 the taking of fish and wildlife may be permitted under the

15 provisions of section 1209 of this Act.

16       (b) All proclamations and Executive orders estab-

17 lishing, reserving lands for, or revising the boundaries of, the

18 former Katmai and Glacier Bay National Monuments shall

19 remain in full force and effect, except to the extent they may

20 be inconsistent with the Alaska Native Claims Settlement

21 Act or the purposes of any unit established or expanded by

22 this Act, and in such case the provisions of this Act shall

23 prevail. Any funds available for the purposes of such monu-

24 ments are hereby made available for the purposes of Katmai

25 National Park or Glacier Bay National Park, as appropriate.

1    (c) Valid Native selections or nominations of lands

2  within boundaries of the Gates of the Arctic National Park

3  and within the boundaries of the Killik River, as established

4  under this Act, are hereby recognized and shall be honored

5  and conveyed by the Secretary in accordance with the Alaska

6  Native Claims Settlement Act and title VIII of the Act, ex-

7  cept that within a zone which the Secretary shall designate

8  surrounding Kurupa Lake and within the boundaries of Killik

9  River, as established under this Act, the Secretary shall con-

10  vey title to the subsurface estate and such conveyance shall

11  provide that the right to extract oil and gas from such subsur-

12  face estate may be exercised only by directional drilling from

13  adjacent private lands. Any conveyance of the subsurface

14  estate pursuant to this section shall count against the total

15  surface and subsurface acreage entitlement of the corpora-

16  tion to which such estate is conveyed under the Alaska Native

17  Claims Settlement Act.

18  TITLE III—NATIONAL WILDLIFE REFUGE

19  SYSTEM

20  ESTABLISHMENT OF NEW AREAS

21    SEC. 301. The following areas are hereby established

22  as units of the National Wildlife Refuge System and shall,

23  subject to valid existing rights, be administered by the

24  Secretary pursuant to the provisions of law governing the

1  administration of such units and under the provisions of this

2  Act:

3      (1) Alaska Maritime National Wildlife Refuge,

4      containing the approximately two million nine hundred

5      and eighty thousand acres of the existing refuges speci-

6      fied in this paragraph and an addition thereto of approxi-

7      mately four hundred and sixty thousand acres of other

8      public lands, as generally depicted on a man entitled

9      "Alaska Marine Resources National Wildlife Refuge",

10     dated September 1977, which shall be managed to main-

11     tain multiple values of the area and for the following

12     purposes, among others: To protect internationally sig-

13     nificant marine birds, marine mammals and the land,

14     water, and other marine resources on which they rely;

15     to perpetuate other indigenous fish and wildlife resources

16     of the coastal marine environment; to provide for na-

17     tional and international research on marine resources; to

18     preserve the wilderness character of the area; and to

19     assure continued viability of subsistence resources for

20     continued subsistence uses. The Alaska Maritime Na-

21     tional Wildlife Refuge shall consist of the public lands

22     of the following specifically described units consisting of

23     islands, islets, rocks, reefs, and spires in the coastal water

24     and adjacent seas of Alaska:

25      (A) Chukchi Sea unit—including Cape Lis-

1 .....burne, Cape Thompson, and the existing Chamisso

2 National Wildlife Refuge;

3 (B) Bering Sea unit—including the existing

4 Bering Sea and Pribilof (Walrus and Otter Islands

5 and Sea Lions Rocks) National Wildlife Refuges,

6 Hagemeister Island, Fairway Rock, Sledge Island,

7 Bluff Unit, Besboro Island, and Egg Island;

8 (C) Aleutian Islands unit—including the ex-

9 isting Aleutian Islands and Bogoslof National Wild-

10 life Refuges, and all other public lands in the Aleu-

11 tian Islands;

12 (D) Alaska Peninsula unit—including the ex-

13 isting Simeonof and Semidi National Wildlife Ref-

14 uges, Chigingak Bay, and all public lands on islands

15 south of Katmai National Park to False Pass; and

16 (E) Gulf of Alaska unit—including the existing

17 Forester Island, Hazy Islands, Saint Lazaria, and

18 Tuxedni National Wildlife Refuges, the Barren Is-

19 lands, Latax Rocks, Harbor, Pye, Middleton, and

20 Chiswell Islands, and all islands, islets, or rocks,

21 spires surrounding Kodiak and Afognak Islands and

22 all other such offshore public lands, including any

23 such public lands reserved for purposes of classifica-

24 tion under section 17 (d) (1) of the Alaska Native

25 Claims Settlement Act.

(2) Alaska Peninsula National Wildlife Range, containing approximately one million five hundred and seventy thousand acres of public lands, as generally depicted on a map entitled "Alaska Peninsula National Wildlife Range", dated September 1977, which shall be managed to maintain multiple values of this area and for the following purposes, among others: To perpetuate the Alaska Peninsula caribou herd, significant brown bear, moose, sea otter and other marine mammal populations, American bald eagles, peregrine falcon, shore birds, and migratory waterfowl; to maintain the wilderness character of supporting habitat, including spawning habitat for salmon and sport fishing species; to maintain water quality and quantity; to preserve the free-flowing nature of numerous rivers and streams; to provide a variety of opportunities for interpretive, educational, scientific, and other fish and wildlife oriented recreational uses; and to assure continued viability of subsistence resources for continued subsistence uses.

(3) Becharof National Wildlife Range, containing approximately one million and thirty thousand acres of public lands, as generally depicted on a map entitled "Becharof National Wildlife Refuge", which shall be managed to maintain multiple values of the area and for the following purposes, among others: To perpetuate

1    significant brown bear, other large mammal, fishery,

2    and migratory bird resources of the refuge; to protect the

3    wilderness character of habitats supporting fish and wild-

4    life populations, and the unique geophysical characteris-

5    tics of the area; to maintain water quality and quantity;

6    to provide opportunity for environmental education and

7    interpretive use; to maintain fish, wildlife, and habitat

8    resources so that they will continue to provide oppor-

9    tunity for wildlife and wildland recreation; and to assure

10    continued viability of subsistence resources for con-

11    tinued subsistence uses.

12    (4) Innoko National Wildlife Range, containing

13    approximately three million four hundred and fifty thou-

14    sand acres of public lands, as generally depicted on a

15    map entitled "Innoko National Wildlife Range", dated

16    September 1977, which shall be managed to maintain

17    multiple values of the area and for the following purposes,

18    among others: To perpetuate the nationally significant

19    water fowl, migratory bird, furbearer, and large mammal

20    populations and the wilderness character of supporting

21    habitats; and to assure continued viability of subsistence

22    resources for continued subsistence uses.

23    (5) Kanuti National Wildlife Range, containing ap-

24    proximately one million three hundred thousand acres of

25    public lands, as generally depicted on a map entitled

1    "Kanuti National Wildlife Range", dated September
2    1977, which shall be managed to maintain multiple
3    values of the area and for the following purposes, among
4    others: To perpetuate nationally significant migratory
5    waterfowl and mammal populations utilizing the lands
6    and waters of the area; to maintain the wilderness
7    character of the area for the benefit of fish and wild-
8    life populations; to maintain water quality and quantity;
9    and to assure continued viability of subsistence re-
10   sources for continued subsistence uses.

11       (6) Koyukuk National Wildlife Range, containing
12   approximately three million seven hundred and twenty
13   thousand acres of public lands, as generally depicted on a
14   map entitled "Koyukuk National Wildlife Range", dated
15   September 1977, which shall be managed to maintain
16   multiple values of the area and for the following pur-
17   poses, among others: To perpetuate the nationally signif-
18   icant waterfowl and other migratory bird resources
19   utilizing the lands and waters of the area, significant fur-
20   bearing and large mammal populations and the wilder-
21   ness character of supporting habitats; to protect the
22   Nogahabara Dunes as a unique ecological feature; to pro-
23   vide opportunities for environmental education and inter-
24   pretive uses; to maintain water quality and quantity;

1   and to assure continued viability of subsistence resources

2   for continued subsistence uses;

3   (7) Nowitna National Wildlife Range, containing

4   approximately one million four hundred and fifty thou-

5   sand acres of public lands, as generally depicted on a

6   map entitled "Nowitna National Wildlife Refuge",

7   dated September 1977, which shall be managed to main-

8   tain multiple values of the area and for the following pur-

9   poses, among others: To perpetuate the nationally

10   significant waterfowl, other migratory bird and mammal

11   populations utilizing the lands and waters of the area;

12   to maintain resident fish and wildlife populations and

13   the wilderness character of supporting habitats; to main-

14   tain water quality and quantity; to assure continued

15   viability of subsistence resources for continued sub-

16   sistence uses; and to provide opportunities for wilder-

17   ness oriented public use.

18   (8) Selawik National Wildlife Range, containing

19   approximately two million three hundred and eighty

20   thousand acres of public lands, as generally depicted on

21   a map entitled "Selawik National Wildlife Range",

22   which shall be managed to maintain the multiple values

23   of the area and for the following purposes, among other:

24   To protect habitat for and populations of migratory birds,

25   shee fish, caribou, and other fish and wildlife utilizing

1  lands and waters within the area and the wilderness
2  character of the area; to provide opportunities for en-
3  vironmental education and interpretive uses; to maintain
4  water quantity and water quality; to assure continued
5  viability of subsistence resources for continued sub-
6  sistence uses; and to continue reindeer grazing use.

7  (9) Tetlin National Wildlife Range, containing
8  approximately seven hundred and seventy thousand
9  acres of public lands, as generally depicted on a map
10  entitled "Tetlin National Wildlife Refuge", dated Sep-
11  tember 1977, which shall be managed to maintain
12  multiple values of the area and for the following purposes,
13  among others: To perpetuate and provide habitat for
14  internationally significant migratory birds which utilize
15  the area as well as all other forms of fish and wildlife;
16  to preserve the wilderness character of the area; to
17  maintain water quality and quantity; to assure continued
18  viability of subsistence resources for continued subsist-
19  ence uses; and to provide a variety of opportunities for
20  interpretive, educational, scientific, and other fish and
21  wildlife oriented recreational uses. Regardless of any
22  requirement that a study be conducted of areas within
23  the Tetlin National Wildlife Refuge in accordance with
24  sections 3 (c) and 3 (d) of the Wilderness Act, there
25  may be authorized and granted rights-of-way for pipe-

1      lines and other facilities that may be required pursuant

2      to section 9 of the Alaska Natural Gas Transportation

3      Act of 1976.

4      (10) Yukon Flats National Wildlife Range, con-

5      taining approximately ten million three hundred and

6      ten thousand acres of public lands, as generally depicted

7      on a map entitled "Yukon Flats National Wildlife

8      Range", dated September 1977, which shall be man-

9      aged to maintain multiple values of the area and for the

10     following purposes, among others: To preserve the

11     wilderness character of the area; to perpetuate inter-

12     nationally significant waterfowl and other migratory

13     bird resources that utilize the lands and waters of the

14     Yukon Flats; to protect the migration and spawning

15     habitats of the salmon fishery and vital areas for all

16     mammal populations; to provide opportunity for

17     environmental education and interpretive uses; to main-

18     tain water quality and quantity; and to assure continued

19     viability of subsistence resources for continued subsist-

20     ence uses.

21             ADDITIONS TO EXISTING AREAS

22     SEC. 302. The following units of the National Wildlife

23 Refuge System are hereby expanded:

24      (1) Arctic National Wildlife Range by the addition

25     of an area containing approximately nine million four

1     hundred and seventy thousand acres of public lands, as

2     generally depicted on a map entitled "Arctic National

3     Wildlife Range", dated September 1977, which shall be

4     managed to maintain multiple values of the area and for

5     the following purposes, among others: To maintain the

6     environmental integrity and wilderness character of the

7     area for use by internationally significant populations of

8     caribou and migratory birds; to perpetuate other migra-

9     tory and resident fish and wildlife populations and their

10    habitat; to protect representative Arctic life zones and

11    the natural character of these habitats; to provide oppor-

12    tunity for environmental education research activities

13    and interpretive uses; to maintain water quality and

14    quantity; and to assure continued viability of subsistence

15    resources for continued subsistence uses.

16         (2) Cape Newenham National Wildlife Refuge by

17    addition of an area containing approximately three mil-

18    lion eight hundred and forty thousand acres of public

19    lands, as generally depicted on a map entitled "Togiak

20    National Wildlife Range", dated September 1977;

21    furthermore, the Cape Newenham National Wildlife

22    Refuge is hereby redesignated the Togiak National Wild-

23    life Range, which shall be managed to maintain multiple

24    values of the area and for the following purposes, among

25    others: To perpetuate the significant marine bird and

mammal, migratory bird, and fishery resources and the wilderness character of the mountain, river, and marine habitats of the Togiak area; to enhance and restore large mammal populations historically inhabiting the area; to protect the watershed of Bristol and Kuskokwim Bays; to maintain water quality and quantity; to provide opportunity for environmental education and interpretive uses; and to assure continued viability of subsistence resources for continued subsistence uses.

(3) Clarence Rhode National Wildlife Range and Hazen Bay National Wildlife Refuge by the addition of an area containing twelve million five hundred and seventy thousand acres of public lands, as generally depicted on a map entitled "Yukon Delta National Wildlife Range", dated September 1977; furthermore, the Clarence Rhode National Wildlife Range and Hazen Bay National Wildlife Refuge and hereby redesignated the Yukon Delta National Wildlife Refuge, which shall be managed to maintain multiple values of the area and for the following purposes, among others: To perpetuate the internationally significant migratory bird, marine mammal, fish, and wildlife resources utilizing the lands and waters of the Yukon-Kuskokwim Delta and the wilderness character of the habitat supporting fish and wildlife populations; to provide opportunity for environ-

1 mental education and interpretive uses; to maintain

2 water quality and quantity; and to assure continued

3 viability of subsistence resources for continued subsist-

4 ence uses.

5     (4) Kenai National Moose Range, by addition of

6 approximately two hundred and thirty thousand acres of

7 public lands, as generally depicted on a map entitled

8 "The Kenai National Wildlife Range", dated September

9 1977; furthermore, the Kenai National Moose Range

10 is hereby redesignated the Kenai National Wildlife

11 Range, which range shall be managed to maintain

12 multiple values of the area and for the following pur-

13 poses, among others: To perpetuate a nationally signifi-

14 cant population of moose and maintain the wilderness

15 character of the habitat and populations of indigenous

16 mammal, waterfowl, and fishery resources; to maintain

17 water quality and quantity; to assure continued viability

18 of subsistence resources for subsistence uses; to provide

19 environmental education, research, and land management

20 training opportunities for the public; and to provide

21 wildlife-oriented recreation compatible with fish and

22 wildlife resource management.

23     ALASKA PENINSULA AND ILIAMNA AREAS

24     SEC. 303. (a) The Secretary, in consultation with the

25 Governor of Alaska, and affected Native corporations, and

1   the public shall conduct a study to determine the best future
2   ownership and use patterns of the lands and resources on the
3   Alaska Peninsula between the Naknek River and the southern
4   boundary of the Becharof National Wildlife Range and the
5   northeastern boundary of the Izembek National Wildlife
6   Range, excluding Katmai National Park and Aniakchak
7   National Monument and Preserve and excluding the lands
8   included within the Alaska Peninsula National Wildlife
9   Range as established by this Act, within the area generally
10  depicted on the map entitled "Alaska Peninsula Study
11  Area", dated September 1977, which shall be on file and
12  available for public inspection in the office of the Director,
13  Fish and Wildlife Service, Department of the Interior, and in
14  Alaska offices of the Secretary. The Secretary shall within
15  three years after the date of enactment of this Act, submit a
16  report of the results of the study, together with his recom-
17  mendations to the President, on the suitability of designating
18  additions to or establishment of units of the National Wildlife
19  Refuge System within the area. The President shall advise
20  the President of the Senate and the Speaker of the House of
21  Representatives of his recommendations with respect to the
22  study. Prior to submitting the report to the President, the
23  Secretary shall hold public hearings at locations convenient to
24  the area affected, solicit written comments of the Governor
25  of Alaska and the affected Native corporations on his recom-

# 38

1   mendations, and shall include these comments as a part of
2   his report.

3       (b) With respect to the area of the Iliamna water-
4   shed, described as those lands and waters generally depicted
5   on the map numbered FWS 71–00–1601 and dated Sep-
6   tember 1977, which map shall be on file and available
7   for public inspection in the office of the Director, United
8   States Fish and Wildlife Service and Alaska offices of the
9   Secretary, it is the express intent of the Congress that the
10   lands and waters be protected and managed for the primary
11   purposes of watershed protection and fish production. The
12   Secretary is authorized to enter into a cooperative agree-
13   ment with the State of Alaska to the end that the United
14   States and the State may effectively coordinate the
15   management of their lands in this area for such pur-
16   poses. Except for those lands to which the State is
17   entitled pursuant to the Act of January 2, 1976 (89
18   Stat. 1145), all Federal lands within such area are hereby
19   withdrawn from further selection by the State and the
20   Secretary shall not make any conveyance of such lands to the
21   State unless and until he determines that the State, by ap-
22   propriate legislation has authorized, and is ready, willing,
23   and able to implement, a plan for protection and manage-
24   ment of the watershed and the fishery resources consistent
25   with the intent of the Congress expressed above. Federal

1    lands within such area shall not be conveyed to the State

2    except for the purpose of exchanging under the provisions

3    of section 1201 (e) of State lands within the external bound-

4    ary of conservation system units. If the Secretary hereafter

5    finds that the management and use of the area is inconsistent

6    with such intent of the Congress, and following notice in

7    writing to the Governor and a ninety-day period thereafter

8    in which to correct such management and use, he may

9    establish by appropriate order one or more units of the

10   National Wildlife Refuge System within the area referred to

11   on such map.

12                     ADMINISTRATIVE PROVISIONS

13        SEC. 304. All proclamations, Executive orders, public

14   land orders, and similar actions reserving any lands, waters,

15   or interests therein for national wildlife refuge or wildlife

16   range purposes within the boundaries of the areas established

17   as, or added to, units of the National Wildlife Refuge Sys-

18   tem by this Act shall remain in full force and effect, except

19   to the extent that they inconsistent with the Alaska Native

20   Claims Settlement Act, this Act, or the purposes of any

21   unit established by this Act, and in such case the provisions

22   of this Act shall prevail. The provisions of section 1202 (c),

23   respecting travel, shall apply to all such units. Any funds

24   available on the date of enactment of this Act for the pur-

25   poses of any unit of the National Wildlife Refuge System

1    shall continue to be available for the purposes of the appro-

2    priate conservation system unit established by this Act.

3    ## TITLE IV—NATIONAL FOREST SYSTEM

4    ### ADDITIONS TO NATIONAL FORESTS

5    SEC. 401. (a) After consultation with both the Secre-

6    taries of Agriculture and the Interior, the President is author-

7    ized within one year after date of enactment of this Act to add

8    lands to the Chugach and Tongass National Forests in Alaska

9    so as to include entire units of local topography, not to

10    exceed one million eight hundred and fifty thousand acres,

11    as generally depicted on a map entitled "Potential NFS

12    Additions to the Chugach and Tongass National Forests,

13    Alaska", dated September 1977, which shall be filed and

14    made available for public inspection in accordance with the

15    provisions of section 1210.

16    (b) There are hereby transferred to the Chugach Na-

17    tional Forest some nine hundred thousand acres of public

18    lands adjacent to the present boundary extending northward

19    along the Copper River to the mouth of the Bremner River

20    as depicted on a map entitled "Copper River Additions to

21    the Chugach National Forest", dated September 1977,

22    which shall be filed and made available for public inspec-

23    tion in accordance with the provisions of section 1210. The

24    Secretary of Agriculture shall administer the Copper River

25    additions and adjacent lands in the Copper River Delta

EXHIBIT 1

1  in accordance with the laws, rules, and regulations applicable

2  to the national forests, and in accordance with land manage-

3  ment plans which provide for adequate protection of signif-

4  icant fish and wildlife values and protection of other resource

5  values which do not substantially interfere with such fish

6  and wildlife values.

7  MANSFIELD PENINSULA NATIONAL RECREATION AREA

8     SEC. 402. (a) In order to provide for the public out-

9  door recreation use and enjoyment of certain shorelines,

10  forested areas, fresh water lakes, and other features of the

11  Mansfield Peninsula on Admiralty Island by present and

12  future generations, and to provide for the conservation of

13  scenic, scientific, historic, and other values contributing to

14  public enjoyment of such lands and waters, there is hereby

15  established, subject to valid existing rights, the Mansfield

16  Peninsula National Recreation Area (hereinafter in this

17  section referred to as the "recreation area").

18     (b) The administration, protection, and development

19  of the recreation area shall be by the Secretary of Agricul-

20  ture in accordance with the laws, rules, and regulations ap-

21  plicable to the national forests, in such manner as in his

22  judgement will best contribute to the attainment of the pur-

23  poses set forth in this section.

24     (c) The boundaries of the recreation area shall be as

25  shown on a map entitled "Mansfield Peninsula National Rec-

1 reation Area", dated September 1977, which shall be on

2 file and available for public inspection in the Office of the

3 Chief, Forest Service, Department of Agriculture, and to

4 which shall be attached and hereby made a part thereof a

5 detailed description by metes and bounds of the exterior

6 boundaries of the recreation area. The Secretary may, by

7 publication of a revised map or description in the Federal

8 Register, correct clerical or typographical errors in such map

9 or descriptions.

10   (d) Within three years from the date of enactment of

11 this Act, the Secretary shall review the area within the

12 boundaries of the recreation area and shall report to the

13 President in accordance with sections 3 (b) and 3 (d) of

14 the Wilderness Act his recommendation as to the suitability

15 or nonsuitability of any area within the recreation area for

16 preservation as a wilderness, and any designation of any

17 such area as a wilderness shall be accomplished in accord-

18 ance with such sections of the Wilderness Act.

19   (e) The Secretary shall cooperate with the State of

20 Alaska or any political subdivision thereof in the adminis-

21 tration of the recreation area and in the administration and

22 protection of lands within or adjacent to the recreation area

23 owned or controlled by the State or political subdivision

24 thereof. Nothing in this Act shall deprive the State of Alaska

1  or any political subdivision thereof of any right to exercise

2  civil and criminal jurisdiction within the recreation area

3  consistent with the provisions of this Act or other applica-

4  ble Federal law or of any right to tax persons, corporations,

5  franchises, or other non-Federal property, including mineral

6  or other interests in or on lands or waters within the recrea-

7  tion area.

8  (f) The Secretary shall permit the taking of fish and

9  wildlife on lands and waters under his jurisdiction within

10  the boundaries of the recreation area in accordance with ap-

11  plicable laws of the United States and the State of Alaska,

12  except that the Secretary may designate zones where, and

13  establish periods when, no taking of fish and wildlife shall be

14  permitted for reasons of public safety, administration, re-

15  source protection, or public use and enjoyment. Except in

16  emergencies, any regulation of the Secretary pursuant to

17  this section shall take effect only after consultation with the

18  appropriate State agency or agencies.

19  (g) In selecting persons to provide (and in contracting

20  for the provision of) visitor services (as defined in section

21  1206 (c) ) in the recreation area, the Secretary shall permit,

22  in accordance with the provisions of section 1206 (a), Kootz-

23  noowoo, Incorporated, to continue providing within the

24  recreation area visitor services which meet the requirements

1    of such section and shall give the first preference for provid-

2    ing new visitor services for the recreation area under section

3    1206 (b) (1) to Kootznoowoo, Incorporated.

4    TITLE V—NATIONAL WILD AND SCENIC RIVERS

5                  SYSTEM

6    ADDITIONS TO THE NATIONAL WILD AND SCENIC RIVERS

7                  SYSTEM

8    SEC. 501. (a) Section 3 (a) of the Wild and Scenic

9    Rivers Act (16 U.S.C. 1274 (a)) is amended by adding

10    the following new paragraphs at the end thereof:

11    "(16) BIRCH CREEK, ALASKA.—The segment of the

12    main stem from the confluence of the North Fork down-

13    stream to the southern boundary of the Yukon Flats Na-

14    tional Wildlife Range; approximately 200,000 acres; to be

15    classified as a wild river area and to be administered by the

16    Secretary of the Interior.

17    "(17) COLVILLE, ALASKA.—The entire river including

18    the headwaters in township 9 south, ranges 36 and 37 west,

19    township 8 south, ranges 34 through 37 west, and town-

20    ship 7, ranges 35 and 36 west, Umiat meridian to the mean

21    high tide line; approximately 700,000 acres; to be classified

22    as a wild river area and to be administered by the Secretary

23    of the Interior.

24    "(18) COPPER, ALASKA.—The segment from the con-

25    fluence with the Chitina River to the confluence with the

1 Bremner River the segment not including lands within the
2 Wrangell-Saint Elias National Park; approximately 50,000
3 acres; to be administered by the Secretary of the Interior;
4 and the segment from the confluence with the Bremner River
5 to the mean high tide line in the Chugach National Forest,
6 not to exceed 60,000 acres; to be administered by the Secre-
7 tary of Agriculture; both of such segments to be classified as
8 a scenic river area except for the segment from the north
9 end of Wood Canyon to its confluence with Tasnuna River
10 which shall be classified as a wild river area.

11 "(19) DELTA, ALASKA.—The segment from Tangle
12 Lakes to a point one-half mile north of Black Rapids, ap-
13 proximately 75,000 acres; to be classified as a recreational
14 river area except for the segment from the Tangle Lakes
15 area to a point opposite milepost 212 on the Richardson
16 Highway which shall be classified as a wild river area;
17 to be administered by the Secretary of the Interior.

18 "(20) ETIVLUK, ALASKA.—The entire river, including
19 its major tributary the Nigu River, in the Gates of the Arctic
20 National Preserve; to be classified as a wild river area and
21 to be administered by the Secretary of the Interior.

22 "(21) FORTYMILE, ALASKA.—The main stem within
23 the State of Alaska; O'Brien Creek; South Fork; Napoleon
24 Creek; Franklin Creek; Uhler Creek; Walker Fork down-
25 stream from the confluence of Liberty Creek; Wade Creek;

1  Mosquito Fork downstream from the vicinity of Kech-

2  umstuck; West Fork Dennison Fork downstream from the

3  confluence of Logging Cabin Creek; Dennison Fork down-

4  stream from the confluence of West Fork Dennison Fork;

5  Logging Cabin Creek; North Fork; Hutchison Creek;

6  Champion Creek; the Middle Fork downstream from the

7  confluence of Joseph Creek; and Joseph Creek; approxi-

8  mately 320,000 acres; to be administered by the Secretary of

9  the Interior and to be classified as a scenic river area except

10 for the Wade Creek segment which shall be classified as a

11 recreational river area and the following segments which

12 shall be classified as wild river areas: Mosquito Fork down-

13 stream from the vicinity of Kechumstuck to Ingle Creek,

14 North Fork, Champion Creek, Middle Fork downstream

15 from the confluence of Joseph Creek, and Joseph Creek.

16 The classification of such segments of the Fortymile as wild

17 river areas shall not preclude such access across such river

18 segments as the Secretary determines to be reasonably neces-

19 sary to permit commercial development of asbesto deposits in

20 the North Fork drainage.

21    "(22) GULKANA, ALASKA.—The main stem from

22 Paxson Lake to Sourdough, and the entire West and Middle

23 Forks; approximately 165,000 acres; to be classified as a

24 wild river area and to be administered by the Secretary of

25 the Interior.

1    "(23) IKPIKPUK, ALASKA.—The entire river includ-

2    ing the headwaters in township 2 south, ranges 5 through

3    16 west, and township 15 south ranges 11, 12, and 15

4    through 20 west, Umiat meridian, to the mean high tide

5    line; approximately 300,000 acres; to be classified as a

6    wild river area and to be administered by the Secretary

7    of the Interior.

8    "(24) KILLIK, ALASKA.—From the northern boundary

9    of the gates of the Arctic National Park to the confluence

10    with the Colville River; approximately 152,000 acres; to

11    be classified as a wild river area and to be administered by

12    the Secretary of the Interior; the Secretary shall convey

13    to the Arctic Slope Regional Corporation title to the sub-

14    surface estate of such public lands as they may validly select

15    within the boundaries of such river as provided in section

16    203 (c) of the Alaska National Interest Lands Conservation

17    Act.

18    "(25) NOATAK, ALASKA.—The segment from the

19    southern boundary of the Noatak National Preserve at the

20    north boundary of township 27 north, range 18 west, Kateel

21    River meridian to the mean high tide line; approximately

22    80,000 acres; to be classified as a wild river area and to be

23    administered by the Secretary of the Interior.

24    "(26) NOWITNA, ALASKA.—The segment from the

25    point where the river crosses the west boundary of section 6,

1  township 17 south range 22 east, Kateel River meridian, to

2  the southern boundary of the Nowitna National Wildlife

3  Range; approximately 230,000 acres; to be classified as a

4  · wilderness river area and to be administered by the Secretary

5  of the Interior.

6  "(27) UNALAKLEET, ALASKA.—From the headwaters

7  in township 13 north, range 3 west, Kateel River meridian,

8  to 160 degrees, 19 minutes, 15.031 seconds west longitude

9  in the vicinity of the confluence of the Chiroskey River; ap-

10 proximately 110,000 acres; to be classified as a wilderness

11 river area and to be administered by the Secretary of the

12 Interior.

13 "(28) UTUKOK, ALASKA.—From the headwaters in

14 township 10 south, range 37 through 40 west to the east

15 boundary of township 7 north, range 39 west, Umiat me-

16 ridian; approximately 270,000 acres; to be classified as a

17 wild river area and to be administered by the Secretary of

18 the Interior.

19· "(29) WULIK, ALASKA.—From the headwaters in

20 township 12 south, range 47 and 48 west to the east bound-

21 ary of township 28 north, range 24 west, Kateel River

22 meridian; approximately 80,000 acres; to be classified as

23 a wild river area and to be administered by the Secretary of

24 the Interior.

25 "(30) YUKON RAMPARTS SECTION, ALASKA.—The

1 segment from the east boundary of township 12 north,

2 range 11 west, to the west boundary of township 4 north,

3 range 19 west, Fairbanks meridian, approximately 275,000

4 acres; to be classified as a scenic river area and to be ad-

5 ministered by the Secretary of the Interior.".

6 (b) Section 3 (b) of the Wild and Scenic Rivers Act

7 is amended by striking out " (b) The Agency" and sub-

8 stituting " (b) (1) Except as otherwise provided in this

9 Act, the Agency" and by adding the following new para-

10 graph at the end thereof:

11 " (2) For those rivers in Alaska listed in paragraphs

12 (16) through (30) of subsection (a), the detailed bound-

13 aries and development plans referred to in this section shall

14 be established and prepared within such period after the date

15 of the enactment of this paragraph as is specified in the

16 following list:

17 1 year: Delta, Fortymile, Gulkana, and Yukon.

18 2 years: Birch Creek, Colville, and Copper.

19 3 years: Etivluk, Ikpikpuk, and Killik.

20 4 years: Nowitna, Unalakleet, Utukok, and Wulik.

21 In the case of such rivers in lieu of the acreage limitation

22 specified in paragraph (1) of this subsection except as

23 provided in subparagraph (A), such boundaries shall in-

24 clude an area averaging not less than two miles from either

25 side of each such river, but

1       "(A) there shall not be included within such bound-

2    aries lands selected by Native Corporations or other

3    valid rights of Alaskan Natives to lands without the

4    consent of such corporation or Native if such valid

5    rights were in existence immediately before the date this

6    paragraph becomes effective, except to the extent any

7    such selection or right may hereafter be relinquished,

8    and

9       "(B) such of the subsurface estate of public lands

10    of the Killik shall be conveyed to the Arctic Slope

11    Regional Corporation as provided in paragraph (24) of

12    section 3(a).".

13               POTENTIAL ADDITIONS

14    SEC. 502. (a) Section 5(a) of the Wild and Scenic

15    Rivers Act (16 U.S.C. 1276(a)) is amended by inserting

16    after paragraph (58) the following new paragraphs:

17    "(59) Copper (Iliamma), Alaska.

18    "(60) Copper, Alaska: The segment from a point

19    opposite the beginning of the Nabesna Road near Slana to

20    the confluence with the Chitina River.

21    "(61) Holitna-Hoholitna, Alaska.

22    "(62) Koyuk, Alaska.

23    "(63) Kuskokwim (Middle), Alaska: The segment be-

24    tween McGrath and Stoney River.

25    "(64) Melozitna, Alaska.

1       " (65) Mulchatna, Alaska: The segment from the south-

2  west boundary of the Lake Clark National Preserve to the

3  confluence with the Nushagak River.

4       " (66) Nelchina-Tazlina, Alaska.

5       " (67) Nuyakuk, Alaska.

6       " (68) Situk, Alaska.

7       " (69) Susitna, Alaska.".

8       (b) Section 5(b) of such Act is amended by adding

9  the following new paragraph at the end thereof:

10       " (4) The studies of the rivers listed in paragraphs

11  (59) through (69) shall be completed and reports thereon

12  submitted not later than five years after date of enactment

13  of this paragraph.".

14              ADMINISTRATIVE PROVISIONS

15    SEC. 503. (a) The provisions of title IX of this Act

16  shall apply to the rivers included under this title in the

17  Wild and Scenic Rivers System, except for the wilderness

18  river areas in paragraphs (26) and (27) of section 3(a)

19  of the Wild and Scenic Rivers Act.

20       (b) Section 10(e) of the Wild and Scenic Rivers Act

21  is amended by adding the following at the end thereof: "In

22  the case of rivers listed in paragraphs (16) through (30)

23  of section 3(a), the Secretary may seek cooperative agree-

24  ments with the owners of non-Federal lands adjoining such

25  rivers to assure that the purpose of designating such rivers

1  as wild and scenic rivers under this Act served to the great-

2  est extent feasible.".

3  (c) Section 2 (b) of such Act is amended by adding

4  the following new paragraph at the end thereof:

5  "(4) Wilderness river areas—Those free-flowing

6  rivers or segments of rivers in Alaska of a primeval

7  character, with watersheds in a similar condition, and

8  with waters of the highest purity which are designated

9  as wilderness areas as provided in this Act. These rivers

10  represent areas where the Earth and its community of

11  life are untrammeled and free from influence by man.".

12  (d) Section 2 of such Act is amended by adding the

13  following new subsection at the end thereof:

14  "(c) Within 7 years after the date of the enactment

15  of this subsection, the Secretary shall review as to its suit-

16  ability or nonsuitability for preservation as wilderness each

17  of the areas designated as wild and scenic rivers under para-

18  graphs (16) through (30) of section 3 (b) (but not in-

19  cluding the rivers designated under paragraphs (17), (23),

20  (26), (27), and (28) ) and shall report his findings to the

21  President. Such areas may be established as wilderness areas

22  in the same manner as provided under the provisions of sec-

23  tion 3 (b), 3 (c), and 3 (d) of the Wilderness Act for areas

24  subject to such provisions. Any such areas so designated shall

25  be administered by the Secretary as components of the Na-

1 tional Wilderness Preservation System in accordance with the

2 Wilderness Act and other provisions of law applicable to

3 components of such system.".

4 (e) Section 9 (a) of such Act is amended by adding the

5 following at the end thereof: "Notwithstanding the fore-

6 going provisions of this subsection or any other provision

7 of this Act or of the Wilderness Act, an area extending not

8 less than two miles from the bank of the river channel on

9 either side of the river segments referred to in paragraphs

10 (16) through (30) of section 3 (a) is hereby withdrawn,

11 subject to valid existing rights, from all forms of appropria-

12 tion under the mining laws and from operation of the mineral

13 leasing laws, including in both cases amendments thereto.

14 After establishment of the boundaries of a river, such with-

15 drawal shall apply only to areas which are within the bound-

16 aries of the river, as established under section 3 (b), and, in

17 the case of the Killik River, such sentence shall not apply to

18 the subsurface estate conveyed as provided in section 3 (a)

19 (24).".

20 (f) Section 10 of such Act is amended by adding the

21 following new subsection at the end thereof:

22 "(f) In the case of the rivers referred to in paragraphs

23 (16) through (30) of section 3 (b), during periods of

24 adequate snow cover and frozen river conditions the use of

25 snowmobiles shall be permitted by the Secretary. Such use

1 shall be permitted only for customary travel, transportation,

2 and subsistence purposes by local residents and by authorized

3 subsistence users, as was occurring on or before January 1,

4 1977. The Secretary shall issue regulations to restrict use

5 of those portions of the Colville and the Killik Rivers under

6 his jurisdiction during the peregrine falcon, gyrfalcon, and

7 rough-legged hawk nesting seasons, and such regulations shall

8 also apply to portions of other rivers listed in paragraphs

9 (16) through (30) that he determines contain critical nest-

10 ing and rearing habitat for raptorial birds.".

11    (g) The first sentence of section 6(a) of such Act is

12 amended by inserting ", except in the case of rivers listed in

13 paragraphs (16) through (30) of section 3(a)," after

14 "but".

15 TITLE    VI—DESIGNATION    OF    WILDERNESS

16    AREAS  AND  WILDERNESS  STUDY  AREAS

17    WITHIN  UNITS  OR  ADDITIONS  TO  UNITS

18    OF    THE    NATIONAL    PARK,    NATIONAL

19    WILDLIFE REFUGE AND NATIONAL FOREST

20    SYSTEMS

21             FINDINGS AND PURPOSES

22    SEC. 601. (a) The Congress finds and declares that it

23 is in the national interest that certain public lands in the

24 State of Alaska within previously established units of the

25 National Park, National Wildlife Refuge, and National For-

1   est Systems and certain additions made to such systems by

2   this Act be designated as wilderness within the National

3   Wilderness Preservation System in order to preserve such

4   areas as an enduring resource of wilderness for the benefit

5   of all the American people of present and future genera-

6   tions. The Congress further finds that certain other public

7   lands within such national conservation systems are of evi-

8   dent wilderness resource value, but require more thorough

9   study prior to designation as wilderness.

10  (b) Wilderness areas designated by or under this Act

11  shall be managed to further the purposes of the Wilderness

12  Act and the purposes for which each national conservation

13  unit was established and is administered, and for the follow-

14  ing additional purposes:

15      (1) promotion and perpetuation of the wilderness

16      character of the land and its specific multiple values;

17      (2) maintenance of watersheds in a natural condi-

18      tion;

19      (3) protection of fish and wildlife habitats and

20      subsistence resources;

21      (4) preservation of scenic, archeological, cultural,

22      and historical values;

23      (5) providing opportunities for scientific research

24      and educational uses; and

25      (6) providing opportunities for outdoor recreation

1     including primitive recreation and related human values

2     of solitude, physical and mental challenge, and inspira-

3     tion.

4     DESIGNATION OF WILDERNESS AREAS WITHIN THE

5     NATIONAL PARK SYSTEM

6     SEC. 602. In furtherance of the purposes of the Wilder-

7     ness Act and subject to valid existing rights, the following

8     lands are hereby designated as wilderness and, therefore, as

9     components of the National Wilderness Preservation System:

10     (1) Certain lands in Aniakchak National Monument,

11     Alaska which comprise approximately two hundred and

12     forty thousand acres, as generally depicted on a map

13     entitled "Aniakchak National Monument and Preserve",

14     dated September 1977, and which shall be known as

15     Aniakchak Wilderness.

16     (2) Certain lands in Bering Land Bridge National

17     Preserve, Alaska which comprise approximately six

18     hundred and seventy thousand acres, as generally

19     depicted on a map entitled "Bering Land Bridge Na-

20     tional Preserve", dated September 1977, and which shall

21     be known as Imuruk Wilderness.

22     (3) Certain lands in Cape Krusenstern National

23     Monument, Alaska which comprise approximately three

24     hundred and ten thousand acres, as generally depicted

25     on a map entitled "Cape Krusenstern National Monu-

1    ment and Preserve", dated September 1977, and which

2    shall be known as Cape Krusenstern Wilderness.

3         (4) Certain lands in Denali National Park, Alaska

4    which comprise approximately five million five hundred

5    and ten thousand acres, as generally depicted on a map

6    entitled "Denali National Park", dated September 1977,

7    and which shall be known as Denali Wilderness.

8         (5) Certain lands in Gates of the Arctic National

9    Park, Alaska which comprise approximately eight mil-

10   lion one hundred and sixty thousand acres, as generally

11   depicted on a map entitled "Gates of the Arctic National

12   Park and Preserve", dated September 1977, and which

13   shall be known as Gates of the Arctic Wilderness.

14        (6) Certain lands in Glacier Bay National Park,

15   Alaska which comprise approximately two million eight

16   hundred and sixty thousand acres, as generally depicted

17   on a map entitled "Glacier Bay National Park", dated

18   September 1977, and which shall be known as Glacier

19   Bay Wilderness.

20        (7) Certain lands in Katmai National Park, Alaska

21   which comprise approximately three million six hundred

22   and thirty thousand acres, as generally depicted on

23   a map entitled "Katmai National Park", dated Sep-

24   tember 1977, and which shall be known as Katmai

25   Wilderness.

1   (8) Certain lands in Kenai Fjords National Park,

2   Alaska which comprise approximately three hundred

3   and forty thousand acres, as generally depicted on a map

4   entitled "Kenai Fjords National Park", dated Septem-

5   ber 1977, and which shall be known as Kenai Fjords

6   Wilderness.

7   (9) Certain lands in Kobuk Valley National Park,

8   Alaska which comprise approximately one million one

9   hundred and forty thousand acres, as generally depicted

10   on a map entitled "Kobuk Valley National Park", dated

11   September 1977, and which shall be known as Kobuk

12   Valley Wilderness;

13   (10) Certain lands in Lake Clark National Park,

14   Alaska which comprise approximately two million six

15   hundred and twenty thousand acres, and certain lands

16   within Lake Clark National Preserve, Alaska which

17   comprise approximately two hundred and fifty thousand

18   acres, as generally depicted on a map entitled "Lake

19   Clark National Park and Preserve", dated September

20   1977, and which shall be known as Lake Clark

21   Wilderness.

22   (11) Certain lands in Noatak National Pre-

23   serve, Alaska which comprise approximately six mil-

24   lion eighty thousand acres, as generally depicted on a

1    map entitled "Noatak National Preserve", dated Sep-

2    tember 1977, and which shall be known as Noatak

3    Wilderness.

4    (12) Certain lands in Wrangell-Saint Elias National

5    Park, Alaska which comprise approximately nine mil-

6    lion three hundred and ten thousand acres, and certain

7    lands in Wrangell-Saint Elias National Preserve, Alaska

8    which comprise approximately two hundred and sixty

9    thousand acres, as generally depicted on a map entitled

10   "Wrangell-Saint Elias National Park and Preserve",

11   dated September 1977, and which shall be known as

12   Wrangell-Saint Elias Wilderness. Use of previously ex-

13   isting primitive fish camp sites and use of motorized

14   vehicles in furtherance of local commercial fishing opera-

15   tions shall be permitted to continue subject to such rea-

16   sonable regulations as the Secretary deems desirable

17   to maintain the wilderness character, water quality, and

18   fish and wildlife values of the area.

19   (13) Certain lands in Yukon-Charley National

20   Preserve, Alaska, which comprise approximately one

21   million and forty thousand acres, as generally depicted

22   on a map entitled "Yukon-Charley National Preserve",

23   dated September 1977, and which shall be known as

24   Yukon-Charley Wilderness.

1  DESIGNATION OF·WILDERNESS AREAS WITHIN THE

2  NATIONAL WILDLIFE REFUGE SYSTEM

3  SEC. 603. In furtherance of the purposes of the Wilder-

4  ness Act (78 Stat. 892) and subject to valid existing rights,

5  the following lands are hereby designated as wilderness and,

6  therefore, as components of the National Wilderness

7  Preservation System:

8  (1) Certain lands in the Alaska Maritime

9  National Wildlife Refuge, Alaska, which comprise ap-

10  proximately two million eight hundred and ten thousand

11  acres, as generally depicted on a map entitled "Alaska

12  Maritime National Wildlife Refuge", dated September

13  1977, and which shall be known as Alaska Marine

14  Resources Wilderness.

15  (2) Certain lands in the Alaska Peninsula National

16  Wildlife Range, Alaska, which comprise approximately

17  six hundred thousand acres, as generally depicted on a

18  map entitled "Alaska Peninsula National Wildlife

19  Range", dated September 1977, and which shall be

20  known as Pavlof Wilderness and Chiginagak Wilderness.

21  (3) Certain lands in the Arctic National Wildlife

22  Range, Alaska, which comprise approximately thirteen

23  million four hundred and thirty thousand acres, as gen-

24  erally depicted on a map entitled "Arctic National Wild-

1   life Range", dated September 1977, and which shall
2   be known as Arctic Wilderness.

3        (4) Certain lands in the Becharof National Wild-
4   life Range, Alaska, which comprise approximately one
5   million and thirty thousand acres, as generally depicted
6   on a map entitled "Becharof National Wildlife Range",
7   dated September 1977, and which shall be known as
8   Becharof Wilderness.

9        (5) Certain lands in the Innoko National Wildlife
10  Range, Alaska, which comprise approximately one mil-
11  lion two hundred and forty thousand acres, as generally
12  depicted on a map entitled "Innoko National Wildlife
13  Range", dated September 1977, and which shall be
14  known as Innoko Wilderness.

15       (6) Certain lands in the Izembek National Wild-
16  life Range, Alaska, which comprise approximately three
17  hundred thousand acres, as generally depicted on a map
18  entitled "Izembek National Wildlife Range", dated Sep-
19  tember 1977, and which shall be known as Izembek
20  Wilderness.

21       (7) Certain lands in the Kanuti National Wildlife
22  Range, Alaska, which comprise approximately three
23  hundred thousand acres, as generally depicted on a map
24  entitled "Kanuti National Wildlife Range", dated Sep-

1  tember 1977, and which shall be known as Kanuti

2  Wilderness.

3  (8) Certain lands in the Kenai National Wildlife

4  Range, Alaska, which comprise approximately one mil-

5  lion two hundred and ninety thousand acres, as generally

6  depicted on a map entitled "Kenai National Wildlife

7  Range", dated September 1977, and which shall be

8  known as Kenai Wilderness.

9  (9) Certain lands in the Kodiak National Wildlife

10  Range, Alaska, which comprise approximately one mil-

11  lion three hundred and thirty thousand acres, as gen-

12  erally depicted on a map entitled "Kodiak National

13  Wildlife Range", dated September 1977, and which

14  shall be known as Kodiak Wilderness.

15  (10) Certain lands in the Koyukuk National Wild-

16  life Range, Alaska, which comprise approximately nine

17  hundred and ten thousand acres, as generally depicted

18  on a map entitled "Koyukuk National Wildlife Range",

19  dated September 1977, and which shall be known as

20  Koyukuk Wilderness.

21  (11) Certain lands in the Nowitna National Wild-

22  life Range, Alaska, which comprise approximately four

23  hundred and eighty thousand acres, as generally depicted

24  on a map entitled "Nowitna National Wildlife Range",

1  dated September 1977, and which shall be known as

2  Nowitna Wilderness.

3  (12) Certain lands in the Nunivak National Wild-

4  life Range, Alaska, which comprise approximately two

5  million eight hundred and fifty thousand acres, as gen-

6  erally depicted on a map entitled "Nunivak National

7  Wildlife Range", dated September 1977, and which

8  shall be known as Nunivak Wilderness.

9  (13) Certain lands in the Selawik National Wildlife

10  Range, Alaska, which comprise approximately two

11  hundred and forty thousand acres, as generally depicted

12  on a map entitled "Selawik National Wildlife Range",

13  dated September 1977, and which shall be known as

14  Selawik Wilderness.

15  (14) Certain lands in the Tetlin National Wildlife

16  Range, Alaska, which comprise approximately one

17  hundred thousand acres, as generally depicted on a map

18  entitled "Tetlin National Wildlife Range", dated Septem-

19  ber 1977, and which shall be known as Tetlin

20  Wilderness.

21  (15) Certain lands in the Togiak National Wild-

22  life Range, Alaska, which comprise approximately two

23  million seven hundred and seventy thousand acres, as

24  generally depicted on a map entitled "Togiak National

1   Wildlife Range", dated September 1977, and which shall

2   be known as Togiak Wilderness.

3   (16) Certain lands in the Yukon Delta National

4   Wildlife Range, Alaska, which comprise approximately

5   two million three hundred and thirty thousand acres, as

6   generally depicted on a map entitled "Yukon Delta

7   National Wildlife Range", dated September 1977, and

8   which shall be known as Andreafsky Wilderness and

9   Kisaralik Wilderness.

10  (17) Certain lands in the Yukon Flats National

11  Wildlife Range, Alaska, which comprise approximately

12  one million nine hundred and seventy thousand acres,

13  as generally depicted on a map entitled "Yukon Flats

14  National Wildlife Range", dated September 1977, and

15  which shall be known as Hodzana Wilderness and White

16  Mountain Wilderness.

17  WILDERNESS REVIEWS WITHIN UNITS OF THE NATIONAL

18  WILDLIFE REFUGE SYSTEM

19  SEC. 604. (a) In furtherance of the purposes of

20  the Wilderness Act and in accordance with the provisions of

21  section 3 (d) of that Act relating to public notice, public

22  hearings, and review by State and other agencies, the Secre-

23  tary of the Interior shall review, as to suitability or nonsuit-

24  ability for preservation as wilderness, all areas within the

25  units of the National Wildlife Refuge System established or

1 expanded by this Act, other than those areas designated as

2 wilderness by this Act.

3     (b) The Secretary of the Interior shall conduct his

4 reviews, and the President shall advise the United States

5 Senate and House of Representatives of his recommenda-

6 tions, in accordance with the provisions of sections 3 (c) and

7 3 (d) of the Wilderness Act, except that the Secretary shall

8 complete his reviews and the President shall advise the Con-

9 gress of his recommendations with respect to no less than

10 one-third of areas within three years after the date of enact-

11 ment of this Act and with respect to the other two-thirds

12 within seven years after such date of enactment. The Secre-

13 tary shall give at least sixty days advance public notice of

14 any hearing or other public meeting concerning such areas.

15 Any recommendation of the President to the effect that such

16 area or a portion thereof should be designated as wilderness

17 shall become effective only if so provided by an Act of

18 Congress.

19     DESIGNATION OF WILDERNESS AREAS WITHIN THE

20         NATIONAL FOREST SYSTEM

21     SEC. 605. In furtherance of the purposes of the Wilder-

22 ness Act, and subject to valid existing rights, the following

23 lands are hereby designated as wilderness and, therefore,

24 as components of the National Wilderness Preservation

25 System:

(1) Certain lands in the Chugach National Forest and other public lands in Alaska which comprise approximately one million and fifty thousand acres, as generally depicted on a map entitled "Nellie Juan Wilderness", dated September 1977, and which shall be known as the Nellie Juan Wilderness.

(2) Certain lands in the Tongass National Forest, Alaska, which comprise approximately one hundred thousand acres, as generally depicted on a map entitled "Endicott Wilderness", dated September 1977, and which shall be known as Endicott Wilderness.

(3) Certain lands in the Tongass National Forest, Alaska, which comprise approximately two million three hundred and forty thousand acres, as generally depicted on a map entitled "Misty Fjords Wilderness", dated September 1977, and which shall be known as the Misty Fjords Wilderness, except that the area comprising about twenty thousand acres as depicted on the above map as "Potential Wilderness" is designated as wilderness effective January 1, 1985, unless before that date the Secretary has determined that holders of mining claims in that area have met all the requirements for issuance of a patent, that proper environmental impact statements have been made available to the public, that satisfactory controls have been established that will pre-

1    vent any environmental damage to the adjacent wilder-

2    ness and nearby waters, and that commercial produc-

3    tion of minerals has commenced.

4    (4) Certain lands in the Tongass National Forest,

5    Alaska, which comprise about four hundred and ninety

6    thousand acres as generally depicted on a map entitled

7    "Stikine-LeConte Wilderness", dated September 1977,

8    and which shall be known as the Stikine-LeConte

9    Wilderness.

10   (5) Certain lands in the Tongass National Forest,

11   Alaska, which comprise four hundred thousand acres,

12   as generally depicted on a map entitled "West Chichagof-

13   Yakobi Wilderness", dated September 1977, and

14   which shall be known as the West Chichagof-Yakobi

15   Wilderness.

16   (6) Certain lands in the Tongass National Forest,

17   Alaska, which comprise about four hundred and twenty

18   thousand acres (excluding lands of Yak-Tat-Kwan Na-

19   tive Village Corporation and the Village of Yakutat),

20   as generally depicted on a map entitled "Yakutat Wilder-

21   ness", dated September 1977, and which shall be known

22   as the Yakutat Wilderness. Use of previously existing

23   primitive fish camp sites and use of motorized vehicles

24   in furtherance of local commercial fishing operations shall

25   be permitted to continue subject to such reasonable regu-

1 lations as the Secretary of Agriculture deems desirable to
2 maintain the wilderness character, water quality, and
3 fish and wildlife values of the area.

4    (7) Certain lands in the Tongass National Forest,
5 Alaska, which comprise approximately one million and
6 forty thousand acres, as generally depicted on a map
7 entitled "Admiralty Island Wilderness", dated Septem-
8 ber 1977, and which shall be known as Admiralty
9 Island Wilderness and which shall be managed in ac-
10 cordance with the following provisions, among others:

11    (A) The Secretary of Agriculture is authorized
12 to acquire, in accordance with the provisions of
13 section 1201 of this Act, any lands, waters, and sur-
14 face and subsurface interests therein which are
15 located within the boundaries of the Admiralty
16 Island Wilderness. In addition, lands held or
17 reserved for the Angoon Community Association
18 under the provisions of the Act of June 18, 1934
19 (48 Stat. 984), specifically those lands withdrawn
20 under Public Land Order 593 may only be acquired
21 with the consent of the Angoon Community
22 Association.

23    (B) Permits issued, before the date of the en-
24 actment of this Act by the Forest Service, for a
25 dwelling or campsite in the Admiralty Island

1    Wilderness shall expire not later then ten years

2    after such date. The Special Use Permit num-

3    bered 7010035113 shall be renewed as necessary

4    for the lifetime of the permittee or the surviving

5    spouse, whoever lives longer, so long as such man-

6    agement remains consistent with the purposes of

7    the Admiralty Island Wilderness.

8        (C) Historic sites on Admiralty Island which

9    have been identified and selected under section 14

10    (h) (1) of the Alaska Native Claims Settlement

11    Act shall be included within the boundaries of the

12    Admiralty Island Wilderness. The deed or deeds

13    conveying such sites shall contain covenants pre-

14    serving such sites in their natural condition and

15    preventing timber development, all of which cove-

16    nants are within the intent and purposes of this Act.

17    Landownership of such historic sites shall remain

18    in perpetual ownership of the stockholders of

19    SEAlaska Corporation, except that if the portion of

20    two million acres of land allocated to the southeast

21    region pursuant to section 14 (h) (1) of the Alaska

22    Native Claims Settlement Act, does not include all

23    of the historic sites on Admiralty Island as deter-

24    mined by the Tlingit community of Admiralty

25    Island, then Kootznoowoo, Incorporated, as repre-

sentative of such community, may identify additional lands within the boundaries of the wilderness area as having important cultural and historic significance and the Secretary shall take appropriate action to preserve and protect such cultural and historic values.

(D) Under no circumstances shall the Secretary of Agriculture or any of his authorized officers or designees, permit educational, charitable, or nonprofit organizations or institutions, public or private museums, galleries, societies, associations or groups, private persons, Federal, State, or local agencies or any of their subdivisions access to the historical sites referred to in subparagraph (C) for archeological or anthropological research without the express, written consent of Kootznoowoo, Incorporated, as representative of the Tlingit community of Admiralty Island.

(E) The Secretary is directed to enter into cooperative agreements with Kootznoowoo, Incorporated, for the establishment of research programs related to preservation of cultural resources of Admiralty Island on public and private lands, if Kootznoowoo, Incorporated, so elects.

(F) The Secretary shall prepare a management

1    plan for the Admiralty Island wilderness within 5

2    years after the date of enactment of this Act and in

3    accordance with the provisions of section 1208.

4    (G) As provided under section 22 (f) of the

5    Alaska Native Claims Settlement Act, the Secretary

6    of Agriculture is specifically authorized and directed,

7    if the shareholders of Kootznoowoo, Incorporated,

8    so elect, to exchange the timber rights to those lands

9    selected for the village of Angoon under section 16

10    of the Alaska Native Claims Settlement Act for

11    timber rights elsewhere within the Tongass National

12    Forest in areas not designated as wilderness or

13    wilderness study areas under this Act or other pro-

14    visions of law. If the shareholders of Kootznoowoo,

15    Incorporated, so elect, the timber rights to lands

16    selected by that corporation under section 16 of the

17    Alaska Native Claims Settlement Act shall be con-

18    veyed to the Secretary of Agriculture. Within one

19    year after such conveyance, the Secretary of Agricul-

20    ture shall convey to Kootznoowoo, Incorporated,

21    timber rights under this section which are of equal

22    value to those conveyed to the Secretary. The con-

23    veyance of timber rights to the Secretary of Agri-

24    culture shall be conditioned upon the conveyance to

25    Kootznoowoo, Incorporated, by the Secretary of

1    Agriculture of timber rights of equal value under this

2    section, except that if within one year after convey-

3    ance of timber rights to the Secretary of Agriculture,

4    he cannot identify timber rights of equal value under

5    this section by mutual agreement, Kootznoowoo,

6    Incorporated, at its election, may either rescind the

7    conveyance or identify not more than twenty-three

8    thousand and forty acres of land within the Tongass

9    National Forest otherwise available for exchange

10   under this section and timber rights in lands so

11   identified shall then be conveyed to Kootznoowoo,

12   Incorporated, by the Secretary of Agriculture. Tim-

13   ber with respect to which the Secretary of Agricul-

14   ture acquires title under this section shall not be sold

15   or otherwise cut or disturbed, except for subsistence

16   uses or as otherwise provided by this Act. Notwith-

17   standing the provisions of section 21 (c) of the

18   Alaska Native Claims Settlement Act, for the pur-

19   poses of these timber rights exchange, the basis of

20   valuation of the timber rights granted Kootznoowoo,

21   Incorporated, shall be the highest market value of

22   the timber during the twenty years preceding the

23   conveyance.

24      (II) As provided under sections 21 (c), 21

25   (d), and 22 (f) of the Alaska Native Claims Set-

1    tlement Act, the Secretary of Agriculture may ex-

2    change the timber rights on land selections by

3    Kootznoowoo, Incorporated, pursuant to section 16

4    of that Act, to be exchanged pursuant to subpara-

5    graph (G) of this paragraph for cash. The basis for

6    valuation shall be the highest market value of the

7    timber conveyed to the Secretary during the twenty

8    years preceding the conveyance.

9    (I) In order for the Secretary of Agriculture

10    to proceed as expeditiously as possible, lands with-

11    drawn for selection by the Angoon Corporation

12    pursuant to Alaska Native Claims Settlement Act

13    shall remain open to selection by Kootznoowoo, In-

14    corporated. Lands not so selected by Kootznoowoo,

15    Incorporated, shall become a part of the Admiralty

16    Island Wilderness.

17    (J) In satisfaction of the rights of the Natives

18    of Juneau and Sitka as provided by section 14(h)

19    (3) of the Alaska Native Claims Settlement Act,

20    the Secretary of Agriculture shall designate alter-

21    native lands of equal or greater value located in

22    southeast Alaska other than Admiralty Island for

23    the benefit of Goldbelt, Incorporated, and Shee

24    Atika. For purposes of this section, corporations

25    formed pursuant to section 14(h)(3) of the Alaska

1    Native Claims Settlement Act shall be considered as

2    Village Corporations formed pursuant to section 16

3    of that Act. The Secretary of Agriculture, before

4    designating lands pursuant to this subsection, shall

5    study alternate areas for timber harvest by Kootz-

6    noowoo, Incorporated, not on Admiralty Island and,

7    if possible, adjacent or proximate to lands which he

8    intends to designate for Goldbelt, Incorporated, and

9    Shee Atika, Incorporated, in order to determine if

10   it is in the best interests of the United States and

11   Kootznoowoo, Incorporated, to trade timber inter-

12   ests as provided under section 22 (f) of the Alaska

13   Native Claims Settlement Act.

14        (L) It is the intent of Congress (i) that certain

15   water rights in and to the lands conveyed to Kootz-

16   noowoo, Incorporated, Goldbelt, Incorporated, and

17   Shee Atika, Incorporated, are hereby recognized

18   as vesting in those corporations, except for prior,

19   valid appropriations, and (ii) that no such water

20   rights are to be considered as being reserved to the

21   United States by the terms of this Act or the Alaska

22   Native Claims Settlement Act. The Congress further

23   recognizes the potential for expansion of the city of

24   Angoon and does hereby authorize such city to

25   obtain such water and water rights as may be

1    required to provide municipal water supply for

2    public and private consumption by citizens of the

3    city of Angoon, subject to such terms and conditions

4    as shall be specified in an agreement between the

5    city of Angoon and the Secretary of Agriculture

6    permitting activities necessary to provide such water

7    supply while protecting the wilderness character of

8    the Admiralty Island Wilderness.

9    DESIGNATION OF WILDERNESS STUDY AREAS WITHIN THE

10    NATIONAL FOREST SYSTEM

11    SEC. 606. (a) In furtherance of the purposes of the

12    Wilderness Act, the Secretary of Agriculture shall review

13    each area designated by this section as to the suitability or

14    nonsuitability of such area for preservation as wilderness and

15    report his findings to the President.

16    (b) Wilderness study areas to be reviewed pursuant to

17    this section include:

18    (1) Certain lands in the Chugach National Forest,

19    Alaska, which comprise approximately one million five

20    hundred and thirty-seven thousand eight hundred and

21    fifteen acres, as generally depicted on a map entitled

22    "Copper River Delta Wilderness Study Area", dated

23    September 1977. The Secretary shall complete his re-

24    view and report his findings to the President and the

25    President shall submit to the United States Senate and

1    the House of Representatives his recommendations with

2    respect to the designation of the Copper River Delta

3    Wilderness Study Area, together with a map thereof

4    and a definition of its boundaries, not later than four

5    years after the date of enactment of this Act.

6    (2) Certain lands in the Tongass National Forest

7    which comprise approximately one hundred twenty thou-

8    sand acres, as generally depicted on a map entitled "Dun-

9    can Canal Wilderness Study Area—Proposed", dated

10    September 1977. The Secretary shall complete his re-

11    view and report his findings to the President and the

12    President shall submit to the United States Senate and

13    the House of Representatives his recommendations with

14    respect to the designation of the Duncan Canal Wilder-

15    ness Study Area, together with a map thereof and a

16    definition of its boundaries, not later than three years

17    after the date of enactment of this Act.

18    (3) Certain lands in the Tongass National Forest

19    which comprise approximately two hundred thirty-five

20    thousand acres, as generally depicted on a map entitled

21    Etolin Island Wilderness Study Area—Proposed", dated

22    September 1977. The Secretary shall complete his re-

23    view and report his findings to the President and the

24    President shall submit to the United States Senate and

25    the House of Representatives his recommendations with

1   respect to the designation of the Etolin Island Wilder-
2   ness Study Area, together with a map thereof and a
3   definition of its boundaries, not later than five years after
4   the date of enactment of this Act.

5   (4) Certain lands in the Tongass National Forest
6   which approximately comprise forty-seven thousand
7   acres, as generally depicted on a map entitled "Karta
8   Wilderness Study Area—Proposed", dated September
9   1977. The Secretary shall complete his review and
10  report his findings to the President and the President
11  shall submit to the United States Senate and the House
12  of Representatives his recommendations with respect
13  to the designation of the Karta Wilderness Study Area,
14  together with map thereof and a definition of its bound-
15  aries, not later than two years after the date of enact-
16  ment of this Act.

17  (5) Certain lands in the Tongass National Forest
18  which approximately comprise sixty-eight thousand
19  acres, as generally depicted on a map entitled "Teben-
20  kof Wilderness Study Area—Proposed", dated Septem-
21  ber 1977. The Secretary shall complete his review and
22  report his findings to the President and the President
23  shall submit to the United States Senate and the House
24  of Representatives his recommendations with respect to
25  the designation of the Tebenkof Wilderness Study Area,

1    together with map thereof and a definition of its bound-
2    boundaries, not later than four years after the date of
3    enactment of this Act.

4    (c) The Secretary shall conduct his reviews, and the
5 President shall advise the United States Senate and House
6 of Representatives of his recommendations, in accordance
7 with the provisions of sections 3 (b) and 3 (d) of the Wilder-
8 ness Act, except that any reference in such sections to areas
9 in the national forests classified as "primitive" shall be
10 deemed to be a reference to the wilderness study areas desig-
11 nated by this Act and except that the President shall advise
12 the Congress of his recommendations with respect to all
13 such areas within five years after the date of enactment of
14 this Act. The Secretary shall give at least 120 days ad-
15 vance public notice of any hearing or other public meeting
16 concerning such areas.

17    (d) Nothing herein contained shall limit the President
18 in proposing, as part of his recommendations to Congress, the
19 alteration of existing boundaries of any wilderness study area
20 or recommending the addition to any such area of any con-
21 tiguous area predominately of wilderness value. Any recom-
22 mendation of the President to the effect that such area or a
23 portion thereof should be designated as wilderness shall be-
24 come effective only if so provided by an Act of Congress.

SPECIAL PROVISIONS

1

2 SEC. 607. (a) The provisions of this section are enacted

3 in recognition of the unique character of the wilderness in

4 Alaska. Nothing in this section shall be construed to expand,

5 diminish, or modify the provisions of the Wilderness Act or

6 the application or interpretation of such provisions with

7 respect to lands outside of Alaska.

8 (b) Such measures may be taken as the concerned Sec-

9 retary finds are necessary for the control of fire, insects, and

10 diseases, subject to such conditions as he deems desirable to

11 maintain the wilderness character of the area.

12 (c) Travel across areas designated as wilderness under

13 this title shall be permitted as provided under section 1202

14 (c). Customary use of aircraft, motorboats, and snowmobiles

15 where such use has already become established, shall be per-

16 mitted to continue in areas designated as wilderness, subject

17 to such restrictions as the concerned Secretary determines

18 necessary to maintain the wilderness character of the area in

19 the same manner and to the same degree as existed on the

20 date of enactment of this Act, except—

21 (1) where such uses were, on January 1, 1977,

22 prohibited by law or regulation;

23 (2) that use of snowmobiles for subsistence purposes

1      may be permitted to the extent authorized by title VII

2      of this Act; and

3        (3) that snowmobiles may not be used when snow

4      cover and other weather conditions are such that there

5      would be resulting damage to the terrain.

6       (d) In accord with principles of sound fisheries manage-

7 ment, the Secretary of Agriculture is authorized to permit fish

8 stocking activities and development of small aquaculture sites

9 within national forest wilderness areas designated by this Act,

10 as he determines to be necessary and desirable to restore,

11 augment, or sustain native fish populations. Structures for any

12 such aquaculture site shall involve no permanent housing for

13 personnel or equipment and only minimal facilities essential

14 to the aquacultural operations and shall be constructed at such

15 locations and in such manner as to blend into the natural

16 character of the area. In constructing such structures no alter-

17 ation to the natural contours of the terrain shall be permitted.

18      (e) Previously existing public use cabins within national

19 forest wilderness areas designated by this Act, may be per-

20 mitted to continue and may be maintained or replaced subject

21 to such restrictions as the Secretary deems necessary to pre-

22 serve the wilderness character of the area.

23      (f) Within national forest wilderness areas desig-

24 nated by this Act, the Secretary is authorized to construct and

25 maintain a limited number of new cabins and shelters if

1 such cabins and shelters are necessary for the protection of

2 the public health and safety, for the protection and preserva-

3 tion of the wilderness character of the area, or as may be

4 necessary to meet minimum requirements for the adminis-

5 tration of the area. All such cabins or shelters shall be con-

6 structed of materials which blend and are compatible with

7 the immediate and surrounding wilderness landscape; no

8 cabin or shelter shall be constructed within sight of any lake

9 or stream or within two hundred feet of any lake or stream;

10 no two cabins or shelters may be constructed closer together

11 than one air mile; and no cabin or shelter may be designed

12 to accommodate more than six persons.

13     (g) The Secretary of Agriculture may establish a reser-

14 vation system and charge a reasonable fee for the use and

15 occupancy of wilderness area cabins or shelters, but no person

16 shall be allowed to use or occupy any such cabin or shelter

17 for more than ten days during any six-month calendar period.

18     (h) Commercial services may be performed within the

19 wilderness areas designated by this Act to the extent neces-

20 sary for activities which are proper for realizing the recrea-

21 tional or other wilderness purpose of the areas.

22     (i) Subject to valid existing rights, national forest

23 wilderness areas established by this Act are hereby with-

24 drawn from all forms of appropriation under the mining laws

25 and from operation of the mineral leasing laws, including,

1  in both cases, all amendments thereto, and from any right

2  of mineral entry which would otherwise have been available

3  hereafter under the Wilderness Act or any other provision

4  of law. In any case where valid mining claims or other valid

5  occupancies are wholly within a national forest wilderness

6  designated by this Act, the Secretary of Agriculture shall,

7  under reasonable regulations consistent with the preservation

8  of the area as wilderness, permit ingress and egress to such

9  surrounded areas by means which have been or are being

10  customarily employed with respect to other such areas sim-

11  ilarly situated.

12  (j) In any case where State-owned or privately owned

13  land is completely surrounded by national forest lands within

14  national forest wilderness areas designated by this Act as

15  wilderness, the State or private owner shall be given such

16  rights as may be necessary to assure adequate access to such

17  State-owned or privately owned land by such State or pri-

18  vate owner and their successors in interest.

19  (k) Within national forest wilderness areas desig-

20  nated by this Act, the Secretary of Agriculture shall per-

21  mit the taking of fish and wildlife on lands under his juris-

22  diction in accordance with applicable laws of the United

23  States and the State of Alaska, except that the Secretary

24  may designate zones where, and establish periods when, no

25  taking of fish and wildlife shall be permitted for reasons

1 of public safety, administration, public use and enjoyment,

2 or protection of subsistence activities and except that the tak-

3 ing of wildlife for any use shall be prohibited in the Pack

4 Creek and Swan Cove area, within the boundaries of Pack

5 Creek Research Natural Area in the Admiralty Island

6 Wilderness.

7                                        ADMINISTRATION

8     SEC. 608. Except as otherwise expressly provided for in

9 this Act, wilderness areas and, until Congress determines

10 otherwise, wilderness review areas and wilderness study

11 areas designated by this Act shall be administered in accord-

12 ance with applicable provisions of the Wilderness Act gov-

13 erning areas designated by that Act as wilderness areas,

14 except that any reference in such provisions to the effective

15 date of the Wilderness Act shall be deemed to be a reference

16 to the effective date of this Act, and any reference to the

17 Secretary of Agriculture for areas designated in sections

18 602, 603, and 604 shall, as applicable, be deemed to be a

19 reference to the Secretary of the Interior.

20                               ACQUISITION AUTHORITY

21     SEC. 609. The Secretary of Agriculture is authorized,

22 in accordance with the provisions of section 1201, to ac-

23 quire privately owned land within the boundary of any area

24 designated national forest wilderness by this Act.

# TITLE VII—SUBSISTENCE

## FINDINGS

SEC. 701. The Congress finds and declares that—

(1) The continuation of subsistence uses by the Natives of Alaska on the public lands in Alaska and on their Native lands is essential to their physical, economic, and cultural existence.

(2) The continuation of subsistence uses by other residents of the State of Alaska on the public lands in Alaska is essential to their physical, economic, and traditional existence.

(3) No practical alternative means are available to replace the food supplies and other items gathered from fish, wildlife, and plant resources which supply those subsistence needs.

(4) In order to fulfill the policies and purposes of the Alaska Native Claims Settlement Act, and as a matter of equity, it is necessary for the Congress to invoke its constitutional authority over Indian affairs and over the management of the public lands to protect and continue subsistence uses of public lands by Alaska Natives and other Alaska residents.

(5) The national interest in the protection and conservation of fish and wildlife resources on the public lands and the continuation of the opportunity for a sub-

1    sistence way of life requires that an administrative struc-

2    ture be established to enable people with personal knowl-

3    edge of local conditions and requirements to participate

4    in the planning and advise concerning the management

5    of wildlife and other resources, including habitat, and of

6    subsistence uses on the public lands.

7                                POLICY

8    SEC. 702. It is hereby declared to be the policy of Con-

9    gress that—

10        (1) Subsistence use of wildlife and other renewable

11    resources shall be the first priority consumptive use of

12    all such resources on the public lands of Alaska and

13    where it is necessary to restrict taking in order to pre-

14    serve a fish and wildlife resource, the taking of such re-

15    source for subsistence uses shall be given preference on

16    the public lands, in accordance with the provisions of this

17    title, over recreational, sport, or other nonsubsistence

18    uses.

19        (2) To the extent practicable, the regulation and

20    management of subsistence activities on the public lands

21    shall be carried out, and the continued viability of all

22    wild renewable resources shall be protected, through co-

23    operative agreements with adjacent landowners and

24    managers, including Native corporations and appropriate

25    State and Federal agencies.

DEFINITIONS

Sec. 703. As used in this title—

(1) The term "subsistence lands" means all lands open to subsistence uses on the date of enactment of this Act.

(2) The term "subsistence uses" means customary and traditional uses in Alaska of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools, or transportation, for the making and selling of handicraft articles including clothing, or for the customary trade or barter among qualified subsistence users for personal or family consumption.

(3) The term "subsistence zone" means one of the local or regional subsistence zones to be designated by the Secretary pursuant to this title.

(4) The term "subsistence user" means a resident of Alaska who is either—

(A) an Alaskan Native; or

(B) any other person who, on or before January 1, 1977, was resident in an area designated as a subsistence zone under this title and who is primarily and directly dependent upon subsistence uses of the resources of the zone as his or her principal means of livelihood.

1            REGIONAL SUBSISTENCE ZONES

2      SEC. 704. (a) Within the exterior boundaries of the

3 area of operation of each of the twelve Regional Corpora-

4 tions formed pursuant to the Alaska Native Claims Settle-

5 ment Act, the Secretary shall designate a regional subsist-

6 ence zone (hereinafter referred to as a "regional zone").

7 Taken together, the regional zones shall include all sub-

8 sistence lands in Alaska.

9      (b) In designating each regional zone, the Secretary

10 shall consult with the State, with the Native Corporations,

11 and with any other persons or groups he deems appropriate,

12 and he shall consider relevant subsistence use patterns, the

13 movement and fluctuation of biological resources necessary

14 for subsistence uses, ecosystems, wildlife species migration

15 patterns, State fish and game management units, areas where

16 subsistence uses were occurring on the date of enactment of

17 this Act, and all other factors he deems relevant.

18      (c) The Secretary may from time to time divide any

19 of the regional zones designated pursuant to subsection (a)

20 of this section into more than one zone or designate new re-

21 gional zones by combining all or part of two or more existing

22 regional zones if he finds that subsistence use patterns, eco-

23 logical considerations, or sound management practices re-

24 quires such changes.

1                    LOCAL SUBSISTENCE ZONES

2     SEC. 705. (a) Within each regional zone, the Secre-

3 tary, after consultation with the State, the Native Corpo-

4 rations, and any other persons or groups he deems appro-

5 priate, shall establish local subsistence zones (hereinafter

6 referred to as "local zones").

7     (b) In designating each local zone, the Secretary shall

8 take into account—

9         (1) the boundaries or locations of such boroughs,

10     cities, towns, and unincorporated municipalities as are

11     within the concerned regional zone;

12         (2) the pattern of land selections and land owner-

13     ship in the concerned regional zone;

14         (3) State fish and game management boundaries;

15         (4) areas where subsistence uses were occurring on

16     the date of enactment of this Act; and

17         (5) such other factors as he deems relevant.

18     (c) The Secretary may, from time to time, alter the

19 boundaries between local zones, or create additional local

20 zones within regional zones, if he finds that, subsistence use

21 patterns, ecological considerations, or sound management

22 practices require such changes.

23                     STATE REGULATION

24     SEC. 706. (a) Except as otherwise provided by this Act

25 and any other Federal law, the State of Alaska is authorized

1  to regulate the taking of fish and wildlife on the public lands

2  within the designated regional and local zones in a manner

3  consistent with the requirements of this Act, subject to the

4  conditions set forth in this section.

5  (b) Within one year after the date of enactment of

6  this Act, the State shall submit to the Secretary a State

7  program which shall include the following elements:

8  (1) A State management regime which has as its

9  central element the maintenance of the optimum sustain-

10  able population of the fish and wildlife species utilized

11  by subsistence users.

12  (2) A State law which provides for the regulation

13  of the taking of fish and wildlife by an appropriate

14  professionally staffed State agency which has an admin-

15  istrative structure compatible with (A) the local and

16  regional subsistence boards and the council established,

17  (B) the authority granted each such body, and (C)

18  the use priorities established by this title.

19  (3) Regulations issued pursuant to State law which

20  recognize the priority of subsistence uses over other con-

21  sumptive uses of fish and wildlife resources and which

22  provide that necessary curtailments on consumptive uses

23  of wildlife shall be imposed first upon other consumptive

24  uses and as a last resort upon subsistence uses to the

25  extent necessary for the prevention of waste and the

1      continued viability of the wildlife resource or resources

2      affected.

3      (4) Regulations issued pursuant to State law which

4      permit continued seasonal use of snowmobiles, motor-

5      boats, and other means of transportation traditionally

6      used for subsistence purposes, subject only to such rea-

7      sonable restrictions as are necessary to prevent abuse,

8      waste, or damage to terrain and to protect the continued

9      viability of fish and wildlife resources.

10      (5) Such other provisions as the Secretary finds,

11      after due notice and consultation with the State and a

12      public hearing, are essential to achieve the purposes of

13      this Act.

14      (c) The Secretary shall issue a certificate of approval

15 for the State program submitted under this section if he finds

16 it complies with the requirements of and is well adapted to

17 achieve the purposes and policies of this Act.

18            SUBSISTENCE BOARDS AND COUNCIL

19      SEC. 707. (a) A local subsistence board (hereafter

20 referred to as a "local board") shall, promptly after

21 the date of enactment of this Act, be established in

22 each local zone, consisting of five persons elected for

23 terms of two years by those residents of the local zone who

24 are shareholders in the Native Corporations for villages lo-

25 cated within the local zone from among residents of the

1 relevant local zone who are subsistence users, and three per-

2 sons appointed by the Secretary or, if a certificate of approval

3 has been issued pursuant to section 706 (c) of this title, by

4 the Governor. In appointing members of each local board,

5 the appointing officer shall consult with local Native and

6 other organizations and appropriate Federal and State agen-

7 cies, and shall choose residents of the relevant local zone who

8 are subsistence users and who will best represent the con-

9 cerns of subsistence users in the local zone regarding fish

10 and wildlife resources and management. The appointed per-

11 sons shall serve until the transmittal to the relevant regional

12 subsistence board of the first register compiled pursuant to

13 section 710 (b) of this title, after which time they shall be

14 replaced by an equal number of persons who are subsistence

15 users of the local zone elected by the subsistence users of the

16 local zone, as registered by the local subsistence board. At

17 the end of the two-year term of the original elected mem-

18 bers, an entirely new board shall be elected by the subsistence

19 users of the local zone, as registered in the most recent com-

20 pilation by the local board; and thereafter a new local board

21 possessing the same qualifications as the original board, shall

22 be elected every two years.

23     (b) A regional subsistence board (hereafter referred

24 to as a "regional board") shall, promptly after the

25 date of enactment of this Act, be established in each

1  regional zone. Each regional board shall consist of one

2  member appointed by each of the local subsistence boards

3  in the regional zone from among residents of the local zones

4  who are subsistence users, one member appointed by the

5  Governor, and one member appointed by the Secretary.

6  (c) There shall be established an "Alaska Subsistence

7  Management Council" (hereafter referred to as the "sub-

8  sistence council") consisting of one member chosen by each

9  regional board, who shall be a member of the board from

10 which he is appointed, one person appointed by the Secre-

11 tary, one person appointed by the Governor, and one person

12 appointed by the Alaska Federation of Natives. The person

13 appointed by the Secretary shall serve as Chairman.

14 (d) Each local board shall meet at least once every

15 calendar quarter, each regional board shall meet at least

16 semiannually, and the council shall meet at least annually.

17 (e) After consultation with appropriate State and

18 Federal agencies and with Native organizations and such

19 other persons as he deems appropriate, the Governor or, if

20 the Secretary has assumed responsibility for regulating the

21 management and the taking of wildlife on the public lands

22 pursuant to section 713 then the Secretary, shall promulgate

23 regulations establishing procedures by which the local and

24 regional boards and the Council shall carry out their duties.

1            DUTIES OF REGIONAL BOARDS

2      SEC. 708. (a) Each regional subsistence board shall

3 monitor and review research activities related to fish and

4 wildlife resources or subsistence uses of those resources being

5 conducted or which are proposed to be conducted within its

6 zone under authority of this Act or any other Federal or

7 State law.

8      (b) From time to time, each regional subsistence board

9 shall recommend to the Secretary, the Governor, or any

10 other appropriate Federal or State official or agency such

11 actions as it deems necessary or desirable for the manage-

12 ment or protection of fish and wildlife resources or subsistence

13 uses of such resources within its zone, and may offer any com-

14 ments it feels proper upon any regulations or other actions

15 proposed by the Secretary or any other Federal or State

16 official or agency which may affect fish and wildlife resources

17 or subsistence uses of those resources within its zone.

18            PRIORITIES FOR USE OF RESOURCES

19      SEC. 709. (a) If at any time a regional subsistence

20 board determines that a particular fish and wildlife resource

21 within its zone is declining or depleted, it shall request the

22 appropriate official of the State or Federal Government re-

23 sponsible for regulating the management and the taking of

24 the resource to take action to curtail consumptive uses of

1 such resource to the extent necessary to protect the con-
2 tinued viability of that resource. Such official shall promptly
3 hold and conduct a public hearing thereon, after which he
4 shall make such findings and issue such rulings and final
5 regulations as may be necessary and appropriate.

6   (b) Rulings and regulations issued under this section,
7 shall give highest priority to allowing continued subsistence
8 uses by Alaskan Natives primarily and directly dependent
9 upon the particular resource as a mainstay of their liveli-
10 hood, with lower priorities, in the order listed, for allowing
11 continued subsistence uses by—

12     (1) other persons primarily and directly dependent
13   upon the particular resource as a mainstay of their
14   livelihood;

15     (2) other Alaskan Native subsistence users; and

16     (3) other customary or appropriate users.

17                 DUTIES OF LOCAL BOARDS

18   SEC. 710. (a) The local subsistence boards shall assist
19 the regional boards in the implementation of applicable regu-
20 lations, including the determination, pursuant to subsection
21 (b) of this section, of those residents in a local zone or zones
22 who are subsistence users and who are eligible for each prior-
23 ity of subsistence use in the case rulings or regulations are
24 issued curtailing uses of a resource.

25   (b) Each local subsistence board shall annually com-

1 pile a register of all subsistence users who live within the
2 board's local zone. This register shall be transmitted to the
3 relevant regional subsistence board, the Secretary, and the
4 Governor and shall also be kept available in an accessible
5 location within the local zone, and shall be employed as an
6 authoritative basis for determining any individual's status as
7 a subsistence user. A person shall not be registered in more
8 than one local zone and may carry out subsistence uses only in
9 the regional zone corresponding to such local zone. Any per-
10 son opposed to any action of a local board under this subsec-
11 tion may appeal to the relevant regional board within thirty
12 days after the transmittal of the register to the regional board.
13 The regional board shall promptly make such inquiry as it
14 deems desirable, shall afford the appellant a public hearing
15 and the local board an opportunity for the response, and shall
16 promptly thereafter make a determination which may include
17 an order that the local board take such action as the regional
18 board deems appropriate. Either party to the proceeding
19 may appeal the determination to the Council; the Council
20 which shall then promptly make a final determination and
21 issue an appropriate order.

22     (c) Each local subsistence board shall be informed of all
23 proposed actions of its regional board affecting its local sub-
24 sistence zone or subsistence users therein and may com-
25 ment on any actions proposed to be taken by its regional

1 board, by the Secretary, or by any other Federal or State

2 official or agency which it believes might affect fish or

3 wildlife resources or subsistence uses of those resources in

4 its zone.

5 (d) Any local subsistence board may, from time to time,

6 recommend that its regional board, the Governor, the Secre-

7 tary, or any other appropriate State or Federal official or

8 agency take such steps as the local board deems necessary

9 or desirable for proper management of fish and wildlife

10 resources within its local zone.

11                    LOCAL REVIEW OF RESOURCES

12 SEC. 711. Each local subsistence board shall conduct a

13 continuing review of the stocks of fish and wildlife resources

14 and the subsistence uses and needs of subsistence users in

15 its zone and shall keep its regional board, the Secretary, and

16 the Governor fully and currently informed of the results of its

17 review.

18                    DUTIES OF SUBSISTENCE COUNCIL

19 SEC. 712. The Subsistence Council shall monitor and

20 coordinate the activities of the regional subsistence boards,

21 review the activities of the Secretary, the State, and other

22 officials or agencies whose actions may affect wildlife re-

23 sources or subsistence use of those resources on the public

24 lands, shall discharge its other duties as specified in this Act,

25 shall assist the regional and local boards in carrying out their

1 duties under this Act, and shall assist the Secretary in the
2 preparation of the report to Congress required by this title.

3          ENFORCEMENT DUTIES OF SECRETARY

4     SEC. 713. (a) The Secretary shall monitor the ongoing
5 implementation of the State of Alaska's program for regu-
6 lating the management and taking of fish and wildlife on
7 public lands under this title, and if he determines that
8 changes in the State program or the implementation thereof
9 are needed in order to bring the program or its implementa-
10 tion into compliance with the requirements, purposes, and
11 policies of this Act or other applicable Federal law, he shall
12 notify the Governor and request such changes as are needed.

13     (b) If the Secretary or a local or regional subsistence
14 board or the Council determines there is reason to believe
15 that the performance of the State is not in compliance, in
16 whole or in part, with the State program or the requirements
17 or purposes and policies of this Act, the Secretary or the
18 local or regional board or the Council may demand that the
19 Governor investigate and report publicly the results of his
20 investigation.

21     (c) If, after notification pursuant to subsection (a) of
22 this section and after reasonable notice and opportunity for
23 hearing, the Secretary determines upon the record taken as a
24 whole that the State of Alaska is not in compliance with the
25 State program or that the program or its implementation are

1    not in compliance with the requirements, purposes, or poli-

2    cies of this Act or other applicable Federal laws, the Sec-

3    retary shall notify the State and indicate what changes in the

4    State program or its implementation are necessary for such

5    compliance.

6    (d) (1) The State of Alaska shall have one hundred and

7    twenty days to modify its State program or the implementation

8    thereof by making such changes as have been indicated by the

9    Secretary under this section, failing which the Secretary, upon

10    notice to the State, may suspend the State program in

11    whole or in part, and in such event he shall assume respon-

12    sibility for the management and protection of the affected

13    fish and wildlife resources and subsistence uses of those

14    resources on the public lands in accordance with this Act

15    until such time as the State presents a revised State program,

16    or demonstrates changes in implementation thereof, that the

17    Secretary finds meet the requirements of this Act.

18    (2) If he finds that the circumstances require, the Sec-

19    retary may authorize the State to continue its regulation for

20    one of more periods not to exceed sixty days each.

21    (3) As soon as the Secretary determines that circum-

22    stances requiring suspension of the State's program on the

23    public lands no longer exists, he shall end such suspension

24    and the State shall be entitled forthwith to resume the im-

25    plementation of its program.

1    (e) Notwithstanding any other provision of law, the

2  appropriate Secretary may close any of the public lands

3  (including those within a conservation system unit)

4  in Alaska or any portion thereof to subsistence uses for

5  reasons of public safety, fish and wildlife management, ad-

6  ministration, or public use and enjoyment of the area; and

7  notwithstanding any other provision of law, if the Secretary

8  determines that conditions imposed by the State of Alaska

9  on subsistence uses within a conservation system unit are

10  inconsistent with the purposes for which any unit was estab-

11  lished or expanded or constitute a danger to the continued

12  viability of the population of any species, he may close the

13  unit or any portion thereof to subsistence uses.

14    SUBSISTENCE AND LAND-USE DECISIONS

15    SEC. 714. In determining whether to withdraw, reserve,

16  lease or otherwise permit the use, occupancy or dispositions

17  of public lands in any regional zone under any provision of

18  law authorizing such actions, the Secretary or his designee

19  shall evaluate the subsistence needs of the persons affected,

20  the availability of nonsubsistence lands for the purposes

21  sought to be achieved, and other alternatives which would

22  reduce or eliminate the requirement for any taking of lands

23  needed for subsistence uses. No withdrawal, reservation, lease,

24  permit, or other use, occupancy, or disposition of such lands

25  authorized under the laws of the United States which would

1 significantly restrict subsistence uses shall be effected until

2 after notice and a hearing in the general vicinity of the area

3 involved and a determination by the agency that a limitation

4 of subsistence uses is necessary and unavoidable.

5                                         ACCESS

6    SEC. 715. The Secretary shall take steps to ensure

7 that every person registered as a subsistence user under this

8 title shall have access to subsistence lands within the appro-

9 priate zone, including access by means of easements across

10 public lands or lands held by the State of Alaska or others.

11 Such access shall be subject only to such reasonable restric-

12 tions as the Secretary may determine from time to time are

13 necessary to protect fish and wildlife resources and other

14 values of subsistence lands and other public lands.

15                              ANNUAL REPORT

16    SEC. 716. Within two years after the date of enactment

17 of this Act, and annually thereafter, the Secretary of the

18 Interior, in consultation with the Secretary of Agriculture,

19 shall prepare and submit a report to the President of the

20 Senate and the Speaker of the House of Representatives on

21 the current status of fish and wildlife and plant resources and

22 subsistence uses of those resources on the public lands in

23 Alaska. The report shall include—

24           (1) an evaluation of the performance of the State

1    of Alaska, if the State is then regulating the manage-
2    ment and taking of fish and wildlife under this title;

3        (2) the status of fish and wildlife populations im-
4    pacted by subsistence uses;

5        (3) the number of persons engaged in subsistence
6    uses;

7        (4) the status of subsistence uses in the economy
8    and culture of rural Alaska;

9        (5) the comments on the report of the local and
10   regional subsistence boards, the Subsistence Council, the
11   Alaska Federation of Natives, the Rural Alaska Com-
12   munity Action Program, and other persons or organiza-
13   tions the Secretary deems appropriate; and

14       (6) a description of those actions taken, or which
15   may need to be taken in the future to permit the con-
16   tinuation of subsistence uses of the resources of the
17   public lands, as well as recommendations for any legis-
18   lation the Secretary deems desirable.

19   The report shall be published in an appropriate manner
20   and made available to the public.

21                    COOPERATIVE AGREEMENTS

22   SEC. 717. The Secretary is authorized to enter into
23   cooperative agreements with Native corporations, State and

1 Federal agencies, and appropriate persons and organizations

2 to effectuate the purposes and policies of this title.

3 SNOWMOBILES AND MOTORBOATS

4 SEC. 718. Notwithstanding any other provision of this

5 Act or other law, the Secretary, in accordance with the reg-

6 ulatory provisions of this title, shall permit the use of snow-

7 mobiles, motorboats, and other means of transportation tradi-

8 tionally used for subsistence purposes, in areas open to sub-

9 sistence uses, subject only to such reasonable regulations as

10 are necessary to prevent abuse, waste, or damage to terrain,

11 to protect the values of the public lands, and to fulfill the

12 purposes for which conservation system units are established

13 or expanded by this Act.

14 RESEARCH

15 SEC. 719. (a) Not later than ten years from the date of

16 enactment of this Act, and continuing at intervals of not

17 more than five years thereafter, the Secretary shall report to

18 the Congress on the effect of all taking of fish and wildlife

19 and use of plant resources, including taking and use by sub-

20 sistence users, on the flora and fauna of Alaska and, after con-

21 sultation with the State of Alaska and the local and regional

22 boards and the Council established under this title, shall make

23 such legislative recommendations as he believes appropriate

24 to further the purposes and policies of this Act, including the

1   continued viability of subsistence resources and the need

2   for the continuation of subsistence uses in each regional

3   zone.

4      (b) The Secretary of Interior and the Secretary of

5   Agriculture shall undertake research on the uses of subsist-

6   ance resources, seek data thereon from subsistence users,

7   consult such users frequently, and make findings of such re-

8   search available to such users, the local and regional boards,

9   the Council, the Alaska Cooperative Planning Commission,

10   and the public.

11      (c) In carrying out research activities authorized by

12   this title, the Secretary of the Interior and the Secretary of

13   Agriculture may contract with the State of Alaska, the Uni-

14   versity of Alaska, or with other qualified persons or institu-

15   tions.

16                    OTHER LAWS

17      SEC. 720. Nothing in this title shall be deemed to modify

18   or repeal the provisions of the Fur Seal Act of 1966 (16

19   U.S.C. 1151 et seq.), the Endangered Species Act of 1973

20   (16 U.S.C. 1531 et seq.), the Marine Mammal Protec-

21   tion Act of 1972 (16 U.S.C. 1361 et seq.), the Bald and

22   Golden Eagles Protection Act (54 Stat. 250; 16 U.S.C.

23   668), the Fish and Wildlife Act of 1956 (70 Stat. 1119), or

24   the Migratory Bird Treaty Act (16 U.S.C. 701 et seq.).

## TITLE III—IMPLEMENTATION OF ALASKA NATIVE CLAIMS SETTLEMENT ACT AND ALASKA STATEHOOD ACT

CONVEYANCES OF VILLAGE TOWNSHIPS

1  SEC. 801 (a) Subject to valid existing rights and to

2  rights arising under the second sentence of section 14 (g) of

3  the Alaska Native Claims Settlement Act—

4    (1) there is hereby conveyed and vested in each

5    Village Corporation for a village which has been deter-

6    mined to be eligible for land pursuant to the Alaska

7    Native Claims Settlement Act all of the right, title, and

8    interest of the United States in and to the surface estate

9    in the township or townships withdrawn for that village

10    pursuant to section 11 (a) (1) or section 16 (a) of such

11    Act in which any part of any such village is located;

12    and

13    (2) there is hereby conveyed to and vested in the

14    appropriate Regional Corporation all of the right, title,

15    and interest of the United States in the subsurface estate

16    to which each Regional Corporation is entitled under the

17    Alaska Native Claims Settlement Act by reason of the

18    vesting of title under paragraph (1).

19  (b) As soon as possible after the date of enactment

20  of this Act, the Secretary shall issue to Native Corporations

21  referred to in subsection (a) interim conveyances or patents

1  to the lands identified in this section. Upon receipt of the

2  interim conveyances or patents, each Village Corporation

3  shall make such reconveyances as required by section 14 (c)

4  of the Alaska Native Claims Settlement Act. For purposes

5  of section 14 (f) of that Act, patents issued pursuant to this

6  Act shall be considered to have been issued pursuant to sec-

7  tions 14 (a) and 14 (b) of that Act.

8     (c) Title to lands specified in this section shall be

9  deemed to have passed on the date at enactment of this Act,

10  notwithstanding any delay in the issuance of any interim

11  conveyance or patent.

12          CONVEYANCES TO NATIVE CORPORATIONS

13     SEC. 802. (a) There are hereby granted to each

14  Native Corporation formed pursuant to the Alaska Native

15  Claims Settlement Act and to each Native group (as defined

16  in section 3 (d) of such Act) qualified to receive land under

17  such Act all those other lands which they are entitled to

18  receive under such Act, to the extent such lands have been

19  selected as of the date of enactment of this Act.

20     (b) For purposes of this section, all those lands speci-

21  fied in the document entitled " ", which sets forth

22  the priority selections of each Native Corporation shall

23  be deemed to be the lands to be conveyed to such corpo-

24  rations.

25     (c) As soon as possible after the date of enactment of

1 this Act, the Secretary shall issue interim conveyances or

2 patents, conforming to the requirements of the Alaska Na-

3 tive Claims Settlement Act, for the lands described in this

4 section. As to any such lands for which interim conveyances

5 or patents have not been issued within one hundred and

6 eighty days after the date of enactment of this Act any

7 Native Corporation may thereafter apply to any appropriate

8 Federal district court for an appropriate order confirming

9 the conveyance of any such lands, free and clear of any res-

10 ervations of easements, other than those easements required

11 to be reserved pursuant to section 14 (g) of the Alaska

12 Native Claims Settlement Act or pursuant to this Act.

13                    ADMINISTRATIVE PROVISIONS

14    SEC. 803. (a) Any other provision of law to the con-

15 trary notwithstanding, no conveyance of lands identified in

16 section 801 (a) made to a Village Corporation shall be sub-

17 ject to any easement except an easement required to be

18 reserved pursuant to section 14 (g) of the Alaska Native

19 Claims Settlement Act.

20    (b) In identifying and reserving easements required

21 pursuant to section 17 (b) of the Alaska Native Claims

22 Settlement Act, to be reserved on other Native lands hereby

23 and hereafter conveyed, the Secretary shall be guided by

24 the following principles:

25    (1) all easements shall be designed so as to mini-

1     mize their impact on the compactness and integrity of

2     Native lands; and

3         (2) each easement shall be specifically located and

4     limited and shall include only such areas as are essential

5     for the purpose or purposes for which the easement is

6     reserved.

7      (c) In every case where, after conveyances have been

8     made pursuant to this Act or to the Alaska Native Claims

9     Settlement Act, the Secretary determines that an easement

10    not reserved at the time of conveyance is required for any

11    lawful purpose, he is authorized to acquire such easement in

12    accordance with any applicable provisions of law. The ac-

13    quisition of such easements shall be deemed a public purpose

14    for which the Secretary may exercise his exchange authority

15    pursuant to section 22 (f) of the Alaska Native Claims Settle-

16    ment Act. In acquiring any such easement, the Secretary

17    shall be guided by the principles set forth in this section.

18      (d) The National Environmental Policy Act of 1969

19    shall not be construed, in whole or in part, as requiring the

20    preparation or submission of an environmental impact state-

21    ment before issuance of any conveyance required by the

22    Alaska Native Claims Settlement Act or this Act.

23               TAX MORATORIUM EXTENSION

24      SEC. 804. Section 21 (d) of the Alaska Native Claims

25    Settlement Act is hereby amended by striking out "after

1    the date of enactment of this Act" and inserting in lieu

2    thereof "after the date of issuance of an interim conveyance

3    or patent for those interests to any such individual, group,

4    or corporation".

5             CONVEYANCES TO THE STATE

6      SEC. 805. (a) Subject to Native selection rights under

7    the Alaska Native Claims Settlement Act and to valid ex-

8    isting rights, all lands which have been selected by the State

9    of Alaska, pursuant to the Alaska Statehood Act (herein-

10    after referred to as the "Statehood Act") and the selection

11    of which have received the tentative approval of the Secre-

12    tary or his designee pursuant to section 6 (g) of that Act,

13    are hereby granted to the State of Alaska as partial fulfill-

14    ment of the State of Alaska's entitlement under the State-

15    hood Act, except to the extent that any such lands have been

16    validly selected by a Native Corporation entitled to make

17    such selection.

18      (b) Subject to Native selection rights under the

19    Alaska Native Claims Settlement Act and to valid existing

20    rights, in further fulfillment of the State of Alaska's entitle-

21    ment under the Statehood Act, the following lands hereto-

22    fore selected by the State of Alaska and described in the

23    document entitled "     ", which is hereby incorporated

24    into and made a part of this Act, are hereby granted and

25    confirmed to the State of Alaska:

1  (c) The Secretary shall forthwith issue documents of
2  title, conforming to the requirements of the Statehood Act,
3  to all lands and interests therein identified in this section to
4  which the State of Alaska is entitled under the terms of the
5  Statehood Act.

6  (d) Any other provision of law to the contrary not-
7  withstanding, all lands withdrawn from selection pursuant
8  to sections 11, 14 (h), and 16 of the Alaska Native Claims
9  Settlement Act which are included within the boundaries
10 of one or more of conservation system units and which
11 have not been selected by the State or conveyed to a Na-
12 tive Corporation as of the date on which such withdrawals
13 are terminated, shall then be deemed public lands and shall
14 be added to the unit or units within which such lands are
15 located and shall be administered accordingly.

16              ALASKA NATIVE LANDS TRUST

17 SEC. 806. (a) The Secretary is authorized to estab-
18 lish an Alaska Native Lands Trust (hereafter referred to
19 as "Lands Trust") to include all lands selected pursuant
20 to sections 11, 14 (h), and 16 of the Alaska Native Claims
21 Settlement Act which, as of the date of enactment of this Act,
22 have not been conveyed to a Native Corporation. If a Native

1 Corporation entitled to receive any such lands by formal

2 resolution requests the Secretary to do so, the Secretary shall

3 hold part or all of such lands to which a Native Corporation

4 is entitled as Trustee for the use and benefit of any such

5 Native Corporation. Legal title to such lands shall be in the

6 United States, and the Native Corporation shall be the bene-

7 ficial owner.

8 (b) The Secretary is further authorized to add to the

9 Lands Trust any lands which a Native Corporation, from

10 time to time by appropriate formal action, may make sub-

11 ject to the provisions of this section.

12 (c) In any case hereafter in which a Native Corpora-

13 tion which has received or which is entitled to receive lands

14 under the Alaska Native Claims Settlement Act elects to

15 make specified parts of any such lands subject to the provi-

16 sions of this section, the United States shall assume legal

17 title to such lands as the Native Corporation shall by formal

18 resolution designate, and shall hold such lands as trustee for

19 the use and benefit of the Native Corporation. Where differ-

20 ent Native Corporations are entitled to receive the surface

21 and subsurface estates in a parcel or tract of land, all such

22 Corporations must agree and must designate such lands by

23 formal resolution before any such parcel or tract shall be-

24 come subject to the provisions of this section.

(d) Upon the receipt from any Native Corporation or Corporations for whom the Secretary holds lands in the Lands Trust of a formal resolution requesting the transfer of all or any specified part of such lands to such Corporation or Corporations, the Secretary shall promptly issue a document conveying legal title to any such lands to such Corporation or Corporations, whereupon such lands shall no longer be subject to the provisions of this section.

(e) No improvements or developments shall be permitted on any lands held in the Lands Trust. Lands held in the Lands Trust by the Secretary as trustee under this section shall not be subject to taxation by the State, any local governmental entity, or the United States; and lands held by the Secretary as trustee under this section shall not be subject to any mortgage, pledge, lien, levy, or assignment (other than those existing before the date of enactment of this Act), nor to any action at law or equity to recover any sums owed or any penalties incurred by any Native Corporation or any officer, director, or stockholder of any such corporation, nor shall any such corporation or any officer, director, or stockholder thereof be compelled by court order to demand issuance of any document pursuant to subsection (d) of this section, if the purpose of such order is to enable recovery of any such sums or penalties.

ACTION TO ENFORCE; JURISDICTION

SEC. 807. Any Federal district court shall have jurisdiction to hear, consider, and decide any action brought by the State or by any Native Corporation to enforce the provisions of this title and to award appropriate attorney's and witness fees and other costs of litigation to the prevailing party.

## TITLE IX—ACCESS TO CONSERVATION SYSTEM UNITS FOR STRATEGIC AND CRITICAL MINERALS

PURPOSES

SEC. 901. The purposes of this title are to permit the continuation of mineral assessment programs by the Secretary in Alaska, to protect valid existing mineral rights and to require recordation of existing claims in Alaska and to provide for appropriate and exclusive procedures and decision making processes (hereinafter in this title referred to as the "process") respecting the exploration for, and extraction or development of, strategic and critical minerals, under certain circumstances, from certain conservation system units in the State of Alaska which are otherwise withdrawn from mining and mineral entry under the mining laws of the United States and from the operation of the mineral leasing laws of the United States.

DEFINITIONS

SEC. 902. As used in this title—

1       (1) The term "mineral" includes any mineral or

2 mineral fuel to which the Mining and Minerals Policy

3 Act of 1970 (30 U.S.C. 21a and following), the Miner-

4 al Leasing Act of 1920 (30 U.S.C. 181 and following),

5 or the Mining Law of 1872 (30 U.S.C. 24 and follow-

6 ing) apply, including oil, gas, coal, oil shale, and

7 uranium.

8       (2) The term "strategic and critical mineral" means

9 any mineral an adequate supply of which the President

10 finds under section 913 (a) (2) (A) from time to time

11 to be essential to the national defense or the economic

12 well-being of the United States.

13       (3) The term "United States" includes any terri-

14 tory or possession of the United States, the District of

15 Columbia, and the Commonwealth of Puerto Rico.

16       (4) The term "Mineral Leasing Act of 1920"

17 means the Act entitled "An Act to promote the mining

18 of coal, phosphate, oil, oil shale, gas, and sodium on the

19 public domain," approved February 25, 1920 (30

20 U.S.C. 181 and following).

21       (5) The term "Alaska Coal Leasing Act of 1914"

22 means the Act entitled "An Act to provide for the

23 leasing of coal lands in the Territory of Alaska, and for

24 other purposes", approved October 20, 1914 (48 U.S.C.

25 439).

1   (6) The term "Mining in the Parks Act" means

2   the Act entitled "An Act to provide for the regulation of

3   mining activity within, and to repeal the application of

4   mining laws to, areas of the National Park System, and

5   for other purposes" (Public Law 94–429).

6   (7) The term "Mining Law of 1872" means

7   chapter VI of the Revised Statutes of the United States

8   (30 U.S.C. chapters 2, 12A, and 16 and sections 161

9   and 162).

10  CONTINUATION OF MINERAL ASSESSMENT PROGRAMS IN

11  ALASKA

12  SEC. 903. Nothing in this Act, the Wilderness Act, or

13  any other provision of law shall be construed to prevent the

14  Secretary from carrying out mineral assessment programs

15  and general geologic investigatory programs in the State

16  of Alaska. In the case of areas within units of a conserva-

17  tion system in Alaska, such programs shall be carried out

18  only in accordance with guidelines which shall be promul-

19  gated by the Secretary. Such guidelines shall insure that

20  the activities carried out pursuant to such programs in such

21  areas are carried out in a manner which is environmentally

22  sound and consistent with the purposes for which such areas

23  are established as units of a conservation system. Such guide-

24  lines shall insure that such activities are the minimum neces-

25  sary for carrying out such programs and do not result in any

1 lasting environmental impact which appreciably alters the

2 natural character of the land.

3 EXISTING MINING CLAIMS AND MINERAL LEASING RIGHTS

4 IN CONSERVATION SYSTEM UNITS

5 SEC. 904. (a) Except as otherwise provided in this title

6 after the date of enactment of this Act, holders of valid exist-

7 ing mineral claims and leases on public lands located within

8 the boundaries of conservation system units in Alaska may

9 carry out activities related to the exercise of rights under

10 such claims or leases only under such regulations as shall be

11 promulgated by the Secretary to assure the appropriate pro-

12 tection of such conservation system unit consistent with the

13 purposes for which such unit was established. The applicable

14 regulations of the Secretary governing such activities prior

15 to the date of the enactment of this Act shall continue in

16 effect and shall apply notwithstanding the inclusion of the

17 affected area in a conservation system unit until such time

18 as regulations under this subsection take effect.

19 (b) All mining claims under the Mining Law of 1872

20 which lie within the boundaries of conservation system units

21 in Alaska shall be recorded with the Secretary of the Interior

22 within three years after the date of the enactment of this Act

23 or a such earlier date as may be required by the Mining in

24 Parks Act or the Federal Land Policy Management Act of

25 1976. Any mining claim not so recorded shall be conclu-

1   sively presumed to be abandoned and shall be void. Such

2   recordation will not render valid any claim which was not

3   valid on the date of the enactment of this Act, or which be-

4   comes invalid thereafter. Within thirty days following the

5   date of enactment of this Act, the Secretary shall publish

6   notice of the requirements for such recordation under this

7   Act, the Mining in the Parks Act, or the Federal Land Policy

8   Management Act of 1976 and shall publish notice of the

9   applicable deadlines for such recordation in the Federal Reg-

10  ister. He shall also publish similar notices in newspapers of

11  general circulation in the areas adjacent to conservation sys-

12  tem units in Alaska.

13      (c) The holder of any patented or unpatented mining

14  claim subject to this Act who believes he has suffered a loss

15  by operation of this section, or by orders or regulations is-

16  sued pursuant thereto, may bring an action in a United

17  States district court to recover just compensation, which

18  shall be awarded if the court finds that such loss constitutes

19  a taking of property compensable under the Constitution.

20  The court shall expedite its consideration of any claim

21  brought pursuant to this section.

22      (d) Nothing in this section shall be construed to limit

23  the authority of the Secretary to acquire lands and interests

24  in lands within the boundaries of any conservation system

25  unit in Alaska. In acquiring such lands and interests (when

1 acquisition is necessary) the Secretary shall give priority to

2 most potentially damaging to the conservation system unit.

3 The Secretary shall give prompt and careful consideration to

4 any offer made by the owner of any valid right or other

5 property is causing, or would result in, undue hardship.

6 sell such right or other property, if such owner notifies the

7 Secretary that the continued ownership of such right or

8 property is causing, or would result in, undue hardship.

9 (e) The provisions of this section shall apply to all lands

10 within the boundaries of conservation system units in Alaska,

11 other than any such lands which the Mining in the Parks Act

12 applied as of the date of enactment of this Act.

13 AREAS SUBJECT TO PROCESS

14 SEC. 905. The process respecting access to strategic and

15 critical minerals contained in this title shall apply to the

16 following areas in the State of Alaska established as con-

17 servation system units:

18 (1) nonwilderness areas within the following na-

19 tional preserves:

20 (A) Aniakchak National Preserve,

21 (B) Gates of the Arctic National Preserve,

22 (C) Lake Clark National Preserve,

23 (D) Wrangells-Saint Elias National Preserve,

24 (E) Bering Land Bridge National Preserve,

25 (F) Noatak National Preserve,

1         (G) Cape Krusenstern National Preserve, and

2         (H) Yukon-Charley National Preserve;

3     (2) nonwilderness areas within the following units

4 of the national wildlife refuge system:

5         (A) Arctic National Wildlife Range,

6         (B) Innoko National Wildlife Range,

7         (C) Kanuti National Wildlife Range,

8         (D) Koyukuk National Wildlife Range,

9         (E) Nowitna National Wildlife Range,

10         (F) Selawik National Wildlife Range,

11         (G) Tetlin National Wildlife Range,

12         (H) Togiak National Wildlife Range,

13         (I) Yukon Delta National Wildlife Range,

14         (J) Yukon Flats National Wildlife Range,

15         (K) Alaska Marine Resources Refuge, and

16         (L) Alaska Peninsula Wildlife Range;

17     (3) all wilderness areas within the national forest

18 system except Admiralty Island Wilderness; and

19     (4) all wild, scenic, or recreation rivers located

20 either outside conservation system units or within the

21 National Forest System.

22         EXECUTIVE RECOMMENDATIONS

23 SEC. 906. (a) (1) Subject to valid existing rights,

24 mineral exploration and development or extraction may be

25 carried out on lands within the exterior boundaries of a

1 conservation system unit subject to the process provided

2 under this title only as provided in accordance with such

3 process and the other requirements contained in this title.

4 (2) The Secretary shall receive and shall consider an

5 application from any person to explore for, and extract and

6 develop, a particular strategic and critical mineral on a con-

7 servation system unit in Alaska. The Secretary shall transmit

8 such application, and his comments thereon, to the President

9 for further consideration under this title if he makes a pre-

10 liminary determination that—

11 (A) the area subject to the application is con-

12 sidered to be a known reserve for the mineral subject to

13 the application;

14 (B) such mineral is a strategic and critical mineral;

15 (C) there is a present or projected serious national

16 need for such mineral;

17 (D) there is no known reserve in the United States

18 on private or on public land open to mineral entry or

19 appropriation from which the needed additional supply

20 of such mineral can be obtained to meet the national

21 need; and

22 (E) the person submitting the application is finan-

23 cially capable of conducting the exploration described

24 in the application.

25 Not later than ninety days from receipt of such application

1  the Secretary shall either make the preliminary determina-

2  tions specified in this paragraph and transmit such applica-

3  tion to the President or disapprove such application.

4  (3) Following his receipt of an application transmitted

5  by the Secretary, or on his own motion at any time, the

6  President may transmit a recommendation to the Congress

7  which proposes the exploration for, or development or ex-

8  traction of, minerals in any conservation system unit in

9  Alaska if he finds that—

10  (A) the mineral subject to such recommendation

11  is a strategic and critical mineral, an adequate supply

12  of which is essential to the national defense or the eco-

13  nomic well-being of the United States,

14  (B) there is a present or projected serious national

15  need for such strategic and critical mineral,

16  (C) such national need for such mineral cannot be

17  met though domestic productive capacity, or through

18  current conservation or current recycling methods, for-

19  eign sources, diversion of exports for United States con-

20  sumption, or the use of known practical alternative ma-

21  terials or processes,

22  (D) there is no known reserves in the United

23  States on private land or on public land open to mineral

24  entry or appropriation from which the needed additional

1  supply of such mineral can be obtained to meet such

2  national need,

3       (E) there is no technically and economically feasi-

4       ble alternative to the exploration for and extraction or

5       development of such mineral within such unit of such

6       conservation system, and

7       (F) the wilderness, environmental, scenic, cultural,

8       archeological, natural, recreational, fish and wildlife,

9       and other values which may be adversely affected by the

10      exploration, extraction, or development in the area which

11      is the subject of such recommendation are of a lesser

12      national significance than the national need to explore

13      for and extract or develop such mineral from such area.

14  Not later than nine months from receipt by the President

15  of an application transmitted by the Secretary, the President

16  shall either make the findings specified in this paragraph and

17  submit the application to the Congress or disapprove the

18  application. No recommendation may be submitted to the

19  Congress by any officer or emloyee of the United States

20  which proposes the exploration for, or development or ex-

21  traction of, minerals in any conservation system unit in

22  Alaska except in accordance with this title.

23      (b) Any recommendation submitted under subsection

24  (a) shall include a detailed report setting forth the factual

1 data and other information which forms the basis for such

2 recommendation. Such report shall also include—

3     (1) analyses of currently available supplies of the

4     mineral which is the subject of such recommendation

5     and short- and long-range projections respecting the fu-

6     ture availability of any such mineral;

7     (2) analyses (A) of current needs of the United

8     States for such mineral, (B) of short range and long

9     range projections respecting future needs for such min-

10     eral, and (C) of the nature and seriousness of any

11     immediate or projected shortages of such mineral; and

12     (3) an examination of (A) all feasible means of

13     meeting the national need for such mineral, including

14     conservation, stockpiling, recycling, alternative materials

15     or processes, and production from areas within the

16     United States and (B) of the economic incentives and

17     disincentives involved in meeting such need through

18     any of such means.

19 (c) (1) The recommendation of the President submitted

20 under subsection (a) shall be published in the Federal Regis-

21 ter together with a brief summary of the environmental

22 impact statement required under the National Environmental

23 Policy Act of 1969 and a statement of where the complete

24 environmental impact statement is available for public

25 inspection.

1    (2) The report required under subsection (b) shall be

2  prepared after notice in the Federal Register and opportunity

3  for the submission by any persons of written data, views,

4  and argument. Such report shall be treated as a rule for

5  purposes of section 553 of title 5 of the United States Code,

6  and shall be accompanied by—

7        (A) a detailed description of the lands to be open

8     (subject to the requirements of section 908) to explora-

9     tion for, and extraction or development of, minerals

10     pursuant to this part; and

11        (B) an environmental impact statement respecting

12     such recommendation which meets the requirements of

13     section 102 of the National Environmental Policy Act

14     of 1969.

15    (d) Before transmittal by the President to the Congress

16  of any recommendation under subsection (a), the Council

17  on Environmental Quality shall afford interested persons an

18  opportunity to present oral and written data, views, and

19  arguments respecting any environmental impact statement

20  submitted. The Council on Environmental Quality shall sub-

21  mit to the President a report, which shall be contemporane-

22  ously made available by the Council to the public, summariz-

23  ing any data, views, and arguments received and setting forth

24  the Council's views concerning the legal and factual suffi-

25  ciency of each such environmental impact statement and other

1 matters related to environmental impact as the Council con-

2 siders to be relevant.

CONGRESSIONAL REVIEW

4 SEC. 907. (a) Any recommendation made by the Presi-

5 dent under section 906 and submitted to Congress shall be

6 considered received by both Houses for purposes of this

7 section on the first day on which both are in session occurring

8 after such determination is submitted.

9 (b) Any recommendation transmitted to Congress under

10 section 906 shall take effect only upon enactment of a joint

11 resolution within the first period of one hundred and twenty

12 calendar days of continuous session of Congress beginning on

13 the date after the date of receipt by the Senate and House of

14 Representatives of such recommendation.

15 (c) For purposes of this section—

16 (1) continuity of session of Congress is broken only

17 by an adjournment sine die; and

18 (2) the days on which either House is not in ses-

19 sion because of an adjournment of more than three days

20 to a day certain are excluded in the computation of the

21 one hundred and twenty-day calendar period.

22 (d) (1) This subsection is enacted by Congress—

23 (A) as an exercise of the rulemaking power of

24 each House of Congress, respectively, and as such it is

1      deemed a part of the rules of each House, respectively,

2      but applicable only with respect to the procedure to be

3      followed in the House in the case of resolutions de-

4      scribed by paragraph (2) of this subsection; and it

5      supersedes other rules only to the extent that it is in-

6      consistent therewith; and

7      (B) with full recognition of the constitutional right

8      of either House to change the rules (so far as those

9      relate to the procedure of that House) at any time,

10      in the same manner and to the same extent as in the case

11      of any other rule of such House.

12      (2) For purposes of this section, the term "resolution"

13 means a joint resolution, the resolving clause of which

14 is as follows: "That the House of Representatives and Senate

15 approve the Presidential recommendation for the exploration

16 for, and extraction or development of        from

17      submitted to the Congress on    , 19 ."; the

18 first blank space therein to be filled in with the appropriate

19 strategic and critical mineral, the second blank space therein

20 to be filled in with the name of the appropriate conserva-

21 tion system unit in Alaska, and the third blank space therein

22 to be filled with the date on which the President submits his

23 recommendation to the House of Representatives and the

24 Senate. Such resolution may also include material relating

1 to the application and effect of the National Environmental

2 Policy Act of 1969 (and any litigation thereof) to the

3 recommendation.

4 (3) A resolution once introduced with respect to such

5 a Presidential recommendation shall be referred to one or

6 more committees (and all resolutions with respect to the

7 same Presidential recommendation shall be referred to the

8 same committee or committees) by the President of the Sen-

9 ate or the Speaker of the House of Representatives, as the

10 case may be.

11 (4) (A) If any committee to which a resolution with

12 respect to a Presidential recommendation has been referred

13 has not reported it at the end of sixty calendar days after its

14 referral, it shall be in order to move either to discharge such

15 committee from further consideration of such resolution or to

16 discharge such committee from further consideration of any

17 other resolution with respect to such Presidential recommen-

18 dation which has been referred to such committee.

19 (B) A motion to discharge may be made only by an

20 individual favoring the resolution, shall be highly privileged

21 (except that it may not be made after the committee has

22 reported a resolution with respect to the same Presidential

23 recommendation) and debate thereon shall be limited to not

24 more than one hour, to be divided equally between those

25 favoring and those opposing the resolution. An amendment

1 to the motion shall not be in order, and it shall not be in

2 order to move to reconsider the vote by which the motion was

3 agreed to or disagreed to.

4     (C) If the motion to discharge is agreed to or dis-

5 agreed to, the motion may not be made with respect to any

6 other resolution with respect to the same Presidential

7 recommendation.

8     (5) (A) When any committee has reported, or has been

9 discharged from further consideration of, the resolution,

10 but in no case earlier than sixty days after the date of

11 receipt of the President's recommendation to the Congress,

12 it shall be at any time thereafter in order (even though a

13 previous motion to the same effect has been disagreed to)

14 to move to proceed to the consideration of the resolution.

15 The motion shall be highly privileged and shall not be de-

16 batable. An amendment to the motion shall not be in order,

17 and it shall not be in order to move to reconsider the vote

18 by which the motion was agreed to or disagreed to.

19     (B) Debate on the resolution shall be limited to not

20 more than four hours. This time shall be divided equally

21 between those favoring and those opposing such resolu-

22 tion. A motion further to limit debate shall not be debat-

23 able. An amendment to, or motion to recommit the resolu-

24 tion shall not be in order, and it shall not be in order to

25 move to reconsider the vote by which such resolution was

1 agreed to or disagreed to or, thereafter within such one

2 hundred and twenty-day period, to consider any other res-

3 olution respecting the same Presidential recommendation.

4     (6) (A) Motions to postpone, made with respect to

5 the discharge from committee, or the consideration of a

6 resolution and motions to proceed to the consideration of

7 other business, shall be decided without debate.

8     (B) Appeals from the decision of the Chair relating

9 to the application of the rules of the Senate or the House

10 of Representatives, as the case may be to the procedures

11 relating to a resolution shall be decided without debate.

12 EXPLORATION FOR AND EXTRACTION OR DEVELOPMENT OF

13                               MINERALS

14     SEC. 908. (a) If approved as provided in this title, the

15 exploration for, and extraction or development of a mineral

16 which is subject to the Mineral Leasing Act of 1920 or the

17 Alaska Coal Leasing Act of 1914, on a conservation system

18 unit in Alaska shall, except as provided in subsection (c), be

19 carried out in accordance with the applicable provisions of

20 such Acts and other provisions of law applicable to the ex-

21 ploration for, and development or extraction of such mineral.

22     (b) If approved pursuant to this title, the exploration

23 for, and extraction or development of, any mineral other

24 than a mineral referred to in subsection (a) from a con-

25 servation system unit in Alaska shall be carried out in ac-

1 cordance with regulations promulgated by the Secretary.
2 Such regulations shall be promulgated not less than one hun-
3 dred twenty days following the enactment of the joint resolu-
4 tion approving such Presidential determination and shall pro-
5 vide for the disposition of such mineral on the basis of such
6 permits and leases as such Secretary deems appropriate. Such
7 regulations shall include provisions—

8    (1) specifying the duration, assignment, and re-
9 newal of any lease or permit;

10    (2) establishing a fee and royalty schedule for is-
11 suance and maintenance of leases and permits;

12    (3) establishing the terms on which a lease or per-
13 mit may be issued;

14    (4) containing stipulations to insure that all activi-
15 ties undertaken under any lease or permit shall be con-
16 sistent to the maximum extent feasible, with the pur-
17 poses for which the unit was established;

18    (5) requiring (A) that the impact of all activities
19 relating to any such lease or permit on the natural char-
20 acter of the land be no greater than necessary to carry
21 out the authorized exploration and extraction or develop-
22 ment, and (B) the restoration of the affected land to its
23 state prior to exploration to the maximum extent feasible,
24 and (C) the commencement of such restoration im-
25 mediately following—

1           (i) the termination of exploration where no

2           permit or lease for extraction or development is

3           issued, or

4           (ii) where mineral extraction or development

5           takes place, upon the termination of such activity;

6           and

7           (6) for removal of associated minerals.

8 The same percentage of money received from fees and royal-

9 ties collected pursuant to such leases or permits shall be paid

10 to the State of Alaska as is paid under the Mineral Leasing

11 Act of 1920 in the case of minerals subject to such Act.

12      (c) The Secretary of the Interior shall promulgate regu-

13 lations requiring exploration permits for the exploration for

14 minerals in areas within conservation system units opened

15 for such exploration under this title. Such permits shall

16 be for a five-year period and shall provide that if, based upon

17 the information obtained by exploration under such permit,

18 the Secretary determines that a commercially viable quan-

19 tity of such mineral is located in the area subject to such ex-

20 ploration permit, a lease shall, if requested, be issued to the

21 holder of the exploration permit for the development and

22 extraction of such mineral from so much of such area as the

23 Secretary deems necessary in order to effect such extraction

24 or development. Nothing in this section shall be construed to

25 prohibit the sale or transfer of any such lease, or of rights to

1 any such lease, pursuant to such reasonable requirements as

2 the Secretary deems necessary to carry out the purposes of

3 this title.

#### TRANSFER OF FEDERAL LANDS

5 SEC. 909. At such point that the cumulative total of—

6     (1) lands within a conservation system unit in

7 Alaska on which the Secretary determines there will be

8 a significant adverse effect or impact (visual or other-

9 wise) from mineral extraction or development under

10 leases pursuant to this title, and

11     (2) lands within a conservation system unit in

12 Alaska on which the Secretary determines there will be

13 an adverse effect from the utilization of rights of way for

14 which use permits have been issued under title X,

15 exceeds one million acres, the Secretary shall, upon the issu-

16 ance of any lease for mineral extraction or development trans-

17 fer to the affected conservation system units unreserved

18 public lands in an amount equal to the number of acres in

19 excess of such one million acres on which he determines

20 there is such an adverse effect under titles IX and X. Such

21 lands transferred shall be, so far as possible, of an equivalent

22 character, quality, and acreage to the lands on which the

23 Secretary determines there will be a significant adverse effect

24 or impact (visual or otherwise) from such extraction or

25 development.

# TITLE X—TRANSPORTATION SYSTEM AND UTILITY TRANSMISSION SYSTEM RIGHTS-OF-WAY ACROSS CONSERVATION SYSTEM UNITS

### PURPOSES

SEC. 1001. The purposes of this title are to establish the exclusive procedures and decisionmaking processes for the consideration of an application for, and the issuance of, use permits for rights-of-way for major transportation systems and utility transmission systems across public lands within conservation system units in the State of Alaska.

### APPLICATION FOR USE PERMITS

SEC. 1002. (a) (1) No area within a conservation system unit in the State of Alaska shall be available for use for purposes of a transportation system or utility transmission system except as provided in this title unless such system is—

(A) a transportation or utility transmission system established primarily for purposes of a conservation system unit (as determined by the Secretary under applicable provisions of law), or

(B) a minor transportation or utility transmission system which the Secretary determines would not result in a significant adverse effect on the conservation system unit and would be compatible with the purposes for which the unit was established.

(2) Any Federal, State, or local agency, or any pri-

1  vate person or other organization may make application to the

2  Secretary for a use permit for a right-of-way for a trans-

3  portation system or utility transmission system across a

4  conservation system unit in the State of Alaska. The Sec-

5  retary shall, after notice and public hearing but not later

6  than one hundred eighty days following his receipt of an

7  application for a right-of-way under this section, determine

8  whether the approval of such application is in the public

9  interest, and if he so determines, he shall transmit such

10  application and determination to the President, together

11  with—

12      (A) an environmental impact statement under

13      section 102 of the National Environmental Policy Act

14      of 1969, and

15      (B) a detailed explanation of the basis of his

16      determination.

17  In making his determination and in his transmittal to the

18  President, the Secretary shall specify the conditions under

19  which the use of any such right-of-way should be permitted

20  and the extent and duration thereof.

21      (b) If the President, upon receipt of the application

22  and the determination of the Secretary under subsection

23  (a), and after weighing the various national, regional, and

24  local interests and values involved, recommends approval

25  of the Secretary's determination, he shall submit such appli-

1   cation and his recommendation to the Congress. The sub-

2   mission to Congress shall be accompanied by a report set-

3   ting forth a detailed explanation of the basis for his recom-

4   mendation of approval together with the environmental im-

5   pact statement. The President shall publish notice of his

6   approval of a determination under this subsection in the

7   Federal Register with—

8          (1) a detailed description of the areas subject to

9       the determination,

10         (2) a description of the lands to be transferred

11      therefor under section 1005, and

12         (3) a brief summary of the environmental impact

13      statement required under the National Environmental

14      Policy Act (and a statement of where the complete

15      environmental impact is available for public inspec-

16      tion).

17   (c) Before transmittal by the President to the Congress

18   of any recommendation under subsection (b), the Council

19   on Environmental Quality shall afford interested persons an

20   opportunity to present oral and written data, views, and

21   arguments respecting the environmental impact statements

22   submitted. The Council on Environmental Quality shall sub-

23   mit to the President a report, which shall be contemporane-

24   ously made available by the Council to the public, summariz-

25   ing any data, views, and arguments received and setting forth

1   the Council's views concerning the legal and factual suffi-

2   ciency of each such environmental impact statement and

3   other matters related to environmental impact as the Council

4   considers to be relevant.

5                        CONGRESSIONAL REVIEW

6       SEC. 1003. Any recommendation transmitted to Con-

7   gress under section 1002 shall take effect only upon enact-

8   ment of a joint resolution by the Senate and House of

9   Representatives approving such recommendation in the same

10  manner as provided in section 907 with respect to a recom-

11  mendation under title IX. Such approval shall be subject

12  to all of the procedures and rules as set forth in such

13  section 907, except that for purposes of this section, the

14  term "resolution" means a joint resolution, the resolving

15  clause of which is as follows: "That the House of Repre-

16  sentatives and Senate approve the Presidential recommenda-

17  tion for access to            for purposes of            in

18  the State of Alaska submitted to the Congress on          ,

19  19   ,"; the first blank space therein to be filled in with the

20  appropriate conservation system unit in Alaska, the second

21  blank space to be filled in with the purposes of the access

22  proposed to be allowed, and the third blank space therein to

23  be filled with the date on which the President submits his

24  recommendation to the House of Representatives and the

25  Senate.

1                 ISSUANCE OF PERMITS

2     SEC. 1004. In any case in which an application for a

3 right-of-way across public lands within a conservation

4 system unit in Alaska has been approved by the Congress

5 under this title, the Secretary shall immediately following the

6 enactment of the joint resolution of congressional approval

7 issue a use permit for such right-of-way. Such permit shall

8 contain such conditions and stipulations as the Secretary

9 deems appropriate to assure that the right-of-way is utilized

10 in a manner consistent, to the maximum extent feasible, with

11 the purposes for which the affected conservation system unit

12 was established and contains provisions necessary to mini-

13 mize harm to the area. Unless Congress otherwise directs, no

14 permit under this title for a transportation system or a utility

15 transmission system may be granted across public lands

16 within a conservation system unit in Alaska unless the per-

17 mittee pays to the United States an amount equal to the fair

18 market value of the right-of-way granted by such permit.

19            TRANSFER OF FEDERAL LANDS

20     SEC. 1005. After the cumulative total of one million

21 acres has been reached as provided in title IX, upon the

22 issuance of a use permit under section 1004, the Secretary

23 shall transfer to the affected conservation system public lands

24 in Alaska which are not in any conservation system unit.

25 Such public lands so transferred shall be, so far as possible,

1 of an equivalent character, quality, and acreage to the lands

2 on which the Secretary determines there will be a significant

3 adverse affect or impact (visual or otherwise) resulting from

4 the utilization of such right-of-way.

## TITLE XI—COORDINATION

ALASKA ADVISORY COORDINATING COUNCIL

7 SEC. 1101. (a) There is hereby established an Alaska

8 Coordinating Council (hereinafter referred to as the "Coun-

9 cil"). The Council shall consist of the following members:

10 (1) the head of the Alaska offices of each of the

11 following Federal agencies: National Park Service,

12 United States Fish and Wildlife Service, United States

13 Forest Service, Bureau of Land Management, and

14 Bureau of Indian Affairs;

15 (2) if the State complies with the requirements of

16 subsection (d), the Commissioners of the Alaska De-

17 partments of Natural Resources, Fish and Game, and

18 Environmental Conservation;

19 (3) one member appointed by the Governor from

20 recommendations submitted by Village Corporations;

21 (4) one member appointed by the Governor from

22 recommendations submitted by Regional Corporations;

23 and

24 (5) the Chairman of the Subsistence Council esta-

25 blished under title VII of this Act.

1 Any vacancy on the Council shall be filled in the same
2 manner in which the original appointment was made. The
3 Secretary shall designate one of the heads of the Alaska
4 offices of the Federal agencies referred to in paragraph (1)
5 as Chairman of the Council.

6 (b) The Council shall have an Executive Director who
7 shall be appointed by the Secretary and who shall be com-
8 pensated at a rate established by the Secretary but not in ex-
9 cess of that provided for level V of the Executive Schedule
10 contained in title 5, United States Code. The Executive Di-
11 rector shall appoint and fix the compensation of such addi-
12 tional staff the Council approves.

13 (c) Members of the Council who are Federal or State
14 employees shall receive no additional compensation for serv-
15 ice on the Council. Members of the Council who are not Fed-
16 eral or State employees shall receive the daily equivalent of
17 the annual rate of basic pay in effect for grade GS–15 of the
18 General Schedule (as contained in title 5, United States
19 Code) for each day during which they are engaged in the
20 performance of duties for the Council. While away from their
21 homes or regular places of business in the performance of
22 services for the Council, members of the Council shall be al-
23 lowed travel expenses, including per diem in lieu of sub-
24 sistence, in the same manner as persons employed intermit-

1 tently in the Government service are allowed expenses under

2 section 5703 (b) of title 5 of the United States Code.

3     (d) The directors of the Alaska departments referred to

4 in subsection (a) (2) shall be members of the Council only

5 if the State contributes annually funds, staff, and property to

6 Council which is equivalent in value to 35 percent of the

7 Council's annual expenses for such items. The Federal agen-

8 cies referred to in subsection (a) (1) shall contribute, in

9 addition to funds, staff, and property, if any, contributed by

10 the State, such funds, staff, and property as may be neces-

11 sary. Staff detailed to the Council in accordance with the

12 provisions of this subsection shall be under the direction of

13 the Executive Director during any period such staff is so

14 detailed.

15     (e) The Council shall meet at the call of the Chairman,

16 but not less than twice each year. In addition, the Council

17 may, for the purpose of carrying out the provisions of this

18 section, hold such hearings, take such testimony, receive such

19 evidence and print or otherwise reproduce and distribute re-

20 ports concerning so much of its proceedings as the Council

21 deems advisable. The Chairman shall submit a report of each

22 meeting or hearing, together with any recommendations the

23 Council finds appropriate, to the Secretary, the Governor

24 of Alaska, the head of each Regional Corporation, the

1 Committee on Interior and Insular Affairs of the House of

2 Representatives, and the Committee on Energy and Natural

3 Resources of the United States Senate. No later than Jan-

4 uary 1 of each calendar year following the calendar in which

5 the Council is established, the Secretary shall submit to Con-

6 gress in writing, a report on the activities of the Council

7 during the previous year, together with his recommenda-

8 tions, if any, for legislation in furtherance of the purposes of

9 this section.

10    (f) The Council shall adopt such internal rules of proce-

11 dure as it deems necessary. All Council meetings shall be

12 open to the public and at least thirty days prior to the date

13 when any meeting of the Council is to take place the Chair-

14 man shall provide public notice in the Federal Register and

15 in newspapers of general circulation in various areas through-

16 out Alaska.

17    (g) The Council shall conduct studies and advise the

18 Secretary, other Federal agencies, the State, and Native

19 Corporations with respect to ongoing, planned, and proposed

20 land and resource uses in Alaska, including transportation

21 planning, land use designation, fish and wildlife management,

22 tourism, agricultural development, coastal zone management,

23 preservation of cultural and historical resources, and such

24 other matters as may be submitted for advice by the

25 members.

1    (h) The Council may, with the concurrence of the

2    members having administrative jurisdiction over the lands

3    and waters and fish and wildlife resources therein, recom-

4    mend cooperative planning and management zones, consist-

5    ing of areas of the State in which the management of lands

6    or resources by one member materially affects the manage-

7    ment of lands or resources of another member or members.

8    Federal members of the Council appointed under subsection

9    (a) are authorized and encouraged to enter into cooperative

10    agreements with Federal agencies, with State and local

11    agencies, and with Native Corporations providing for mutual

12    consultation, review, and coordination of resource manage-

13    ment plans and programs within such zones.

14    (i) With respect to lands, waters, and interests therein

15    which are subject to a cooperative agreement in accordance

16    with subsection (h), the Secretary may provide technical

17    and other assistance to the landowner with respect to fire

18    control, trespass control, law enforcement, resource use, and

19    planning. Such assistance may be provided without reim-

20    bursement if the Secretary determines that to do so would

21    be in the public interest.

22    (j) Unless extended by the Congress, the Council shall

23    terminate ten years after the date of enactment of this Act.

24    No later than one year prior to its termination date, the

25    Secretary shall submit in writing to the Congress a report

1 on the accomplishments of the Council together with his
2 recommendation and the recommendation, if any, of the
3 Governor of Alaska, as to whether the Council should be
4 extended or any other recommendations for legislation or
5 other action which the Secretary determines should be taken
6 following termination of the Council to continue carrying the
7 purposes for which the Council was established.

8 TITLE XII—ADMINISTRATIVE PROVISIONS

9 LAND ACQUISITIONS AND EXCHANGES

10 SEC. 1201. (a) Except as otherwise provided in this
11 Act, in order to carry out the purposes of this Act, the
12 Secretary is authorized to acquire by purchase, donation,
13 or exchange any lands within the boundaries of any con-
14 servation system unit. Land owned by the State, a political
15 subdivision of the State, or a Native Corporation may only
16 be acquired for such purposes with the consent of the State,
17 political subdivision of the State, or Native Corporation.

18 (b) No improved property shall be acquired under
19 subsection (a) without the consent of the owner unless the
20 Secretary first determines that such acquisition is necessary
21 to the fulfillment of the purposes of this Act or to the
22 fulfillment of the purposes for which the concerned conser-
23 vation system unit was established or expanded.

24 (c) The owner of an improved property on the date
25 of its acquisition, as a condition of such acquisition, may

1    retain for himself, his heirs and assigns, a right of use and
2    occupancy of the improved property for noncommercial
3    residential or recreational purposes, as the case may be, for
4    a definite term of not more than twenty-five years or, in
5    lieu thereof, for a term ending at the death of the owner
6    or the death of his spouse, whichever is later. The owner
7    shall elect the term to be reserved. Unless the property is
8    wholly or partially donated, the Secretary shall pay to the
9    owner the fair market value of the property on the date
10   of its acquisition, less the fair market value on that date of
11   the right retained by the owner. A right retained by the
12   owner pursuant to this section shall be subject to termination
13   by the Secretary upon his determination that such right is
14   being exercised in a manner inconsistent with the purposes of
15   this Act, and it shall terminate by operation of law upon noti-
16   fication by the Secretary to the holder of the right of such
17   determination and tendering to him the amount equal to
18   the fair market value of that portion which remains
19   unexpired.

20        (d) For the purposes of this section, the term "improved
21   property" means: (1) a detached single family dwelling,
22   the construction of which was begun before January 1, 1977
23   (hereinafter in this section referred to as the "dwelling"),
24   together with so much of the land on which the dwelling is
25   situated, such land being in the same ownership as the dwell-

1 ing, as the Secretary shall designate to be reasonably neces-

2 sary for the enjoyment of the dwelling for the sole purpose of

3 noncommercial residential use, together with any structures

4 necessary to the dwelling which are situated on the land so

5 designated, or (2) property developed for noncommercial

6 recreational uses, together with any structures accessory

7 thereto which were so used on or before January 1, 1977.

8 In determining when and to what extent a property is to be

9 considered an "improved property", the Secretary shall take

10 into consideration the manner of use of such buildings and

11 lands prior to January 1, 1977, and shall designate such

12 lands as are reasonably necessary for the continued enjoy-

13 ment of the property in the same manner and to the same

14 extent as existed prior to such date.

15 The Secretary shall give prompt and careful con-

16 sideration to any offer made by the owner of any property

17 within a conservation system unit to sell such property, if

18 such owner notifies the Secretary that the continued owner-

19 ship is causing, or would result in, undue hardship.

20 (f) In acquiring lands for the purposes of this Act, the

21 Secretary is authorized to exchange lands (including lands

22 within the National Forest System) or interests therein (in-

23 cluding Native selection rights) with the corporations orga-

24 nized by the Native groups, Village Corporations, Regional

25 Corporations, and the corporations organized by Natives

1 residing in Juneau, Sitka, Kodiak, and Kenai, all as defined

2 in the Alaska Native Claims Settlement Act, and other

3 municipalities and corporations or individuals, the State

4 (acting free of the restrictions of section 6 (i) of the Alaska

5 Statehood Act (72 Stat. 342)), or any Federal agency.

6 Exchanges shall be on the basis of equal value, and either

7 party to the exchange may pay or accept cash in order to

8 equalize the value of the property exchanged, except that if

9 the parties agree to an exchange and the concerned Secre-

10 tary determines it is in the public interest, such exchanges

11 may be made for other than equal value.

12 (g) All lands, water, and interests therein acquired by

13 the Secretary and located within the boundaries of any con-

14 servation system unit shall become part of such unit and sub-

15 ject to the laws and regulations applicable to such unit.

16 <center>ACCESS</center>

17 SEC. 1202. (a) The Secretary shall take such actions

18 within (or outside the boundaries of conservation system

19 units as may be necessary, including acquiring or providing

20 easements or other interests in lands in accordance with the

21 provisions of section 1201, to carry out any or more of the

22 following purposes:

23 (1) providing access to subsistence lands for pur-

24 poses of subsistence uses under this Act;

J. 98–082——10

1      (2) providing access for purposes of administering

2  units of the National Park, National Wildlife Refuge,

3  National Forest, or Wild and Scenic Rivers Systems

4  established or expanded by this Act;

5      (3) providing public access to conservation system

6  units, consistent with the purposes for which the units are

7  established or expanded;

8      (4) ensuring continued public access to areas con-

9  veyed to the State, particularly in cases where such areas

10  are enclosed by one or more conservation system units,

11  in such manner as is established by this Act and is con-

12  sistent with the purposes for which the concerned conser-

13  vation system units were established or expanded; or

14      (5) ensuring continued access to areas conveyed to

15  the Native Corporations by those persons entitled to such

16  access.

17  (b) Except as otherwise provided in section 10 (f) of

18  the Wild and Scenic Rivers Act, section 607 (b), section

19  715, or section 718 of this Act, or any other provision of this

20  Act, in administering the conservation system units in

21  Alaska, the Secretary shall permit the continuation of cus-

22  tomary patterns of travel across such units. Such travel,

23  including the modes of travel, may be conditioned by

24  such reasonable regulations as the Secretary shall pro-

25  mulgate to assure that such travel is consistent with the

1 purposes for which such unit was established. Before

2 promulgating regulations under this section, the Secretary

3 shall give at least sixty days public notice of the proposed

4 regulations, including at least publication of the proposed

5 regulations in a newspaper or newspapers having general

6 circulation in each State judicial district in Alaska where the

7 unit or units affected by the proposed regulations are located,

8 and shall hold a public hearing or hearings concerning the

9 proposed regulations at one or more locations convenient to

10 the unit or units affected.

11     ARCHEOLOGICAL AND PALEONTOLOGICAL SITES

12     SEC. 1203. Notwithstanding any acreage or boundary

13 limitations contained in this Act with respect to the con-

14 servation system units described in sections 201(2), 201

15 (6), and 201(10), the Secretary of the Interior may ac-

16 quire, by purchase, donation, or exchange any significant

17 archeological or paleontological site in Alaska located outside

18 of any such unit and containing resources which are closely

19 associated with such unit. If any such site is so acquired, it

20 shall be included in and managed as part of such unit. Prop-

21 erty owned by a State or unit of local government may be

22 acquired under this section only by donation or exchange.

23 Not more than seven thousand five hundred acres of land

24 may be acquired under this section for inclusion in a single

25 conservation system unit. Before acquisition of any property

1 in excess of one hundred acres under the provisions of this

2 section, the Secretary shall—

3     (1) submit notice of such proposed acquisition to

4     the Committee on Interior and Insular Affairs of the

5     House of Representatives and the Energy and Natural

6     Resources Committee of the Senate; and

7     (2) publish notice of such proposed acquisition

8     in the Federal Register.

COOPERATIVE INFORMATION CENTERS

10 SEC. 1204. (a) The Secretary of the Interior is

11 authorized to establish, after consultation with other appro-

12 priate Federal agencies, on not to exceed one thousand

13 acres of Federal land at a site adjacent to the Alcan High-

14 way, an information and education center for visitors to

15 Alaska. The Secretary shall seek participation in the pro-

16 gram planning, construction, and operation of the center

17 from appropriate agencies of the State and representatives

18 of Native groups in Alaska and may accept contributions of

19 funds, personnel, and planning and program assistance from

20 such State agencies, local agencies, Federal agencies, Native

21 representatives, and other persons for purposes of such plan-

22 ning, construction, and operation. Before establishing any

23 such center on any such site, the Secretary shall notify the

24 appropriate committees of Congress of his intention to do so.

25 The Secretary shall administer the center and its facilities in

1  accordance with the Act of August 25, 1916 (39 Stat. 535),

2  and other provisions of law applicable to units of the National

3  Park System and in accordance with such special regulations

4  as he may promulgate.

5    (b) The Secretary of the Interior is authorized to

6  establish in both Anchorage and Fairbanks, Alaska, an in-

7  formation and education center for visitors to Alaska. The

8  Secretary shall seek participation from the State, units of

9  local government, and representatives of Native groups in

10  Alaska and may accept contributions from State agencies,

11  local agencies, Federal agencies, Native representatives, and

12  other persons in the same manner and to the same extent as

13  is authorized under subsection (a) in connection with the

14  Alcan Highway Center. Before establishing any such center

15  in any such city, the Secretary shall notify the appropriate

16  committees of the Congress of his intention to do so. The

17  Secretary is authorized to lease or acquire by purchase, dona-

18  tion, or exchange such property in Anchorage and Fairbanks,

19  Alaska, as may be necessary to carry out the purposes of this

20  subsection, except that (1) any property owned by a State

21  or local government may be acquired for such purposes only

22  by donation or exchange, and (2) any property owned by

23  any other person may be acquired for such purposes only

24  with the consent of such person.

ADMINISTRATIVE SITES AND VISITOR FACILITIES

SEC. 1205. (a) In conformity with the management plans prepared under section 1208 and the purposes of assuring the preservation, protection, and proper management of any conservation system unit, the Secretary may establish administrative sites and visitor facilities (1) within the unit, if compatible with the purposes of the unit and the other provisions of this Act, or (2) outside the boundaries of, and in the vicinity of, the unit. To the extent practicable and desirable, the Secretary shall attempt to locate such sites and facilities on Native lands in the vicinity of the unit.

(b) For the purpose of establishing administrative sites and visitor facilities under subsection (a) —

(1) The Secretary and the head of the Federal agency having primary authority over the administration of any Federal land which the Secretary determines is suitable for use in carrying out such purpose may enter into agreements permitting the Secretary to use such land for such purpose.

(2) The Secretary, under such terms and conditions as he determines are reasonable, may lease or acquire by purchase, donation, exchange, or any other method (except condemnation) real property (other than Federal land) which the Secretary determines is suitable for carrying out such purpose.

1       (3) The Secretary may construct, operate, and

2   maintain such permanent and temporary buildings and

3   facilities as he deems appropriate on land which is

4   within, or in the vicinity of, any conservation system

5   unit and with respect to which the Secretary has

6   acquired authority under this subsection to use the prop-

7   erty for the purpose of establishing an administrative site

8   or visitor facility under subsection (a), except that the

9   Secretary may not begin construction of buildings and

10  facilities on land not owned by the United States until the

11  owner of such land has entered with the Secretary into

12  agreements the terms of which assure the continued use

13  of such buildings and facilities to carry out the purposes

14  of this Act.

15      REVENUE-PRODUCING VISITOR SERVICES

16  SEC. 1206. (a) Notwithstanding any other provision

17  of law, the Secretary, under such terms and conditions as he

18  determines are reasonable, shall permit any person who, on

19  or before January 1, 1977, was engaged in adequately provid-

20  ing any type of visitor service within any area established or

21  added to a conservation system unit to continue providing

22  such type of service and similar types of visitor services

23  within such area if such service or services are consistent with

24  the purposes for which such unit is established or expanded.

25      (b) Notwithstanding provisions of law other than those

1   contained in subsection (a), in selecting persons to provide

2   (and in contracting for the provision of) any type of visitor

3   service for any conservation system unit, the Secretary, in

4   the following order:

5   　　　(1) shall give preference to the Native Corporation

6   　　which the Secretary determines is most directly affected

7   　　by the establishment or expansion of such unit by or

8   　　under the provisions of this Act; and

9   　　　(2) shall give preference to persons whom he de-

10  　　termines, by rule, are local residents.

11  　(c) As used in this section, the term "visitor service"

12  means any service made available for a fee or charge to per-

13  sons who visit a conservation system unit, including such

14  services as providing food, accommodations, transportation,

15  tours, and guides.

16  　　　　　　　　　　　　LOCAL HIRE

17  　SEC. 1207. (a) The Secretary shall establish a program

18  under which any individual who, by reason of having lived

19  or worked in or near a conservation system unit, has special

20  knowledge or expertise concerning the natural or cultural

21  resources of such unit and the management thereof (as

22  determined by the Secretary) shall be considered for selec-

23  tion for any position within such unit without regard to—

24  　　　(1) any provision of the civil service laws or regu-

1  lations thereunder which require minimum periods of

2  formal training or experience,

3     (2) any such provision which provides an employ-

4  ment preference to any other class of applicant in such

5  selection, and

6     (3) any numerical limitation on personnel other-

7  wise applicable.

8  Individuals appointed under this subsection shall not be

9  taken into account in applying any personnel limitation

10  described in paragraph (3).

11     (b) Within one year after the date of the enact-

12  ment of this Act, and annually thereafter during each of

13  the following ten years, the Secretary shall prepare and

14  submit to the Congress a report indicating the actions taken

15  in carrying out the provisions of subsection (a) of this

16  section together with any recommendations for legislation in

17  furtherance of the purposes of this section.

18                    MANAGEMENT PLANS

19     SEC. 1208. (a) At any time within five years after

20  the date of the enactment of this Act or, in the case of any

21  conservation system unit established or expanded by title

22  III with respect to which a wilderness review is required

23  under section 604, at the same time the President submits

24  his recommendation concerning such unit under such section

J. 98–082——11

1 to the Congress, the Secretary shall submit, in writing, to

2 the Committee on Interior and Insular Affairs of the House

3 of Representatives and the Committee on Energy and Natu-

4 ral Resources of the Senate plans for managing each of the

5 conservation system units established or expanded by titles

6 II and III of this Act. At any time after submitting a plan

7 under this subsection, the Secretary may revise such plan in

8 accordance with the provisions of this section.

9 (b) The Secretary shall coordinate the development and

10 preparation of management plans for conservation system

11 units which have similar characteristics.

12 (c) Each plan described in subsection (a) shall identify

13 management practices which will carry out the policies of

14 this Act and will accomplish the purposes for which the

15 concerned conservation system unit was established or

16 expanded and shall include at least the following:

17 (1) Maps indicating areas of particular importance

18 as to wilderness, natural, historical, wildlife, cultural,

19 archeological, paleontological, geological, recreational,

20 and similar resources and also indicating the areas into

21 which such unit will be divided for administrative

22 purposes.

23 (2) A description of the activities which will be

24 permitted in such unit and of any restrictions or limita-

25 tions which will be imposed with respect to such activi-

ties (including the maximum number of individuals who will be permitted to use such unit at any particular time for any particular purpose) and a list of the locations where such activities will be permitted.

(3) A description of the areas of potential or proposed development, indicating types of visitor services and facilities to be provided, the estimated costs of such services and facilities, and whether or not such services and facilities could and should be provided outside the boundaries of such unit.

(4) A plan for access to, and circulation within, such unit, indicating the type and location of transportation routes and facilities.

(5) A description of the programs and methods which the Secretary plans to use for the purposes of (A) encouraging the recognition and protection of the culture and history of the individuals residing, on the date of the enactment of this Act, in such unit and areas in the vicinity of such unit, and (B) providing and encouraging employment of such individuals.

(6) A plan for acquiring land with respect to such unit, including proposed modifications in the boundaries of such unit.

(7) A description (A) of privately-owned areas, if any, which are within such unit, (B) of activities

1    carried out in, or proposed for, such areas, (C) of the

2    present and potential effects of such activities on such

3    unit, (D) of the purposes for which such areas are

4    used, and (E) of methods (such as cooperative agree-

5    ments and issuance or enforcement of regulations) of

6    controlling the use of such activities to carry out the

7    policies of this Act and the purposes for which such unit

8    is established or expanded.

9    (8) A plan indicating the relationship between

10    the management of such unit and activities being carried

11    out in, or proposed for, surrounding areas and also indi-

12    cating cooperative agreements which could and should

13    be entered into for the purpose of improving such

14    management.

15    (d) In developing, preparing, and revising a plan

16    under this section, the Secretary shall take into consideration

17    at least the following factors:

18    (1) The specific purposes for which the concerned

19    conservation system unit was established or expanded.

20    (2) Protection and preservation of the ecological,

21    environmental, wildlife, cultural, historical, archeologi-

22    cal, geological, recreational, wilderness, and scenic char-

23    acter of the concerned unit and of areas in the vicinity of

24    such unit.

25    (3) Providing opportunities for native Alaskans

1    residing in the concerned unit and areas adjacent to such

2    unit to continue performing in such unit activities which

3    they have traditionally or historically performed in such

4    unit.

5         (4) Activities being carried in areas adjacent to,

6    or surrounded by, the concerned unit.

7    (e) In developing, preparing, and revising a plan under

8    this section, the Secretary shall hold at least one public hear-

9    ing in the vicinity of the concerned conservation unit, hold

10   at least one public hearing in a metropolitan area of Alaska,

11   and, to the extent practicable, permit the following persons

12   to participate in the development, preparation, and revision

13   of such plan:

14        (1) Officials of the Forest Service, the Environ-

15        mental Protection Agency, the Department of Energy,

16        the Alaska Coordinating Council, and other Federal

17        agencies whose activities will be affected by implementa-

18        tion of such plan.

19        (2) Officials of the State and of political subdivi-

20        sions of the State whose activities will be affected by

21        implementation of such plan.

22        (3) Officials of Native Corporations which will be

23        affected by implementation of such plan.

24        (4) Concerned local, State, and national organiza-

25        tions and interested individuals.

(f) During the period beginning on the date of the
enactment of this Act and ending on the date the final plan
described in subsection (a) is submitted to the committees
of the House of Representatives and the Senate referred to
in subsection (a), the Secretary—

    (1) shall keep such committees advised of the
status of the plans described in subsection (a), of activities being carried out under this section, and of any
information which the Department of the Interior has
pertaining to any conservation system unit; and

    (2) shall, at least once every twelve months, submit to such committees a report indicating the status
of the plans described in subsection (a), particular
problems being encountered with respect to developing
such plans and managing conservation system units, and
the anticipated date of submission of such plans.

### TAKING OF FISH AND WILDLIFE

SEC. 1209. (a) All areas of the National Park System
in the State shall be closed to the taking of fish and wildlife,
except—

    (1) for the taking of fish and wildlife for those subsistence uses authorized under title VII of this Act;

    (2) for fishing authorized by the Secretary and
carried out in accordance with applicable laws of the
United States and the State; and

1     (3) for the taking of fish and wildlife which the

2   Secretary may, by regulation, permit within areas estab-

3   lished by or under this Act as national preserves and

4   which is carried out in accordance with applicable laws

5   of the United States and the State.

6    (b) The taking of fish and wildlife in all conservation

7   system units, other than those units in the National Park

8   System, shall be subject to applicable provisions of law.

9                    MAPS

10   SEC. 1210. As soon as practicable after this Act takes

11  effect, a map and legal description of each conservation sys-

12  tem unit, including each wilderness study area and each

13  wilderness area, shall be filed with the Committee on Interior

14  and Insular Affairs of the House of Representatives and

15  with the Committee on Energy and Natural Resources of the

16  Senate. Each such map and legal description shall have the

17  same force and effect as if included in this Act, except that

18  correction of clerical and typographical errors in each such

19  legal description and map may be made. Each such map

20  and legal description shall be on file and available for public

21  inspection in the appropriate Offices of (1) the Director of

22  the National Park Service, (2) the Director of the United

23  States Fish and Wildlife Service, and (3) the Chief of the

24  United States Forest Service, and appropriate offices of the

1 Alaska field directors of such services. Whenever possible,
2 boundaries shall follow hydrographic divides or embrace
3 other topographic features in all cases where straight line
4 map boundaries approximate such features. Following pub-
5 lication of notice in the Federal Register and reasonable
6 notice in writing to the Committee on Interior and Insular
7 Affairs in the House of Representatives and the Committee
8 on Energy and Natural Resources in the Senate of his inten-
9 tion to do so, the Secretary may make minor adjustments in
10 the boundaries of any of the conservation system units.

11 MAJOR FEDERAL ACTIONS

12 SEC. 1211. No action concerning any conservation sys-
13 tem unit in Alaska which is a major Federal action within
14 the meaning of section 102 (2) (C) of the National En-
15 vironmental Policy Act of 1969 may be taken by the Sec-
16 retary unless, in addition to meeting the other requirements
17 of such Act, a report explaining in detail the action (and
18 the basis and reasons therefor) and an environmental impact
19 statement concerning such action, have been submitted to
20 the Committee on Interior and Insular Affairs of the House
21 of Representatives and the Committee on Energy and Nat-
22 ural Resources of the Senate at least sixty days prior to
23 the commencement of such action.

TITLE XIII—MISCELLANEOUS

IDITAROD NATIONAL HISTORIC TRAIL

SEC. 1301. (a) Section 5 (a) of the National Trails System Act (82 Stat. 919; 16 U.S.C. 1241) is amended by inserting the following new paragraph at the end thereof:

"(4) The Iditarod National Historic Trail, including the main route (approximately one thousand one hundred miles) and branch segments (approximately nine hundred and thirty miles), extending from Seward to Nome, Alaska, following the route depicted on the maps, identified as 'Seward-Nome Trail' in the Department of the Interior Iditarod Trail study reported dated          , 1977; except (A) that while this paragraph will commemorate the entire route of the Iditarod Trail by designation as the Iditarod National Historic Trail, only those segments which are within the exterior boundaries of federally administered areas and which meet the national historic trail criteria established in this Act, are established initially as components of the Iditarod National Historic Trail, and (B) that the Secretary of the Interior may designate lands outside of the exterior boundaries of federally administered areas as segments of the Iditarod National Historic Trail upon application from concerned State or local government agencies or

1 concerned persons involved if such segments meet the na-

2 tional historic trails criteria established in this Act and such

3 criteria supplementary thereto as the Secretary may pre-

4 scribe, and are administered by such agencies or persons

5 without expense of the United States, and (C) that notwith-

6 standing the provisions of section 7 (c) the use of snow-

7 mobiles on segments of the Iditarod National Historic Trail

8 will be permitted in accordance with regulations prescribed

9 by the appropriate Secretary.".

10    (b) The responsibility for coordination of Iditarod

11 National Historic Trail matters shall rest with the Secretary

12 on consultation with the heads of other Federal and State

13 agencies where lands administered by them are involved.

14 Such responsibilities shall include:

15    (1) Selecting the specific trail route, as provided

16    for in section 7 (a) of the National Trails System Act,

17    within three years after the date of enactment of this

18    Act.

19    (2) Developing a plan and guidelines for the ac-

20    quisition, development, management and maintenance of

21    the trail with the advice and assistance of other Federal,

22    State, and local agencies and organizations. Such plan

23    and guidelines shall include at least provisions for the

24    acquisition, retention, or dedication of significant historic

25    sites and for a right-of-way or easement along most or

1    all of the route to protect historic values and segments

2    for potential future recreational trail development and

3    to ensure continued public travel along the various

4    trail segments.

5    KLONDIKE GOLD RUSH NATIONAL HISTORICAL PARK

6    SEC. 1302. The second sentence of subsection (b) (1)

7 of the first section of the Act entitled "An Act to authorize

8 the Secretary of the Interior to establish the Klondike Gold

9 Rush National Historical Park in the States of Alaska and

10 Washington, and for other purposes", approved June 30,

11 1976 (90 Stat. 717), is amended to read as follows: "Lands

12 or interests in lands owned by the State of Alaska or any

13 political subdivision thereof may be acquired only by dona-

14 tion or exchange, and notwithstanding the provisions of

15 subsection 6(i) of the Act of July 7, 1958 (72 Stat. 339,

16 342), commonly known as the Alaska Statehood Act, the

17 State may include the minerals in any such transaction.".

18    NAVIGATION AIDS AND OTHER FACILITIES

19    SEC. 1303. Within the conservation system units, rea-

20 sonable access to, and operation and maintenance of, existing

21 air and water navigation aids and related facilities and exist-

22 ing facilities for weather, climate, and fisheries research and

23 monitoring shall be permitted in accordance with the laws

24 and regulations applicable to the National Park, Wildlife

25 Refuge, National Forest, and Wild and Scenic Rivers Sys-

1 tems, as appropriate. Notwithstanding any other provisions

2 of this Act, reasonable access to, and operation and main-

3 tenance of, facilities for national defense purposes and related

4 air and water navigation aids within or adjacent to such areas

5 shall continue in accordance with the laws and regulations

6 governing such facilities. Nothing in the Wilderness Act shall

7 be deemed to prohibit such access, operation, and main-

8 tenance within wilderness areas designated by this Act.

9         NATIONAL PETROLEUM RESERVE IN ALASKA

10     SEC. 1304. (a) Notwithstanding any contrary provi-

11 sion of the Naval Petroleum Reserves Production Act of

12 1976, during the review of land dedications pursuant to sec-

13 tion 105 (c) of such Act and, until Congress has determined

14 otherwise, the Secretary shall manage the National Petro-

15 leum Reserve in Alaska in such manner as to recognize sub-

16 sistence uses, and preserve scenic, historical, archeological,

17 recreational, fish and wildlife, wilderness, and other surface

18 values.

19     (b) In furtherance of the purposes of the Wilderness

20 Act, the lands heretofore within the National Petroleum

21 Reserve which are included within the Gates of the Arctic

22 National Preserve, as designated by this Act, are designated

23 as wilderness, effective December 31, 1980, unless prior to

1 that date the Secretary has recommended and the Congress

2 has enacted legislation to preclude such designation.

3 (c) Section 105 (c) (1) of the Naval Petroleum

4 Reserves Production Act of 1976 is amended to read as

5 follows:

6 "(c) (1) The Secretary of the Interior shall establish a

7 task force to conduct a study to determine the values of,

8 best uses for, the lands contained in the reserve, taking into

9 consideration—

10     "(A) the natives who live or depend upon such

11     lands,

12     "(B) the scenic, historical, archeological, paleon-

13     tological, recreational, fish and wildlife, and wilderness

14     values,

15     "(C) mineral potential, and

16     "(D) other values of such lands.".

17 <div align="center">WITHDRAWALS</div>

18 SEC. 1305. Subject to valid existing rights, all public

19 lands within the boundaries of any conservation system

20 unit in Alaska (except for nonwilderness areas within the

21 national forests) are withdrawn from all forms of entry or

22 appropriation under the mining laws and from the operation

23 of the mineral leasing laws of the United States, except as

1   provided in title IX or as otherwise specifically provided in

2   this Act.

3                       SCENIC HIGHWAY STUDY

4       SEC. 1306. (a) Subject to valid existing rights, all public

5   lands within an area, the centerline of which is the centerline of

6   the "Denali Highway" between Cantwell and Paxson and the

7   "Richardson Highway" between Paxson and Gakona (as

8   those highways are depicted on the official maps of the De-

9   partment of Transportation of the State of Alaska) and the

10  boundaries of which are parallel to the centerline and one

11  mile distant therefrom on either side, are hereby withdrawn

12  from all forms of entry or appropriation under the mining

13  laws and from operation of the mineral leasing laws of the

14  United States.

15      (b) During the three year period beginning on the date

16  of enactment of this Act, the Secretary shall study the

17  desirability of establishing a Denali Scenic Highway to con-

18  sist of all or part of the lands described in subsection (a)

19  of this section. In conducting the studies, the Secretary,

20  through a study team which includes representatives of the

21  National Park Service, the State, and of each Regional

22  Corporation within whose area of operation the lands de-

23  scribed in subsection (a) are located, shall consider the

24  scenic and recreational values of the lands withdrawn under

25  this section, and the importance of providing protection to

1 those values, as well as the desirability of providing a

2 symbolic and actual physical connection between the national

3 parks in south-central Alaska and the desirability of enhanc-

4 ing the experience of persons traveling between those parks

5 by motor vehicles. Members of the study team who are not

6 Federal employees shall receive from the Secretary per diem

7 (in lieu of expenses) and travel allowances at the rates pro-

8 vided for employees of the Bureau of Indian Affairs in

9 Alaska in grade GS–15.

10     (c) In conducting the studies required by this section,

11 the Secretary shall consult with the State, with each Village

12 Corporation within whose area of operation lands described

13 in this section are located, and with the owners of any lands

14 adjoining the lands described in subsection (a), concerning

15 the desirability of establishing a Denali Scenic Highway.

16 The Secretary, through the National Park Service, shall

17 also give such public notice of the study as he deems appro-

18 priate, including at least publication in a newspaper or

19 newspapers having general circulation in the area or areas

20 of the lands described in subsection (a), and shall hold a

21 public hearing or hearings at one or more locations con-

22 venient to the areas affected.

23     (d) Within three years after the date of enactment of

24 this Act, the Secretary shall report to the President the

25 results of the studies carried out pursuant to this section

1  together with his recommendation as to whether the scenic
2  highway studied should be established, and which of the
3  lands described in subsection (a) should be included therein.
4  The President shall advise the President of the Senate and
5  the Speaker of the House of Representatives of his recom-
6  mendations with respect to creation of one or both of the
7  scenic highways, together with maps thereof, a definition of
8  boundaries thereof, an estimate of costs, recommendations on
9  administration, and proposed legislation to create such a
10 scenic highway, if creation of one is recommended.

11      (e) The lands withdrawn under subsection (a) of this
12 section shall remain withdrawn until such time as the Con-
13 gress acts on the President's recommendation, but not to
14 exceed two years after the recommendation is transmitted
15 to the Congress.

16              AUTHORIZATION FOR APPROPRIATION

17      SEC. 1307. There are hereby authorized to be appro-
18 priated such sums as may be necessary to carry out the
19 provisions of this Act for fiscal years beginning after the
20 fiscal year 1978.

○

EXHIBIT 1
Page 171 of 171