Matthew N. Newman (ABA No. 1305023)
Erin C. Dougherty Lynch (ABA No. 0811067)
Heather R. Kendall Miller (ABA No. 9211084)
Maggie Massey (ABA No. 1911098)

NATIVE AMERICAN RIGHTS FUND
745 W. 4th Avenue, Suite 502
Anchorage, Alaska 99501
Telephone: (907) 276-0680
Facsimile: (907) 276-2466
mnewman@narf.org
dougherty@narf.org
kendall@narf.org
massey@narf.org

*Attorneys for Intervenor-Defendant Organized Village of Kake*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, DEPARTMENT OF FISH AND GAME, | |
| Plaintiffs, | |
| v. | |
| FEDERAL SUBSISTENCE BOARD, *et al.*, | Case No. 3:20-cv-00195-SLG |
| Defendants, | |
| and | **INTERVENOR-DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR MISCELLANEOUS RELIEF** |
| ORGANIZED VILLAGE OF KAKE, | |
| Intervenor-Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

STANDARD OF REVIEW ................................................................................... 6

ARGUMENT ......................................................................................................... 8

   I.   THE FSB'S DECISION TO AUTHORIZE THE EMERGENCY KAKE HUNT DID
       NOT VIOLATE ANILCA ............................................................................. 8

      A.  Title VIII of ANICLA ........................................................................... 8

      B.  ANILCA provides the FSB with the authority to open public lands
         for subsistence hunting. ................................................................... 10

      C.  The FSB's decision to authorize the Kake hunt was lawful and
         supported by the record. .................................................................. 12

   II.  THE FSB DID NOT DELEGATE AUTHORITY TO THE TRIBE, IT DICTATED
       ALL TERMS OF THE HUNT AND DELEGATED AUTHORITY TO THE
       DISTRICT RANGER .................................................................................. 15

 III.  THE STATE'S ARGUMENTS ARE A CYNICAL ATTEMPT TO UNDERMINE
       ANILCA. ................................................................................................ 19

CONCLUSION .................................................................................................. 21

*Intervenor-Defendant's Response in Opposition*               Page i
*State of Alaska v. Federal Subsistence Board*           Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG    Document 55    Filed 08/06/21    Page 2 of 28

# TABLE OF AUTHORITIES

## Cases

*Akiachak Native Community v. DOI*, 827 F.3d 100 (D.C. Cir. 2016) ............................. 19

*Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995) ................................................. 7, 11

*Bobby v. Alaska*, 718 F. Supp. 764 (D. Alaska 1989) .................................... 8, 20

*Gr. Yellowst. Col. v. Lewis*, 628 F.3d 1143 (9th Cir. 2010) ......................... 7, 18

*John v. Alaska*, No. A85-698-CV (HRH) (D. Alaska Jan. 19, 1990) ............................. 21

*John v. U.S.*, 720 F.3d 1214 (9th Cir. 2013) ..................................................... 11

*Kaltag Tribal Council v. Jackson*, No 3:06-CV-211 TMB (Feb. 22, 2008) ..................... 19

*Katie John v. United States*, No. A-90-0484-CV (HRH) (D. Alaska March 30, 1994) ........................................................................................................ 21

*Kenaitze Indian Tribe v. Alaska*, 860 F.2d 312 (9th Cir. 1988) ................................ 7, 8, 20

*Kwethluk IRA Council v. Alaska*, 740 F. Supp. 765 (D. Alaska 1990) ............................ 20

*McDowell v. State*, 785 P.2d 1 (Alaska 1989) ............................................... 9, 20

*Native Vill. of Quinhagak v. U.S.*, 35 F.3d 388 (9th Cir. 1994) .................................. 7, 11

*Ninilchik Traditional Council v. U.S.*, 227 F.3d 1186 (9th Cir. 2000) ..................... 6, 7, 11

*United States v. Alexander*, 938 F.2d 942 (9th Cir. 1991) ................................. 20

*Util. Air Regulatory Grp. v. Envtl. Protection Agency*, 573 U.S. 302 (2014) ............. 10, 11

## Statutes

5 U.S.C. § 706(2)(A) ................................................................................. 7

5 U.S.C. § 706(2)(D) ................................................................................. 7

16 U.S.C. § 3101(c) ................................................................................. 8

Intervenor-Defendant's Response in Opposition                                       Page ii
*State of Alaska v. Federal Subsistence Board*                          Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 3 of 28

16 U.S.C. § 3111 ...................................................................................... 1, 10, 18

16 U.S.C. § 3112(1) ........................................................................................ 12

16 U.S.C. § 3114 ............................................................................................ 10

16 U.S.C. § 3115 .............................................................................................. 8

16 U.S.C. § 3124 ............................................................................. 8, 10, 11, 12

16 U.S.C. §§ 3111-3126 ................................................................................... 8

## Regulations

36 C.F.R. § 242.1-28 ........................................................................................ 9

50 C.F.R. § 100.1-28 ........................................................................................ 9

50 C.F.R. § 100.10(d)(6) ................................................................................ 10

50 C.F.R. § 100.19(a) ................................................................................... 9, 11

50 C.F.R. § 100.26.......................................................................................... 16

## Other Authorities

Indian Entities Recognized by and Eligible To Receive Services From the
    United States Bureau of Indian Affairs, 85 Fed. Reg. 5462 (Jan. 30, 2020)................... 2

Subsistence Management Regulations for Public Lands in Alaska; Rural
    Determinations, Nonrural List, 80 Fed. Reg. 68245 (Nov. 4, 2015).............................. 2

Subsistence Management Regulations for Public Lands in Alaska, Subparts A,
    B, and C, 57 Fed. Reg. 22940 (May 29, 1992)................................................................. 9

## Treatises

COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, § 4.07[3][c][ii][C] (Nell
    Jessup Newton ed., 2012) ................................................................................. 20

Intervenor-Defendant's Response in Opposition                                        Page iii
*State of Alaska v. Federal Subsistence Board*                          Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 4 of 28

# INTRODUCTION

In Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA), Congress enshrined the ability of rural Alaskans to continue practicing a subsistence way of life. These practices entail more than the mere act of harvesting fish and game on federal public lands within the state. Congress expressly recognized that this way of life is "essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence."[1] At no point since the passage of Title VIII in 1980 has this existence been more threatened than during the ongoing COVID-19 global pandemic. Here, the State of Alaska, acting through its Department of Fish and Game, is challenging the ability of the Federal Subsistence Board (FSB)—the body Congress tasked with carrying out Title VIII's mission—to provide subsistence harvest opportunities to rural Alaskans in a time of unprecedented emergency.

While the State raises myriad arguments against the FSB's actions last summer, the Organized Village of Kake focuses here on two of the State's claims: the authority of the FSB to open an emergency hunt for the community of Kake and the authority of the District Ranger to issue a community hunting permit to the Organized Village of Kake, a federally recognized Tribe. In order to avoid duplicative briefing, the Organized Village of Kake adopts by reference the arguments made by the Federal Defendants as to the applicability of the Open Meetings Act to the FSB's actions and the authority of the FSB to enact closures in Game Unit 13.

---

[1] 16 U.S.C. § 3111(1).

# BACKGROUND

The Organized Village of Kake ("the Tribe") is a federally recognized Tribe located in Southeast Alaska.[2] Kake is a rural community under ANILCA eligible for the federal subsistence priority.[3] The Tlingit name for the Kake community is Kéex' Ḵwáan.[4] The Kéex' Ḵwáan Tlingit have lived at Kake for thousands of years, and have continuously engaged in hunting, fishing and gathering traditional foods during that time. Ḵéex' is derived from ḵée "dawn, daylight" and x̱'é "mouth," i.e. "mouth of dawn" or "opening of daylight."[5] Kake is located on the northwest coast of Kupreanof Island along Keku Strait, 95 air miles southeast of Juneau.[6] This is approximately the same distance between Ketchikan and Kake, making Kake the most remote community in Southeast Alaska for purposes of travel between the region's two largest hub communities.[7]

The Organized Village of Kake is governed by a Constitution, setting forth the powers, privileges, and immunities of the Tribe.[8] As the governing body of the Organized Village of Kake, the Tribal Council exercises the Tribe's powers of self-governance.[9]

---

[2] Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 86 Fed. Reg. 7,554, 7,558 (Jan. 29, 2021).
[3] Subsistence Management Regulations for Public Lands in Alaska; Rural Determinations, Nonrural List, 80 Fed. Reg. 68,245, 68,248 (Nov. 4, 2015) (stating that all communities in Alaska are considered rural except for specific listed communities); *see also* Federal Subsistence Board, Federal Subsistence Management Program Map, https://www.doi.gov/sites/doi.gov/files/uploads/non_rural_areas_statewide.pdf.
[4] Decl. of President Joel Jackson in Supp. of Mot. to Intervene, ECF 20-2 ¶ 4.
[5] *Id.*
[6] *Id.* ¶ 5.
[7] *Id.*
[8] *Id.* ¶ 13.
[9] *Id.*

Intervenor-Defendant's Response in Opposition                                    Page 2 of 24
*State of Alaska v. Federal Subsistence Board*                          Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 6 of 28

Under the Tribe's Constitution, powers vested in the Tribal Council include the powers to: (1) negotiate with the Federal and Territorial Governments on behalf of the Tribe and to advise and consult with representatives of the United States Department of the Interior on all of the Department's activities that may affect the Organized Village of Kake; (2) "protect and preserve the timber, fisheries and other property and natural resources of the Village"; and (3) "aid needy members and protect the general welfare and security of the Village."[10]

There are only two places to purchase commercial foods in Kake—a small grocery store and a mini-mart, both privately owned.[11] The food sold in the store and mini-mart arrives in Kake by Alaska Marine Lines barge from the Lower 48 states and is generally processed and is rarely fresh.[12] In March and April 2020, as the COVID-19 pandemic spread, Kake began experiencing shortages of food and cleaning supplies.[13] The commercial food vendors in Kake had a hard time meeting the needs of the village's small store and mini-mart and had a difficult time procuring various foods, fresh and frozen alike.[14] Meat and canned goods were especially difficult to obtain.[15] In response to this unprecedented crisis, the Tribe contacted the U.S. Forest Service and the Alaska Department of Fish and Game to express concerns about the food insecurity created by the COVID-19 pandemic, including the lack of availability and low nutritional quality of the

---

[10] *Id.* (quoting ORGANIZED VILLAGE OF KAKE CONST., art. V, §§ 1(a), (k), (l)).
[11] *Id.* ¶ 17.
[12] *Id.*
[13] *Id.* ¶ 18.
[14] *Id.*
[15] *Id*; *see also* 0478-79 FSB.

Intervenor-Defendant's Response in Opposition                                    Page 3 of 24
*State of Alaska v. Federal Subsistence Board*                           Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 7 of 28

food supplies reaching Kake via barge from the Lower 48 states.[16] Faced with the disruption in the community's access to food, Organized Village of Kake leadership mobilized to figure out the best way to secure local foods for Elders and tribal citizens, recognizing that, even when available, barged foods are not as healthy as wild and traditional foods.[17]

Having no success in its discussions with the U.S. Forest Service and the Alaska Department of Fish and Game, on April 13, 2020 and again on June 4, 2020, the Tribe submitted a Special Action Request, WSA 19-14, to the Federal Subsistence Board requesting to harvest two bull moose and five male deer per month on forest service land for a period of 60 days.[18] On June 18, 2020, the Tribal Council introduced a Food Security Emergency Declaration Code.[19] This included a Food Security Emergency Declaration in which the Tribal Council official declared a "Food Security Emergency upon a finding that there is a severe lack of direct and immediate access to the food necessary to sustain community health and welfare and/or support strengthening tribal citizen immune systems during public health crises."[20] The Declaration also noted that "the western food supply chain has been delayed, interrupted, or offers a diminished variety of foods and there is a reasonable expectation that it will continue, and that lack of access to food is adversely impacting the health and welfare of the tribal community."[21]

---

[16] ECF 20-2 ¶ 19.
[17] *Id*. ¶ 20.
[18] *Id*. ¶ 21; 0432 FSB.
[19] *Id*. ¶ 22; *see also* ECF 20-5.
[20] ECF 20-2 ¶ 22; ECF 20-5 § 2.
[21] ECF 20-2 ¶ 22; ECF 20-5 § 2.

Intervenor-Defendant's Response in Opposition                                Page 4 of 24
*State of Alaska v. Federal Subsistence Board*                        Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 8 of 28

At the July 22, 2020 meeting, the Federal Subsistence Board considered the Tribe's special action request and heard testimony from Organized Village of Kake President Joel Jackson on the proposal.[22]  At the hearing, President Jackson testified as to the infrequency of barge deliveries to the community, rising prices on meats in the village stores, and the general concern of how food security would impact public health in the community during the COIVD-19 pandemic.[23]

After President Jackson's testimony, the FSB voted to authorize the Forest Service Ranger District in Petersburg to permit an emergency 30-day hunt, to be evaluated after 30 days to determine if the permit would be extended for another 30 days.[24]  On June 23, 2020, the Tribal Council passed the Food Security Emergency Declaration Code that it had drafted and proposed earlier in June.[25]  On June 24, 2020, Ted Sandhofer, Forest Service District Ranger for the Petersburg Ranger District, issued Emergency Special Action Permit "COVID-19 Food Security Community Harvest for the Organized Village of Kake" to harvest up to two antlered bull moose and five buck Sitka black-tailed deer beginning June 24, 2020.[26]

The hunts took place from June 24 to July 24, 2020.[27]  Community hunters successfully harvested two moose and five deer, and the meat was then processed and

---

[22] *Id*. ¶ 23; 1333-53 FSB.
[23] 1344-45 FSB.
[24] 0470-72, 1352-53 FSB.
[25] ECF 20-2 ¶ 25.
[26] 0470-72 FSB.
[27] ECF 20-2 ¶ 27.

Intervenor-Defendant's Response in Opposition                                    Page 5 of 24
*State of Alaska v. Federal Subsistence Board*                          Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 9 of 28

distributed to over 100 households, including the households of non-tribal citizens in the community.[28]

In August 2020 the State filed the present suit for declaratory judgment and injunctive relief against the FSB. The State challenged the FSB's decision to grant the Tribe's request for an emergency hunt to alleviate food insecurity caused by the COVID-19 pandemic and alleged that the FSB improperly delegated its regulatory authority in violation of the Alaska National Interest Lands Conservation Act (ANILCA), made decisions in violation of the Open Meetings Act and the Administrative Procedures Act (APA), and unlawfully infringed upon the State's authority to manage wildlife.[29] The State also challenged the FSB's decision to close some hunting in two Game Management Units.[30] The Organized Village of Kake intervened as a defendant.[31]

In two separate orders issued in September and November 2020, the Court denied the State's motions for preliminary injunctions.[32] Those Orders addressed many of the arguments that the State reiterates in its opening brief, and found them lacking.

## STANDARD OF REVIEW

Courts apply the APA standard of review to challenges arising under ANILCA.[33] Under the APA, courts "hold unlawful and set aside agency action, findings, and

---

[28] *Id*. ¶¶ 28-30; 0425 FSB.
[29] Complaint 17-24, ECF 1.
[30] *Id.* at 20.
[31] Order Granting Mot. to Intervene, ECF 27.
[32] Order Denying Mot. for Prelim. Inj. Regarding Game Management Units 13A and 13B, ECF 28; Order Denying Mot. for Prelim. Inj. Regarding Delegation of Authority to Open Emergency Hunts, ECF 37.
[33] *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1193 (9th Cir. 2014).

Intervenor-Defendant's Response in Opposition                    Page 6 of 24
*State of Alaska v. Federal Subsistence Board*                   Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 10 of 28

conclusions" when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or adopted "without observance of procedure required by law."[34] This standard is violated when an agency "relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence . . . or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[35] Where, as here, there is a challenge to an agency's regulations interpreting a statute that it administers, courts give deference to the agency's interpretation and are prohibited from substituting their "own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."[36]

It is the agency's interpretation of ANILCA, not the State's, that is given deference.[37] A federal agency's interpretation of a statute is entitled to deference "based in part on the expertise it possesses in implementing federal policy in the general subject area. While Alaska has a long history of managing large wilderness areas, it lacks the expertise in implementing federal laws and policies and the nationwide perspective of a federal agency."[38] "Most fundamentally, unlike a federal agency, the state is delegated no

---

[34] 5 U.S.C. § 706(2)(A), (D).
[35] *Greater Yellowstone Coal. v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010) (quotation omitted).
[36] *Ninilchik Traditional Council*, 227 F.3d at 1186 (quoting *Chevron v. Nat. Res. Def. Council*, 467 U.S. 837, 844 (1984)); see also *Alaska v. Babbitt*, 72 F.3d 698, 701 (9th Cir. 1995); *Native Vill. of Quinhagak v. United States*, 35 F.3d 388, 392 (9th Cir. 1994).
[37] *Kenaitze Indian Tribe v. Alaska*, 860 F.2d 312, 315-16 (9th Cir. 1988).
[38] *Id.* at 316 (citation omitted).

Intervenor-Defendant's Response in Opposition                                   Page 7 of 24
*State of Alaska v. Federal Subsistence Board*                          Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 11 of 28

authority under ANILCA. . . . ANILCA does not assign any particular functions to the state as, indeed, it could not."[39]

## ARGUMENT

## I. THE FSB'S DECISION TO AUTHORIZE THE EMERGENCY KAKE HUNT DID NOT VIOLATE ANILCA.

### A. Title VIII of ANILCA

In 1980, Congress enacted Title VIII of ANILCA to ensure that rural Alaskans could continue practicing their subsistence way of life.[40] Title VIII of ANILCA authorizes the Secretaries of Interior and Agriculture to "prescribe such regulations as are necessary and appropriate to carry out [their] responsibilities" under ANILCA.[41] Title VIII also permits the establishment of an alternative state regulatory structure to protect subsistence uses on public lands by rural residents if the State of Alaska satisfies certain statutory criteria.[42]

For a period of years, the State accepted these congressional conditions, and on May 14, 1982, the Secretary of the Interior certified the State's statutory and regulatory program for protecting rural subsistence activities as complying with ANILCA.[43] But in December 1989, the Alaska Supreme Court held that the Alaska Constitution prohibited the Alaska Legislature from enacting a subsistence priority limited to rural residents, rendering the

---

[39] *Id.*

[40] 16 U.S.C. §§ 3111-3126; 16 U.S.C. § 3101(c).

[41] *Id.* § 3124.

[42] *Id.* § 3115(d).

[43] *See Bobby v. Alaska*, 718 F. Supp. 764, 767 (D. Alaska 1989).

Intervenor-Defendant's Response in Opposition
*State of Alaska v. Federal Subsistence Board*
Page 8 of 24
Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG    Document 55    Filed 08/06/21    Page 12 of 28

State noncompliant with ANILCA's rural preference requirement.[44]  Pursuant to 16 U.S.C. § 3115(d), the federal government therefore became responsible for implementing ANILCA on public lands, and it assumed regulatory authority effective July 1, 1990.[45]  The Secretaries of Agriculture and Interior thereafter created the Federal Subsistence Board to oversee day-to-day management of subsistence hunting and fishing on these federal public lands.[46]

As part of carrying out its responsibilities, the FSB promulgated regulations outlining the circumstances in which it will authorize "emergency" actions, i.e. non-standard hunting and fishing seasons:

> **Emergency special actions.** In an emergency situation, if necessary to ensure the continued viability of a fish or wildlife population, to continue subsistence uses of fish or wildlife, or for public safety reasons, the Board may immediately open or close public lands for the taking of fish and wildlife for subsistence uses, or modify the requirements for take for subsistence uses, or close public lands to take for nonsubsistence uses of fish and wildlife, or restrict the requirements for take for nonsubsistence uses.[47]

Additionally, the FSB "may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within

---

[44] *McDowell v. State*, 785 P.2d 1, 1 (Alaska 1989) (holding that the rural priority for subsistence fishing and hunting unconstitutional under article VIII, sections 3, 5, and 17 of the Alaska Constitution).

[45] Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed. Reg. 22,940 (May 29, 1992).

[46] 36 C.F.R. § 242.1-28; 50 C.F.R. § 100.1-28.

[47] 50 C.F.R. § 100.19(a).

Intervenor-Defendant's Response in Opposition                                    Page 9 of 24
*State of Alaska v. Federal Subsistence Board*                              Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 13 of 28

frameworks established by the Board."[48]

**B.**   **ANILCA provides the FSB with the authority to open public lands for subsistence hunting.**

In ANILCA, Congress expressly recognized that subsistence is "essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence."[49]   In order to ensure these values were protected in perpetuity, Congress required that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes."[50]   Finally, Congress provided the Secretary the authority to "prescribe such regulations as are necessary and appropriate to carry out [her] responsibilities under this title."[51]

The State's argument that ANILCA only provides the FSB with the authority to close subsistence harvests on public lands fails in the face of Title VIII's language.  It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[52]   The burden placed on sections 814 and 815 cannot bear the weight the State places on them.  Title VIII creates a statutory regime whose purpose is to provide for the continued use and access to subsistence resources by rural Alaskans.  The State's reading would render this regime

---

[48] *Id.* § 100.10(d)(6).
[49] 16 U.S.C. § 3111(1).
[50] *Id.* § 3114.
[51] *Id.* § 3124.
[52] *Util. Air Regul. Grp. v. Envtl. Prot. Agency*, 573 U.S. 302, 320 (2014) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

meaningless, because it includes no means to provide for the priority to rural subsistence users that Congress requires. Viewing sections 814 and 815 "with a view to their place in the overall statutory scheme,"[53] the ability to close public lands or otherwise limit subsistence harvests is a natural outcropping of the FSB's authority to *open* such lands to harvest from in the first place. To adopt a reading of Title VIII which forecloses the ability of the FSB to open public lands to subsistence harvest would defy Congress's stated policy of affording rural Alaskans a priority to fish and game for subsistence uses.

In order to ensure that the subsistence priority enshrined in Title VIII is carried out, Congress delegated rulemaking authority to the Secretary.[54] The regulation at issue here, 50 C.F.R. § 100.19, was promulgated under that authority. It provides that the FSB may, in times of emergency, take certain actions "to ensure the continued viability of a fish or wildlife population, to continue subsistence uses of fish or wildlife, or for public safety reasons[.]"[55] Pursuant to this rule, the FSB heard and acted upon the Tribe's request for a subsistence hunt of two antlered moose and five buck black tail deer.[56]

The Ninth Circuit has repeatedly confirmed that when enacting regulations to carry out the mandates of Title VIII, the Secretary and the FSB are entitled to deference in their interpretation of ANILCA.[57] Part 100.19 is no different. It was created by the FSB to carry

---

[53] *Id.*
[54] 16 U.S.C. § 3124.
[55] 50 C.F.R. § 100.19(a).
[56] 1333-53 FSB; 0470 FSB.
[57] *John v. United States*, 720 F.3d 1214, 1228 (9th Cir. 2013); *Ninilchik Traditional Council*, 227 F.3d at 1191; *Alaska v. Babbit*, 72 F.3d at 701-702; *Native Vill. of Quinhagak*, 35 F.3d at 392.

Intervenor-Defendant's Response in Opposition                    Page 11 of 24
*State of Alaska v. Federal Subsistence Board*                   Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 15 of 28

out its congressionally mandated mission "to provide the opportunity for rural residents engaged in a subsistence way of life to do so."[58]  Contrary to the State's reading, Title VIII contains no express limitations on the FSB's ability to open subsistence harvests, much less a prohibition on promulgating regulations governing the emergency opening of hunts, as is the case here.  Instead, Title VIII creates a statutory regime for the FSB to manage subsistence hunting and fishing on public lands to ensure rural Alaskans may continue living a subsistence way of life.  Critically, Congress provided the Secretary the power  to enact regulations to carry out Title VIII's mandates.[59]  The Secretary, acting pursuant to that authority, has done so here.  Part 100.19 is a lawful exercise of the Secretary's authority under Title VIII entitled to deference from the court.  The FSB acted fully within its authority by adopting procedures under Part 100.19 to evaluate the Tribe's 2020 special action request and authorize the Kake hunt.

## C. The FSB's decision to authorize the Kake hunt was lawful and supported by the record.

Despite the State's assertions, the FSB's decision to grant the Tribe's request for a special emergency hunt to combat food insecurity during the COVID-19 pandemic was lawful and supported by substantial evidence.

As President Jackson testified during the FSB's hearing on the Tribe's special action request, the community of Kake was in May and June of 2020, experiencing a shortage of cleaning supplies and nutritious food at the only stores on the island.[60]  Given the concern

_____

[58] 16 U.S.C. § 3112(1).
[59] *Id.* § 3124.
[60] 1343-46 FSB.

Intervenor-Defendant's Response in Opposition                                    Page 12 of 24
*State of Alaska v. Federal Subsistence Board*                                    Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 16 of 28

for community health during the COVID-19 pandemic, President Jackson testified that he sought to provide healthy and immune-boosting foods to protect the health and well-being of his community.[61] In light of the evidence before the Board at the time it made its decision, the Board's decision was not arbitrary or capricious.

The State argues that even if the FSB had legal authority to authorize the hunt, the decision to do so was arbitrary and capricious and not supported by substantial evidence.[62] The State particularly points to the fact that there were operating ferries at the time of the authorization and that the Mass Care Group did not think there was a food shortage.[63]

After the Tribe submitted its special action request, the district ranger followed FSB's guidelines and contacted the State of Alaska Unified Command Mass Care Group prior to implementing any emergency special action.[64] When the Mass Care Group was unable to confirm the need for the special action, the District Ranger again followed FSB's guidelines and referred the special action request to the full Board.[65]

The full Board considered the Tribe's special request and adopted it "for reasons of public safety related to food security concerns in Kake."[66] The Board came to this conclusion after considering the Mass Care Group's conclusion, the testimony of President Jackson, and whether there were any conservation concerns should the hunt be permitted.[67]

---

[61] *Id.*
[62] ECF 49 at 24-26.
[63] *Id.* at 25.
[64] 0432 FSB.
[65] *Id.*
[66] 0136 FSB; 0471 FSB.
[67] 0426 FSB; 0431-32 FSB; 0471 FSB; 01344 FSB.

Intervenor-Defendant's Response in Opposition                                        Page 13 of 24
*State of Alaska v. Federal Subsistence Board*                                       Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 17 of 28

Additionally, the Board considered if the emergency hunt would affect either State or Federal hunts, and concluded that it would not.[68]

As the Court correctly identified in its order denying the State's motion for a preliminary injunction, "the record contain[s] ample evidence that supported and was rationally connected to the FSB's decision to approve the emergency special action in Kake for reasons of public safety related to food security concerns; the FSB considered relevant factors—conservation and public safety concerns—and articulated a satisfactory explanation for its decision."[69] Despite the State's reliance on the Mass Care Group's position, as this Court previously noted, "the record clearly demonstrates that the FSB considered the Mass Care Group's position but found it inconsistent with other evidence presented at the meeting."[70]

The State also argues that the ability to allow emergency harvests infringes upon the State's "ability to manage fish and wildlife populations" because the "State would have no estimate of the potentially unlimited additional harvests that could be authorized."[71] However, the Court previously concluded that this argument was unlikely to succeed on the merits and raised no serious questions, given that the FSB's regulation permitting emergency hunts was reasonable.[72] In its opening brief, the State reiterates its argument

---

[68] 0136-37 FSB; 0471-72 FSB.
[69] Order Denying Mot. for Prelim. Inj. Regarding Delegation of Authority to Open Emergency Hunts 39, ECF 37 (citations omitted).
[70] *Id.*
[71] ECF 49 at 26.
[72] ECF 37 at 35.

Intervenor-Defendant's Response in Opposition                    Page 14 of 24
*State of Alaska v. Federal Subsistence Board*                   Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 18 of 28

and provides no additional evidence that the Kake hunt had any effects on the State's management of wildlife in the region.

Since this Court's initial order on the State's motion for preliminary injunction, the record in this case has not changed. The FSB's decision was supported by "ample evidence" in the record and in reaching its decisions the FSB properly considered conservation and public safety concerns, as required by the agency guidance in the delegation letters and OSM memorandum.[73] The FSB "articulated a satisfactory explanation for its decision"[74] and as such, the State's recycled arguments to the contrary must fail.

## II. THE FSB DID NOT DELEGATE AUTHORITY TO THE TRIBE, IT DICTATED ALL TERMS OF THE HUNT AND DELEGATED AUTHORITY TO THE DISTRICT RANGER.

The State contends that the FSB impermissibly "relinquished" its oversight of the Kate hunt.[75] The State further argues that the intent of the Tribe in requesting the hunt, and the intent of the FSB in granting it, was to "expressly [] benefit OVK's tribal members only."[76] None of the State's claims are supported by the plain language of the Tribe's request, the permit itself, or the administrative record.

All substantive decisions, rules, and processes for the Kate hunt were set by the FSB and delegated to the Petersburg District Ranger, including:

---

[73] *Id.* at 39.
[74] *Id.*
[75] ECF 49 at 32; ECF 22 at 9-10.
[76] ECF 49 at 32; ECF 22 at 10.

Intervenor-Defendant's Response in Opposition                                    Page 15 of 24
*State of Alaska v. Federal Subsistence Board*                                    Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 19 of 28

- The FSB's authorization of a process for sending letters of delegation to certain agency field managers.[77]  Letters were sent outlining a process by which local land managers might authorize limited subsistence hunting and fishing opportunities on public lands in response to any confirmed COVID-related emergency situation relating to food security.  The letters of delegation included specific guidelines and limitations;[78]

- After receiving and considering a request from the Tribe, the FSB approved a limited hunt and directed that "[t]he hunt will be administered by the U.S. Forest Service, Petersburg District Ranger;"[79]

- The FSB approved a season of up to 60 days and directed that it be administered by the USDA Forest Service's Petersburg District Ranger;[80]

- The FSB determined the number and species of the animals that could be taken in the hunt;[81]

- The FSB set the hunt's specific location in portions of Game Unit 3;[82]

- The FSB restricted the qualifications of the hunters federally qualified subsistence users and the means and methods of the hunt;[83]

---

[77] 0478-81 FSB; 0482-99 FSB.
[78] *See, e.g*., 0433-36 FSB.
[79] 0136-37 FSB; 0470-71 FSB.
[80] 0470-71 FSB.
[81] 0470-71 FSB.
[82] 0470-71 FSB.
[83] 0470-71 FSB; 50 C.F.R. §100.26 (Subsistence taking of wildlife).

Intervenor-Defendant's Response in Opposition                                      Page 16 of 24
*State of Alaska v. Federal Subsistence Board*                            Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 20 of 28

- Petersburg District Ranger Sandhofer issued the permit authorizing the hunt for a period of 30 days, to be reevaluated for an additional possible 30 days by the in-season manager.[84] No further hunt was authorized for OVK under the permit.[85]

The record in this case plainly reflects that the Kake hunt was at all times, a federally administered hunt, conducted under the authority of Title VIII. The FSB and Petersburg District Ranger Sandhofer dictated all terms of the hunt, and the Tribe, as a permit holder, executed the hunt and distribution of food to the community in a routine and unremarkable manner, pursuant to the terms of its federal permit.

Likewise, nothing in the permit issued to the Tribe indicates that participation was limited to only tribal citizens. The Tribe's request to Petersburg District Ranger Sandhofer explained that "OVK and the community of Kake" were experiencing "a very vulnerable situation" with the food supply chain in Kake.[86] In his testimony before the FSB, President Jackson stated that the Tribe was "trying to supply everybody in town with fresh fish" but that he was concerned about obtaining healthy meat for "our people, our elders and our tribal citizens."[87]

After reviewing the Tribe's request, the FSB approved the hunt, which authorized a "Kake *community* harvest permit,"[88] and specified that participation was "limited to Federally qualified subsistence users."[89] The FSB defines "federally qualified subsistence

---

[84] 0470-71 FSB.
[85] 0425 FSB.
[86] ECF 4-3 at 37.
[87] 1345 FSB.
[88] 0470 FSB (emphasis added).
[89] 0470 FSB.

Intervenor-Defendant's Response in Opposition                                    Page 17 of 24
*State of Alaska v. Federal Subsistence Board*                              Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 21 of 28

users" as "rural residents who have been determined . . . to have customary and traditional use" of wildlife within a specified area, as determined by the FSB at 50 C.F.R. § 100.24.142.[90] In other words, participation was limited to any person, tribal citizen or non-citizen, Native or non-Native, who met the rural residency requirements outlined in FSB regulations.[91] In issuing the permit, Petersburg District Ranger Sandhofer confirmed with the Tribe that the harvest would be shared with all village residents in need, regardless of tribal status or race.[92] And after the hunt was completed, tribal leadership confirmed that the harvest was shared with the entire community, tribal citizens and non-citizens.[93] The State's disagreement with the FSB's decision is obvious from its briefing. But, such disagreement does not by itself give rise to a legal violation. A violation occurs only where an agency "relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence . . . or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[94] That is far from the case here. The FSB relied on the evidence before it, made its decision based on the duly promulgated rules it set for itself, and administered the Kake hunt through its agent, the Petersburg District Ranger.

---

[90] 0212 FSB.

[91] *See also* 16 U.S.C. § 3111.

[92] 0444-45 FSB.

[93] 0425 FSB.

[94] *Greater Yellowstone Coal.*, 628 F.3d at 1148 (quotation omitted).

Intervenor-Defendant's Response in Opposition                    Page 18 of 24
*State of Alaska v. Federal Subsistence Board*                   Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 22 of 28

### III. THE STATE'S ARGUMENTS ARE A CYNICAL ATTEMPT TO UNDERMINE ANILCA.

Though the State insists this case is not about Tribes,[95] it dedicates considerable space in its Opening Brief to transforming the case into one about tribal sovereignty and tribal citizenship. The State spends little time discussing the facts as reflected in the record, and instead engages in an extended analysis of federal agency delegation to Tribes with reservation lands.[96] This approach is the loadstar of the State's litigation strategy against Tribes, tribal sovereignty, and subsistence rights for the past several decades.[97] Yet despite the State's arguments otherwise, the Tribe's territorial sovereignty is not at issue in this case.

After all the obfuscation, the heart of the State's argument is that the FSB authorized the hunt using a process that differs slightly from the State's process of authorizing community hunts on state land. The State makes much of the fact that "[a]n application for a State community hunt requires names and addresses of all persons in the community or group."[98] Yet this attempt to distinguish its own community hunt delegations are unavailing. As the FSB notes, that harvest reports are to be provided by hunters following

---

[95] ECF 49 at 26-27.
[96] ECF 49 at 27-32.
[97] *See, e.g.*, *Kaltag Tribal Council v. Jackson*, No 3:06-CV-211 TMB at *6 (Feb. 22, 2008), 2008 WL 9434481 (rejecting the State's arguments that Alaska Tribes did not have authority to adjudicate children's protection cases because they "lack a reservation"), *aff'd* 344 Fed. Appx. 324 (Aug. 28, 2009); *Akiachak Native Community v. DOI*, 827 F.3d 100, 104 (D.C. Cir. 2016) (dismissing as moot the State's appeal of a tribal challenge to the regulation prohibiting Alaska tribes from participating in the federal lands in trust program, in which the State had argued that Akiachak's claims were "barred by the Alaska Native Claims Settlement Act").
[98] ECF 49 at 32 (citing 5 AAC 92.072(c)(1)(A)).

Intervenor-Defendant's Response in Opposition                    Page 19 of 24
*State of Alaska v. Federal Subsistence Board*                   Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 23 of 28

take does not change the fact that the community is authorized to pick the hunters and who receives harvested game, just as the Tribe did in the Kake hunt.[99]

That the state and federal governments operate their respective subsistence hunting programs in a different manner is of little concern to the outcome of this case. Indeed, Title VIII *necessitates* such an outcome. The state is prohibited by its own constitutional law from carrying out the requirements of Title VIII in providing a harvest preference for rural subsistence users.[100] As the leading treatise on federal Indian law observed:

> Since the state fell out of compliance with Title VIII of ANILCA in 1989, its statutory scheme maintains a subsistence priority in name, but not in substance, and is far removed from the federal standards. For example, the state has created vast non-subsistence areas, and treats its subsistence priority as applying only to use of fish or game after capture, and not as allowing for traditional means, methods, and timing of harvest. These provisions are inconsistent with federal law. Thus it appears unlikely that the state will be able to reassume management without making major changes to its constitution and statutes.[101]

Rather than address the issues that prevent it from managing subsistence on federal lands, the State tries to accomplish here what it could not otherwise[102]—further restricting federal

---

[99] ECF 50 at 40.

[100] *McDowell*, 785 P.2d at 1.

[101] COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, § 4.07[3][c][ii][C], at 351 (Nell Jessup Newton ed., 2012).

[102] The state has spent considerable time and effort to limit the application of the subsistence priority. *See, e.g.*, *United States v. Alexander*, 938 F.2d 942 (9th Cir. 1991) (setting aside a federal Lacey Act prosecution on the ground that state law prohibiting cash sales from being considered subsistence uses was in conflict with ANILCA's protection of customary trade as a subsistence use); *Kenaitze Indian Tribe*, 860 F.2d 312 (9th Cir. 1988) (holding the state's statutory definition of "rural" unlawful, as it was inconsistent with the plain meaning of the term); *Kwethluk IRA Council v. Alaska*, 740 F. Supp. 765 (D. Alaska 1990) (striking down state regulations governing subsistence hunting of caribou as inconsistent with customary and traditional Yupik harvest patterns); *Bobby v. Alaska*, 718

safeguarding of subsistence and the rural priority, and destabilizing the federal subsistence apparatus. This effort, however, must fail in light of the record, the regulations, and ANILCA.

## CONCLUSION

For the foregoing reasons, the State's motion should be DENIED.

Respectfully submitted this 6th day of August, 2021.


/s/ Matthew N. Newman
Matthew N. Newman (ABA No. 1305023)
Erin C. Dougherty Lynch (ABA No. 0811067)
Heather R. Kendall Miller (ABA No. 9211084)
Maggie Massey (ABA No. 1911098)
NATIVE AMERICAN RIGHTS FUND
745 W. 4th Avenue, Suite 502
Anchorage, Alaska 99501
Telephone: (907) 276-0680
Facsimile: (907) 276-2466
mnewman@narf.org
dougherty@narf.org
kendall@narf.org
massey@narf.org

---

F. Supp. 764 (striking down state seasons and bag limits for moose and caribou as inconsistent with the tribal customs and traditions, and affirming that ANILCA precludes restrictions on subsistence uses by rural residents unless all other non-subsistence uses are first eliminated); *Katie John v. United States*, No. A90-0484-CV (HRH), 1994 WL 487830, at *4 (D. Alaska March 30, 1994) (holding that "[t]he State cannot say that the Board's initial regulations were unreasonable, for the Board in substance adopted the State's pre-*McDowell* subsistence program through temporary regulations. This action provided a smooth transition from state to federal management of the rural subsistence program for public (federal) lands."); *John v. Alaska*, No. A85-698-CV, slip op. at 2 (D. Alaska Jan. 19, 1990) (Order on Cross Motions for Summary Judgment) (striking down state regulations that restricted subsistence fishing at a historic Native fish camp).

Intervenor-Defendant's Response in Opposition                                                                 Page 21 of 24
*State of Alaska v. Federal Subsistence Board*                                              Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 25 of 28

Richard D. Monkman (ABA No. 8011101)
Lloyd B. Miller (ABA No. 7906040)
SONOSKY, CHAMBERS, SACHSE, MILLER
   & MONKMAN, LLP
725 East Fireweed Lane, Suite 420
Anchorage, AK 99503
Telephone: (907) 258-7388
Facsimile: (907) 272-8332
lloyd@sonosky.net
rdm@sonosky.net

*Attorneys for Intervenor-Defendant Organized Village of Kake*

Intervenor-Defendant's Response in Opposition        Page 22 of 24
*State of Alaska v. Federal Subsistence Board*        Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 26 of 28

<u>Certificate of Service</u>

I hereby certify that on August 6, 2021, a true and correct copy of the foregoing document was served electronically pursuant to the Court's electronic filing procedures upon the following:

Treg R. Taylor
Attorney General
Cheryl Brooking (ABA No. 9201169)
Senior Assistant Attorney General
ALASKA DEPARTMENT OF LAW
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: 907-269-5100
Facsimile: 907-276-3697
cheryl.brooking@alaska.gov

*Attorneys for Plaintiff State of Alaska*

Paul A. Turcke (Idaho Bar No. 4759)
Shannon Boylan (D.C. Bar No. 1724269)
Trial Attorneys
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-353-1389
Facsimile: 202-305-0506
paul.turcke@usdoj.gov
shannon.boylan@usdoj.gov

*Attorneys for Defendants Federal Subsistence Board, et al.*

Jonathan Tillinghast (ABA No. 7410109)
Simpson, Tillinghast, Sheehan & Araujo, PC
One Sealaska Plaza, Suite 300
Juneau, AK 99801
Telephone: (907) 321-3405
Email: jon@stsl.com

*Attorney for Amicus Curiae Sealaska Corporation*

Intervenor-Defendant's Response in Opposition                          Page 23 of 24
*State of Alaska v. Federal Subsistence Board*                          Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 27 of 28

/s/Matthew N. Newman
Matthew N. Newman (ABA No. 1305023)

Intervenor-Defendant's Response in Opposition                 Page 24 of 24
*State of Alaska v. Federal Subsistence Board*                      Case No. 3:20-cv-00195-SLG

Case 3:20-cv-00195-SLG   Document 55   Filed 08/06/21   Page 28 of 28