**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF ALASKA DEPARTMENT OF FISH AND GAME, *Plaintiff-Appellant*, v. FEDERAL SUBSISTENCE BOARD; DAVID SCHMID, in his official capacity as the Regional Supervisor for the United States Forest Service; SONNY PERDUE, in his official capacity as the United States Secretary of Agriculture; GENE PELTOLA, in his official capacity as Alaska Regional Director, Bureau of Indian Affairs; GREGORY SIEKANIEC, in his official capacity as Alaska Regional Director, United States Fish and Wildlife Service; CHAD PADGETT, in his official capacity as State Director for Alaska, United States Bureau of Land Management; DON STRIKER, in his official capacity as Alaska Regional Supervisor, National Park Service; DAVID BERNHARDT, in his official capacity as the United States Secretary | No. 22-35097 D.C. No. 3:20-cv-00195-SLG OPINION |

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 2 of 17

2   STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

of the Interior; ANTHONY CHRISTIANSON, in his official capacity as Chair of the Federal Subsistence Board; CHARLIE BROWER, in his official capacity as Member of the Federal Subsistence Board; RHONDA PITKA, in her official capacity as Member of the Federal Subsistence Board,
    *Defendants-Appellees*,

and

ORGANIZED VILLAGE OF KAKE,
    *Intervenor-Defendant-Appellee*.

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted December 9, 2022
San Francisco, California

Filed March 14, 2023

Before: Jacqueline H. Nguyen and Lucy H. Koh, Circuit Judges, and Stephen R. Bough,[*] District Judge.

Opinion by Judge Bough

---

[*] The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

**SUMMARY**[**]

### Alaska National Interest Lands Conservation Act/Mootness

The panel reversed in part and vacated in part the district court's decision in an action challenging the Federal Subsistence Board's approval in 2020 of two short-term changes to hunting practices on federal public lands in Alaska, specifically (1) the Board's opening of an emergency hunt for Intervenor, the Organized Village of Kake; and (2) the Board's partial temporary closure of public lands in game management Unit 13 to nonsubsistence users.

The State of Alaska Department of Fish and Game brought this action against the Board and several federal officials, alleging that the changes violated the Alaska National Interest Lands Conservation Act ("ANILCA") and the Administrative Procedure Act. Before the district court issued its decision, the Kake Hunt ended, and the district court deemed the challenge to it moot. And while this appeal was pending, the partial Unit 13 closure expired.

The panel first held that Alaska's claim that the Board violated ANILCA by opening the 60-day emergency Kake hunt without statutory authority was not moot because it fit within the mootness exception of being capable of repetition yet evading review. First, there was evidence that the Board had opened emergency hunts in the past. Second, the regulation under which the Board authorized the Kake hunt remained in effect. Finally, the public interest in having the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 4 of 17

4   STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

legality of the practices settled militated against a mootness conclusion. Alaska's claim that ANICLA did not authorize the federal government to open emergency hunting seasons raised a question of first impression in this circuit and required resolution of complicated issues of statutory interpretation. Noting that the district court had not reached the merits, the panel remanded this claim to the district court.

With regard to Alaska's partial Unit 13 closure claim, the panel vacated the part of the district court's order that addressed the claim and remanded with instructions to dismiss that claim as moot. From the regulations and record, it was clear that the Board would rely on new facts and analysis in responding to any future temporary closure request.

## COUNSEL

Laura Wolf (argued) and Cheryl R. Brooking, Assistant Attorneys General, Office of the Alaska Attorney General, Anchorage, Alaska, for Plaintiff-Appellant.

Kevin W. McArdle (argued), Rachel Heron, Shannon Boylan, and Paul A. Turcke, Attorneys, Environment and Natural Resources Division; Todd Kim, Assistant Attorney General; United States Department of Justice; Washington, D.C.; Kenneth M. Lord, Attorney, United States Department of the Interior, Washington, D.C.; for Defendants-Appellees.

Whitney A. Leonard (argued), Richard D. Monkman, and Lloyd B. Miller, Sonosky Chambers Sachse Miller & Monkman, Anchorage, Alaska; Eric C. Dougherty Lynch, Megan R. Condon, Maggie Massey, Heather Kendall Miller, and Matthew N. Newman, Native American Rights Fund, Anchorage, Alaska; for Defendant-Intervenor-Appellee.

James H. Lister and Brian V. Gerd, Birch Horton Bittner & Cherot PC, Washington, D.C., for Amicus Curiae Alaska Outdoor Council.

## OPINION

BOUGH, District Judge:

In 2020, the Federal Subsistence Board ("FSB") approved two short-term changes to hunting practices on federal public lands in Alaska. First, the FSB opened an emergency hunt for Intervenor, the Organized Village of Kake ("Kake hunt"). Second, the FSB instituted a partial, temporary closure of public lands in game management Unit 13 to nonsubsistence users ("partial Unit 13 closure"). Plaintiff-Appellant State of Alaska Department of Fish and Game ("Alaska") brought this action against Defendants-Appellees, the FSB and several federal officials, alleging that the changes violated the Alaska National Interest Lands Conservation Act ("ANILCA") and the Administrative Procedure Act ("APA").[1] We have jurisdiction under 28 U.S.C. § 1291.

Before the district court issued its decision, the Kake Hunt ended, and the district court deemed the challenge to it moot. We review a dismissal for mootness *de novo*. *See Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019). While this appeal was

---

[1] Alaska also claimed that the FSB violated the Open Meetings Act in various ways, including by delegating rulemaking authority without allowing public observation. Alaska does not raise this cause of action on appeal, and it is therefore forfeited. *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018).

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 6 of 17

6   STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

pending, the partial Unit 13 closure expired. We are therefore obligated to address mootness as to the partial Unit 13 closure for the first time here. *See Renee v. Duncan*, 686 F.3d 1002, 1016 (9th Cir. 2012). We reverse in part, vacate in part, and remand.

## I.   BACKGROUND

Under ANILCA, the federal government, through the FSB, manages subsistence uses of fish and wildlife on federal public lands in Alaska. *See Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1189 (9th Cir. 2000); *see also* 50 C.F.R. § 100.10(a).  The FSB has regulatory authority to enact special actions to open and close hunting on public lands. *See* 50 C.F.R. § 100.19; 36 C.F.R. § 242.19.  In emergency situations, the FSB may immediately open or close hunting on public lands for up to 60 days, if necessary for certain permissible reasons. *See* 50 C.F.R. § 100.19(a); 36 C.F.R. § 242.19(a).  The FSB may also temporarily open or close hunting on public lands for longer periods, not to exceed the current regulatory cycle. *See* 50 C.F.R. § 100.19(b); 36 C.F.R. § 242.19(b).  However, those temporary special actions require adequate notice and public hearing. *See* 50 C.F.R. § 100.19(b); 36 C.F.R. § 242.19(b).

Alaska brought this action to challenge the FSB's approval of two special action requests.

First, in early 2020, with the onset of the COVID-19 pandemic, the FSB received numerous emergency special action requests from subsistence users related to food security concerns.  The Organized Village of Kake, a federally recognized tribe, submitted a special action request for the opening of an emergency season on public lands to harvest five deer and two moose. The FSB approved the

request for reasons of public safety, and the Kake hunt was completed in August 2020.

Second, in February 2020, the FSB received a temporary special action request from an Alaskan resident to close all public lands in game management Unit 13 to caribou and moose hunting for nonsubsistence uses during the 2020 season.[2] The special action request asserted that a closure was necessary to address public safety concerns related to hunting practices in the unit as well as the impact of those practices on subsistence hunting. The FSB received analyses and recommendations from the Office of Subsistence Management and the Interagency Staff Committee. The FSB also held a public hearing for comments and testimony from interested parties. In July 2020, the FSB approved the temporary special action request, with modifications, finding it was necessary for the continuation of subsistence uses and for public safety. The FSB limited the closure to subunits 13A and 13B because it was in those areas where the most overcrowding, disruption of hunts, and safety concerns had occurred. The FSB granted the partial closure for two years to reduce administrative burdens associated with processing additional requests. The partial Unit 13 closure expired on June 30, 2022.

On August 10, 2020, Alaska filed suit against the FSB and several federal officials alleging that the special action decisions violated ANILCA and APA. The district court granted the Organized Village of Kake's motion to intervene

---

[2] Federal regulation divides Alaska into twenty-six game management units. *See* 50 C.F.R. § 100.4. "Nonsubsistence uses" here refers to hunting that does not qualify as "subsistence uses" by "rural Alaska residents" under Section 803 of ANILCA. 16 U.S.C. § 3113.

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 8 of 17

8   STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

and denied Alaska's motions for a temporary restraining order and a preliminary injunction.

The district court issued its final decision in December 2021. *Dep't of Fish & Game v. Fed. Subsistence Bd.*, 574 F. Supp. 3d 710 (D. Alaska 2021). The district court found Alaska's Kake hunt claims moot because the hunt had been completed and the claims did not fit within the "capable of repetition, yet evading review" exception to the mootness doctrine. As for Alaska's claims challenging the partial Unit 13 closure, the district court found that the FSB did not act arbitrarily or capriciously when it determined that the partial closure was necessary for the continuation of subsistence uses and for public safety, and that extending the partial closure for a two-year period was consistent with regulations. Alaska timely appealed.

## II.   ANALYSIS

"Judicial review of administrative action, like all exercises of the federal judicial power, is limited by the requirement that there be an actual, live controversy to adjudicate." *Campesinos Unidos, Inc. v. U.S. Dep't of Lab.*, 803 F.2d 1063, 1067 (9th Cir. 1986). Here, the Kake hunt is complete, and the partial Unit 13 closure has expired. Alaska implicitly acknowledges that its claims are moot but argues they may still be reviewed because they are capable of repetition and would otherwise evade review.

"Generally, an action is mooted when the issues presented are no longer live and therefore the parties lack a legally cognizable interest for which the courts can grant a remedy." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854 (9th Cir. 1999). However, we may decline to dismiss an otherwise moot action if the challenged conduct is "capable of repetition, yet evading review." This

exception to the mootness doctrine is met when "(1) the duration of the challenged action is too short to allow full litigation before it ceases or expires, and (2) there is a reasonable expectation that the plaintiffs will be subjected to the challenged action again." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1018 (9th Cir. 2012). The plaintiff has the burden of showing that the exception applies. *See Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209 (9th Cir. 2021) (explaining that unlike the initial mootness question, where the defendants have the burden, the plaintiff has the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity).

### A. Kake Hunt

Alaska challenges the district court's mootness determination as to only one of its claims related to the Kake hunt: that ANILCA does not authorize the federal government to open emergency hunting seasons.[3] Alaska argues that claim is excepted from mootness because the opening of an emergency hunt is capable of repetition and will evade review. We agree.

An issue evades review if the underlying action will almost certainly run its course before full litigation can be completed. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002). The FSB's authorization for the emergency hunt was limited to the 60 days permitted under the regulations. *See* 50 C.F.R. § 100.19(a); 36 C.F.R. § 242.19(a). We have determined that actions of longer

---

[3] This claim appears in Alaska's complaint as its second claim for relief. Alaska's other claims for relief related to the Kake hunt are not raised in the opening brief, and so are forfeited. *See Orr*, 884 F.3d at 932.

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 10 of 17

10 STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

duration evade review. *See e.g., Native Vill. of Nuiqsut*, 9 F.4th at 1209 (winter exploration program lasting five months evaded review); *Nat. Res. Def. Council, Inc. v. Evans*, 316 F.3d 904, 910 (9th Cir. 2003) (one-year time span for challenged specifications too short to allow for full litigation). Neither the government nor the Organized Village of Kake challenge this conclusion. The first prong of the mootness exception is satisfied.

Turning to the "capable of repetition" prong, Alaska must show that there is "some indication that the challenged conduct will be repeated." *Alaska Ctr. For Env't*, 189 F.3d at 856. The FSB argues, and the district court concluded, that there was no reasonable likelihood that the FSB would again approve an emergency special action like the Kake hunt because the conditions of the COVID-19 pandemic have changed. This framing of the challenged action is too narrow. *See Cal. Energy Res. Conservation & Dev. Comm'n v. Bonneville Power Admin.*, 754 F.2d 1470, 1473 (9th Cir. 1985) (finding that defendant characterized "too narrowly" the type of action challenged); *see also Alaska Ctr. For Env't*, 189 F.3d at 856-57 (explaining that issue was not whether the exact same permit would be issued again, but whether the agency would issue other permits like the one challenged).

In its complaint, Alaska broadly asserted that ANILCA does not confer statutory authority on the federal government, including the FSB, to open emergency hunting seasons. That claim is not based on the particular circumstances of the Kake hunt, including the status of the COVID-19 pandemic. Rather, it challenges the FSB's general action of opening an emergency hunt. *See Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329-30 (9th Cir. 1992) ("major issue" of whether the agency had

adequately examined the effects of fishing on sea lions was likely to recur).

Based on the evidence provided by Alaska, we conclude that there is a reasonable expectation that this challenged action will recur. First, there is evidence that the FSB has opened emergency hunts in the past. *See Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 787 (9th Cir. 2012) ("[T]he challenged conduct is capable of repetition where there is evidence that it has occurred in the past . . . ."). In 2018, in response to a localized food shortage caused by a power outage, the FSB approved a special action request for an emergency moose hunt. In 2020, in response to the COVID-19 pandemic and associated food security concerns, the FSB received 11 special action requests for emergency hunts, approving one of them, the Kake hunt. This shows more than a "mere physical or theoretical possibility" that the FSB will again approve the opening of an emergency hunt in the future. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

In addition, the regulation under which the FSB authorized the Kake hunt remains in effect, and the FSB has made no commitment not to rely on the regulation in the future. *Compare Brach v. Newsom*, 38 F.4th 6, 13, 15 (9th Cir. 2022) (en banc) (finding no reasonable expectation of recurrence when state publicly renounced pursuing the challenged action in the future) *with Native Vill. of Nuiqsut*, 9 F.4th at 1212 (holding that continued reliance on an environmental report "would likely allow Plaintiffs to show that their claims were 'capable of repetition'").

Finally, "public interest in having the legality of the practices settled, militates against a mootness conclusion." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953).

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 12 of 17

12 STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

Whether ANILCA provides the federal government with authority to open these emergency hunts is a question of first impression in this court.[4] Until the issue is settled, the State and FSB may be unable to effectively manage and conserve wildlife populations. *See Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987) (finding a strong public interest mitigating against mootness where uncertainty as to which laws governed subsistence hunting of migratory game birds in Alaska could make it impossible to address the migratory birds' population decline); *see also Greenpeace Action*, 14 F.3d at 1330 (finding a continuing public interest in determining the standards governing the decision to authorize a certain level of pollock fishing in the Gulf of Alaska). These emergency action requests arise out of unpredictable situations that need immediate attention. Clarifying the FSB's authority to act in those situations will further the public interest.

Alaska's claim that the FSB violated ANILCA by opening the Kake hunt without statutory authority fits within the mootness exception. The district court did not reach the merits of this claim. "In general, an appellate court does not decide issues that the trial court did not decide." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Services*, 946 F.3d 1100, 1110 (9th Cir. 2020). But this rule is "not inflexible," and the appellate court has discretion to address a claim in the first instance

---

[4] We disagree with Defendants-Appellees' argument that *John v. United States*, 1994 WL 487830 (D. Alaska Mar. 30, 1994), already resolved this issue. That case considered the basic question of whether the federal government has any authority to manage the ANILCA subsistence priority. *Id*. at *9. But it did not reach the issue raised in this case of the parameters of that authority. *See State of Alaska v. Babbitt*, 72 F.3d 698, 700 n.2 (9th Cir. 1995).

"if the question is a purely legal one and the record has been fully developed prior to appeal." *See Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986).

Assuming we have discretion here, we decline to exercise it. Alaska's claim raises a question of first impression in this circuit and requires resolution of complicated issues of statutory interpretation. *See Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1035 (9th Cir. 2014) (declining to decide in the first instance a question that raised complicated issues of statutory interpretation and administrative law of first impression). We therefore remand this claim to the district court.

### B. Partial Unit 13 Closure

We next turn to Alaska's challenge to the FSB's partial temporary closures within game management Unit 13. The parties agree that the FSB has authority to close hunting, but disagree about whether, in this instance, the FSB's closure determination was adequate. We must first decide whether we have jurisdiction over Alaska's challenge given that the partial Unit 13 closure expired in June 2022. *See Renee*, 686 F.3d at 1016. Alaska argues its claim is excepted from mootness because it is capable of repetition, yet will evade review. We disagree.

The two-year closure is of a limited duration sufficient to meet the first prong of the mootness exception. *See Karuk Tribe of California*, 681 F.3d at 1018 ("We have repeatedly held that [activities impacting the environment] lasting only one or two years evade[s] review."); *Alaska Ctr. For Env't*, 189 F.3d at 855 (duration of two-year permit too short to allow for full litigation before expiration of permit). The FSB contends that this action would not have evaded review if Alaska had acted more promptly, including seeking

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 14 of 17

14 STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

expedited review. But requesting expedited review is not a prerequisite for application of this mootness exception. *Id*. at 856 ("There is no authority in this circuit for concluding that the repetition/evasion exception is inapplicable when the parties fail to seek expedited review under circuit rules."). And even if Alaska had sought and been granted expedited proceedings, there would have been no guarantee that full judicial review would have occurred before the partial Unit 13 closure expired. The first prong of the mootness exception is, therefore, satisfied.

The second prong of the mootness exception requires that Alaska show it is likely to suffer "the same or very similar harm" by the FSB. *Alcoa, Inc.*, 698 F.3d at 786. We have previously found the "capable of repetition" component to be met where an agency will rely on the same biological opinion or environmental report to inform its future actions. *See Greenpeace Action*, 14 F.3d at 1330 (same challenged action likely to recur where the agency was relying on the same biological opinion in support of the same determination the following year); *see also Native Vill. of Nuiqsut*, 9 F.4th at 1210 (noting that when "same report" will be used "in approving a future project . . . the case is not moot"). In contrast, where the agency will base future decisions on a new report with different facts and analysis, we have found that there is no reasonable expectation of repetition. *See Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1071, 1075 (9th Cir. 1995) (holding there is no reasonable expectation of repetition when agency would be relying on a new biological opinion in the future); *Native Vill. of Nuiqsut*, 9 F.4th at 1212 (finding that plaintiffs had not met their burden in showing a reasonable expectation that they would be subjected to challenged action again where future actions would rely on new

information). Moreover, when future decisions will be based on different criteria, factors, or methods, we have also found no reasonable expectation of repetition. *See Ramsey v. Kantor*, 96 F.3d 434, 446 (9th Cir. 1996) (challenge not capable of repetition "where an agency will be basing its rulings on different criteria or factors in the future").

Alaska argues that the FSB will once again close public lands in Unit 13 to nonsubsistence users for reasons similar to those cited for its 2020 decision. The temporary special action regulations that govern the FSB's closure of public lands undercut Alaska's argument. *See generally* 50 C.F.R. § 100.19(b); 36 C.F.R. § 242.19(b). To start, those regulations require the FSB to provide a new "public hearing" and, therefore, to accept new rounds of public comment, for each proposed temporary closure. 50 C.F.R. § 100.19(b); 36 C.F.R. § 242.19(b). They also require consultation for each proposed temporary closure "with the State of Alaska and the Chairs of the Regional Councils of the affected regions," inevitably resulting in more new information for the FSB to consider. 50 C.F.R. § 100.19(b)(1)(ii); 36 C.F.R. § 242.19(b)(1)(ii). Moreover, under the regulations, the FSB is obligated to analyze new factual information for each proposed temporary closure because the Board must determine that the proposed temporary closure "will not interfere with the conservation of healthy fish and wildlife populations, will not be detrimental to the long-term subsistence use of fish and wildlife resources, and is not an unnecessary restriction on nonsubsistence users." 50 C.F.R. § 100.19(b)(1); 36 C.F.R. § 242.19(b)(1). Finally, the regulations require that the FSB limit the proposed temporary closure "to the minimum time period or harvest limit determined by the Board to be necessary under the circumstances," which again results in

Case: 22-35097, 03/14/2023, ID: 12673475, DktEntry: 50-1, Page 16 of 17

16 STATE OF AK DEP'T OF FISH AND GAME V. FED. SUBSISTENCE BD.

the FSB considering a new set of facts and conducting new analysis for each proposed temporary closure. 50 C.F.R. § 100.19(b)(2); 36 C.F.R. § 242.19(b)(2). Thus, although Alaska argues that the FSB may start to "rubberstamp" closure requests, the regulations governing temporary closures belie that claim.

The record in this case exemplifies why Alaska's claim lacks merit. In processing the 2020 special action request, the FSB incorporated information from its consideration of prior Unit 13 closure requests in 2002 and 2019. But, consistent with the governing regulations, the FSB also held a new hearing, accepted new staff analysis and recommendations, and considered new data on Unit 13, including new information about animal population size and composition, harvest success rates, permit usage, and more. That new information resulted in the Board adopting a more targeted closure than requested or considered in 2019. In other words, the FSB based its 2020 approval on the entire record, including new information and analysis not previously available or considered in prior years. *Compare Idaho Dep't of Fish & Game*, 56 F.3d 1071, 1075 (9th Cir. 1995) (holding there is no reasonable expectation of repetition when agency would be relying on a new biological opinion in the future), *with Nat. Res. Def. Council, Inc.*, 316 F.3d at 910 (reasonable expectation that same issue will recur where agency repeated "the same rationale . . . year after year").

From the regulations and record, then, it is clear that the FSB will rely on new facts and analysis in responding to any future temporary closure request. Indeed, if the FSB does consider a request to temporarily close all or part of Unit 13 in the future, it is clear that one entirely new and significant part of its deliberations will concern the effects of the partial

Unit 13 closure in 2020 through 2022. Our conclusion does not change simply because the FSB may consider data from its deliberations regarding prior Unit 13 temporary closure requests. Given all this, we conclude that the second prong of the mootness exception is not met. *Cf. Native Vill. of Nuiqsut*, 9 F.4th at 1210 ("Our precedent has focused on whether the environmental report at issue is confined to the challenged action only, or whether the agency will use that same report in approving a future project. If the latter is true, then the case is not moot.").

Accordingly, the challenge to the FSB decision to partially close Unit 13 is moot. We vacate the district court's decision in part as to that claim and remand with instructions to dismiss it as moot. *See All. for the Wild Rockies v. Savage*, 897 F.3d 1025, 1032 (9th Cir. 2018) ("When mootness is not caused by actions of the party seeking vacatur, we typically will vacate the district court's order."); *see also City & Cnty of San Francisco v. Garland*, 42 F.4th 1078, 1088 (9th Cir. 2022) (explaining that partial vacatur of a lower opinion can be appropriate).

### III. CONCLUSION

We reverse the district court's dismissal of Alaska's claim that the FSB did not have authority to open the Kake hunt and remand that claim to the district court for further proceedings consistent with this opinion. With regard to Alaska's partial Unit 13 closure claim, we vacate the part of the district court's order that addresses the claim and remand with instructions to dismiss that claim as moot. Each party shall bear its own costs.

**REVERSED in part; VACATED in part; REMANDED.**