**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

STATE OF ALASKA, DEPARTMENT
OF FISH AND GAME,

                Plaintiff,

    v.

FEDERAL SUBSISTENCE BOARD,
*et al.*,

                Defendants,

    and

ORGANIZED VILLAGE OF KAKE,

                Intervenor-Defendant.

Case No. 3:20-cv-00195-SLG

## DECISION & ORDER ON REMAND

Pursuant to the Ninth Circuit Court of Appeals' mandate at Docket 72 and opinion at Docket 69, the Court issues this decision and order regarding the issues presented on remand involving whether the Federal Subsistence Board ("FSB") had the authority to open an emergency subsistence hunt on federal lands for the Organized Village of Kake ("OVK" or "Kake") at the outset of the COVID-19 pandemic. The Court previously found the issue to be moot, but the Ninth Circuit held that it "is excepted from mootness because the opening of an emergency hunt

is capable of repetition and will evade review."[1]  Accordingly, on March 14, 2023, the Ninth Circuit remanded to this Court "for further proceedings consistent with [its] opinion."[2]

Now on remand, the parties also dispute the scope of remand.  The State of Alaska, Department of Fish and Game ("State"), contends that the issues at hand include: (1) whether the Alaska National Interest Lands Conservation Act ("ANILCA") authorizes the federal government, including the FSB, to open a hunt on federal lands; (2) whether ANILCA authorizes the FSB to delegate the authority to open a hunt to local land managers; and (3) whether the FSB has the authority to delegate the hunt administration of the Kake hunt outside of a federal agency, including the authority to make determinations as to who can hunt and receive meat.[3]  Federal Defendants and the OVK (collectively, "Defendants"), on the other hand, contend that this remand should be limited only to determining whether the federal government, including the FSB, has the authority to open emergency hunts.[4]

The Court heard oral argument on the merits on June 16, 2023.

---

[1] *Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1181 (9th Cir. 2023).

[2] *Id.* at 1185.

[3] Docket 71 at 2 (Joint Status Rep. Addressing Schedule on Remand); Docket 79 at 4-5 (Tr. Oral Arg.).

[4] Docket 71 at 2; Docket 79 at 20.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 2 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 2 of 42

# BACKGROUND

## I. Alaska National Interest Lands Conservation Act

In 1980, Congress enacted the Alaska National Interest Lands Conservation Act ("ANILCA").[5] The protection and preservation of the opportunity for rural residents to engage in a subsistence way of life is an important objective of ANILCA.[6] Congress expressly found that "the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives, . . . is essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence."[7] The "Congressional statement of policy" in § 802 of ANILCA provides that "the purpose of this subchapter is to provide the opportunity for rural residents engaged in a subsistence way of life to do so."[8]

Section 804 of ANILCA, entitled "Preference for subsistence uses," provides that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes."[9] ANILCA defines "subsistence uses" to mean "customary and traditional

---

[5] Pub. L. No. 96-487, 94 Stat. 2371 (1980).

[6] 16 U.S.C. § 3101; *see also Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1091 (9th Cir. 2008).

[7] 16 U.S.C. § 3111(1).

[8] *Id.*

[9] *Id.* § 3114.  The term "public lands" refers to federal lands.  *See id.* § 3102(3).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 3 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 3 of 42

uses by *rural* Alaska residents of wild, renewable resources."[10]  Thus, Title VIII of ANILCA[11] requires that "rural Alaska residents be accorded a priority for subsistence hunting and fishing on public lands."[12]  In enacting Title VIII of ANILCA, Congress indicated it was "invok[ing] . . . its constitutional authority under the property clause and the commerce clause to protect and provide the opportunity for continued subsistence uses on the public lands by Native and non-Native rural residents."[13] The Property Clause, in turn, authorizes Congress to make needed rules and regulations regarding public lands.[14]  And the Commerce Clause gives Congress the power to regulate commerce with foreign nations, among states, and with Indian tribes.[15]

In ANILCA, Congress authorized the State of Alaska to "assume management of the subsistence program statewide under federal guidelines."[16]  Pursuant to § 805(d) of ANILCA, "Congress gave the state authority to implement the rural

---

[10] *Id.* § 3113 (emphasis added).

[11] Title VIII of ANILCA is codified at 16 U.S.C. §§ 3111-3126.

[12] *Alaska v. Babbitt*, 72 F.3d 698, 700 (9th Cir. 1995) [hereinafter *Katie John I*] (citing 16 U.S.C. §§ 3113-3114), *adhered to sub nom. John v. United States*, 247 F.3d 1032 (9th Cir. 2001) [hereinafter *Katie John II*] (en banc) (per curiam).

[13] 16 U.S.C. § 3111(4).

[14] U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.").

[15] *Id.* art. I, § 8, cl. 3 ("The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . .").

[16] Docket 51-2 at 21 (citing H.R. Rep. 96-97, pt. 1, at 539 *et seq.*).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 4 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 4 of 42

subsistence preference by enacting laws . . . consistent with ANILCA's operative provisions."[17]  If Alaska "enforce[d] a rural subsistence priority through the exercise of its own sovereignty, Congress [would] return primary regulatory authority over [subsistence uses] to state stewardship," but if Alaska failed to do so, then "the federal government would step in to protect subsistence [uses] as traditionally practiced by rural Alaskans."[18]  Promptly after ANILCA's enactment, the State of Alaska did indeed enact laws consistent with Title VIII's rural subsistence preference, and in 1982, "the Secretary of the Interior certified the state to manage subsistence hunting and fishing on public lands" in Alaska.[19]

## II.    The *McDowell* Decision

Several years later in 1989, however, the Alaska Supreme Court in *McDowell v. Alaska*[20] "struck down the state act granting the rural subsistence preference as contrary to the Alaska state constitution."[21]  In *McDowell*, the court held that Alaska's statute granting a preference to rural residents to take fish and game for subsistence purposes violated sections 3, 15, and 17 of article VIII of the Alaska Constitution, because these sections prohibit exclusive or special privileges in the taking of fish

---

[17] *Katie John I*, 72 F.3d at 700 (citing 16 U.S.C. § 3115(d)).

[18] *Katie John II*, 247 F.3d at 1037 (Tallman, J., concurring) (citing 16 U.S.C. § 3115(d)).  The terms "rural subsistence priority" and "rural subsistence preference" are used interchangeably in this order.

[19] *Katie John I*, 72 F.3d at 700-01.

[20] 785 P.2d 1 (Alaska 1989).

[21] *Katie John I*, 72 F.3d at 701 (citing *McDowell*, 785 P.2d 1).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al*.
Decision & Order on Remand
Page 5 of 42

and wildlife.[22]   The court "stayed its decision to give the [Alaska] legislature an opportunity to amend the constitution or otherwise bring its program into compliance with ANILCA," but the legislature "failed to act."[23]   Therefore, in 1990, "the federal government withdrew Alaska's certification and took over implementation of Title VIII."[24]   To this day, the relevant provisions of Alaska's Constitution remain the same, and so a rural subsistence preference remains unconstitutional under Alaska law.

When the federal government took over management of the subsistence use program, subsections (a), (b), and (c) of ANILCA § 805 went into effect.[25]   These subsections direct the Secretary to establish regional advisory councils that are tasked with developing "a recommended strategy for the management of fish and wildlife populations within the region to accommodate such subsistence uses and needs."[26]   Each regional advisory council is to prepare "an annual report to the Secretary" on the recommended strategy.[27]   The Secretary, in turn, "shall consider

---

[22] 785 P.2d at 9 (holding that the requirement "that one must reside in a rural area in order to participate in subsistence hunting and fishing" violated the Alaska Constitution).

[23] *Katie John I*, 72 F.3d at 701.

[24] *Id.*; *see also* Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed. Reg. 27114 (June 29, 1990).

[25] 16 U.S.C. § 3115(a)-(c).  16 U.S.C. § 3115(d) provides that "[t]he Secretary shall not implement subsections (a), (b), and (c) of this section if the State enacts and implements laws of general applicability which are consistent with [Title VIII]."  Because the State did not enact ANILCA-compliant laws after *McDowell*, these subsections necessarily went into effect.  *See* Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed. Reg. at 27114 (providing that the temporary regulations would "go into effect on July 1, 1990, unless, prior to that date, the State of Alaska extends its authority to continue to comply with 16 U.S.C. 3115(d)").

[26] *See* 16 U.S.C. § 3115(a)(3)(D)(iii).

[27] *Id.*

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 6 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 6 of 42

the report and recommendations of the regional advisory councils concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses."[28]  The Secretary may choose not to follow the recommendations for a variety of reasons, but must "set forth the factual basis and the reasons for his decision."[29]

In ANILCA, Congress also directed the Secretaries of the Interior and Agriculture to promulgate regulations in furtherance of ANILCA's directives.[30] Following *McDowell*, the Secretaries enacted temporary emergency regulations in 1990 creating the FSB and directing that "[s]ubsistence taking and uses of fish and wildlife on public lands shall be administered by a Federal Subsistence Board."[31]  The regulations became permanent and were updated several times, but the FSB's duties to "administer[] the subsistence taking and uses of fish and wildlife on public lands" remain the same.[32]  The FSB is composed of:

> A Chair to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; two public members who possess personal knowledge of and direct experience with

---

[28] *Id.* § 3115(c).

[29] *Id.*

[30] *Id.* § 3124; *Fed. Subsistence Bd.*, 544 F.3d at 1092.  "The Secretaries promulgated identical regulations, codified at 50 C.F.R., pt. 100, and 36 C.F.R., pt. 242."  *Fed. Subsistence Bd.*, 544 F.3d at 1092 n.1.  The Department of the Interior's regulations are codified at 50 C.F.R. Part 100, and the Department of Agriculture's regulations are codified at 36 C.F.R. Part 242.  For the sake of simplicity, the Court cites to the regulations promulgated by the Secretary of the Interior at 50 C.F.R. Part 100 in this order.

[31] Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed. Reg. at 27123.

[32] 50 C.F.R. § 100.10(a).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 7 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 7 of 42

subsistence uses in rural Alaska to be appointed by the Secretary of the Interior with the concurrence of the Secretary of Agriculture; the Alaska Regional Director, U.S. Fish and Wildlife Service; Alaska Regional Director, National Park Service; Alaska Regional Forester, U.S. Forest Service; the Alaska State Director, Bureau of Land Management; and the Alaska Regional Director, Bureau of Indian Affairs.[33]

Pursuant to 50 C.F.R. § 100.19, first promulgated in 1992 after a notice-and-comment process, the FSB has the authority to adopt "special actions."[34]  The FSB relied on this regulation in approving the emergency Kake hunt, which is discussed further below.  Section 100.19(a), concerning "[e]mergency special actions," provides in relevant part that "[i]n an emergency situation, if necessary . . . for public safety reasons, the Board may immediately *open* or close public lands for the taking of fish and wildlife for subsistence uses . . . ."[35]

At the heart of this lawsuit is the State's contention that "[n]othing in Title VIII of ANILCA authorizes hunting and fishing seasons to be *opened* by the Federal Subsistence Board" when the State has closed the season.[36]  According to the State, the priority that ANILCA accords to subsistence uses of fish and wildlife applies only

---

[33] *Id.* § 100.10(b)(1).  Initially, in 1990, FSB membership was narrower; it included the same members listed in the current regulation, but without "two public members who possess personal knowledge of and direct experience with subsistence uses in rural Alaska."  *See* Temporary Subsistence Management Regulations for Public Lands in Alaska, 55 Fed. Reg. at 27123.

[34] *See* Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed. Reg. 22940, 22949, 22957 (May 29, 1992) (to be codified at 36 C.F.R. pt. 242 and 50 C.F.R. pt. 100).

[35] 50 C.F.R. § 100.19(a) (emphasis added).

[36] Docket 49 at 28 (emphasis in original).  The State asserts that the FSB only has the authority to "reopen a season that has been validly closed under the authority granted in Title VIII of ANILCA." Docket 49 at 27.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 8 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 8 of 42

"when it is necessary to restrict taking in order to assure the continued viability of a fish or wildlife population or the continuation of subsistence uses of [such] population."[37]  The State therefore asserts that the FSB's regulation at 50 C.F.R. § 100.19 is "invalid to the extent [it] authorizes opening a hunting or fishing season."[38]

Federal Defendants, on the other hand, contend that ANILCA creates "a federal regulatory scheme 'to protect the resources related to subsistence needs' and 'to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so.'"[39]  They maintain that the "duty to administer these directives resides with the Secretary of the Interior, who is authorized to 'prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this [subchapter].'"[40]  They assert that ANILCA's "affirmative command" to accord priority to subsistence uses "cannot be reconciled" with the State's position that ANILCA does not authorize the FSB to open an emergency hunt to rural subsistence users.[41]  Federal Defendants contend that because "ANILCA creates a federal regulatory scheme[,] . . . the FSB's interpretation of ANILCA is entitled to deference."[42]

---

[37] Docket 49 at 10-11 (quoting 16 U.S.C. § 3112(2)).

[38] Docket 49 at 27.

[39] Docket 50 at 34 (emphasis omitted) (quoting *Katie John II*, 247 F.3d at 1036 (Tallman, J., concurring) (quoting 16 U.S.C. § 3101(b)-(c))).

[40] Docket 50 at 35 (quoting 16 U.S.C. § 3124).

[41] Docket 50 at 35.

[42] Docket 50 at 48 (citing *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191-92 (9th

## III.    The Kake Hunt

The Court has previously summarized the events surrounding the Kake hunt;[43] accordingly, the Court assumes familiarity here and briefly summarizes the relevant facts.  In the initial days of the COVID-19 pandemic, the FSB received numerous requests from remote Alaskan communities for emergency hunting authorizations to address existing or potential food shortages.[44]  Among these was a request from the Organized Village of Kake.[45]

In June 2020, the FSB issued letters of delegation to local federal field managers, authorizing each field manager to "issue emergency special actions *related to food security* [which] may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource."[46] The delegation letters required consultation with the Alaska Department of Fish & Game ("ADF&G") "to the extent possible" prior to doing so.[47]  The FSB also required local land managers to consult with the State of Alaska Unified Command Mass Care Group beforehand and instructed them to defer requests for special action to the FSB

_____

Cir. 2000)).

[43] *See Dep't of Fish & Game v. Fed. Subsistence Bd.*, 501 F. Supp. 3d 671, 679-81 (D. Alaska 2020).

[44] Docket 4-3 at 1.

[45] Docket 4-3 at 37.

[46] S*ee, e.g.*, Docket 32-5 at 1 (emphasis in original); *see also* Docket 4-3 at 5-36.

[47] *See, e.g.*, Docket 32-5 at 1.

if the Mass Care Group "[did] not confirm the need for [a] special action."[48]  The FSB rationalized that delegating the authority to local land managers would help expedite responses to the incoming pandemic-related emergency requests.[49]  The delegations were effective for one year unless earlier rescinded by the FSB.[50]

Soon after, Joel Jackson, the President of the OVK, wrote to the Petersburg District Ranger, Ted Sandhofer, to renew a previous request for an emergency hunt for the Kake community, citing food security concerns.  Mr. Sandhofer, in turn, contacted the Mass Care Group, which informed him that they could not confirm any food shortage or supply-chain disruption in Kake.  Accordingly, Mr. Sandhofer deferred the OVK's request to the FSB on June 12, 2020.  He informed the FSB that he had attempted to contact ADF&G but did not receive a response.[51]

The FSB considered the request at a June 22, 2020, meeting at which Mr. Jackson testified regarding the OVK's food security concerns.  The FSB voted to approve a limited season of up to 60 days to be administered by Mr. Sandhofer, who then issued a permit for a "Kake community harvest . . . allowing the Organized Village of Kake to harvest up to 2 antlered bull moose and 5 male Sitka black-tailed

_____

[48] *See, e.g.*, Docket 32-5 at 1, 4.

[49] Docket 32-5 at 1.

[50] *See, e.g.*, Docket 32-5 at 3.

[51] Mr. Sandhofer conveyed this information in a June 12, 2020, email to the FSB.  *See* Docket 4-3 at 38.  The State appears to dispute that Mr. Sandhofer reached out to ADF&G, asserting that "[t]here is no evidence in the record of an attempt by anyone at the local Forest Service office to contact anyone at ADF&G."  Docket 49 at 13.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al*.
Decision & Order on Remand
Page 11 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 11 of 42

deer per month."[52]  The permit specified that "[p]articipation in the season is limited to Federally qualified subsistence users selected by the Organized Village of Kake."[53] Mr. Jackson later confirmed that the harvest would be shared with "anyone in [the Kake] community if they are in need."[54]  The hunt successfully concluded on July 24, 2020, and the harvest was distributed to 135 households in the village.[55]

## LEGAL STANDARD

The State seeks invalidation of the FSB's actions surrounding the Kake hunt pursuant to § 706 of the Administrative Procedure Act ("APA") and seeks to enjoin the FSB from opening emergency rural subsistence hunts in the future.[56]  Section 706 of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations."[57]  Agency action is "not in accordance with the law" when it "conflict[s] with the language of the statute."[58]  This entails "a question of statutory interpretation, rather than an assessment of reasonableness in

_____

[52] Docket 32-3 at 136.

[53] Docket 32-3 at 136.

[54] Docket 32-5 at 13.

[55] Docket 15-3 at 3, ¶ 12 (Decl. Theodore Matuskowitz).

[56] Docket 49 at 9, 54; Docket 62 at 7.

[57] 5 U.S.C. § 706(2).

[58] *Nw. Env't Advocs. v. U.S. Env't Prot. Agency*, 537 F.3d 1006, 1014 (9th Cir. 2008) (quoting *City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007)).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 12 of 42

the instant case."[59]  The Court's review of agency action under § 706(2) is narrow: "a court is not to substitute its judgment for that of the agency," and such deference is especially appropriate where "the challenged decision implicates substantial agency expertise."[60]

"[W]hen an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces, the interpretation receives deference if the statute is ambiguous and if the agency's interpretation is reasonable. This principle is implemented by the two-step analysis set forth in *Chevron*."[61]  In the first step, "a court must determine whether Congress has 'directly spoken to the precise question at issue,'" and, if so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[62]  "If not, then at the second step the court must defer to the agency's interpretation if it is 'reasonable.'"[63]  When an agency "administered a notice-and-

---

[59] *Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010) (citing *Nw. Env't Advocs.*, 537 F.3d at 1014).

[60] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Ninilchik Traditional Council*, 227 F.3d at 1194.

[61] *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220 (2016).

[62] *Id.* (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). For "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citation and internal quotation marks omitted).  *See also King v. Burwell*, 576 U.S. 473, 492 (2015) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (alteration in original) (citation omitted)).

[63] *Encino Motorcars*, 579 U.S. at 220 (quoting *Chevron*, 467 U.S. at 844).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 13 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 13 of 42

comment process prior to issuing the regulations," "judicial deference to agency interpretations of [the underlying] statute is customary."[64]

## DISCUSSION

The Court addresses two preliminary matters—the scope of remand and whether the major questions doctrine applies—before addressing the substantive issues in this case.

### I.    Preliminary Matters

#### a.  Scope of Remand

The primary issue on remand is whether the FSB has the authority to open an emergency hunt for rural subsistence users pursuant to Title VIII of ANILCA.[65] However, the parties dispute whether the remand should also decide two related issues that this Court found moot, but were not raised or decided on appeal. The State contends that the following issues, which it did not raise on appeal, are still encompassed in the scope of remand: (1) whether ANILCA authorizes the FSB to delegate the authority to open a hunt to local land managers, and (2) whether the FSB has the authority to delegate hunt administration outside of a federal agency, specifically, the authority to determine who can hunt and who can receive meat.[66]

---

[64] *Ninilchik Traditional Council*, 227 F.3d at 1192 (citing *United States v. Haggar Apparel Co.*, 526 U.S. 380, 390 (1999)).

[65] *See Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1185 (9th Cir. 2023) ("We reverse the district court's dismissal of Alaska's claim that the FSB did not have authority to open the Kake hunt and remand that claim to the district court for further proceedings consistent with this opinion.").

[66] Docket 71 at 2; Docket 79 at 4-5.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 14 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 14 of 42

Federal Defendants and the OVK, on the other hand, contend that remand should be limited only to whether the FSB has the authority to open an emergency hunt.[67]

In determining the scope of remand, a lower court "must first apply the rule of mandate."[68] "According to the rule of mandate, although lower courts are obliged to execute the terms of a mandate, they are free [to decide] 'anything not foreclosed by the mandate' . . . ."[69] To "ascertain what was intended by [the] mandate," a lower court may consult the higher court's opinion in addition to the mandate itself.[70] Thus, "although the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it 'leaves to the district court any issue not expressly or impliedly disposed of on appeal.'"[71]

The Court agrees with the State that the two subsidiary issues can be considered on remand, because consideration of these issues is "not foreclosed by the [Ninth Circuit's] mandate."[72] Because the mandate in this case simply made the circuit court's judgment effective,[73] the Court consults the Ninth Circuit's opinion "to

---

[67] Docket 71 at 2; Docket 79 at 20. The State also asserted in its 2021 briefing that the FSB violated the Sunshine Act (also referred to as the Open Meetings Act). Docket 49 at 20-26. However, the State did not raise that claim on appeal, did not include it as an issue within the scope of remand in the Joint Status Report Addressing Schedule on Remand, and did not raise it during oral argument. *See Dep't of Fish & Game*, 62 F.4th at 1179 n.1; Docket 71 at 2; *see generally* Docket 79. Accordingly, the Court considers this claim waived.

[68] *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000).

[69] *Id.* at 1092-93 (quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)).

[70] *Id.* at 1093 (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)).

[71] *Id.* at 1094 (quoting *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986)).

[72] *Id.* at 1092 (citation omitted).

[73] The entirety of the mandate reads: "The judgment of this Court, entered March 14, 2023, takes

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 15 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 15 of 42

ascertain what was intended by its mandate."[74]  In its opinion, the Ninth Circuit held that "the opening of an emergency hunt" falls within the mootness exception because it is capable of repetition, yet evading review.[75]  It noted that this Court had not reached the merits of "Alaska's claim that the FSB violated ANILCA by opening the Kake hunt," and that, even if the circuit court had discretion to reach the merits at that time, "Alaska's claim raises a question of first impression in this circuit and requires resolution of complicated issues of statutory interpretation" that should first be addressed by this Court.[76]  With regards to the two "other claims for relief related to the Kake hunt," the Ninth Circuit explicitly held that those claims were forfeited on appeal because they were not raised in the opening brief.[77]  Consequently, the Ninth Circuit remanded the primary claim that "FSB did not have authority to open the Kake hunt" to this Court "for further proceedings consistent with [its] opinion."[78]

While Federal Defendants acknowledge that the two issues were forfeited on appeal but not forfeited on remand, they maintain that those issues are "still moot" because they were "dismissed as moot at the district court level" and the Ninth Circuit

---

effect this date.  This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure."  *See* Docket 72.

[74] *Kellington*, 217 F.3d at 1093 (citation omitted).

[75] *Dep't of Fish & Game*, 62 F.4th at 1181.

[76] *Id.* at 1183 (citing *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1035 (9th Cir. 2014)).

[77] *Id.* at 1181 n.3 ("Alaska's other claims for relief related to the Kake hunt are not raised in the opening brief, and so are forfeited." (citing *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018))).

[78] *Id.* at 1185.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 16 of 42

"never explicitly found" those issues to be excepted from mootness.[79]   The OVK agrees with Federal Defendants, pointing out that "the only thing [the Ninth Circuit was] deciding . . . [was] this single statutory interpretation question" regarding the opening of emergency hunts.[80]   However, "mandates require respect for what the higher court decided, not for what it did not decide."[81]   And because the mootness of the two remaining issues was not "decided on appeal," the question of mootness for those claims remains within "the jurisdiction of the lower court."[82]

Because the Ninth Circuit held that the issue of FSB's authority to open emergency hunts is capable of repetition, yet evading review, it would stand to reason that the two subordinate issues regarding the delegation of that authority are also capable of repetition, yet evading review.   To echo the Ninth Circuit, "[c]larifying the FSB's authority . . . in those situations will further the public interest."[83]   "[P]ublic interest in having the legality of the practices settled[] militates against a mootness conclusion."[84]   Accordingly, the Court finds that the two ancillary issues are also excepted to mootness.   In addition, deciding these issues on remand is "not counter

---

[79] Docket 79 at 20.

[80] Docket 79 at 25.

[81] *Kellington*, 217 F.3d at 1093 (citations omitted).

[82] *Id.*

[83] *Dep't of Fish & Game*, 62 F.4th at 1183.

[84] *Id.* at 1182 (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 17 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 17 of 42

to the spirit of the circuit court's decision,"[85] and so the Court will consider the issues on the merits.

### b. Major Questions Doctrine

The second preliminary issue is whether the major questions doctrine applies. The State contends that the authority the FSB claims in being able to open emergency hunts in Alaska falls under the major questions doctrine and therefore the Court should look for "clear congressional authorization" when deciding these issues; the OVK disagrees.[86] The major questions doctrine requires "Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'"[87] In these "extraordinary cases," the agency "must point to 'clear congressional authorization' for the power it claims."[88] In *West Virginia v. E.P.A.*, the seminal case on the major questions doctrine, the Supreme Court listed several examples of such "extraordinary cases" in which it held that Congress had not "meant to confer the power the agency ha[d] asserted":[89]

> (1) the Food and Drug Administration's claim that its authority over "drugs" and "devices" included the power to regulate and ban

---

[85] *Kellington*, 217 F.3d at 1093.

[86] *See* Docket 70; Docket 79 at 11-12, 28. Federal Defendants did not take an explicit position on the major questions doctrine during oral argument or in their briefing.

[87] *Mayes v. Biden*, 67 F.4th 921, 932-33 (9th Cir. 2023) (emphasis omitted) (quoting *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014)).

[88] *West Virginia v. E.P.A.*, 142 S. Ct. 2587, 2609 (2022) (quoting *Util. Air Regul. Grp.*, 573 U.S. at 324).

[89] *See id.* at 2608-09.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 18 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 18 of 42

tobacco products was too "expansive [a] construction of the statute";[90]

(2) "the Centers for Disease Control and Prevention could not, under its authority to adopt measures 'necessary to prevent the . . . spread of' disease, institute a nationwide eviction moratorium in response to the COVID-19 pandemic";[91]

(3) the Environmental Protection Agency ("EPA") could not construe the term "air pollutant," in a specific provision of the Clean Air Act, to cover greenhouse gases, because such an interpretation would have given the agency "authority over millions of small sources, such as hotels and office buildings, that had never before been subject to such requirements";[92]

(4) the Attorney General could not "rescind the license of any physician who prescribed a controlled substance for assisted suicide, even in a State where such action was legal";[93]

(5) the Occupational Safety and Health Administration's mandate that "84 million Americans . . . either obtain a COVID-19 vaccine or

---

[90] *See F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 126-27, 160 (2000).

[91] *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2487 (2021) (per curiam).

[92] *See Util. Air Regul. Grp.*, 573 U.S. at 310, 324.

[93] *See Gonzales v. Oregon*, 546 U.S. 243, 267 (2006).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 19 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 19 of 42

undergo weekly medical testing at their own expense" was invalid;[94] and

(6) in *West Virginia* itself, the EPA could not, for the first time, interpret "a long-extant statute" regarding emissions limits in a way that "entail[ed] billions of dollars in compliance costs" and would "empower[] it to substantially restructure the American energy market."[95]

In all of these cases, the broad scope of the challenged regulations impacted millions of people nationwide. In contrast, the agency action at issue in this case is the FSB's decision to open an emergency hunt for rural subsistence users in Alaska. The FSB has no authority in any other state besides Alaska, and it has no authority in areas outside of federal subsistence management pursuant to Title VIII of ANILCA, an Alaska-specific statute. The FSB's purpose and authority are therefore quite narrow.[96] Quite simply, the FSB's claimed authority to open emergency rural subsistence hunts on federal lands in Alaska does not constitute a decision of "vast economic and political significance" that warrants application of the major questions doctrine.[97]

---

[94] *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 142 S. Ct. 661, 665 (2022) (per curiam).

[95] *West Virginia*, 142 S. Ct. at 2604, 2610.

[96] *See* 50 C.F.R. §§ 100.1-100.3.

[97] *West Virginia*, 142 S. Ct. at 2605.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 20 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 20 of 42

## II.  Title VIII of ANILCA

The Court now turns to the substantive issues of this case.

### a.  The FSB's Authority to Open Emergency Hunts

The State contends that "[n]othing in Title VIII of ANILCA authorizes hunting and fishing seasons to be *opened* by the Federal Subsistence Board."[98]  The State acknowledges a subsistence priority in Title VIII, but interprets that priority to apply only "when it is necessary to *restrict* taking in order to assure the continued viability of a fish or wildlife population or the continuation of subsistence uses of [such] population."[99]  Accordingly, the State asserts that the FSB's regulations at 50 C.F.R. § 100.19 and 50 C.F.R. § 100.10(d)(6) are "invalid to the extent [they] authorize[] opening public lands for the taking of fish and wildlife."[100]  In support of that proposition, the State contends that while §§ 802, 804, 815, and 816 of ANILCA[101] each "reference[] restrictions on harvest," no ANILCA provision "says that the federal government has the authority to open a hunt when the State has closed the

---

[98] Docket 49 at 28 (emphasis in original).

[99] Docket 49 at 10-11, 27-28 (emphasis added) (quoting 16 U.S.C. §§ 3112, 3114).

[100] Docket 49 at 27, 29.  50 C.F.R. § 100.19(a) provides, in relevant part: "In an emergency situation, if necessary . . . for public safety reasons, the Board may immediately open or close public lands for the taking of fish and wildlife for subsistence uses . . . ."  The Court addresses the State's claim regarding 50 C.F.R. § 100.10(d)(6), which provides that "[t]he Board may delegate to agency field officials the authority to . . . *open* or close specific fish or wildlife harvest seasons," further below.  50 C.F.R. § 100.10(d)(6) (emphasis added).  *See* discussion *infra* Section II.b.

[101] These sections are codified at 16 U.S.C. §§ 3112, 3114, 3125, and 3126, respectively.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 21 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 21 of 42

season."[102]  The State maintains that the first sentence of § 804, which provides for a rural subsistence priority,[103] "cannot be read in isolation" and must be read in conjunction with the second sentence of § 804 and with § 802(2), both of which the State asserts limit the priority to only "when it is necessary to restrict taking."[104]

The State maintains that it "cannot effectively manage wildlife populations if the federal government goes beyond what Congress authorized and continues to open seasons all the time."[105]  Rather, it asserts that it is the "State's core function" to "manage[] its wildlife under [its] constitutionally-mandated 'sustained yield' principle."[106]  The State contends that "Congress did not, in passing ANILCA, choose to preempt the State's management of hunting [on federal lands within] its borders under its sustained yield principle."[107]  The State also cites to another provision in a

---

[102] Docket 79 at 8.  The Court notes that §§ 815 and 816 of ANILCA are not relevant to the issue at hand.  *See Fed. Subsistence Bd.*, 501 F. Supp. 3d at 692 ("Section 815 addresses limitations on the FSB's ability to restrict nonsubsistence uses, among other things, and Section 816 addresses its authority to enact closures.  Neither of these provisions is relevant to the issue of whether the FSB has the authority to open a hunt . . . .").

[103] The first sentence of § 804 provides: "Except as otherwise provided in this Act and other Federal laws, the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes."  16 U.S.C. § 3114.

[104] Docket 49 at 27-28 (quoting 16 U.S.C. §§ 3112(2), 3114).

[105] Docket 79 at 9.

[106] Appellant State of Alaska's Opening Br. at 12, 39, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (citing Alaska Const. art. VIII, § 4).  "Sustained yield" is defined by Alaska statute as "the achievement and maintenance in perpetuity of the ability to support a high level of human harvest of game, subject to preferences among beneficial uses, on an annual or periodic basis."  Appellant State of Alaska's Opening Br. at 12, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (quoting Alaska Stat. § 16.05.255(k)(5)).

[107] Appellant State of Alaska's Opening Br. at 40, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097).

separate title of ANILCA in support, § 1314, "Taking of fish and wildlife," which provides:

> Nothing in this Act is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands except as may be provided in [Title VIII] of this chapter,[108] or to amend the Alaska constitution.[109]

The State asserts that this provision, contrary to preempting the State's powers, demonstrates that "Congress maintained the status quo" by allowing the State to continue "regulat[ing] hunting throughout all its borders including on federal lands."[110]

The State urges this Court to give no deference to the FSB's interpretation of ANILCA, because "[w]here Congress is clear, the court does not give *Chevron* deference to the agency's interpretation of a statute," and it is the State's view that ANILCA clearly provides no authority to the FSB to open hunts.[111] The State further asserts that *Chevron* deference is unwarranted because "Congress expressly maintained state management of wildlife except as provided in Title VIII."[112] And the

---

[108] Subchapter II, which the statute references, is Title VIII of ANILCA.

[109] 16 U.S.C. § 3202(a). This provision is found in Title XIII of ANILCA, "Administrative Provisions," codified at 16 U.S.C. §§ 3191-3215.

[110] Appellant State of Alaska's Opening Br. at 40, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097).

[111] Docket 49 at 30-31 (first citing *Sturgeon v. Frost*, 139 S. Ct. 1066, 1079-80 (2019); and then citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). In contrast, the State contends that it "has the express authority to open and close [hunting and fishing] seasons when circumstances require." Docket 49 at 30 (citing Alaska Stat. §§ 16.05.060, 16.05.251, 16.05.255).

[112] Appellant State of Alaska's Opening Br. at 44, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (citing 16 U.S.C. § 3202(a)).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 23 of 42

State adds that if the Court considers legislative history, the Court should find that because "Congress considered and deleted language in ANILCA that would have authorized opening emergency hunts for up to 60 days[,] . . . Congress did not intend for the Secretaries to be able to open hunting and fishing seasons."[113]

Federal Defendants agree that ANILCA is clear, but that it clearly "vests the federal government, not the State, with the authority to manage federal lands in Alaska for subsistence uses."[114] Defendants assert that it is "unreasonable to argue that the Secretaries may provide opportunities for subsistence uses only by restricting them" when Congress expressly stated its purpose in § 802 of ANILCA "to provide the opportunity for rural residents engaged in a subsistence way of life to do so."[115] Defendants also cite to §§ 804 and 805 in support of the federal government's authority to open hunts: The first sentence of § 804 provides that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses *shall* be accorded priority," and § 805 "sets up an administrative system for including local and regional advisory

---

[113] Docket 79 at 10.  *See also* Docket 49 at 28-29 (discussing how, in 1978, the Senate rejected language in the House of Representatives' version of ANILCA, which "included authority to open seasons when extraordinary measures must be taken").

[114] Docket 79 at 21.

[115] Docket 79 at 22; 16 U.S.C. § 3112(1); *see also* Docket 50 at 35 (contending that "[i]t is hard to ascribe meaning to [ANILCA's] statutory purpose to provide opportunities for subsistence use or the statutory command to prioritize subsistence use" if the statute "only authorizes the FSB to close or restrict hunting opportunities on federal public lands but does not authorize opening a hunt"); Answering Br. of the Organized Vill. of Kake at 24, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (echoing FSB's argument that it is illogical that FSB would only have the power to "*close* subsistence harvests on public lands [and] not open them" (emphasis in original)).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 24 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 24 of 42

councils to provide advice . . . [to] the Secretaries . . . [on] subsistence uses."[116] Defendants also note that while "Congress gave Alaska the first option to enact its own laws in place of the federal regulatory scheme envisioned by Title VIII" pursuant to ANILCA § 805, that same statute "makes clear that if the State failed to implement the required program, the responsibility and authority to do so would fall to the Secretaries."[117] Defendants contend that "these provisions must be read with reference" to § 814, which provides that "[t]he Secretary shall prescribe such regulations as are necessary and appropriate to carry out his responsibilities under this subchapter."[118] Those regulations include 50 C.F.R. § 100.19, which for over 30 years has authorized the FSB to "immediately open or close public lands for the taking of fish and wildlife for subsistence uses" in an emergency situation.[119]

Further, contrary to the State's assertion that § 1314 of ANILCA demonstrates that Congress did not preempt the State's wildlife management authority, Federal Defendants contend that the statute, which provides that "[n]othing in [ANILCA] is intended to enlarge or diminish the responsibility and authority of the State of Alaska

---

[116] Docket 79 at 22; 16 U.S.C. §§ 3114-3115 (emphasis added).

[117] Fed. Appellees' Answering Br. at 15, 46, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (citing 16 U.S.C. § 3115(d)) (other citations omitted). Section 805 gives the Secretary "closure and other administrative authority over the public lands" with regard to subsistence uses if the State fails to "enact[] and implement[] laws . . . which are consistent with" Title VIII of ANILCA. 16 U.S.C. § 3115(c), (d).

[118] Docket 79 at 23; 16 U.S.C. § 3124.

[119] 50 C.F.R. § 100.19(a). The regulations also include 50 C.F.R. § 100.10(d)(6), which the State similarly alleges is invalid as applied. Docket 49 at 29.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al*.
Decision & Order on Remand
Page 25 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 25 of 42

. . . *except as may be provided in [Title VIII]*," actually "*does* alter the traditional balance of authority between state and federal regulators" with respect to subsistence uses.[120]  That is because, Defendants assert, the State cannot, without violating its own Constitution, implement a subsistence management program with a rural subsistence preference, as required by Title VIII of ANILCA.[121]  And Defendants maintain that if the State cannot do so, then such management falls to the federal government pursuant to ANILCA.[122]

"[W]hen an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces, the interpretation receives deference if the statute is ambiguous and if the agency's interpretation is reasonable."[123]  In this case, Congress delegated authority to the Secretaries of the Interior and Agriculture to "prescribe such regulations as are necessary and appropriate to carry out" their responsibilities pursuant to Title VIII of ANILCA.[124]  The Secretaries then established the FSB and delegated to it "responsibility for administering the subsistence taking and uses of fish and wildlife on public lands"

---

[120] Fed. Appellees' Answering Br. at 44-45, 52, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (emphasis in original); 16 U.S.C. § 3202(a).

[121] *See* Docket 79 at 27-28; Fed. Appellees' Answering Br. at 46, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097).

[122] Fed. Appellees' Answering Br. at 42, 46, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (citing *McDowell*, 785 P.2d at 9) (other citations omitted).

[123] *Encino Motorcars*, 579 U.S. at 220.

[124] 16 U.S.C. § 3124.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 26 of 42

under Title VIII.[125]  Given that Title VIII does not explicitly authorize nor expressly prohibit the federal government from opening rural subsistence hunts for public safety reasons, the Court finds that Congress has not "directly spoken to the precise question at issue" and that ANILCA is ambiguous on this matter.[126]  The Court thus moves from step one to step two of *Chevron* and analyzes whether the FSB's interpretation of ANILCA is "reasonable"; if so, the Court must give deference to that interpretation.[127]

The Court agrees with Defendants' analysis of ANILCA in light of the Alaska Supreme Court's *McDowell* decision and the continued absence of a state program compliant with ANILCA's rural subsistence preference.  While the State may, consistent with its Constitution, and does in fact grant a subsistence preference over other consumptive uses in its management of fish and game,[128] it is still prohibited by its Constitution to grant a *rural* subsistence preference.[129]  But Title VIII of ANILCA requires that there be a rural subsistence preference, and if the State cannot or does not implement such a preference, then the authority to manage fish and game on public lands to meet that preference reverts to the federal government.[130]  And the

---

[125] 50 C.F.R. § 100.10(a).

[126] *See Chevron*, 467 U.S. at 842.

[127] *See id.* at 844; *see also John v. United States*, 720 F.3d 1214, 1228 (9th Cir. 2013) ("We generally agree . . . that *Chevron* deference applies to questions of ANILCA's interpretation . . . where ANILCA is ambiguous as to the answer.").

[128] *See* Docket 79 at 8 ("[T]he State does have a subsistence priority.").

[129] *McDowell*, 785 P.2d at 9.

[130] *See Katie John I*, 72 F.3d at 701; *Katie John II*, 247 F.3d at 1037 (Tallman, J., concurring) (citing

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 27 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 27 of 42

federal government, in this instance, created the FSB to take charge of that management.[131]  Although ANILCA does not expressly authorize the FSB to open emergency hunts, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," and "the function of the courts . . . is to construe the language so as to give effect to the intent of Congress."[132]  And Title VIII of "ANILCA, read as a whole, clearly expresses Congress's intent to create a federal regulatory scheme 'to protect the resources related to subsistence needs' and 'to provide the opportunity for rural residents engaged in a subsistence way of life to continue to do so.'"[133]

Specifically, ANILCA § 805(a), (b), and (c), which became operative when the State was no longer compliant with Title VIII after *McDowell*, provide that the federal government would manage the rural subsistence program if the State could not or would not.[134]  These subsections direct the Secretary of the Interior to establish regional advisory councils to advise the Secretary on a variety of subsistence-related matters, including "a recommended strategy for the management of fish and wildlife

---

16 U.S.C. § 3115(d)).

[131] 50 C.F.R. § 100.10.

[132] *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133; *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940).

[133] *Katie John II*, 247 F.3d at 1036 (Tallman, J., concurring) (first quoting 16 U.S.C. § 3101(b)-(c); and then citing 16 U.S.C. §§ 3111-3114).

[134] *See* 16 U.S.C. § 3115(a)-(d).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al*.
Decision & Order on Remand
Page 28 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 28 of 42

populations within the region to accommodate such subsistence uses and needs."[135] The Secretary would then "consider the report and recommendations of the regional advisory councils concerning the taking of fish and wildlife on the public lands . . . for subsistence uses."[136] The Secretary would only need reports and recommendations on "a recommended strategy for the management of fish and wildlife" and on "the taking of fish and wildlife . . . for subsistence uses" if Congress intended the Secretary to manage that taking for subsistence uses. Managing the "taking" of wildlife necessarily implies that the federal government would be able to both close and open emergency rural subsistence hunts for public safety reasons on public lands.[137] Moreover, ANILCA § 806 directs the Secretary to make annual reports to Congress "on the effectiveness of the implementation of [Title VIII]" and "any exercise of his closure or *other administrative authority* to protect subsistence resources or uses."[138] This statute clearly envisions that the Secretary would have authority over more than just closing public lands to the taking of fish and wildlife.

Furthermore, ANILCA § 804 provides that "the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the

---

[135] *Id.* § 3115(a)(3)(D)(iii).

[136] *Id.* § 3115(c).

[137] *See, e.g.*, 16 U.S.C. § 3115(a)(3)(D)(iii), (c) (providing that the Secretary "shall consider the report and recommendations of the regional advisory councils concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses").

[138] *Id.* § 3116 (emphasis added).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 29 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 29 of 42

taking on such lands of fish and wildlife for other purposes."[139]  This priority for subsistence uses reflects Congress's recognition, set forth in ANILCA § 801, that "the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives, on the public lands . . . is essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence."[140]  Given the language of § 804 and Congress's stated goals, the Court concludes that ANILCA's priority for rural subsistence uses aims, among other things, to ensure the physical well-being of rural residents of Alaska in an emergency.   And further, given the Secretary's administrative duties pursuant to § 805(a)-(c) and Congress's express authorization to the Secretary to "prescribe such regulations as are necessary and appropriate to carry out his responsibilities under [Title VIII],"[141] the Court finds that the Secretary's regulation at 50 C.F.R. § 100.19, which authorizes the FSB to "open . . . public lands for the taking of fish and wildlife" for "public safety reasons," is valid as applied to the emergency hunt that the FSB authorized for Kake.[142]

---

[139] *Id.* § 3114.  ANILCA defines "subsistence uses" to mean "customary and traditional uses by *rural* Alaska residents."  *Id.* § 3113 (emphasis added).

[140] *Id.* § 3111.

[141] *Id.* § 3124.

[142] Although the State asserted in oral argument that "a preference for wild game over store-bought meat hardly justifies as a public safety concern," the Court finds that this statement—when put against the backdrop of the early, uncertain COVID-19 pandemic days of this case—is at odds with Congress's stated purpose in enacting Title VIII.  Docket 79 at 17.  After all, Congress expressly found that "the continuation of the opportunity for subsistence uses by rural residents of Alaska, including both Natives and non-Natives, . . . is essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence."  16 U.S.C. § 3111(1).  And when there were real concerns as to commercial food availability for a

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 30 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 30 of 42

The Court concurs with Defendants that it would be an unreasonable interpretation of ANILCA to conclude that rural subsistence uses can only be prioritized on public lands when there is a shortage of fish or wildlife, as the State would have the Court find. The State asserts that the first sentence of § 804, which provides for a rural subsistence priority,[143] "cannot be read in isolation" and must be read in conjunction with the second sentence of § 804 and with § 802(2), both of which the State maintains limit the priority to only "when it is necessary to restrict taking."[144] While the State explains its position by contending that it is the restriction on the taking of fish and wildlife that would then ensure the continued viability of those populations to satisfy subsistence needs,[145] the Court does not interpret ANILCA to limit the federal government to doing only that in its efforts to prioritize subsistence uses.[146] Such a reading would be contrary to the Congressional directive in § 802(1) "to provide the opportunity for rural residents engaged in a subsistence way of life to

---

remote Alaskan village such as Kake—where pre-pandemic food prices were already high—"a preference for wild game" was not just a preference but a response to a global uncertainty and volatility that most assuredly qualified as a "public safety concern."

[143] The first sentence of § 804 provides: "Except as otherwise provided in this Act and other Federal laws, the taking on public lands of fish and wildlife for nonwasteful subsistence uses shall be accorded priority over the taking on such lands of fish and wildlife for other purposes." 16 U.S.C. § 3114.

[144] Docket 49 at 27-28 (quoting 16 U.S.C. §§ 3112(2), 3114).

[145] *See* Appellant State of Alaska's Reply Br. at 19-20, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (quoting S. Rep. 96-413, at 269-70 (1979)).

[146] Moreover, there are no provisions in ANILCA that prohibit the FSB from opening a hunt or otherwise indicate that it does not have the authority to do so, and the State does not dispute this.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al*.
Decision & Order on Remand
Page 31 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 31 of 42

do so."[147]  Rather, "Congress delegated to the Secretary of the Interior the broad authority to 'prescribe such regulations as are necessary and appropriate to carry out his responsibilities under [ANILCA].'"[148]  Those responsibilities include "protect[ing] and provid[ing] the opportunity for continued subsistence uses on the public lands by Native and non-Native rural residents."[149]  Thus, the Secretary's authority "to open federal lands to subsistence hunting . . . is necessarily implied," because to hold otherwise would "impermissibly nullify [Title VIII's] central objective, particularly in light of the State's inability . . . to fulfill that objective."[150]

The Court further finds that ANILCA shifts this responsibility from the State to the federal government when the State is unable to accord a rural subsistence priority, because the statute provides that "[n]othing in [ANILCA] is intended to enlarge or diminish the responsibility and authority of the State of Alaska for management of fish and wildlife on the public lands *except as may be provided in*

---

[147] 16 U.S.C. § 3112(1).

[148] *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191 (9th Cir. 2000) (alteration in original) (quoting 16 U.S.C. § 3124).

[149] 16 U.S.C. § 3111(4).

[150] *See* Fed. Appellees' Answering Br. at 42, *Dep't of Fish & Game*, 62 F.4th 1177 (No. 22-35097) (first citing *McDowell*, 785 P.2d at 9; then citing *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) (holding that courts "cannot interpret federal statutes to negate their own stated purposes"); and then citing *Katie John II*, 247 F.3d at 1037-38 (Tallman, J., concurring) (stating that ANILCA must be given "the breadth and scope sufficient to achieve Congress's express purpose")).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 32 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 32 of 42

*[Title VIII]*."[151]  And Title VIII is clear that there must be a "rural subsistence priority."[152]  "Congress was clear in ANILCA's text that enforcement of the subsistence priority would entail altering the traditional balance of power between the State of Alaska and the federal government."[153]  This is explicitly laid out in § 805(d) of ANILCA, which provides: "The Secretary shall not implement subsections (a), (b), and (c) of this section *if* the State enacts and implements laws of general applicability which are consistent with, and which provide for the definition, preference, and participation specified in, sections 3113, 3114, and 3115[154] of this title . . . ."[155]  Thus, if the State were to enact laws consistent with these sections, then administration of the subsistence management program would return to the State; if not, the federal government has the responsibility and the authority to manage the rural subsistence priority on federal lands in Alaska.

While there is no express statement in ANILCA authorizing the federal government to open emergency rural subsistence hunts, "the words of a statute must

---

[151] 16 U.S.C. § 3202(a) (emphasis added).  Because the Court finds that the statute is clear, it does not apply *Chevron* deference in its analysis, nor does it give much weight to the State's argument regarding the legislative history of ANILCA.

[152] *See Katie John I*, 72 F.3d at 704.

[153] *Katie John II*, 247 F.3d at 1037 (Tallman, J., concurring).

[154] 16 U.S.C. §§ 3113, 3114, and 3115 cover definitions, preference for subsistence uses, and local and regional participation, respectively.

[155] 16 U.S.C. § 3115(d) (emphasis added).  Subsections (a), (b), and (c) of § 805 authorize the Secretary—with regard to his responsibilities to the subsistence management program—to establish local and regional advisory councils, assign qualified staff and make timely distribution of data to the advisory councils, and consider reports and recommendations from those advisory councils.  *See id.* § 3115(a)-(c).

be read in their context and with a view to their place in the overall statutory scheme."[156]   The State points to ANILCA's legislative history and how, in 1978, "Congress considered and deleted language in ANILCA that would have authorized [the Secretaries to open] emergency hunts for up to 60 days," originally in the House of Representatives' bill H.R. 39.[157]   However, also in this version of H.R. 39 that failed to pass the Senate, "the Secretary would *not* be authorized to suspend the State's authority to manage subsistence resources or to take over the management of those resources on the public lands."[158]   This all changed with the final version of ANILCA that became law, when the Secretary's § 805 administrative duties—including taking over management of rural subsistence resources if the State failed to enact laws compliant with Title VIII—were added.[159]   Contrary to the State's explanation, the Court finds that the legislative history actually supports Defendants' position.  That is, the original H.R. 39 precluded the federal government from managing subsistence hunting on public lands, excepting only a narrow opening authority.[160]   But with the addition of § 805 in the final version that *did* allow the Secretary to take over

---

[156] *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133.

[157] Docket 79 at 10; Docket 49 at 28-29 ("In May 1978, the House of Representatives passed its version of ANILCA, HR 39, and forwarded the bill to the Senate.  The House version included authority [by the Secretaries] to open seasons when extraordinary measures must be taken, but the Senate did not pass this version and the . . . language in the House bill was *deleted* from the bill that became law . . . ." (emphasis in original)).

[158] H.R. Rep. No. 95-1045, pt. 2, at 91 (1978) (emphasis added).

[159] *See* S. Rep. No. 95-1300, at 27-28 (1978).

[160] *See* H.R. Rep. No. 95-1045, pt. 2, at 91.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 34 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 34 of 42

management if needed, and which has in fact occurred, then the federal government could open emergency hunts when necessary to provide for rural subsistence uses due to public safety concerns.

Finally, in considering ANILCA in context, the Court notes that when ANILCA was enacted, "Congress envisioned that the State of Alaska would implement the subsistence preference as directed in Section 805(d) of ANILCA, and the State did so for many years."[161]  But "Congress could not have anticipated the next chain of events . . . [when] the Alaska Supreme Court struck down the state act granting the rural subsistence preference as contrary to the Alaska state constitution."[162]  When the State "failed to comply with Title VIII of ANILCA[,] . . . the Secretaries assumed responsibility for the implementation of Title VIII" and began implementing subsistence management regulations in 1990.[163]  For over 30 years, the federal government's authority to take special actions to protect rural subsistence, including opening emergency hunting seasons for public safety reasons, has been implicit in the § 805(a)-(c) management program and the balance of Title VIII and, since 1992, explicit in its promulgated regulations.[164]  Thus, the Court finds that the FSB's

---

[161] Docket 49 at 11.

[162] *Katie John I*, 72 F.3d at 701 (citing *McDowell*, 785 P.2d 1).

[163] Subsistence Management Regulations for Public Lands in Alaska, Subparts A, B, and C, 57 Fed. Reg. 22940, 22940 (May 29, 1992) (to be codified at 36 C.F.R. pt. 242 and 50 C.F.R. pt. 100).

[164] The federal government first implemented rules on "special actions" in 1992, including when it could open seasons in 50 C.F.R. § 100.19.  The first iteration provided that "[t]he Board may make or direct a temporary change to *open* or adjust the seasons or to increase the bag limits for subsistence uses of fish and wildlife populations on public lands."  *See* Subsistence Management Regulations for Public Lands in Alaska, 57 Fed. Reg. at 22957 (emphasis added).  All subsequent

interpretation of its authority under ANILCA, to include opening emergency rural subsistence hunts for public safety reasons, "a permissible construction of the statute."[165]  Accordingly, the Court gives deference to the FSB's interpretation of ANILCA.[166]

### b. Delegation to Local Federal Land Managers

The State also contends that the FSB exceeded its authority by delegating to local federal land managers the authority to open an emergency hunt.[167]  The State acknowledges that this issue is "closely related to whether the Board had the authority to open a hunt in the first place."[168]  At oral argument, Defendants maintained that the delegation questions were still moot and made no other

---

revisions to 50 C.F.R. § 100.19 included language authorizing the federal government to open seasons.  *See* Subsistence Management Regulations for Public Lands in Alaska, Subpart C and Subpart D—1998–1999 Subsistence Taking of Fish and Wildlife Regulations, 63 Fed. Reg. 35332, 35332 (June 29, 1998) (". . . 50 CFR 100.1 to 100.23 . . . remain effective . . . ."); Subsistence Management Regulations for Public Lands in Alaska, 67 Fed. Reg. 30559, 30569 (May 7, 2002) ("The Board may open, close, or restrict subsistence uses . . . ."); Subsistence Management Regulations for Public Lands in Alaska, Subpart B; Special Actions, 75 Fed. Reg. 63088, 63092 (Oct. 14, 2010) ("In an emergency situation, . . . the Board may immediately open or close public lands for the taking of fish and wildlife for subsistence uses . . . .").

[165] *Chevron*, 467 U.S. at 843.

[166] To the extent the State continues to maintain that the FSB's decision to authorize the Kake hunt was "arbitrary and capricious and contrary to law" because "the record does not provide substantial evidence to support FSB's decision to open an emergency hunt," the Court upholds its previous ruling that there was substantial evidence supporting the FSB's actions, which were not arbitrary, capricious, or contrary to law.  *See* Docket 49 at 31-33; *Fed. Subsistence Bd.*, 501 F. Supp. 3d at 694-96 ("[T]he Court finds that the record contained ample evidence that supported and was rationally connected to the FSB's decision to approve the emergency special action in Kake for reasons of public safety related to food security concerns; the FSB considered relevant factors— conservation and public safety concerns—and articulated a satisfactory explanation for its decision.").

[167] Docket 79 at 18; Docket 49 at 11-12; Docket 62 at 10-13.

[168] Docket 79 at 19.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 36 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 36 of 42

arguments concerning them.[169]  However, as the Court determined above that they, too, fall within the mootness exception, the Court will address them now.

The delegation letters issued by the FSB authorized each land manager to "issue emergency special actions *related to food security* [that] may be exercised only *for reasons of public safety*, and when doing so will not threaten the continued viability of the wildlife resource."[170]  The FSB explained that it was using the delegation "as a proactive means of facilitating timely consideration of all emergency special action requests related to food security that may arise in rural Alaska."[171]  The FSB specified that the delegation of authority was established pursuant to 36 C.F.R. § 242.10(d)(6) and 50 C.F.R. § 100.10(d)(6)[172] and was effective for one year, unless earlier rescinded by the FSB.[173]

The Court finds that the FSB's delegation in this context was reasonable given the valid concern of a potentially large number of food security and pandemic-related emergency requests at the outset of the pandemic.[174]  As discussed above,

---

[169] Docket 79 at 25.

[170] S*ee, e.g.*, Docket 32-5 at 1 (emphasis in original).

[171] Docket 32-5 at 1.

[172] These regulations each provide: "The Board may delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons within frameworks established by the Board."

[173] *See, e.g.*, Docket 32-5 at 2-3.

[174] Furthermore, the FSB had restrictions on the delegations—such as the requirement to consult with ADF&G and the State of Alaska Unified Command Mass Care Group—"prior to implementing any emergency special action" under the delegation.  Docket 32-5 at 1 (emphasis omitted).  As the Court previously determined, these requirements were followed.  *See Fed. Subsistence Bd.*, 501 F.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 37 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 37 of 42

"Congress delegated to the Secretary of the Interior the broad authority to 'prescribe such regulations as are necessary and appropriate to carry out his responsibilities under [ANILCA].'"[175]  Because of that broad delegation, and because the Court has concluded that the FSB's interpretation of ANILCA to include authority to open emergency hunts is reasonable, the Court finds that the FSB's delegation of that authority to local federal land managers, as authorized by its promulgated regulations, was also valid.

### c.  Delegation Outside of a Federal Agency

The State's final contention is that the FSB does not have the authority to delegate hunt administration to the OVK, an entity that is not a federal agency.[176] Relying on *U.S. Telecom Ass'n v. FCC*, a D.C. Circuit case, the State asserts that because "Congress did not expressly grant FSB the authority to subdelegate the administration of a hunt to an outside party," "an illegal hunt occurred[,] and a group outside of the federal government improperly restricted who could hunt and who could obtain the meat."[177]  The State also contends that the OVK posted on social

---

Supp. 3d at 696 & n.165.

[175] *Ninilchik Traditional Council*, 227 F.3d at 1191 (alteration in original) (quoting 16 U.S.C. § 3124).

[176] Docket 79 at 18; Docket 49 at 33-39; Docket 62 at 13-16.

[177] Docket 49 at 34 (citing *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004)); Docket 79 at 18.  *U.S. Telecom Ass'n* held unlawful the FCC's subdelegation of its authority to determine availability of telephone network elements to state commissions on the basis that the "case law strongly suggests that subdelegations to outside parties are assumed to be improper absent an affirmative showing of congressional authorization."  359 F.3d at 565.

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 38 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 38 of 42

media that only "enrolled tribal members" would receive meat, thereby contradicting ANILCA's mandate "to not discriminate based on ethnicity."[178]

Federal Defendants respond that the State's assertions are "misleading" and that "the FSB did not delegate authority to administer the hunt to the OVK."[179] Rather, Federal Defendants cite to the Emergency Special Action authorizing the hunt, which explicitly states: "The hunt will be administered by the U.S. Forest Service, Petersburg District Ranger."[180] The OVK also contends that "[a]ll substantive decisions, rules, and processes for the Kake hunt were set by the FSB and delegated to the Petersburg District Ranger," including how long the season would be, the number and species of animals that could be taken, where the hunt would occur, and who could participate in the hunt.[181] While the FSB directed that participation in the hunt itself be "limited to Federally qualified subsistence users selected by the Organized Village of Kake," the OVK points out that "Federally qualified subsistence users" can be "any person, tribal citizen or non-citizen, Native or non-Native," so long as that person met the rural residency requirements in the FSB's regulations.[182] Federal Defendants contend that the FSB "merely allowed the OVK to choose who

---

[178] Docket 62 at 14.

[179] Docket 50 at 44.

[180] Docket 50 at 44 (citing 0137_FSB). The part of the administrative record containing 0137_FSB can be found at Docket 32-3 at 137.

[181] Docket 55 at 19-21 (citing 0470-71_FSB). 0470-71_FSB is the same document found at 0136-37_FSB, which can be found at Docket 32-3 at 136-37.

[182] Docket 32-3 at 136; Docket 55 at 21-22 (first citing 50 C.F.R. § 100.24; and then citing 16 U.S.C. § 3111).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 39 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 39 of 42

participated in the emergency community hunt, which it was quite obviously in the best position to do."[183]  In addition, the OVK maintains that after the hunt was complete, tribal leadership confirmed via email to the Petersburg District Ranger that the harvest would be shared with the entire community, "regardless of tribal status or race."[184]

Based on the record evidence, the only subdelegation to the OVK was the selection of the hunters and the distribution of the game.[185]  The federal government maintained control and oversight over all other aspects of the hunt administration, as evidenced by the terms of the Emergency Special Action issued for the Kake hunt.[186] And this limited subdelegation was to a tribe.  "[T]ribes are unique aggregations possessing attributes of sovereignty over both their members and their territory . . . ."[187]  "[T]he Ninth Circuit has specified that '[s]ubdelegation of administrative authority

_____

[183] Docket 50 at 46-47.  Federal Defendants also point out that the State itself engages in the same practice, "allowing designated hunters 'who may possess particular expertise in hunting to harvest wildlife resources on behalf of the members of the community or group.'"  Docket 50 at 47 (quoting Alaska Dep't of Fish & Game, *Copper Basin CARIBOU, Community Subsistence Harvest Permit, PROGRAM 2020-2021* 4 (2019), https://www.adfg.alaska.gov/static/license/huntlicense/pdfs/csh_caribou_2020_2021.pdf (last visited Oct. 16, 2023).

[184] Docket 55 at 22; *see also* Docket 32-5 at 12-13.

[185] *See* Docket 32-3 at 136.

[186] *See* Docket 32-3 at 136-37.

[187] *S. Pac. Transp. Co. v. Watt*, 700 F.2d 550, 556 (9th Cir. 1983) (quoting *United States v. Mazurie*, 419 U.S. 544, 557 (1975)); s*ee also Haaland v. Brackeen*, 599 U.S. 255, ___, 143 S. Ct. 1609, 1648 (2023) (Gorsuch, J., concurring) (discussing how tribes are sovereign entities).

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 40 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 40 of 42

to a sovereign entity is not *per se* improper,' adding that such subdelegation need not 'rest on express statutory authority.'"[188]

The emergency hunt was authorized to benefit the Kake community,[189] and it was reasonable and logical for the FSB to permit the OVK to choose who would most likely be successful in completing the hunt for that community and who in the community was in need of the meat. Accordingly, the Court finds that the FSB did not exceed its authority when it delegated to the OVK the authority to make these limited decisions.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Plaintiff's request for declaratory and permanent injunctive relief at Docket 49 is DENIED. The Court finds that the FSB did not exceed its statutory authority under Title VIII of ANILCA when it opened an emergency subsistence hunt for the Organized Village of Kake at the outset of the COVID-19 pandemic for public safety reasons, when it delegated the authority to open emergency hunts to local federal land managers, and when it delegated to the OVK the limited authority to choose who would participate in the emergency hunt for the benefit of the community of Kake and how the meat would be distributed. Accordingly, Plaintiff's claims associated with the Kake hunt are DISMISSED with

---

[188] *Fed. Subsistence Bd.*, 501 F. Supp. 3d at 697 (first quoting *S. Pac. Transp. Co.*, 700 F.2d at 556; and then citing *Assiniboine & Sioux Tribes of Ft. Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation*, 792 F.2d 782, 795 (9th Cir. 1986) (collecting cases indicating federal government could subdelegate to tribe)).

[189] *See* Docket 32-3 at 136 (authorizing "a Kake community harvest").

prejudice.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 3rd day of November 2023, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00195-SLG, *SOA, Dep't of Fish & Game v. Fed. Subsistence Bd., et al.*
Decision & Order on Remand
Page 42 of 42

Case 3:20-cv-00195-SLG   Document 80   Filed 11/03/23   Page 42 of 42